No. 12-14009

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

DR. BERND WOLLSCHLAEGER, *et al.*,
*Plaintiffs-Appellees,*

v.

GOVERNOR STATE OF FLORIDA, by and through Attorney General Pam
Bondi, *et al.*,
*Defendants-Appellants.*

ON APPEAL FROM THE U.S. DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

**BRIEF OF *AMICI CURIAE* CENTER FOR CONSTITUTIONAL
JURISPRUDENCE AND DOCTORS FOR RESPONSIBLE GUN
OWNERSHIP IN SUPPORT OF DEFENDANTS-APPELLANTS**

JOHN C. EASTMAN
ANTHONY T. CASO, *Counsel of Record*
Center for Constitutional Jurisprudence
c/o Chapman University School of Law
One University Drive
Orange, CA  92886
Telephone:  (714) 628-2666
E-Mail:  caso@chapman.edu

Counsel for *Amici Curiae* Center for Constitutional Jurisprudence
and Doctors for Responsible Gun Ownership

*Dr. Bernd Wollschlaeger, et al., v. Governor State of Florida, et al.*,
No. 12-14009

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Amici Curiae hereby state that they have no parent companies, trusts, subsidiaries, and/or affiliates that have issued shares or debt securities to the public.

Pursuant to Eleventh Circuit Rule 26.1-1, in addition to the list of interested parties contained in the Brief for Appellants, the undersigned counsel for Amici hereby certifies that, to the best of his knowledge, the following persons, firms, and associations may also have an interest in the outcome of this case as amici curiae or its counsel:

Center for Constitutional Jurisprudence a project of the Claremont Institute for the Study of Statesmanship and Political Philosophy, a non-profit organization which has no parent companies and issues no stock;

Doctors for Responsible Gun Ownership a project of the Second Amendment Foundation, a non-profit organization which has no parent companies and issues no stock;

John C. Eastman, counsel for amici; and

Anthony T. Caso, counsel for amici.

 /s/ Anthony T. Caso
Anthony T. Caso
Attorney for *Amici Curiae*

C1 of 1

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ……………………..………………C1 of 1

TABLE OF AUTHORITIES ...................................................................... ii

PRELIMINARY STATEMENT ..................................................................1

INTERESTS AND IDENTITY OF AMICI CURIAE ...............................1

STATEMENT OF THE ISSUES..................................................................2

SUMMARY OF ARGUMENT ....................................................................2

ARGUMENT .................................................................................................5

I.   THE ACT SERVES THE COMPELLING INTEREST OF PROTECTING
     THE CONSTITUTIONAL RIGHTS OF ITS CITIZENS TO KEEP ARMS ..5

II.  FLORIDA ALSO HAS A COMPELLING INTEREST IN PROTECTING
     THE PRIVACY RIGHTS OF ITS CITIZENS ................................................8

A.   Florida's Citizens Have A Reasonable Expectation Of Privacy In The Ownership Of
Firearms................................................................................................................................ 9

B.   Existing Patient Privacy Laws Inadequately Protect The Informational Privacy Interests Of
Florida Patients And Firearm Owners........................................................................13

CONCLUSION .......................................................................................15

CERTIFICATE OF COMPLIANCE.....................................................16

CERTIFICATE OF SERVICE ............................................................17

i

# TABLE OF AUTHORITIES

**CASES**

*Boy Scouts of America v. Dale*,
   530 U.S. 640, 120 S. Ct. 2446 (2000) ....................................................................1

*Duke v. Cleland*,
   954 F.2d 1526 (11th Cir. 1992) .........................................................................10

*Florida Retail Federation, Inc. v. Attorney General of Florida*,
   576 F. Supp. 2d 1281 (N.D. Fla. 2008) ............................................................15

*Grutter v. Bollinger*,
   539 U.S. 306, 123 S. Ct. 2446 (2003) ................................................................1

*Katz v. United States*,
   389 U.S. 347. 88 S. Ct. 507 (1967) ...................................................................12

*McDonald v. City of Chicago*,
   561 U.S. ___, 130 S. Ct. 3020 (2010) ............................................................2, 4

*Rapanos v. United States*,
   547 U.S. 715, 126 S. Ct. 2208 (2006) ................................................................1

*Wesberry v. Sanders*,
   376 U.S. 1, 84 S. Ct. 526 (1964) .....................................................................10

**STATUTES**

42 U.S.C. § 300jj-11(c)(3)(A)(ii)...........................................................................17

American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5, § 4101,
   123 Stat. 115 (2009) ........................................................................................17

Fla. Stat. § 395.3025................................................................................................16

Fla. Stat. § 790.0601...............................................................................................14

Fla. Stat. § 790.335.................................................................................................14

Fla. Stat. §790.25(1)..................................................................................................9

Fla. Stat. §790.338 ...................................................................................... passim

Fla. Stat. §790.338(5)................................................................................................7

Fla. Stat. §790.338(6)................................................................................................7

Fla. Stat.. § 381.026 (Florida Patient's Bill of Rights and Responsibilities) ..........11

Health Insurance Portability and Accountability Act of 1996 (HIPPA) ................16

## OTHER AUTHORITIES

Blackstone , William, Commentaries 1:139 (1765),
in 5 The Founders' Constitution 210 (Univ. Chicago Press 1987) ......................8

Declaration of Rights, art. 13, Penn. Const. (1776),
in 5 The Founders' Constitution 210 (Univ. Chicago Press 1987) ......................8

English Bill of Rights, §7 (1689),
in 5 The Founders' Constitution 210 (Univ. Chicago Press 1987) ......................8

Furst, Lilian R., Between Doctors and Patients: The Changing Balance of Power
(1998)..................................................................................................................6

Journal of the 1997-1998 Constitution Revision Commission, Number 1
Organization Session (June 16, 1997) ........................................................ 12, 13

Overton, Chief Justice Ben F., Report to the Constitution Revision Commission
(1977)................................................................................................................13

Warren, Samuel D. & Brandeis, Louis D., *The Right to Privacy*,
4 HARV. L. REV. 193 (1890) ..............................................................................11

## REGULATIONS

45 CFR § 160 (2011) ............................................................................................16

45 CFR § 164 (2009) ............................................................................................16

## CONSTITUTIONAL PROVISIONS

Fla. Const. art. I, § 23...........................................................................................12

Fla. Const. of 1838 art. I, § 21 ...............................................................................9

Fla. Const. of 1990 art I, § 8 ..................................................................................9

## PRELIMINARY STATEMENT

The Center for Constitutional Jurisprudence and Doctors for Responsible Gun Ownership respectfully submit this brief as *amici curiae* in support of Appellant Governor, State of Florida, *et al*. to urge the Court to reverse the district court's order enjoining the Firearms Owners' Privacy Act (the "Act").

## INTERESTS AND IDENTITY OF AMICI CURIAE

The Center for Constitutional Jurisprudence was founded in 1999 as the public interest litigation arm of the Claremont Institute for the Study of Statesmanship and Political Philosophy.  The Center provides legal representation and litigation support in cases of constitutional significance.  It also advances its mission of restoring the principles of the American Founding to their rightful and preeminent authority in our state and national life through strategic litigation. The Center has participated as *amicus curiae* in many cases of constitutional importance before the Supreme Court, including *Rapanos v. United States*, 547 U.S. 715, 126 S. Ct. 2208 (2006); *Grutter v. Bollinger*, 539 U.S. 306, 123 S.Ct. 2325 (2003); and *Boy Scouts of America v. Dale*, 530 U.S. 640, 120 S. Ct. 2446 (2000).  The Center for Constitutional Jurisprudence also participated as *amicus curiae* in *McDonald v. City of Chicago*, 561 U.S. ___, 130 S.Ct. 3020 (2010), a Second Amendment case of particular relevance to the constitutional claims at issue here.

1

Doctors for Responsible Gun Ownership was founded in 1994 and is now a project of the Second Amendment Foundation. Doctors for Responsible Gun Ownership is a nationwide network of health care professionals, doctors, scientists, and others who support the safe and lawful use of firearms. It has fought the public health assault on firearm owners as part of its mission to expose the anti-gun bias behind medical scholarship.

Pursuant to Federal Rule of Appellate Procedure 29, *amici curiae* certify that this brief was not written in whole or in part by counsel for any party, and that no person or entity other than *amici*, its members, and its counsel has made a monetary contribution to the preparation and submission of this brief. All parties have consented to the filing of this brief.

## STATEMENT OF THE ISSUES

Amici focus on whether Florida has an interest underlying the challenged law sufficient to overcome any First Amendment burden from the prohibition on discrimination or unnecessary harassment of patients based on the exercise of their state and federal constitutional rights.

## SUMMARY OF ARGUMENT

When patients visit their physician, they expect to enter a safe haven where their health concerns can be alleviated by a trusted professional. During the brief but open discussion with the physician, patients should feel comfortable telling or

2

asking the physician anything no matter how embarrassing. And the physician will presumably function as a source of information and comfort. This delicate environment can be easily disrupted if a patient at any time feels threatened by the physician. The relationship can also be undercut if the physician records in the permanent medical record whether the patient exercises his constitutional right to own a firearm. Patient records are not simply maintained by a single physician or health facility, but will follow the patient and be disclosed to every health professional from whom the patient seeks advice or treatment. The recording of private, nonmedical information regarding the exercise of state and federal constitutional rights on permanent patient records taints future relationships and may discourage the patient from seeking medical care.

Florida protected the constitutional rights to bear arms, the state constitutional right to privacy, and future doctor-patient relationships by enacting the Firearm Owners' Privacy Act (the "Act"). This law ensures that citizens of Florida who exercise their constitutional right to keep arms are free from harassment and discrimination in the physician's office. Florida thus protects not only the right itself but also the patient's state constitutional right to privacy from intrusion through extensive interrogation about firearm ownership. The law does not prohibit physicians from passing along information about firearms safety. The Act merely prevents a physician from exploiting the doctor-patient relationship to

harass or discriminate against a patient based on the exercise of his constitutional right to own a firearm.  Fla. Stat. §790.338; *McDonald v. City of Chicago*, 130 S.Ct. at 3050.

The Act in no way restricts the First Amendment rights of physicians who wish to advocate against gun ownership or any other constitutional freedom.  They remain free to make their arguments outside of the doctor-patient relationship.  The Act protects patients, however, from doctors who wish to advocate against the Constitution and disguise it as medical treatment, and then to make a permanent record of the patient's responses.  Florida's law serves a compelling interest in protecting the state and federal constitutional right to keep arms and the explicit state constitutional right to privacy. Amici agree with the position put forward by the National Rifle Association earlier in this litigation that a lower standard than strict scrutiny should apply in analyzing the plaintiffs' claims.  But even if the Court applies strict scrutiny, Florida's compelling interests will allow the law to pass constitutional muster.

Patients have an interest to be free from harassment, discrimination, and intimidation when visiting a physician.  This Court should join Florida in sustaining that interest by upholding the Act.

**ARGUMENT**

## I. THE ACT SERVES THE COMPELLING INTEREST OF PROTECTING THE CONSTITUTIONAL RIGHTS OF ITS CITIZENS TO KEEP ARMS

The Act does not prevent doctors from counseling their patients on gun safety, but it does prevent the physician from inquiring and recording information about firearm ownership in the patient's medical record if the information is not relevant to the patient's health and safety.  Fla. Stat. §790.338.  Practically speaking, the Act prevents physicians from placing what other physicians may regard as a permanent blemish on the patient's record, trailing the patient to every doctor the patient may see.  In effect, the patient would never be able to escape the permanent medical record.  The Act shields patients from a doctor placing his political disagreement with the patients' exercise of a constitutional right on the permanent medical record.  This law merely gives patients a small degree of power to assert in the doctor's office against a physician who operates in an intimidating position of authority and expertise.  *See* Lilian R. Furst, Between Doctors and Patients: The Changing Balance of Power 2 (1998) ("[T]he urge to live is so intense in most patients as to make them willing and even glad to defer to the doctor's competence . . . .").  A doctor's tendency to dominate a consultation with a string of inquiries can easily implicate patients' constitutional right to keep arms even without patients' knowledge.  *Id*.  A doctor's questions can interfere with

5

patients' exercise of the right by putting patients in a hesitant position where they question their ownership of firearms because of physician disapproval.  Patients may ultimately forego their right to keep arms under physician intimidation.  But Florida's Act would protect patients' right to keep arms from the harassment and intimidation of current and future physicians, who can pressure patients into refraining from firearm possession.  Fla. Stat. §790.338.  The law does not interfere with doctor free speech rights – there is no such right to discriminate based on the exercise of a constitutional right (Fla. Stat. §790.338(5)) nor is there a right to "unnecessarily" harass a patient over ownership of a firearm (Fla. Stat. §790.338(6)).  Florida has a compelling interest in protecting patients from discrimination and harassment based on the exercise of constitutional rights and to protect patients from having permanent notations made on their medical record regarding the exercise of those constitutional rights.

The right to keep arms has long been regarded as a fundamental right that predated the Bill of Rights.  The right to bear arms was included in the English Bill of Rights in 1689.  English Bill of Rights, §7 (1689), in 5 The Founders' Constitution 210 (Univ. Chicago Press 1987).  This right quickly became engrained in the culture that the Founders' brought to America.  Blackstone, the legal commentator on whom the Founders often relied, referred to the right to bear arms as part of the "natural right of resistance and self-preservation."  William

Blackstone, Commentaries 1:139 (1765), in 5 The Founders' Constitution 210 (Univ. Chicago Press 1987).  Moreover, the right to bear arms appears in the earliest state constitutions.  *See* Declaration of Rights, art. 13, Penn. Const. (1776), in 5 The Founders' Constitution 210 (Univ. Chicago Press 1987).

Florida is no different.  Florida's constitution has protected the right of its citizen to keep arms for nearly 175 years and there is no indication that it will cease to do so.  Since it was first codified in 1838, the right to keep arms has been emphasized as a right to self-defense, namely the defense of one's self or one's house.  The 1838 provision states that the citizens of Florida will "have a right to keep and to bear arms for their common defence."  Fla. Const. of 1838 art. I, §21. The essence of the 1838 language has persisted to this day.  The latest version of the Florida constitution states:  "The right of the people to keep and bear arms in defense of themselves and of the lawful authority of the state shall not be infringed."  Fla. Const. of 1990 art I, §8.  Ownership of a firearm therefore serves as a long-recognized constitutional tool for ensuring both individual safety and the safety of the community.  The state has an undoubted interest in protecting this right against acts of unnecessary harassment and discrimination.

This provision of Florida law is not unique.  Other provisions of state law also protect the right to keep arms.  While Florida statute §790.25(1) declares as its policy that "it is necessary to promote firearms safety," the law emphasizes that it

must be carried out "in favor of the constitutional right to keep and bear arms for lawful purposes."    Furthermore, subsection (4) emphasizes that §790.25 supplements the right to bear arms guaranteed by Florida's constitution and that "nothing in the statute shall impair or diminish any of such rights."  It should come as no surprise, therefore, that Florida would also prohibit physicians from impairing or diminishing the right to keep arms.  Fla. Stat. §790.338.

The support for the right to keep arms in Florida's laws and legislation reflect the state's compelling interest in upholding the constitutional rights of its citizens.  *See Wesberry v. Sanders*, 376 U.S. 1, 17, 84 S. Ct. 526, 535 (1964) (protection of voting rights);  *Duke v. Cleland*, 954 F.2d 1526, 1532-33 (11th Cir. 1992) (protection of First Amendment Rights).

## II. FLORIDA ALSO HAS A COMPELLING INTEREST IN PROTECTING THE PRIVACY RIGHTS OF ITS CITIZENS

The Florida Patient's Bill of Rights provides: "The patient's rights to privacy must be respected to the extent consistent with providing adequate medical care to the patient and with the efficient administration of the health care facility or provider's office."  Florida Patient's Bill of Rights and Responsibilities, Fla. Stat. § 381.026.   Together with Florida's constitutional, statutory, and case law, the Florida Patient's Bill of Rights protects patient privacy interests.   Medically irrelevant questions regarding firearm ownership are inconsistent with these rights.  Along with questions that are not necessary to medical care and treatment,

8

discrimination and harassment compromise the doctor-patient relationship by putting the patient in an uncomfortable position. Florida has a compelling interest in protecting the patient's privacy during the course of this relationship, especially if the state is paying doctors through Medicaid or similar programs. The state has an interest in ensuring that physicians do not misuse these funds to harass and discriminate against individuals seeking medical care solely on the basis of the exercise of state and federal constitutional rights. The Act is a necessary tool for the state to protect patient privacy interests.

### A.    Florida's Citizens Have A Reasonable Expectation Of Privacy In The Ownership Of Firearms

Florida's constitution, statutes, and case law have led the citizens of Florida to believe that they have a reasonable expectation of privacy in owning a firearm. *See* Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193, 197-198 (1890) (explaining that existing law, which includes statutory and case law, protects the privacy rights of individuals). It is primarily Florida's responsibility to protect the personal privacy interests of its citizens. *See Katz v. United States*, 389 U.S. 347, 350-51, 88 S. Ct. 2446 (1967) ("But the protection of a person's general right to privacy – his right to be let alone by other people – is, like the protection of his property and of his very life, left largely to the law of the individual States.").

Florida's constitution has provided a significant degree of protection over the general right to privacy for its citizens.  Distinct from the U.S. Constitution, Florida's constitution grants an express right of privacy to its citizens, stating that "every natural person has the right to be let alone and free from governmental intrusion into the person's private life."  Fla. Const. art. I, §23.  Enacted in 1980, the Florida legislature proposed the addition of this privacy provision to the state constitution due to concerns over government intrusion into the lives of individuals.  Journal of the 1997-1998 Constitution Revision Commission, Number 1 Organization Session, at 10 (June 16, 1997), *available at* http://www.law.fsu.edu/crc/pdf/crc1.pdf.  But those concerns grew to include informational privacy, technological compilation of data, and distribution of private information.  *See* Chief Justice Ben F. Overton, Report to the Constitution Revision Commission 2-3 (1977) (on file with Fla. St. U. L. Rev., Tallahassee, Fla.) (referencing Florida Supreme Court Justice Overton who asked, "who, ten years ago, really understood that personal and financial data on a substantial part of our population could be collected by government or business and held for easy distribution by computer operations?").  Technological advances made it easy and cheap to track what was once private information, thereby intruding into individual lives in a greater way than ever expected.  Journal of the 1997-1998 Constitution

Revision Commission, Number 1 Organization Session, at 10 (June 16, 1997), *available at* http://www.law.fsu.edu/crc/ pdf/crc1.pdf.

The statute at issue in this case responds to those concerns by prohibiting inquiry without a medical reason and further prohibiting the recording of information concerning a patient's exercise of constitutional rights. This law manages the compilation of data at its source by preventing physicians from even collecting the information unless relevant to the patient's medical care. Fla. Stat. §790.338(1) and (2). As a result, only medically relevant information makes it into the patient's record.

As already noted, this is not the only Florida law that protects the privacy rights of its citizens to keep arms. Florida statute §790.0601 states that "personal identifying information of an individual who has applied for or received a license to carry a concealed weapon or firearm . . . is confidential . . . ." Florida statute §790.335 recognizes the potential for abuse in keeping a record of those who own firearms, identifying such record as "an instrument that can be used as a means to profile innocent citizens and to harass and abuse American citizens based solely on their choice to own firearms." As a result, subsection (2) of section 790.335 explicitly prohibits any person from keeping "any list, record or registry of the owners of those firearms." There is no reason that physicians should be exempt from this prohibition. The Florida law at issue directly supports the legislature's

11

intent to protect citizens from abuse based on their choices to keep a firearm by prohibiting physicians from entering information about firearm ownership into a patient's medical record.  Fla. Stat. §790.338(1).

Florida's constitution and statutory law operate to safeguard the privacy interest in firearm ownership.  *Florida Retail Federation, Inc. v. Attorney General of Florida*, 576 F. Supp. 2d 1281 (N.D. Fla. 2008) ((on motion for preliminary injunction), *final judgment entered*, 576 F. Supp. 2d 1301 (N.D. Fla. 2008)) further demonstrate the state's attempt to protect the exercise of constitutional rights. *Florida Retail* involved a statute requiring that businesses allow guns to be secured in cars of the business's parking lot and further prohibiting a business from asking a customer or worker whether the individual kept a gun in their car of the parking lot.  *Id*. at 1291, 1293 ("So a state legislature might reasonably choose to give such a worker a right to keep a gun in a vehicle in the parking lot.").  *Florida Retail* demonstrates that the state's laws prohibiting inquiries into gun ownership do not specifically target physicians.  The laws are part of a comprehensive effort to protect constitutional rights.

### B.    Existing Patient Privacy Laws Inadequately Protect The Informational Privacy Interests Of Florida Patients And Firearm Owners

Florida's Firearm Owners' Privacy Act is a necessary measure because under current practices and recent federal government legislation, current laws are inadequate to protect the privacy of patients who are firearm owners.

The informational privacy rights of Florida's patients are currently recognized under Florida statute §395.3025 and the Health Insurance Portability and Accountability Act of 1996 (HIPPA). Florida statute §395.3025 requires that a patient's records be kept confidential and prohibits disclosure unless the patient consents. Fla. Stat. §395.3025(4). HIPPA protects the privacy of a patient's personal information by regulating the inappropriate use of patient health information. *See generally* 45 CFR § 160 (2011); 45 CFR § 164 (2009). State and federal laws also provide extensive standards to ensure protection of patient information. While these laws protect patient information once they are entered into the system, they do not protect patients from physician inquiries to collect information in the first place. This danger is further heightened once the information becomes part of the patient's record because of the growing reliance on electronic technology and new requirements making doctor notations a permanent record that will follow the patient from doctor to doctor – and thus will

13

be available for all medical professionals to review when the information was never relevant to medical care in the first place.

The American Recovery and Reinvestment Act of 2009 (Stimulus Bill) requires the U.S. Department of Health and Human Services to have "an electronic health record for each person in the United States by 2014." 42 U.S.C. § 300jj-11(c)(3)(A)(ii). As part of the Act of 2009, the Health Information Technology for Economic and Clinical Health (HITECH) Act offers grants and bonuses as incentives to physicians for the adoption and use of electronic health records. Physicians who do not utilize electronic health records will be penalized beginning in 2015 with reductions in Medicare payments. American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5, § 4101, 123 Stat. 115 (2009). The pressure and eventuality of a federally mandated, wholly electronic medical record system is palpable. Florida's health care providers will be required to comply. This statute is a reasonable response to protect patient privacy by keeping medically irrelevant information out of the permanent electronic record.

## CONCLUSION

For the reasons stated above, this Court should reverse the district court's order enjoining the Act.

Dated: September 24, 2012.

Respectfully submitted,

_____

JOHN C. EASTMAN
ANTHONY T. CASO, *Counsel of Record*
Center for Constitutional Jurisprudence
c/o Chapman University School of Law
One University Drive
Orange, CA  92886
Telephone:  (714) 628-2500
E-Mail:  caso@chapman.edu

Attorneys for *Amici Curiae*
Center for Constitutional Jurisprudence and
Doctors for Responsible Gun Ownership

15

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief has been prepared using fourteen point, proportionately spaced,

serif typeface: Microsoft Word 2007, Times New Roman, 14 point.  Excluding the

parts of the brief exempted by Fed. R. App. P.32(a)(7)B)(iii), this brief contains

3,145 words.

            /s/ Anthony T. Caso
           Anthony T. Caso
           Attorney for *Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2012, I filed the foregoing Brief of

Amici Curiae Center for Constitutional Jurisprudence and Doctors for Responsible

Gun Ownership by causing paper copies to be delivered to the Court by U.S. Mail,

postage prepaid and by uploading an electronic copy to the Court's web site.  I also

hereby certify that, pursuant to General Order 37 of the U.S. Court of Appeals for

the Eleventh Circuit, I caused the brief to be electronically served through the ECF

system upon the following counsel:

> Edward M. Mullins (emullins@astidavis.com)
> Astigarraga Davis Mullins & Grossman, P.A.
> 701 Brickell Avenue, 16th Floor
> Miami, Florida 33131-2847
>
> Bruce S. Manheim, Jr. (bruce.manheim@ropesgray.com)
> Ropes & Gray LLP
> 700 12th Street NW, Suite 900
> Washington D.C. 20005
>
> Timothy David Osterhaus (timothy.osterhause@myfloridalegal.com)
> Office of the Attorney General, Florida
> The Capitol, Suite PL-01
> 400 South Monroe Street
> Tallahassee, Florida 32399

I also hereby certify that I caused the brief to be served by U.S. Mail,

postage prepaid upon the following counsel:

17

Dennis G. Kainen
Weisberg & Kainen, PL
1401 BRICKELL AVE STE 800
MIAMI, FL 33131-3504

Pam Bondi
Attorney General's Office
PL-01 THE CAPITOL
TALLAHASSEE, FL 32399-1050

Augustine Ripa
Julia Lewis
Ropes & Gray LLP
700 12th ST NW STE 900
WASHINGTON, DC 20005

Daniel R. Vice
Jonathan E. Lowy
Brady Center to Prevent Gun Violence
1225 EYE ST NW STE 1100
WASHINGTON, DC 20005

Hal Michael Lucas
Hal M. Lucas, P.A.
701 BRICKELL AVE STE 1650
MIAMI, FL 33131


　　　/s/  Anthony T. Caso　　
Attorney for *Amici Curiae*