# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

## CASE NO. 12-14009-FF
_____

DR. BERND WOLLSCHLAEGER, *et al*.,
Plaintiffs/Appellees,

v.

GOVERNOR, STATE OF FLORIDA, *et al*.,
Defendants/Appellants.
_____

Appeal from the United States District Court
for the Southern District of Florida
_____

## APPELLANTS' REPLY BRIEF
_____

PAMELA JO BONDI
FLORIDA ATTORNEY GENERAL

Timothy D. Osterhaus (FBN 133728)
Solicitor General
Timothy.Osterhaus@myfloridalegal.com
Jason Vail (FBN 298824)
Assistant Attorney General
Diane G. DeWolf (FBN 059719)
Rachel E. Nordby (FBN 056606)
Deputy Solicitors General
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399
(850) 414-3300
(850) 410-2672 (fax)
*Counsel for State Appellants*

## CERTIFICATE OF TYPE/VOLUME

Counsel for the State Appellants certifies that the text of the brief is presented in 14-point Times New Roman typeface and contains 3,653 words (Microsoft Word count) in compliance with Federal Rule of Appellate Procedure 32(a).

/s/ Timothy D. Osterhaus
Counsel for Defendants/Appellants

# TABLE OF CONTENTS

CERTIFICATE OF TYPE/VOLUME..........................................................i

TABLE OF CONTENTS ......................................................................... ii

TABLE OF AUTHORITIES ................................................................... iii

ARGUMENT ............................................................................................1

    I.     The Act Does Not Prevent Doctors from Speaking With Patients About Firearms Safety. ............................................................1

    II.    Plaintiffs Lack Standing Because They Have Not Shown an Injury in Fact. ........................................................................................4

    III.   The Act Does Not Contain Any Content-Based Speech Restriction. ...............................................................................6

    IV.   The Court is Obligated to Uphold the Statute Under a Plain Reading..........................................................................10

    V.    The Act is Not Vague...........................................................12

    VI.   The Act is Not Overbroad. ...................................................14

CONCLUSION .......................................................................................15

CERTIFICATE OF SERVICE ...............................................................17

# TABLE OF AUTHORITIES

## CASES

*Accountant's Soc'y of Va. v. Bowman*,
   860 F.2d 602 (4th Cir. 1988) ...............................................................................7

*Bankshoot Billiards, Inc. v. City of Ocala*,
   634 F.3d 1340 (11th Cir. 2011) .........................................................................13

*City of New Orleans v. Dukes*,
   427 U.S. 297 (1976) ..............................................................................................3

*Conant v. Walters*,
   309 F.3d 629 (9th Cir. 2002) .............................................................................10

*Connally v. Gen Constr. Co.*,
   269 U.S. 385 (1926) ............................................................................................13

*Crowell v. Benson*,
   285 U.S. 22 (1932) ..............................................................................................11

*DA Mortgage v. City of Miami Beach*,
   486 F.3d 1254 (11th Cir. 2007) .........................................................................13

*Griggs v. Duke Power Co.*,
   401 U.S. 424 (1971) ............................................................................................14

*Harrell v. The Florida Bar*,
   608 F.3d 1241 (11th Cir. 2010) .........................................................................14

*Hooper v. California*,
   155 U.S. 648 (1895) ............................................................................................11

*In re Code of Judicial Conduct*,
   643 So. 2d 1037 (Fla. 1994)..................................................................................2

*Jacksonville Prop. Rights Ass'n, Inc. v. City of Jacksonville*,
   635 F.3d 1266 (11th Cir. 2011) ...........................................................................5

*Lowe v. SEC*,
    472 U.S. 181 (1985) ......................................................................7

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
    132 S. Ct. 2566 (2012) ........................................................ 10, 11

*PeTA v. Rasmussen*,
    298 F.3d 1198 (10th Cir. 2002) .................................................5

*Planned Parenthood v. Casey*,
    505 U.S. 833 (1992) ......................................................... 6, 7, 8

*Riley v. Nat'l Fed'n of the Blind of N.C.*,
    487 U.S. 781 (1988) ......................................................................7

*Sorrell v. IMS Health Inc.*,
    131 S. Ct 2653 (2011) ............................................................ 9, 10

*This That & The Other Gift & Tobacco Inc. v. Cobb Cnty*,
    285 F.3d 1319 (11th Cir. 2002) ................................................13

*Trammel v. United States*,
    445 U.S. 40 (1980) ......................................................................9

*Wilson v. State Bar of Georgia*,
    132 F.3d 1422 (11th Cir. 1998) ..................................................4

**FLORIDA STATUTES**

Section 790.338(1) ......................................................................11

Section 790.338(2) ..................................................... 1, 3, 11, 12

Section 790.338(4) ........................................................................3

Section 790.338(5) ......................................................................11

Section 790.338(6) ............................................................... 2, 11

**Rules**

Fed. R. App. P. 32(a) ................................................................. i

**Other Authorities**

CS/HB 155, Section 1, *available at*
http://www.myfloridahouse.gov/Sections/Documents/
loaddoc.aspx?FileName=_h0155c1.docx&DocumentType=Bill&BillNumber=0
155&Session=2011 ...........................................................................1, 2

Gary Kleck & Marc Gertz, *Armed Resistance to Crime*, 86 J. Crim. L. &
Criminology 150 (1995) ...........................................................................9

Hearing on HB 155 before the Judiciary Comm. at 41:35 (Apr. 12, 2011) (Rep.
Brodeur), *available at* http://myfloridahouse.gov/Sections/PodCasts/
PodCastArchives.aspx) ...........................................................................6

Lawrence Southwick, Jr., *Guns and Justifiable Homicide: Deterrence and Defense*,
18 St. Louis U. Pub. L. Rev. 217 (1999) ............................................9

Merriam-Webster, http://www.merriam.webster.com/dictionary/relevance...........13

**ARGUMENT**

The Firearm Privacy Act is substantially misconstrued in the Plaintiffs'

brief, which is mostly devoted to attacking the straw man that the Act prohibits

health care practitioners from speaking with their patients about firearms safety.

But the Act does not prohibit Plaintiffs' speech, nor is the Act vague or overbroad.

In fact, the Act *allows* all of the firearms-related preventive care practices that the

plaintiff physicians allege to be concerned about.

> **I.** **The Act Does Not Prevent Doctors from Speaking With Patients About Firearms Safety.**

The text of the Act and the Defendants' construction of the Act contradicts

the Plaintiffs' repeated assertions that the Act prohibits health care practitioners

from speaking with their patients about firearms safety. Section 790.338 (2),

Florida Statutes, states that "health care practitioner[s] . . . *shall respect* a patient's

right to privacy and *should refrain* from . . . asking questions concerning the

ownership of a firearm or ammunition [unless the health care practitioner] in good

faith believes that this information is relevant to the patient's medical care or

safety, or the safety of others."  (Emphasis supplied). The statute nowhere purports

to "prohibit" or "ban" speech. It simply asks health care practitioners to respect

patient privacy and recommends that they refrain from making unnecessary

inquiries about firearms ownership. Notably, an earlier version of the bill *did*

expressly prohibit physicians from asking about firearm ownership. *See* CS/HB

155, Section 1, *available at*

http://www.myfloridahouse.gov/Sections/Documents/loaddoc.aspx?FileName=_

h0155c1.docx&DocumentType=Bill&BillNumber=0155&Session=2011 ("verbal

or written inquiry … regarding the ownership of a firearm … is prohibited"). But

that prohibitive language was removed before the final version of the bill was

passed. Surely, the Legislature knew how to draft a speech prohibition but decided

against it here.

Likewise, the Plaintiffs would have the Court read the Act's "should refrain"

language as a mandatory "shall." Pls. Br. at 23. But there is no evidence that the

Legislature departed from Florida law's common interpretation of this term. *See In

re Code of Judicial Conduct*, 643 So. 2d 1037, 1041 (Fla. 1994) ("When the text

uses 'shall' or 'shall not,' it is intended to impose binding obligations the violation

of which, if proven, can result in disciplinary action. When 'should' or 'should not'

is used, the text is intended as hortatory.").

Also, that violations of the Act subject health care practitioners to discipline

does not discredit the State's interpretation of the Act (Pls. Br. at 24), as the Act

contains professional conduct prohibitions that the State may clearly require—e.g.,

the Act's anti-discrimination and recordkeeping provisions.[1] Even these are very

---

[1] To clarify the Plaintiffs' apparent confusion with the State's interpretation of the
Act's "unnecessary harassment" provision (Pls. Br. at 24-25), the Act does not
*prohibit* "unnecessary harassment," but states that "a health care practitioner . . .

modest prohibitions, as the Act recognizes that physicians may choose their own patients, §790.338(4), Fla. Stat., and permits them to enter information about firearms into patient records as is "relevant to the patient's medical care or safety, or the safety of others." §790.338(1), Fla. Stat.

That the statute does not prohibit speech and may not result in much disciplinary action against health care practitioners for engaging in prohibited conduct is not a reason to hold it invalid, as Plaintiffs and their amici erroneously argue.[2] This Court's mission is not to gauge the Act's wisdom, but only whether it passes constitutional muster. *See City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) ("[T]he judiciary may not sit as a super legislature to judge the wisdom or desirability of legislative policy determinations.").

---

*should refrain* from unnecessarily harassing a patient about firearm ownership during an examination." §790.338(6), Fla. Stat. *See also* State's Br. at 38 (" '[U]nneccessarily harassing' is reasonably clear. When read in the context of the Act as a whole, it communicates that health care providers *should not* disparage nor make access or treatment more difficult for gun-loving patients just because they choose to exercise Second Amendment rights.") (emphasis added).

[2] In its amicus brief, the ACLU, *et al.*, assert that if inquiries about gun ownership almost *always* bear on medical care and safety, it would render the statute a nullity. *See* ACLU Amicus Br. at 7-8. Here, it is the State's position that information gleaned from inquiries about firearms ownership *sometimes*, but not *always*, relates to patient care. The Act accomplishes the State's goals of reminding physicians to take seriously patient Second Amendment and privacy interests and forbidding discrimination.

## II.  Plaintiffs Lack Standing Because They Have Not Shown an Injury in Fact.

Plaintiffs continue to assert that they have standing in this case because the Firearm Privacy Act "chills their speech." Pls. Br. at 18. But, as explained above and in the State's brief, the Act does not prohibit any of the speech in which Plaintiffs assert they would like to engage. That Plaintiffs willingly self-censor their own speech cannot render the Privacy Act "chilling," because there is *no* prospect for the enforcement of their mistaken version of the Act.

This Court has made clear that "if no credible threat of prosecution looms, the chill is insufficient to sustain the burden that Article III imposes. A party's subjective fear that she may be prosecuted for engaging in expressive activity will not be held to constitute an injury for standing purposes unless that fear is objectionably reasonable." *Wilson v. State Bar of Georgia*, 132 F.3d 1422, 1428 (11th Cir. 1998). Here, Plaintiffs have failed to show they have suffered or will suffer an injury. Plaintiffs weakly claim that firearms-related speech is " 'at least arguably' forbidden by law" (Pls. Br. at 19), while conceding that, since the earliest days of this litigation, the Board of Medicine's position is that the Act only "recommends" against inquiries about firearms (Pls. Br. at 9 (*citing* DE 87 ¶14)). Also, the State Defendants have argued consistently that Plaintiffs may inquire about firearms under the plain terms of the Act. Plaintiffs cannot plausibly fear legal repercussions when the Act plainly provides that they may speak to patients

about firearms safety, the Board of Medicine has clarified that the Act's speech-involved provisions are hortatory, and the State Defendants have consistently opposed the Plaintiffs' uber-restrictive interpretation of the Act's speech provisions.[3]

Moreover, the State Defendants are entitled to deference in their position that the Act would not be enforced against the speech that Plaintiffs claim has been "chilled." Not only has the State repeatedly stressed that speech about firearms safety/medical concerns is not actionable, but the agency charged with enforcing the Act has publicly reiterated this position. [DE71:3] Based upon these assurances, the State enjoys a rebuttable presumption that no injury will befall Plaintiffs for asking or advising about firearms safety. *See Jacksonville Prop. Rights Ass'n, Inc. v. City of Jacksonville*, 635 F.3d 1266, 1274 (11th Cir. 2011) ("government actor[s enjoy] a rebuttable presumption that the objectionable behavior with not recur"); *see also PeTA v. Rasmussen*, 298 F.3d 1198, 1203 (10th Cir. 2002) ("PeTA does not have standing to assert its claims for prospective relief, as it does not have a 'good chance of being likewise injured in the future.' "). Put

---

[3] The central theme of the amicus brief submitted by the American Medical Association, *et al*., is that Plaintiff/Appellees have standing because their self-censorship has created an injury in fact. But Amici's brief is grounded in the misconception that the Act "*prevents* physicians from communicating with their patients so as to provide medical care under the accepted standards of the medical profession." AMA Amicus Br. at 9 (emphasis supplied). Because the Act does not prevent any such communication, their arguments should be rejected.

simply, the Court must presume the genuineness of the State Defendants' and Board's assurance that the Act leaves Plaintiffs' asserted interests intact. As a result, Plaintiffs cannot show present or future injury and accordingly lack standing to seek relief.

### III.    The Act Does Not Contain Any Content-Based Speech Restriction.

Plaintiffs wrongly assert that the Firearm Privacy Act amounts to a viewpoint-based "political attack" on speech (Pls. Br. at 45) that is subject to strict scrutiny because it is meant to "stifle" the political agendas of doctors. Pls. Br. at 12-14. The Act does not prohibit speech, much less is it a content-based speech restriction. In fact, the Act's sponsor proclaimed that "everyone should . . . get a firearms lecture." Hearing before the Judiciary Comm. on HB155 at 41:35 (Apr. 12, 2011) (Rep. Brodeur), *available at* http://myfloridahouse.gov/Sections/ PodCasts/PodCastArchives.aspx. Its only real restrictions involve professional conduct that is not subject to strict scrutiny and need not utilize the least restrictive means for achieving the State's legitimate interests.

As noted in the State's motion for summary judgment below and also in the National Rifle Association's amicus brief, the reasonableness review applicable to the Firearm Privacy Act may be compared to that of informed consent requirement of the Pennsylvania Abortion Control Act upheld in *Planned Parenthood v. Casey*, 505 U.S. 833 (1992). Plaintiffs' brief unsuccessfully attempts to evade *Casey* by

highlighting various distinctions that make no difference in this case. The law in *Casey* aimed to inform patients by requiring health care practitioners to provide certain information to patients about abortion. The *Casey* Court determined that government could require "the giving of truthful, non-misleading information about the nature of the procedure, the attendant health risks and those of childbirth, and the 'probable gestational age' of the fetus." 505 U.S. at 882. In sum, the speech rights of health care practitioners were "implicated, but only as part of the practice of medicine, [that is] subject to reasonable licensing and regulation by the State." *Id.* at 884.

Here the Act likewise shapes only the in-practice conduct of health care practitioners for the benefit of patients. It recommends that practitioners refrain from questioning and prohibits the recording of gun-ownership information that is irrelevant to a patient's medical care or safety. As in *Casey*, the Act reaches only speech that is part and parcel of patient treatment; the Act has *no* reach outside the office. *See Lowe v. SEC*, 472 U.S. 181, 232 (1985) (White, J. concurring) (recognizing that professional speech may be regulated); *Accountant's Soc'y of Va. v. Bowman*, 860 F.2d 602, 604 (4th Cir. 1988) (same).[4] Also, the Act merely

---

[4] Even if this Court were to consider the Act content-based, *Casey* would still apply and allow for regulation in the medical practice context presented here. *See, e.g., Riley v. Nat'l Fed'n of the Blind of N.C.*, 487 U.S. 781, 795 (1988) (noting that the speech compulsion in *Casey* amounted to permissible content-based regulation of speech).

*recommends* that physicians refrain from engaging in irrelevant speech about firearms. Thus, the so-called restraint in this case is much less burdensome than the compelled speech upheld in *Casey*.[5]

Further, the Firearm Privacy Act is viewpoint-neutral. The inquiry, recording, and harassment provisions apply equally to a gun-loving doctor who may want to inquire about, or even encourage his patients to purchase firearms for their own safety as they do to doctors who disapprove of gun ownership, believing it detrimental to a patient's health or safety. And the discrimination provision addresses a physician's conduct, not any particular viewpoint a physician may have. Just as the *Casey* Court approved of compelled speech that was not designed to influence a patient's decision in any way, this Court should approve the Firearm Privacy Act's restraints which are also viewpoint neutral.[6]

---

[5] In its amicus brief, the ACLU, *et al*., assert that if physicians are "stopped" from asking questions the State deems to be off limits, then what is to stop the State from passing laws "prohibiting a doctor from asking a patient to contribute to a religious cause, to sign a political petition, or to say for whom he or she cast his or her vote in the prior election." *See* ACLU Amicus Br. at 13. This argument misconceives the Act, however, because the Firearm Privacy Act does not "stop" firearms inquiries of patients. Also, the Act leaves untouched the ability of doctors to promote all manner of favorite causes outside of the treatment room whether or not they have a bearing on patient health care. Here, the Act simply recommends that health care practitioners refrain from in-office professional conduct that has no bearing on patient medical care or safety and may be offensive to some patients.

[6] In its amicus brief, American Public Health Association, *et al.*, assert that guns in the home increase the risk of suicide, homicide, and accidental deaths. On the other

The cases on which Plaintiffs rely are not persuasive. *Trammel v. United States*, 445 U.S. 40 (1980), for example, is a criminal case addressing an exclusionary rule of evidence, specifically whether a defendant's spouse can be called to testify against him. The single reference to the doctor-patient relationship is unrelated dicta and has no bearing on the constitutionality of the Firearm Privacy Act. Although *Sorrell v. IMS Health Inc.*, 131 S. Ct 2653 (2011), actually addresses content-based restrictions, it bears no similarity to the Act at issue here. Vermont's law in that case banned the sale of prescriber-identifying information for the purpose of marketing the information but not for other reasons such as for educational purposes. 131 S. Ct. at 2663. *Sorrell* does not influence this case because first, the Firearm Privacy Act does not place any blanket prohibition on speech, and second, the recommendations in the Act are not confined to any one

---

side of the ledger are studies reporting that guns are an extremely effective means of self-defense. *See e.g.*, Gary Kleck & Marc Gertz, *Armed Resistance to Crime*, 86 J. Crim. L. & Criminology 150, 164 (1995) ("each year in the U.S. there are about 2.2 to 2.5 million [defensive gun uses] by civilians."); Lawerence Southwick, Jr., *Guns and Justifiable Homicide: Deterrence and Defense*, 18 St. Louis U. Pub. L. Rev. 217, 244 (1999) ("there are almost certainly some two to four million fewer completed crimes each year as the result of civilian gun ownership"). There is no dispute that this is a controversial issue and that both advocates and opponents of gun laws hold equally passionate positions. But the Act does not take a position on this issue. It permits health care providers, whatever their view, to ask and counsel patients regarding firearm safety issues, while prohibiting only discrimination and recordkeeping about firearms that is irrelevant to patient care.

discernible group i.e.: marketers. The Act here is neutral and applies exclusively within the provider-patient relationship, and applies equally to health care practitioners, whether they embrace firearm ownership or denounce it.  Finally, *Conant v. Walters*, 309 F.3d 629 (9th Cir. 2002), upheld the enjoinment of a federal law that threatened to revoke a physician's license for recommending medical marijuana to his patients. The law at issue in *Conant* punished a medical doctor for recommending a particular medical treatment when the patient had specifically sought the doctor's treatment advice. 309 F.3d at 632. That law contained no exception, unlike Florida's Act, for a doctor's medical judgment. *Conant* is thus inapposite to the situation here where the Act only *recommends* that providers keep irrelevant personal opinions *not sought by patients* to themselves.

## IV.    The Court is Obligated to Uphold the Statute Under a Plain Reading.

A basic tenant of statutory construction is that courts should construe laws, if possible, in a way that renders them valid, even if another meaning could be inferred. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2593 (2012) ("No court ought, unless the terms of an act rendered it unavoidable, to give construction to it which should involve a violation, however unintentional, of the constitution."). This Court has an obligation to read the statute as it was written as a recommendation that doctors refrain from irrelevant discussions about firearms. No provision of the Act forbids physicians from asking their patients about

firearms. And no provision of the Act restricts a practitioner's ability to provide firearms safety information to patients.

Read plainly, the Act states that practitioners "should refrain" from asking questions or making written inquiries about firearm ownership when they lack a good faith reason to do so. §790.338(2), Fla. Stat. Read plainly, the Act informs practitioners they "should refrain" from unnecessarily harassing a patient about firearm ownership—but only during an examination. §790.338(6), Fla. Stat. Read plainly, the Act's only prohibitions involve intentionally entering irrelevant information into patient medical records and discriminating solely on the basis of firearms ownership. §790.338(1) & (5), Fla. Stat.

For more than a hundred years, the Supreme Court has maintained that "every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *Sebelius*, 132 S. Ct. at 2594 (quoting *Hooper v. California*, 155 U.S. 648, 657 (1895)). "The question is not whether this is the most natural interpretation of the [statute], but only whether it is a 'fairly possible' one." *Id.* (citing *Crowell v. Benson*, 285 U.S. 22, 62 (1932)). Therefore, the Act should not be read to forbid questions regarding firearm ownership or to prohibit imparting related advice. And Plaintiffs invitation to read the Act in such a way that creates constitutional infirmity should be rejected.

## V.     The Act is Not Vague.

Plaintiffs contention that the Act is unconstitutionally vague is unsupported. They first claim the Act is vague because it "does not specify whether practitioners must make a particularized finding of relevance for each patient . . . or whether they may rely on a general belief that such inquiries are always relevant." Pls. Br. at 54. But they fail to recognize that the key to the relevance inquiry is "good faith." *See* §790.338(2), Fla. Stat. By including this modification in the statute, the Legislature enabled physicians to make these inquiries of any or all patients, provided they do so with the belief that the inquiry is relevant to the patient's care. Logically then, if a physician seeks firearms information to suit only a political agenda unrelated to the patient's well-being, he would not be making a "good faith" inquiry, he may be unnecessarily harassing his patient, and he *should refrain* from doing so.

Plaintiffs further allege that they "fear" that the term "relevant" actually means some "higher, unspecified level of 'relevance' " because reading the statute to mean that the inquiry could always be relevant would render it meaningless. Pls. Br. at 54. That is wrong. By drafting the statute with broad strokes, the Legislature provided physicians with the freedom to make inquiries, record information, and even unnecessarily harass patients about firearms, while also suggesting that they not broach these areas in the absence of a good faith belief that

it is relevant to the patient's care. There is no "higher level" of relevance written into the statute. "Relevant" simply means what it says: pertinent or practical—having some applicability to the patient's medical well-being. *See generally* Merriam-Webster, http://www.merriam-webster.com/dictionary/relevance (last visited Nov. 19, 2012). That term is not the least bit obscure or unfamiliar.

The same applies to the terms "unnecessarily," "harassing," and "discriminate." These terms are not unclear or unfamiliar either. And to say that these everyday words are rendered vague for lack of legislative definitions is fallacious. A statute is not vague if it makes "reasonably clear" what conduct is prohibited. *See Bankshoot Billiards, Inc. v. City of Ocala*, 634 F.3d 1340, 1349 (11th Cir. 2011); *DA Mortgage v. City of Miami Beach*, 486 F.3d 1254, 1271 (11th Cir. 2007) ("The traditional test for whether a statute or regulation is void on its face is if it is so vague that 'persons of common intelligence must necessarily guess at its meaning and differ as to its application.' ") (quoting *Connally v. Gen Constr. Co.*, 269 U.S. 385, 391 (1926)). Perfection is not demanded. All that is required is that the language conveys a sufficiently definite warning that can be commonly understood. *See This That & The Other Gift & Tobacco Inc. v. Cobb Cnty*, 285 F.3d 1319, 1325 (11th Cir. 2002).

More importantly, Plaintiffs have not established that the statute is vague as applied to them. *See Harrell v. The Florida Bar*, 608 F.3d 1241, 1254 (11th Cir.

2010) ("In order to substantiate this claimed self-censorship injury, [Plaintiffs] must establish that . . . the rules are at least arguably vague as they apply to [them.]"). Vagueness rules may not be challenged "as they might hypothetically be applied to others." *Id*. Nothing in the statute is vague as applied to Plaintiffs. They clearly may advise and counsel patients in the area of firearms safety.

## VI. The Act is Not Overbroad.

Finally, Plaintiffs have not established that the Act is overbroad. Plaintiffs claim that "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." Pls. Br. at 58. But, as discussed above, the statute's inquiry and recording restraints do not unconstitutionally prohibit any speech. And the anti-discrimination and anti-harassment provisions are indistinguishable from other legitimate anti-discrimination regulation such as the American Disabilities Act and Title VII. Plaintiffs' claim that those Acts were enacted for the purpose of prohibiting conduct, not speech, is unavailing. Under the ADA, an employer is *prohibited* from asking disability-related questions of potential employees. And Title VII *prohibits* questions during job interviews that lack any "business necessity." *See Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971). Both Acts prohibit discrimination on the basis of certain attributes or characteristics. And both Acts place restraints on prospective employers' speech. Plaintiffs have not demonstrated how limiting pre-employment inquiries under the

ADA and Title VII is any different from limiting discrimination based upon firearms ownership when visiting the doctor's office. Indeed, there is no difference.

## CONCLUSION

Based on the foregoing, State Defendants/Appellants respectfully request that the district court's order enjoining the Act be reversed and remanded with instructions that this case be dismissed as non-justiciable; or, if this Court reaches the merits, that the Act be upheld as a constitutional regulation of professional conduct.

Respectfully Submitted,

PAMELA JO BONDI
FLORIDA ATTORNEY GENERAL


/s/ Timothy D. Osterhaus
Timothy D. Osterhaus (FBN 133728
Solicitor General
Timothy.Osterhaus@myfloridalegal.com
Jason Vail (FBN 298824)
Assistant Attorney General
Diane G. DeWolf (FBN 059719)
Rachel E. Nordby (FBN 056606)
Deputy Solicitors General
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399
(850) 414-3300
(850) 410-2672 (fax)
*Counsel for State Appellants*

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that a true copy of the foregoing brief has been delivered to a third-party carrier for express delivery to the Court and furnished by U.S. Mail to the following on November 20, 2012:

Edward M. Mullins
Astigarraga Davis Mullins & Grossman, P.A.
701 Brickell Avenue, 16th Floor
Miami, FL  33131-2847

Augustine Ripa
Douglas Hallward-Driemeier
Bruce S. Manheim, Jr.
Julia Lewis
Ropes & Gray LLP
700 12th Street NW, Suite 900
Washington, DC 20005

Daniel R. Vice
Jonathan E. Lowy
Brady Center
Legal Action Project
1225 Eye Street NW, Suite 1100
Washington, DC 20005

Dennis G. Kainen
Weisberg & Kainen, PLC
1401 Brickell Avenue, Suite 800
Miami, FL 33131-3504

Hal Michael Lucas
Hal M. Lucas, P.A.
701 Brickell Avenue, Suite 1650
Miami, FL  33131

                       /s/  Timothy D. Osterhaus
                       Counsel for State Appellants