

OFFICE OF THE ATTORNEY GENERAL
Timothy D. Osterhaus
Solicitor General

**PAM BONDI**
**ATTORNEY GENERAL**
**STATE OF FLORIDA**

PL-01 The Capitol
Tallahassee, FL 32399-1050
Phone (850) 414-3681   Fax (850) 410-2672

February 15, 2013

Mr. John Ley, Clerk
United States Court of Appeals, Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, GA 30303

      Re:    No. 12-14009, *Wollschlaeger v. Governor, State of Florida.*

Dear Mr. Ley:    FF

      This letter provides supplemental authority pursuant to Appellate Rule 28(j).

      On January 16, 2013, the President of the United States issued a number of Executive Actions related to gun violence. *Gun Violence Reduction Executive Actions*, White House, Office of the Press Secretary, Jan. 16, 2013 (attached hereto). Executive Action 16 on this list provides that the federal government will "[c]larify" the recently passed federal healthcare law that restricts the collection and retention of patient data related to gun ownership, possession, use, and storage. *See* 42 U.S.C. § 300gg-17(c) (attached hereto).

      Executive Action 16 and the President's clarification of federal gun laws relate to this case because the arguments here have focused on the terms and construction of Florida's similar law addressing the ability of health care professionals to ask patients about gun-ownership. Fla. Stat. § 790.338. Similar to the President's effort to "clarify" the intersection between current federal laws and doctors' ability to ask about guns, Florida also interprets its law as not restricting doctors from asking or counseling about firearms safety. *See* State Appellants' Br. at 15-25; Reply at 1-6.

      Executive Action 16 and current federal law also show starkly the difference between the terms of a law that actually restricts collection and retention of patients' gun-owning data and a law that only recommends that health providers "should refrain" from irrelevant questioning in this area. *Compare* 42 U.S.C. § 300gg-17(c) *with* Fla. Stat. § 790.338. Whereas Appellees' contend that Florida law prevents doctors from "inquiring about firearms as a routine matter of preventive medicine [and of] gathering patient information and providing appropriate safety counseling" (Appellees' Br. at 9), the plain

language (and State Appellants' own interpretation) of state law is that doctors may indeed ask and counsel patients about routine firearms safety-related matters. The federal law, on the other hand, explicitly restricts collection and retention of information regarding patients' ownership, possession, use, and storage of firearms and ammunition.

Respectfully Submitted,

Timothy D. Osterhaus (FBN 133728)
Solicitor General
*Timothy.Osterhaus@myfloridalegal.com*
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399
(850) 414-3681; (850) 410-2672 (fax)
*Counsel for State Appellants*

cc:

Edward M. Mullins
Hal M. Lucas
Astigarraga Davis Mullins & Grossman, P.A.
701 Brickell Avenue, 16th Floor
Miami, FL 33131-2847

Douglas Hallward-Driemeier
Bruce S. Manheim, Jr.
Mariel Goetz
Elizabeth N. Dewar
Ropes & Gray LLP
700 12th Street NW, Suite 900
Washington, DC 20005

Daniel R. Vice
Jonathan E. Lowy
Brady Center
Legal Action Project
1225 Eye Street NW, Suite 1100
Washington, DC 20005

THE WHITE HOUSE
Office of the Press Secretary

EMBARGOED UNTIL THE START OF THE PRESIDENT'S REMARKS
January 16, 2013

## Gun Violence Reduction Executive Actions

Today, the President is announcing that he and the Administration will:

1. Issue a Presidential Memorandum to require federal agencies to make relevant data available to the federal background check system.
2. Address unnecessary legal barriers, particularly relating to the Health Insurance Portability and Accountability Act, that may prevent states from making information available to the background check system.
3. Improve incentives for states to share information with the background check system.
4. Direct the Attorney General to review categories of individuals prohibited from having a gun to make sure dangerous people are not slipping through the cracks.
5. Propose rulemaking to give law enforcement the ability to run a full background check on an individual before returning a seized gun.
6. Publish a letter from ATF to federally licensed gun dealers providing guidance on how to run background checks for private sellers.
7. Launch a national safe and responsible gun ownership campaign.
8. Review safety standards for gun locks and gun safes (Consumer Product Safety Commission).
9. Issue a Presidential Memorandum to require federal law enforcement to trace guns recovered in criminal investigations.
10. Release a DOJ report analyzing information on lost and stolen guns and make it widely available to law enforcement.
11. Nominate an ATF director.
12. Provide law enforcement, first responders, and school officials with proper training for active shooter situations.
13. Maximize enforcement efforts to prevent gun violence and prosecute gun crime.
14. Issue a Presidential Memorandum directing the Centers for Disease Control to research the causes and prevention of gun violence.
15. Direct the Attorney General to issue a report on the availability and most effective use of new gun safety technologies and challenge the private sector to develop innovative technologies.
16. Clarify that the Affordable Care Act does not prohibit doctors asking their patients about guns in their homes.
17. Release a letter to health care providers clarifying that no federal law prohibits them from reporting threats of violence to law enforcement authorities.
18. Provide incentives for schools to hire school resource officers.

# NOW IS THE TIME

## GUN VIOLENCE REDUCTION EXECUTIVE ACTIONS



THE WHITE HOUSE
WASHINGTON

**PRESIDENT OBAMA IS NOT WAITING TO TAKE ACTON. ON JANUARY 26, 2013, HE ANNOUNCED 23 EXECUTIVE ACTIONS TO REDUCE GUN VIOLENCE THAT WILL:**

1. Issue a Presidential Memorandum to require federal agencies to make relevant data available to the federal background check system.
2. Address unnecessary legal barriers, particularly relating to the Health Insurance Portability and Accountability Act, that may prevent states from making information available to the background check system.
3. Improve incentives for states to share information with the background check system.
4. Direct the Attorney General to review categories of individuals prohibited from having a gun to make sure dangerous people are not slipping through the cracks.
5. Propose rulemaking to give law enforcement the ability to run a full background check on an individual before returning a seized gun.
6. Publish a letter from ATF to federally licensed gun dealers providing guidance on how to run background checks for private sellers.
7. Launch a national safe and responsible gun ownership campaign.
8. Review safety standards for gun locks and gun safes (Consumer Product Safety Commission).
9. Issue a Presidential Memorandum to require federal law enforcement to trace guns recovered in criminal investigations.
10. Release a DOJ report analyzing information on lost and stolen guns and make it widely available to law enforcement.
11. Nominate an ATF director.
12. Provide law enforcement, first responders, and school officials with proper training for active shooter situations.
13. Maximize enforcement efforts to prevent gun violence and prosecute gun crime.
14. Issue a Presidential Memorandum directing the Centers for Disease Control to research the causes and prevention of gun violence.
15. Direct the Attorney General to issue a report on the availability and most effective use of new gun safety technologies and challenge the private sector to develop innovative technologies.
16. Clarify that the Affordable Care Act does not prohibit doctors asking their patients about guns in their homes.
17. Release a letter to health care providers clarifying that no federal law prohibits them from reporting threats of violence to law enforcement authorities.
18. Provide incentives for schools to hire school resource officers.
19. Develop model emergency response plans for schools, houses of worship and institutions of higher education.
20. Release a letter to state health officials clarifying the scope of mental health services that Medicaid plans must cover.
21. Finalize regulations clarifying essential health benefits and parity requirements within ACA exchanges.
22. Commit to finalizing mental health parity regulations.
23. Launch a national dialogue led by Secretaries Sebelius and Duncan on mental health.

**LEARN MORE AT WHITEHOUSE.GOV/NOW-IS-THE-TIME**

# TITLE 42 - THE PUBLIC HEALTH AND WELFARE
## CHAPTER 6A - PUBLIC HEALTH SERVICE
### SUBCHAPTER XXV - REQUIREMENTS RELATING TO HEALTH INSURANCE COVERAGE
#### Part A - Individual and Group Market Reforms
##### subpart ii - improving coverage

### § 300gg–17. Ensuring the quality of care

(a) **Quality reporting**

(1) **In general**

Not later than 2 years after March 23, 2010, the Secretary, in consultation with experts in health care quality and stakeholders, shall develop reporting requirements for use by a group health plan, and a health insurance issuer offering group or individual health insurance coverage, with respect to plan or coverage benefits and health care provider reimbursement structures that—

(A) improve health outcomes through the implementation of activities such as quality reporting, effective case management, care coordination, chronic disease management, and medication and care compliance initiatives, including through the use of the medical homes model as defined for purposes of section 3602 [1] of the Patient Protection and Affordable Care Act, for treatment or services under the plan or coverage;

(B) implement activities to prevent hospital readmissions through a comprehensive program for hospital discharge that includes patient-centered education and counseling, comprehensive discharge planning, and post discharge reinforcement by an appropriate health care professional;

(C) implement activities to improve patient safety and reduce medical errors through the appropriate use of best clinical practices, evidence based medicine, and health information technology under the plan or coverage; and

(D) implement wellness and health promotion activities.

(2) **Reporting requirements**

(A) **In general**

A group health plan and a health insurance issuer offering group or individual health insurance coverage shall annually submit to the Secretary, and to enrollees under the plan or coverage, a report on whether the benefits under the plan or coverage satisfy the elements described in subparagraphs (A) through (D) of paragraph (1).

(B) **Timing of reports**

A report under subparagraph (A) shall be made available to an enrollee under the plan or coverage during each open enrollment period.

(C) **Availability of reports**

The Secretary shall make reports submitted under subparagraph (A) available to the public through an Internet website.

(D) **Penalties**

In developing the reporting requirements under paragraph (1), the Secretary may develop and impose appropriate penalties for non-compliance with such requirements.

(E) **Exceptions**

In developing the reporting requirements under paragraph (1), the Secretary may provide for exceptions to such requirements for group health plans and health insurance issuers that substantially meet the goals of this section.

**(b) Wellness and prevention programs**

For purposes of subsection (a)(1)(D), wellness and health promotion activities may include personalized wellness and prevention services, which are coordinated, maintained or delivered by a health care provider, a wellness and prevention plan manager, or a health, wellness or prevention services organization that conducts health risk assessments or offers ongoing face-to-face, telephonic or web-based intervention efforts for each of the program's participants, and which may include the following wellness and prevention efforts:

(1) Smoking cessation.

(2) Weight management.

(3) Stress management.

(4) Physical fitness.

(5) Nutrition.

(6) Heart disease prevention.

(7) Healthy lifestyle support.

(8) Diabetes prevention.

**(c) Protection of Second Amendment gun rights**

**(1) Wellness and prevention programs**

A wellness and health promotion activity implemented under subsection (a)(1)(D) may not require the disclosure or collection of any information relating to—

(A) the presence or storage of a lawfully-possessed firearm or ammunition in the residence or on the property of an individual; or

(B) the lawful use, possession, or storage of a firearm or ammunition by an individual.

**(2) Limitation on data collection**

None of the authorities provided to the Secretary under the Patient Protection and Affordable Care Act or an amendment made by that Act shall be construed to authorize or may be used for the collection of any information relating to—

(A) the lawful ownership or possession of a firearm or ammunition;

(B) the lawful use of a firearm or ammunition; or

(C) the lawful storage of a firearm or ammunition.

**(3) Limitation on databases or data banks**

None of the authorities provided to the Secretary under the Patient Protection and Affordable Care Act or an amendment made by that Act shall be construed to authorize or may be used to maintain records of individual ownership or possession of a firearm or ammunition.

**(4) Limitation on determination of premium rates or eligibility for health insurance**

A premium rate may not be increased, health insurance coverage may not be denied, and a discount, rebate, or reward offered for participation in a wellness program may not be reduced or withheld under any health benefit plan issued pursuant to or in accordance with the Patient Protection and Affordable Care Act or an amendment made by that Act on the basis of, or on reliance upon—

(A) the lawful ownership or possession of a firearm or ammunition; or

(B) the lawful use or storage of a firearm or ammunition.

**(5) Limitation on data collection requirements for individuals**

No individual shall be required to disclose any information under any data collection activity authorized under the Patient Protection and Affordable Care Act or an amendment made by that Act relating to—

(A) the lawful ownership or possession of a firearm or ammunition; or

    **(B)** the lawful use, possession, or storage of a firearm or ammunition.

**(d) Regulations**

Not later than 2 years after March 23, 2010, the Secretary shall promulgate regulations that provide criteria for determining whether a reimbursement structure is described in subsection (a).

**(e) Study and report**

Not later than 180 days after the date on which regulations are promulgated under subsection (c),[2] the Government Accountability Office shall review such regulations and conduct a study and submit to the Committee on Health, Education, Labor, and Pensions of the Senate and the Committee on Energy and Commerce of the House of Representatives a report regarding the impact the activities under this section have had on the quality and cost of health care.

*Footnotes*

[1] See References in Text note below.

[2] So in original. Probably should be "subsection (d),".

(July 1, 1944, ch. 373, title XXVII, § 2717, as added and amended Pub. L. 111–148, title I, § 1001(5), title X, § 10101(e), Mar. 23, 2010, 124 Stat. 135, 884.)

### References in Text

Section 3602 of the Patient Protection and Affordable Care Act, referred to in subsec. (a)(1)(A), is section 3602 of Pub. L. 111–148 which is set out as a note under section 1305w–21 of this title but the reference probably should be to section 3502 of the Act which is set out as a note under section 256a–1 of this title.

The Patient Protection and Affordable Care Act, referred to in subsec. (c), is Pub. L. 111–148, Mar. 23, 2010, 124 Stat. 119. For complete classification of this Act to the Code, see Short Title note set out under section 18001 of this title and Tables.

### Amendments

2010—Subsecs. (c) to (e). Pub. L. 111–148, § 10101(e), added subsec. (c) and redesignated former subsecs. (c) and (d) as (d) and (e), respectively.

### Effective Date

Section effective for plan years beginning on or after the date that is 6 months after Mar. 23, 2010, see section 1004 of Pub. L. 111–148, set out as a note under section 300gg–11 of this title.