*In The*

# United States Court of Appeals
### For The Eleventh Circuit

## DR. BERND WOLLSCHLAEGER, *et al.*,

*Petitioners*,

**versus**

## GOVERNOR OF THE STATE OF FLORIDA, *et al.*,

*Respondents.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

_____

## BRIEF OF *AMICUS CURIAE* INSTITUTE FOR JUSTICE IN SUPPORT OF THE PETITION FOR REHEARING *EN BANC*

_____

Paul M. Sherman
Robert J. McNamara
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, Virginia 22203-1854
(703) 682-9320

*Counsel for Amicus Curiae Institute for Justice*

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

DR. BERND WOLLSCHLAEGER, et al.
     Petitioners,

v.                                 Record No. 12-14009-FF

GOVERNOR OF THE STATE OF FLORIDA, et al.
     Respondents.

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## CIVIL ACTION NO. 1:11-cv-22026-MGC

---

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

---

The undersigned counsel certifies that in addition to the persons and entities identified in the Petition for Rehearing *En Banc*, the following persons may have an interest in the outcome of this case:

Paul M. Sherman

Robert J. McNamara

*Counsel for Amicus Curiae Institute for Justice*

Amicus Curiae Institute for Justice are not subsidiaries or affiliates of a publicly owned corporation, and no publicly owned corporation, not a party to the litigation, has a financial interest in the outcome of this case.

Dated this 18th day of August, 2014.

Respectfully submitted,

/s/ Paul M. Sherman

**INSTITUTE FOR JUSTICE**
Paul M. Sherman (DC Bar No. 978663)
Robert J. McNamara (VA Bar No. 73208)
901 North Glebe Road, Suite 900
Arlington, VA 22203-1854
Tel: (703) 682-9320
Fax: (703) 682-9321
Email: psherman@ij.org, rmcnamara@ij.org
*Attorneys for Amicus Curiae*

# RULE 35 CERTIFICATION

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decision of the Supreme Court of the United States and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court: *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010).

---

ATTORNEY OF RECORD FOR AMICUS CURIAE INSTITUTE FOR JUSTICE

---

/s/ Paul M. Sherman
**INSTITUTE FOR JUSTICE**
Paul M. Sherman (DC Bar No. 978663)
Robert J. McNamara (VA Bar No. 73208)
901 North Glebe Road, Suite 900
Arlington, VA 22203-1854
Tel: (703) 682-9320
Fax: (703) 682-9321
Email: psherman@ij.org, rmcnamara@ij.org
*Attorneys for Amicus Curiae*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND

CORPORATE DISCLOSURE STATEMENT ...............................................C1 of 2

RULE 35 CERTIFICATION .......................................................................i

TABLE OF CONTENTS ...........................................................................ii

TABLE OF AUTHORITIES ....................................................................iii

STATEMENT OF THE ISSUES..................................................................1

STATEMENT OF FACTS .........................................................................1

ARGUMENT AND AUTHORITIES.............................................................2

    I.    The Distinction Between "Speech" and "Conduct" Is Governed by the U.S. Supreme Court's Decision in *Holder v. Humanitarian Law Project*....................................................................2

    II.   The Panel Adopted a Rule That Irreconcilably Conflicts with *Humanitarian Law Project* and Other Supreme Court Precedent ........8

CONCLUSION ....................................................................................14

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Pages(s)**

**CASES**

*Ashcroft v. Free Speech Coal.*,
  535 U.S. 234, 122 S. Ct. 1389 (2002) ..........................................................13

*Brown v. Entm't Merchs. Ass'n* ,
  564 U.S. ___, 131 S. Ct. 2729 (2011) ..........................................................11

*Edenfield v. Fane*,
  507 U.S. 761, 113 S. Ct. 1792 (1993) ..........................................................10

*\*Holder v. Humanitarian Law Project*,
  561 U.S. 1, 130 S. Ct. 2705 (2010) ........................................................*passim*

*Lowe v. SEC*,
  472 U.S. 181, 105 S. Ct. 2557 (1985) ............................................................9

*McCullen v. Coakley*,
  134 S. Ct. 2518 (2014) ...................................................................................5

*Ohralik v. Ohio State Bar Association*,
  436 U.S. 447, 98 S. Ct. 1912 (1978) .........................................................9, 10

*Pickup v. Brown*,
  740 F.3d 1208 (9th Cir. 2014), *vacating and amending*
  728 F.3d 1042 (9th Cir. 2013) ....................................................................7, 8

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
  487 U.S. 781, 108 S. Ct. 2667 (1988) ......................................................9, 10

*Texas v. Johnson*,
  491 U.S. 397, 109 S. Ct. 2533 (1989) ..........................................................13

*\*Denotes Authorities Upon Which We Chiefly Rely*

*United States v. Alvarez*,
    567 U.S. ___, 132 S. Ct. 2537 (2012) ........................................................12

*United States v. O'Brien*,
    391 U.S. 367 (1968) ......................................................................................4

*United States v. Playboy Entm't Grp., Inc.*,
    529 U.S. 803, 120 S. Ct. 1878 (2000) .................................................... 4-5

*United States v. Stevens*,
    559 U.S. 460, 130 S. Ct. 1577 (2010) .................................................11, 12

*Wollschlaeger v. Governor of Fla.*,
    No. 12-14009 (July 25, 2014).................................................................*passim*

## CONSTITUTIONAL PROVISION

U.S. Const. amend. I........................................................................................*passim*

## STATUTES

Fla. Stat. § 381.026 ..........................................................................................2

Fla. Stat. § 456.072 ..........................................................................................2

Fla. Stat. § 790.338 ..........................................................................................2

Fla. Stat. § 790.338(2) ......................................................................................6

## RULES

Fed. R. App. P. 35(b)(1)(A) .........................................................................2, 14

11th Cir. R. 35-3 ...........................................................................................2, 14

## STATEMENT OF THE ISSUES

The petitioners' request for rehearing en banc raises a straightforward question: For purposes of First Amendment analysis, when do statutes qualify as restrictions on "speech" rather than restrictions merely on "conduct"? In *Holder v. Humanitarian Law Project*, the Supreme Court provided the test for resolving this question, specifically holding that a statute restricts speech, not conduct, when "the conduct triggering coverage under the statute consists of communicating a message." 561 U.S. 1, 28, 130 S. Ct. 2705, 2724 (2010). The panel's majority opinion, however, entirely ignores *Humanitarian Law Project*,[1] and this case merits rehearing en banc in order for the full Court to clarify what is (and is not) "speech" protected by the First Amendment.

## STATEMENT OF FACTS

As the petitioners do, *amicus* adopts Judge Wilson's statement of facts. *Wollschlaeger v. Governor of Fla.*, No. 12-14009, slip op. at 66-79 (July 25, 2014) (Wilson, J., dissenting).

---

[1] Judge Wilson, in dissent, notes the significance of *Humanitarian Law Project*, *see Wollschlaeger v. Governor of Fla.*, No. 12-14009, slip op. at 92, 108-09 n.16 (11th Cir. July 25, 2014) (Wilson, J., dissenting), but the opinion is never cited by the majority.

## ARGUMENT AND AUTHORITIES

The majority's opinion hinges on whether Florida's Firearms Owners Privacy Act[2] should be analyzed as a restriction on "speech" subject to First Amendment scrutiny or merely a restriction on "conduct" subject to less rigorous review. *Wollschlaeger v. Governor of Fla.*, No. 12-14009, slip op. at 4 (July 25, 2014) (finding the Act a "legitimate regulation of professional conduct"). In analyzing that question, however, the majority makes no reference to the Supreme Court's decisions governing the distinction between "speech" and "conduct," and, as a direct result of this omission, creates a new doctrine in which any communication between a licensed professional and his client is outside the protection of the First Amendment. *See id.* at 52-54 (finding no "bright line" between "treatment" and protected speech). Because this new rule conflicts with on-point Supreme Court precedent, the panel's decision should be vacated and this case should be reheard by the full Court. *See* Fed. R. App. P. 35(b)(1)(A), 11th Cir. R. 35-3.

## I. The Distinction Between "Speech" and "Conduct" Is Governed by the U.S. Supreme Court's Decision in *Holder v. Humanitarian Law Project*.

The core question in this case is straightforward: Is a restriction on doctors' direct communication with their patients a restriction on free speech subject to

---

[2] 2011 Fla. Laws 112 (codified at Fla. Stat. §§ 381.026, 456.072, 790.338).

heightened scrutiny, or is it simply a restriction on medical treatment subject to rational-basis review? Under binding precedent from the U.S. Supreme Court, the answer to that question is clear: When a restriction on a doctor's activities hinges entirely on whether that doctor engages in speech of a particular content, that is a restriction on speech subject to First Amendment scrutiny.

The controlling case is *Holder v. Humanitarian Law Project*, which is the U.S. Supreme Court's most recent and most authoritative pronouncement on the distinction between speech and conduct and the standards of review that apply to restrictions on both. In that case, the Supreme Court considered the constitutionality of a federal law that prohibited anyone from providing "material support" to designated foreign terrorists in the form of (among other things) "training" or "expert advice or assistance." 561 U.S. at 8-9, 130 S. Ct. at 2712-13. The plaintiffs included "two U.S. citizens and six domestic organizations" that wished to provide "train[ing] [to] members of [the Kurdistan Workers' Party (PKK)] on how to use humanitarian and international law to peacefully resolve disputes" and to "teach[] PKK members how to petition various representative bodies such as the United Nations for relief." *Id.* at 10, 14-15, 130 S. Ct. at 2713, 2716. They wanted, in other words, to give "material support" solely by communicating individualized advice. *See id.*

Just as in this case, the parties in *Humanitarian Law Project* disagreed on whether the law at issue regulated speech or conduct. The plaintiffs argued that, as applied to their activities, the material-support prohibition was a restriction on "pure political speech" subject to strict scrutiny. *Id.* at 25, 130 S. Ct. at 2722. The government, by contrast, argued that "material support," even when it took the form of speech, was a form of conduct, and that restrictions on that conduct were subject to only intermediate scrutiny. *Id.* at 26-27, 130 S. Ct. at 2723.[3]

The Supreme Court ultimately rejected both sides' characterizations of the speech before it but still held that the law operated as a content-based restriction on speech subject to strict scrutiny. *See id.* at 28, 130 S. Ct. at 2724. This holding is notable for two reasons. First, although the Court categorically rejected the idea that the government had banned the plaintiffs' "pure political speech," it nevertheless held that strict scrutiny was the applicable standard of review. *See id.* at 25, 28, 130 S. Ct. at 2723-24. Simply put, it was irrelevant that the plaintiffs' speech was not "pure political speech" because all content-based restrictions on speech are subject to strict scrutiny. *See id.*; *accord United States v. Playboy*

---

[3] In contrast with the panel's opinion in this case, the government in *Humanitarian Law Project* did not argue that this fact eliminated *all* First Amendment scrutiny. *See* 561 U.S. at 26-27, 130 S. Ct. at 2723. Instead, the government argued only that the material-support statute was subject to intermediate scrutiny under *United States v. O'Brien*, 391 U.S. 367, 376–77 (1968). *See id.*; *cf. Wollschlaeger*, slip op. at 92 (Wilson, J., dissenting) (arguing that, at a minimum, intermediate scrutiny should apply to Florida's Firearms Owners Privacy Act).

*Entm't Grp.*, *Inc.*, 529 U.S. 803, 812-13, 120 S. Ct. 1878, 1885-86 (2000).[4]

Second, the Court's opinion lays out a clear test for distinguishing speech from conduct. Most importantly, and in sharp conflict with the panel's opinion, this test does not turn on some metaphysical distinction between "speech" and "conduct." Instead, the test looks at whether the applicability of a law turns on what a speaker wishes to say:

> [The material-support prohibition] regulates speech on the basis of its content. Plaintiffs want to speak to [designated terrorist organizations], and whether they may do so under [the law] depends on what they say. If plaintiffs' speech to those groups imparts a "specific skill" or communicates advice derived from "specialized knowledge"—for example, training on the use of international law or advice on petitioning the United Nations—then it is barred. On the other hand, plaintiffs' speech is not barred if it imparts only general or unspecialized knowledge.

*Humanitarian Law Project*, 561 U.S. at 27, 130 S. Ct. at 2723-24 (citations omitted).

The Court also rejected the notion that the material-support prohibition could escape strict scrutiny because it "*generally* function[ed] as a regulation of

---

[4] Although the Court did not use the phrase "strict scrutiny" to describe the standard of review it applied in *Humanitarian Law Project*—referring to it merely as a "more demanding" standard than intermediate scrutiny, 561 U.S. at 28, 130 S. Ct. at 2724—the Court has subsequently clarified that the standard it applied in *Humanitarian Law Project* was strict scrutiny. *See McCullen v. Coakley*, 134 S. Ct. 2518, 2530 (2014).

conduct." *Id.* at 27-28, 130 S. Ct. at 2724 (emphasis in original). As the Court observed, even when a law "may be described as directed at conduct," strict scrutiny is still appropriate when, "as applied to plaintiffs the conduct triggering coverage under the statute consists of communicating a message." *Id.* at 28, 130 S. Ct. at 2724.

This analysis is directly applicable to the claims in this case. The plaintiffs in this case want to talk to their patients, and "whether they may do so . . . depends on what they say." *Id.* at 27, 130 S. Ct. at 2723-24. If a doctor wants to ask a patient whether the patient smokes—either because the doctor wants to inveigh against the perceived evils of smoking or because the doctor, a fellow smoker, wants to build rapport with the patient—that question is perfectly legal. If a doctor wants to ask a patient whether the patient owns firearms—either because the doctor wants to inveigh against the perceived evils of gun ownership or because the doctor, a fellow gun enthusiast, wants to build rapport with the patient—he is forbidden from doing so unless the question is "relevant to the patient's medical care or safety, or the safety of others." Fla. Stat. § 790.338(2) (2014). Under the clear rule of *Humanitarian Law Project*, Florida's law is triggered by speech and is therefore a content-based restriction on speech subject to strict scrutiny. *Wollschlaeger*, slip op. at 102, 108-09 n.16 (Wilson, J., dissenting) (noting the relevance of *Humanitarian Law Project* on this point).

The relevance of *Humanitarian Law Project* to this speech/conduct inquiry is further supported by the Ninth Circuit's recent decision in *Pickup v. Brown*, 740 F.3d 1208 (9th Cir. 2014), *vacating and amending* 728 F.3d 1042 (9th Cir. 2013), which involved a constitutional challenge to a California law that forbade licensed mental-health professionals from engaging in therapeutic practices—including talk therapy—designed to change a minor's sexual orientation (so-called "sexual orientation change efforts," or SOCE). *See Pickup*, 740 F.3d at 1221. *Pickup* is notable, first, because the original panel opinion in *Pickup*—like the panel in the present case—failed to consider *Humanitarian Law Project* when it determined that SOCE were conduct, not speech. *See Pickup*, 728 F.3d at 1051-57. Following a petition for rehearing en banc, the *Pickup* panel vacated its original opinion and issued an amended opinion that specifically addressed *Humanitarian Law Project*. *Compare Pickup*, 740 F.3d at 1229-30, *with Pickup*, 728 F.3d at 1051-57.

*Pickup* is also notable because of the dispute between the panel and three other Ninth Circuit judges—who dissented from denial of rehearing en banc—about the way *Humanitarian Law Project* applied in that case. The *Pickup* panel recognized the importance of *Humanitarian Law Project* to the speech/conduct distinction, but simply concluded that SOCE fell on the "conduct" side of that divide because it is a direct form of therapeutic treatment. *See* 740 F.3d at 1229-30. This drew a sharp dissent from Judge O'Scannlain, who, writing for himself and

two other judges, adopted precisely the interpretation of *Humanitarian Law Project* that amici has laid out above and concluded that a regulation of talk therapy on specific subjects was plainly a content-based regulation of speech. *See id.* at 1216-18 (O'Scannlain, J., dissenting from denial of rehearing en banc). Neither side disagreed, however, that a law prohibiting mental-health professionals from merely *discussing* SOCE with their patients—as Florida law prohibits doctors from entering into discussions about gun ownership with theirs—would be a content-based restriction on speech. *See id.* at 1230 (amended panel opinion) (holding *Humanitarian Law Project* inapplicable because, under California law, "[t]he *only* thing that a licensed professional cannot do is avoid professional discipline for *practicing* SOCE on a minor patient").

Unlike the panel or the dissent in *Pickup*, the panel majority here failed to so much as cite *Humanitarian Law Project*, let alone distinguish its holding. As explained in the following section, this led the panel to adopt a rule that casts physician-patient speech entirely outside the scope of the First Amendment, in conflict with *Humanitarian Law Project* and a host of other Supreme Court precedent.

## II.    The Panel Adopted a Rule That Irreconcilably Conflicts with *Humanitarian Law Project* and Other Supreme Court Precedent.

Rather than follow *Humanitarian Law Project*, under which Florida's Firearms Owners Privacy Act is plainly a content-based restriction on speech, the

panel below instead carved out a new rule, drawn from Justice White's non-controlling concurrence in *Lowe v. SEC*, 472 U.S. 181, 211-36, 105 S. Ct. 2557, 2573-86 (1985) (White, J., concurring), under which a professional's speech loses all First Amendment protection whenever there is a "personal nexus" between the professional and a client. *See Wollschlaeger*, slip op. at 38-41. But that sweeping rule cannot be squared with Supreme Court precedent.

As an initial matter, the categorical rule advocated by Justice White in *Lowe* has never been adopted by the Supreme Court. On the contrary, in the three decades since Justice White articulated his personal-nexus test, it has never been approvingly cited by even a single member of the Court. Over the same time period—and even before—the Court has consistently adopted rules that directly conflict with Justice White's personal-nexus test. *Humanitarian Law Project* is the most recent example, but it is far from the only one.

Just three years after Justice White failed to command a majority in *Lowe*, the Supreme Court rejected the proposition that occupational licensure is "devoid of all First Amendment implication" or "subject only to rationality review." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 801 n.13, 108 S. Ct. 2667, 2680 n.13 (1988). Indeed, the Court has evinced extreme concern for the First Amendment rights of licensed professionals even in cases in which it ultimately upheld restrictions on their speech. In *Ohralik v. Ohio State Bar Association*, for

example, the Supreme Court had to determine whether a lawyer's in-person solicitation of a client was the equivalent of general advertising (and thus protected by the First Amendment) or a contractual offer (and thus part of a business transaction). 436 U.S. 447, 454-57, 98 S. Ct. 1912, 1917-19 (1978). The Supreme Court did not declare that the speech at issue was outside the First Amendment because, *ipso facto*, it was speech on a topic covered by law licensing. *See id.* Rather, after concluding that the speech was primarily a business transaction, the Court expressly noted that this fact "does not remove the speech from the protection of the First Amendment," but merely "lowers the level of appropriate judicial scrutiny." *Id.* at 456-57, 98 S. Ct. at 1918-19. The Court then carefully reviewed the history of restrictions on in-person solicitation by lawyers and evidence of the dangers of direct selling before concluding that in-person legal solicitation could permissibly be banned. *See id.* at 460-68, 98 S. Ct. at 1920-25. Notably, the Court later refused to extend this holding to solicitation by accountants because the factual record did not support doing so. *See Edenfield v. Fane*, 507 U.S. 761, 770-73, 113 S. Ct. 1792, 1800-02 (1993).

These cases—*Humanitarian Law Project*, *Riley*, *Ohralik*, and *Edenfield*—are fatal to Justice White's sweeping personal-nexus rule, yet the panel below adopted that rule without so much as mentioning these decisions.

But the conflict with Supreme Court precedent does not end there: By recognizing a new categorical exception to the First Amendment for professional speech, the panel's opinion also flies in the face of the Supreme Court's recent holding in *United States v. Stevens*, 559 U.S. 460, 130 S. Ct. 1577 (2010). That case involved a federal law criminalizing the sale or possession of depictions of unlawful animal cruelty. *See id.* at 464-65, 130 S. Ct. at 1582-83. The government defended the law by arguing that depictions of unlawful animal cruelty are analogous to child pornography and should be similarly outside the protections of the First Amendment. *See id.* at 467-69, 130 S. Ct. at 1583-85. The Supreme Court rejected this argument, outlining a specific procedure that federal courts must follow in identifying categories of speech that are outside the normal bounds of the First Amendment. *See id.* at 470-72, 130 S. Ct. at 1585-86. As the Court explained, federal courts do not simply have a "freewheeling authority to declare new categories of speech outside the scope of the First Amendment" on the basis of "an ad hoc balancing of relative social costs and benefits." *Id.* at 470, 472, 130 S. Ct. at 1585-86. Instead, the appropriate inquiry is whether the given category of speech has *historically* been treated as unprotected. *See id.* at 471, 130 S. Ct. at 1586. This holding—which, again, is not discussed by the majority opinion—flatly prohibits the creation of *new* categorical exceptions to the First Amendment. *Accord Brown v. Entm't Merchs. Ass'n* , 564 U.S. ___, ___, 131 S. Ct. 2729, 2734 (2011) ("[N]ew

categories of unprotected speech may not be added to the list by a legislature that concludes certain speech is too harmful to be tolerated."); *see also Wollschlaeger*, slip op. at 81 (Wilson, J., dissenting) (observing that *Stevens* warns against new exceptions to the First Amendment).

The panel's primary response to the argument that it has created a new category of unprotected speech is to claim that outlawing a doctor's questions about gun ownership is no different than outlawing medical malpractice. *See Wollschlaeger*, slip op. at 54 n.17. But this argument merely underscores the sweeping nature of the panel's ruling. It is true, of course, that doctors and other professionals may be held liable for giving bad advice that causes their clients harm. But the mere fact that speech may be punished when it causes harm is different from saying speech is categorically unprotected. This is made clear by the Supreme Court's decision in *United States v. Alvarez*, 567 U.S. ___, ___, 132 S. Ct. 2537, 2543 (2012) (plurality opinion), invalidating the Stolen Valor Act, which categorically prohibited false claims of having been awarded military decorations. Writing for the plurality, Justice Kennedy acknowledged that "there are instances in which the falsity of speech bears upon whether it is protected," but nonetheless refused to accept a rule that would allow the government to categorically prohibit false speech in the absence of some "legally cognizable harm." *Id.* at ___, 132 S. Ct. at 2545-47; *accord id.* at ___, 132 S. Ct. at 2554 (Breyer, J., concurring)

(noting that prohibitions on false speech "tend to . . . limit the scope of their application" to situations in which harm actually occurs or is likely to occur).

It is evident that Florida's law is not limited to regulating speech in situations where it is likely to cause harm. To be sure, some patients may find questions about firearm ownership annoying or intrusive, but under the First Amendment that is not a "harm" that the government is empowered to remedy. *See Texas v. Johnson*, 491 U.S. 397, 414, 109 S. Ct. 2533, 2545 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."). And, in any event, there are surely other patients who would not be offended by these questions. Some patients may want to discuss firearm-safety tips with their physician. Others may appreciate a physician who broaches subjects of mutual interest (be they firearms or anything else) as a means of building rapport. The government cannot prohibit these desired conversations in its effort to stamp out other, unwanted conversations. *Cf. Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 255, 122 S. Ct. 1389, 1404 (2002) ("The Government may not suppress lawful speech as the means to suppress unlawful speech").

In sum, the panel's categorical exclusion of physician-patient speech from the protection of the First Amendment conflicts with decades of Supreme Court

precedent. The panel's opinion should be vacated and this case should be reheard en banc. *See* Fed. R. App. P. 35(b)(1)(A); 11th Cir. R. 35-3.

## CONCLUSION

For the foregoing reasons, the petition for rehearing en banc should be granted.

Dated: August 18, 2014.

Respectfully submitted,

/s/ Paul M. Sherman

**INSTITUTE FOR JUSTICE**
Paul M. Sherman (DC Bar No. 978663)
Robert J. McNamara (VA Bar No. 73208)
901 North Glebe Road, Suite 900
Arlington, VA 22203-1854
Tel: (703) 682-9320
Fax: (703) 682-9321
Email: psherman@ij.org, rmcnamara@ij.org
*Attorneys for Amicus Curiae*

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on this 18th day of August, 2014, I caused this Brief of

*Amicus Curiae* Institute for Justice in Support of the Petition for Rehearing *En*

*Banc* to be filed electronically with the Clerk of the Court using the CM/ECF

System, which will send notice of such filing to the following registered CM/ECF

users:

> Douglas Hollward-Driemeier
> Bruce S. Manheim, Jr.
> Julia Lewis
> Augustine Ripa
> ROPES & GRAY LLP
> 700 12th Street, NW, Suite 900
> Washington, DC  20005
> (202) 508-4600
>
> *Counsel for Petitioners*
>
> Jason Vail
> Allen C. Winsor
> Pam Bondi
> Timothy D. Osterhaus
> OFFICE OF THE U.S. ATTORNEY
> The Capitol PL-01
> Tallahassee, Florida  32399-1050
> (850) 488-3672
>
> *Counsel for Respondents*

I further certify that on this 18th day of August, 2014, I caused the required number of bound copies of the foregoing Brief of *Amicus Curiae* Institute for Justice in Support of the Petition for Rehearing *En Banc* to be filed via UPS Next Day Air with the Clerk of this Court and for one copy of the same to be served, via U.S. Mail, to all case participants, at the above listed addresses.

/s/ Paul M. Sherman
*Counsel for Amicus Curiae*