Case No. 12-14009-FF

UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

DR. BERND WOLLSCHLAEGER, et al.,
Plaintiffs/Appellees,
vs.
GOVERNOR STATE OF FLORIDA, et al.,
Defendants/Appellants.

_____

Amicus Curiae Brief of ACLU Found. of Fla., Inc., Alachua County Medical
Society, Broward County Medical Assoc., Broward County Pediatric Society,
Palm Beach County Medical Society, Florida Public Health Assoc., University of
Miami School of Law Children & Youth Clinic, Children's Healthcare Is a Legal
Duty, Inc., Early Childhood Initiative Found., and the Marion B. Brechner First
Amendment Project in Support of Petition for Rehearing En Banc

_____
_____

On Appeal from the United States District Court
for the Southern District of Florida
_____

Thomas R. Julin & Jamie Z. Isani
HUNTON & WILLIAMS LLP
1111 Brickell Ave., Ste. 2500
Miami, FL 33131
305.810.2516
tjulin or jiasani@hunton.com

Gerald E. Greenberg
GELBER SCHACHTER & GREENBERG, P.A.
1441 Brickell Ave., Ste. 1420
Miami, Florida 33131
305.728.0953
ggreenberg@gsgpa.com

Maria Kayanan
ACLU FOUNDATION OF FLORIDA, INC.
4500 Biscayne Boulevard Suite 340
Miami, FL 33137-3227
786.363.2700 fax 3108
mkayanan@aclufl.org

Gordon M. Mead, Jr.
STEARNS WEAVER MILLER WEISSLER
  ALHADEFF & SITTERSON, P.A.
150 West Flagler Street – Ste 2200
Miami, Florida 33130
305.789.3200
GMead@stearnsweaver.com

Attorneys for the Amici Curiae

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1, amici curiae hereby state that the Certificate of Interested Persons and Corporate Disclosure Statement filed by Petitioners with their Petition for Rehearing En Banc was complete, with the exception of the following persons or entities:

American Bar Association, amicus curiae

Carlton Fields Jorden Burt LLP, counsel for amicus American Bar Association

Gelber Schacter & Greenberg, P.A. counsel for amici curiae

Hubbard, William C., counsel for amicus American Bar Association

Hunton & Williams LLP, counsel for amici curiae

Institute for Justice, amicus curiae

Kayanan, Maria, counsel for amici curiae

Marion B. Brechner First Amendment Project, amicus curiae

McNamara, Robert J., counsel for amicus Institute for Justice

Ovelmen, Richard J., counsel for amicus American Bar Association

Sherman, Paul M, counsel for amicus Institute for Justice

Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., counsel for amici curiae

<div style="text-align:center">

_____
s/Thomas R. Julin
Thomas R. Julin

</div>

## STATEMENT OF COUNSEL

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decisions of the Supreme Court of the United States and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court: *Agency for International Development v. Alliance for Open Society International*, 570 U.S. ___, 133 S. Ct. 2321, 186 L. Ed. 2d 398 (2013), and *Sorrell v. IMS Health Inc.,* 564 U.S. ___, 131 S. Ct. 2653, 180 L. Ed. 2d 544 (2011). I also express a belief based on a reasoned and studied professional judgment, that this appeal involves the following question of exceptional importance: Whether the Florida Firearm Owners Privacy Act, 2011 Fla. Laws 112 (codified at Fla. Stat. §§ 381.026, 456.072, 790.338), violates the First and Fourteenth Amendments of the U.S. Constitution through imposition of content-based restrictions on speech imposed due to state opposition to the content of the speech.

<div style="margin-left:40%">

s/ Thomas R. Julin
_____
Thomas R. Julin
Attorney of Record for
ACLU Foundation of Florida, Inc.
Alachua County Medical Society
Broward County Medical Association
Broward County Pediatric Society
Palm Beach County Medical Society
Florida Public Health Association
University of Miami School of Law
  Children and Youth Clinic

</div>

Children's Healthcare Is a Legal Duty, Inc.
Early Childhood Initiative Foundation
Marion B. Brechner First Amendment
  Project

HUNTON & WILLIAMS LLP / GELBER SCHACTER & GREENBERG / ACLU FOUNDATION OF FLORIDA, INC. /
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT ...........................................C1

STATEMENT OF COUNSEL................................................................. i

TABLE OF CONTENTS ...................................................................... iii

TABLE OF CITATIONS........................................................................v

STATEMENT OF THE ISSUE
WARRANTING EN BANC CONSIDERATION....................................................1

THE INTERESTS & AUTHORITY OF THE AMICI TO FILE............................1

    The ACLU of Florida....................................................................1

    The Medical Societies...................................................................2

    The Children and Youth Care Groups ..........................................2

    The Marion B. Brechner First Amendment Project .......................3

AUTHORSHIP & FUNDING OF THE BRIEF .....................................3

STATEMENT OF THE FACTS ..............................................................4

ARGUMENT....................................................................................4

  I.  The Panel Should Have Invalidated the Law Through
     Application of the Principles Reaffirmed in *AID v.*
     *Alliance for Open Society International* .......................................4

  II.  The Panel Failed to Distinguish the Controlling
     Principles Applied in *Sorrell v. IMS Health Inc.* ..........................8

  III. Recent Scholarship and Commentary Agree that
     Strict Scrutiny Should be Applied to Invalidate the Law
     and Demonstrate the Importance of the Question Decided.........14

HUNTON & WILLIAMS LLP / GELBER SCHACTER & GREENBERG / ACLU FOUNDATION OF FLORIDA, INC. /
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.

CONCLUSION ................................................................15

CERTIFICATE OF COMPLIANCE.................................................... vii

CERTIFICATE OF SERVICE ......................................................... viii

HUNTON & WILLIAMS LLP / GELBER SCHACTER & GREENBERG / ACLU FOUNDATION OF FLORIDA, INC. /
STEARNS WEAVER MILLER WEISSLER ALHADEFF &  SITTERSON, P.A.

## <u>TABLE OF CITATIONS</u>

<u>Page(s)</u>

<u>Cases</u>

*Agency for International Development v. Alliance for Open Society International,*
133 S.Ct. 2321 (2013) ......................................................................4

*Boos v. Barry,*
485 U.S. 312 (1988)........................................................................14

*Cincinnati v. Discovery Network, Inc.,*
507 US 410 (1993)..........................................................................13

*FCC v. League of Women Voters of California,*
468 U.S. 364 (1984)..........................................................................6

*Legal Services Corporation v. Velazquez,*
531 U.S. 533 (2001)..........................................................................6

*Regan v. Taxation With Representation,*
461 U.S. 540 (1983)..........................................................................6

*Rust v. Sullivan,*
500 U.S. 173 (1991)..........................................................................6

*Sorrell v. IMS Health Inc.,*
131 S. Ct. 2653 (2011).............................................................*passim*

<u>Constitutional Provisions & Statutes</u>

U.S. Const. ...............................................................................*passim*

HUNTON & WILLIAMS LLP / GELBER SCHACTER & GREENBERG / ACLU FOUNDATION OF FLORIDA, INC. / STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.

Other Authorities

Aguirre Ferré, Helen, *Since When are Guns Not a Healthcare Issue?* THE
    MIAMI HERALD, Aug. 3, 2014 ........................................................................15

Calvert, Clay, Axelrod, Daniel, Hayes, Justin B. & Minchin, Minch,
    *Physicians, Firearms & Free Expression: Reconciling First Amendment
    Theory with Doctrinal Analysis Regarding the Right to pose Questions to
    Patients,* 12 FIRST AMENDMENT L. REV. 1 (2013) ...........................................15

Cooke, Brian K., Goddard, Emily R., Ginory, Almari , Demery, Jason A. &
    Werner, Tonia L., *Firearms Inquiries in Florida: "Medical Privacy" or
    Medical Neglect?* 40 J. Am. Acad. Psychiatry L. 399 (Sept. 2012) .................15

Dolgin, Janet L., *Physician Speech and State Control: Furthering Partisan
    Interests at the Expense of Good Health ,* 48 N. ENG. L. REV. 293, 342
    (2013) ............................................................................................................15

Foody, Michelle, *Docs Versus Glocks: N.R.A. Takes Aim at Florida
    Physicians' Freedom of Speech: Leaving Patients' Health, Safety, and
    Welfare at Risk,* 2013 CARDOZO L. REV. DE NOVO 228 (2013) .........................15

Hethcoat, Gayland O., *In the Crosshairs: Legislative Restrictions on
    Patient-Physician Speech About Firearms,* 14 DePaul J. of Health Care
    L. 1 (2011) .....................................................................................................15

Murtagh, L. & Miller, M., *Censorship of the Patient-Physician Relationship:
    A New Florida Law.* 306 J. AM. MED. ASS'N 1131 (2011)................................15

Sherman, Paul & McNamara, Robert, *Censorship in Your Doctor's Office,*
    THE NEW YORK TIMES, Aug. 2, 2014 .............................................................15

HUNTON & WILLIAMS LLP / GELBER SCHACTER & GREENBERG / ACLU FOUNDATION OF FLORIDA, INC. /
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.

## STATEMENT OF THE ISSUE

Whether the panel erred in holding that a state law enacted in reaction to the lobbying of the National Rifle Association to suppress the truthful and important communication of healthcare professionals with their patients about the real dangers of firearm and ammunition ownership need not be subjected to strict scrutiny and does not violate the First and Fourteenth Amendments of the United States Constitution.

## THE INTERESTS AND AUTHORITY TO FILE OF THE AMICI

The amici curiae have obtained the consent of their governing officials or boards to file this brief. Their identities and interests are as follows:

### The ACLU of Florida

The American Civil Liberties Union (ACLU) is our nation's guardian of liberty, working daily in courts, legislatures and communities to defend and preserve the individual rights and liberties guaranteed to all people in this country by the U.S. Constitution. Since 1920, the nonprofit, nonpartisan ACLU has grown to over 500,000 members and supporters. The ACLU of Florida, with headquarters in Miami, is the local affiliate of the national organization.

### The Medical Societies

The Alachua County Medical Society represents more than 1000 physicians, residents and students in Alachua, Levy, Dixie and Gilchrist Counties. The

Broward County Medical Association (BCMA) unites 1,500 allopathic and osteopathic physicians, of all specialties. The Broward County Pediatric Society has approximately 100 pediatricians and pediatric subspecialists as members. The Palm Beach County Medical Society has been a trusted leader in addressing healthcare issues facing physicians since 1919. The Florida Public Health Association was founded in 1931 to advance public health through advocacy, education and networking. All five medical societies have joined this brief to protect their members' speech rights at this critical time when healthcare reform is at the forefront of the nation's political agenda. They fear that if the state can censor questions regarding firearm and ammunition ownership, it may impose additional speech restrictions that have nothing to do with the practice of medicine and everything to do with a political agenda.

## The Children and Youth Care Groups

Four of the amici curiae are organizations that advocate for the health and well-being of children. Children's Healthcare Is a Legal Duty, Inc. (CHILD) is a non-profit organization with members in 45 states dedicated to protecting children from medical neglect. The Early Childhood Initiative Foundation is an organization aimed toward providing "universal readiness" or making available affordable high quality health, education, and nurturing for all of the Miami-Dade County's community of approximately 160,000 children between birth and age

five. Under its president, David Lawrence, Jr., the Initiative works toward the social, physical, emotional and intellectual growth of all children so that they are ready and eager to be successful in the first grade and, indeed, life. The Children and Youth Clinic is an in-house legal clinic, staffed by faculty and students at the University of Miami School of Law, which advocates for the rights of children in abuse and neglect, medical care, mental health, disability, and other proceedings. These organizations all have a strong interest in ensuring that doctors, like other citizens, remain free to question their patients about firearm and ammunition ownership – regardless of whether the inquiries are part of a preventative healthcare regimen or simply the expression of an opinion or viewpoint.

<u>The Marion B. Brechner First Amendment Project</u>

The Marion B. Brechner First Amendment Project is a nonprofit, nonpartisan organization at the University of Florida. Directed by attorney Clay Calvert, the Project is dedicated to contemporary issues of freedom of expression. The Project's director published a scholarly article in 2013 on the Florida law at issue in this case. *See* note 2 *infra*.

<u>AUTHORSHIP & FUNDING OF THE BRIEF</u>

No party's counsel authored this brief or contributed money intended to fund preparation or submission of this brief; and no person, other than the amici curiae, their members or counsel, contributed money intended to fund the preparation or

Hunton & Williams LLP / Gelber Schacter & Greenberg / ACLU Foundation of Florida, Inc. / Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.

submission of the brief.

STATEMENT OF FACTS

The facts are adequately set forth in the panel opinions.

ARGUMENT & AUTHORITIES

I.

The Panel Should Have Invalidated the Law
Through Application of the Principles Reaffirmed
in *AID v. Alliance for Open Society International*

Briefing of this case concluded in July, 2012, so the parties did not have an opportunity to address the significance of the U.S. Supreme Court's decision in *Agency for International Development v. Alliance for Open Society International*, 133 S.Ct. 2321 (June 20, 2013) (hereinafter *AID*). The decision struggles with analogous issues and provides a framework for proper analysis of those issues here. The case involved a Congressional appropriation of billions of dollars to fund efforts by nongovernmental organizations to fight the spread of HIV/AIDS around the world. *Id.* at 2324-25. The act authorizing this spending also provided (1) the funds could not be used to promote or advocate the legalization or practice of prostitution or sex trafficking and (2) no funds could be used by an organization "'that does not have a policy explicitly opposing prostitution and sex trafficking.'" *Id.* (quoting 22 U.S.C. §7631(f)). Organizations eligible to receive the funds challenged the latter condition as violating their First Amendment rights, just as the

4

plaintiffs in the instant case have challenged the Florida statute that restricts their speech rights. *Id.* at 2326.

Chief Justice Roberts, writing for a seven-justice majority, agreed with the plaintiffs. His opinion recognized that Congress has broad spending powers and that if a party objects to a condition on the receipt of federal funding, "its recourse is to decline the funds." *Id.* at 2328. In the same manner, states have broad authority to imposes conditions on the receipt of a license to practice medicine (or many other professions), and the recourse of those who oppose submission to the conditions is to reject the license. The *AID* opinion noted, however, that "the Government 'may not deny a benefit to a person on a basis that infringes his constitutionally protected . . . freedom of speech even if he has no entitlement to that benefit.'" *Id.* (citation omitted). The same principle applies to government issuance of licenses to professionals.

"[T]he relevant distinction that has emerged," the Supreme Court held, "is between conditions that define the limits of the government spending program – those that specify the activities Congress wants to subsidize – and conditions that seek to leverage funding to regulate speech outside the contours of the program itself." *Id.* The Court then, conceding that the "line is hardly clear," reviewed how

HUNTON & WILLIAMS LLP / GELBER SCHACTER & GREENBERG / ACLU FOUNDATION OF FLORIDA, INC. / STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.

this standard had been applied in a series of cases.[1]

With these cases in mind, the Court then closely scrutinized whether the challenged condition – requiring the recipients to adopt a policy opposing prostitution – simply defined the limits of the program or imposed an unconstitutional condition on recipient speech unrelated to the program. The Court found it to be the latter because it not only controlled speech in conjunction with recipients' fulfillment of the government program, it also controlled the speech of recipients when they were acting outside the program by compelling them to adopt the government's viewpoint. "The Policy Requirement," the Court held, "compels as a condition of federal funding the affirmation of a belief that by its nature cannot be confined within the scope of the Government program. In so doing, it violates the First Amendment and cannot be sustained." *Id.* at 2332.

State licensing of professionals and state funding of programs are different government functions, but both provide tempting opportunities for legislators to attempt to restrict or compel speech through the imposition of conditions that are

---

[1]  *Regan v. Taxation With Representation*, 461 U.S. 540, 546 (1983) (upholding restriction on nonprofit organizations engaging in efforts to influence legislation), *FCC v. League of Women Voters*, 468 U.S. 364 (1984) (invalidating prohibition against public broadcasters editorials); *Rust v. Sullivan*, 500 U.S. 173 (1991) (upholding prohibition against advocating abortion imposed on healthcare organizations receiving grants); and *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533 (2001) (invalidating restriction on government-funded lawyer trying to amend or challenge existing welfare law).

unrelated to the objectives or outside the confines of the licensing or funding, in essence "leveraging" a government license or funding improperly. In the instant case, the record reflects that the Florida legislature first considered the law at issue at the behest of the National Rifle Association. It was not proposed by any medical association or group concerned with patient health. Instead, the NRA, as an advocacy organization, proposed the law only after it learned that doctors routinely ask their patients about firearm and ammunition ownership in order to engage them in a discussion of the dangers they create. The NRA's concern about this questioning was understandable in light of the fact that doctors see first-hand and on a regular basis the harmful effects of unregulated distribution of firearms and often advise patients not only about firearm safety, but also their support of restricting or outlawing guns. The record before this Court is clear that the legislature shared the NRA's viewpoint against gun restrictions and adopted the law not due to a belief that the restriction was needed to advance the goals of medical licensing, but rather to suppress political opposition to gun control. This was made clear by the language of the act itself, which solely bans communications with patients that are irrelevant to the good faith delivery of medical care. Just as the law requiring *AID* fund recipients to endorse a government viewpoint even when they were not fulfilling their government-funded missions, the Florida law restricts inquiries made of patients when doctors are *not*

inquiring for medical purposes. This type of speech restriction cannot, under the principles discussed in *AID*, be characterized as a simple license-defining regulation. It instead is a leveraging of regulation to impose a content- and viewpoint-based restriction on speech. A law of this sort should be subjected to strictest scrutiny. The panel opinion, to the contrary, upheld the law solely on the theory that it was rationally related to a lawful purpose.

## II.

### The Panel Failed to Distinguish the Controlling Principles Applied in *Sorrell v. IMS Health Inc.*

The panel should have applied strict scrutiny to the Florida law because it singles out for differential treatment, on the basis of content, a particular type of speech (relating to firearm ownership) only by a particular group of speakers (healthcare practitioners, facilities, and providers). In S*orrell v. IMS Health Inc.*, 131 S. Ct. 2653 (2011), the Supreme Court invalidated a state statute that imposed a content-based speech restriction on licensed pharmacies. The Court held that a law that on its face burdens "disfavored speech by disfavored speakers" requires heightened judicial scrutiny. *Id.* at 2663-64. The panel majority opinion fails to distinguish the holding of S*orrell* in any meaningful regard. The dissent properly acknowledges that the Florida law must be subject to "at least" intermediate scrutiny under *Sorrell*, but it falls short of recognizing that strict scrutiny should apply, as this case does not involve a regulation of commercial speech, as was

8

contended in *Sorrell*.

The panel majority attempts to sidestep *Sorrell* altogether by characterizing the law as a regulation of professional conduct with only an "incidental effect" on speech. This ignores one of *Sorrell*'s primary teachings, that a state cannot evade First Amendment scrutiny simply by labeling a content-, speaker-, and viewpoint-based restriction on speech as a regulation of "conduct" or professionals. In *Sorrell*, pharmacies were required to be licensed by the State to ensure that they employ persons with proper training and skills to fill prescriptions. The imposition of the license provided no justification for lessening the First Amendment scrutiny imposed by a law that prohibited pharmacies from publishing for marketing purposes information that they learned from prescriptions about the drugs that doctors prescribe. *Sorrell,* 131 S. Ct. 2653.

Justice Breyer, dissenting, asserted that the Vermont law should have been analyzed under the rational basis review "appropriate for the review of economic regulation," rather than "under a heightened scrutiny appropriate for the review of First Amendment issues." *Id.* at 2675 (citation omitted). He emphasized that "the statute's requirements form part of a traditional, comprehensive regulatory regime." *Id.* at 2676. The six-Justice majority rejected that view, finding that the Vermont law imposed "more than an incidental burden on protected expression." *Id.* at 2665. Justice Kennedy, writing for the Court, concluded, "Both on its face

and in its practical operation, Vermont's law imposes a burden based on the content of speech and the identity of the speaker." Thus, heightened scrutiny applied. Like the law at issue in *Sorrell*, Florida's law "does not simply have an effect on speech, but is directed at certain content and is aimed at particular speakers." *Id.* at 2665. Indeed, it targets expression regarding a single topic – firearms – for unique treatment. Thus, *Sorrell* requires the application of heightened scrutiny.

In *Sorrell*, as here, Vermont sought to justify its restriction on the use of prescription information for marketing purposes as a measure that would protect doctors from harassing sales behaviors. *Sorrell,* 131 S. Ct. at 2669. The Court accepted that the restrained speech in fact allowed the unnecessary harassment of doctors to take place, but rejected this as a legitimate basis for upholding the challenged law. "Many are those who must endure speech they do not like," Justice Kennedy wrote, "but that is a necessary cost of freedom." *Id.* The *Sorrell* Court also questioned Vermont's need to protect doctors from harassing salespeople in light of the fact that doctors who felt harassed simply could decline to see them. *Id.* at 2669-70 ("Doctors who wish to forego detailing altogether are free to give 'No Solicitation' . . .instructions to their office managers"). The Court noted that even homeowners receive ample privacy protection through their "'unquestioned right to refuse to engage in conversation with unwelcome

visitors,'" *id.* at 2670 (quoting *Watchtower Bible & Tract Soc. of N. Y., Inc. v. Village of Stratton,* 536 U.S. 150, 168 (2002)), and concluded that a "physician's office is no more private and is entitled to no greater protection." *Id.*

The majority seeks to brush aside the reasoning of *Sorrell* by surmising that patients "may feel powerless vis-à-vis their physicians" (Op. 31) and thus may not feel free to decline to answer a physician's question. Aside from the lack of any citation to the record to support this finding, the majority fails to explain how a patient who chooses a doctor and asks for her services is "entitled to more protection from the doctors' questioning than the person in his own home or the doctor in her own office who faces questioning from an unwelcome visitor." Dissent, op. 131. Moreover, the law does not address the perceived problem of patients feeling powerless. If the State's goal is to empower patients to decline to answer questions, a far less restrictive means of achieving this goal would be to require doctors to advise patients that they are not required to answer a particular question. The State did not need to prohibit doctors from engaging in a dialogue.

In rejecting plaintiffs' challenge to the Act's record-keeping restrictions, the majority also unpersuasively attempts to distinguish *Sorrell*'s holding that "[a]n individual's right to speak is implicated when information he or she possesses is subjected to 'restraints on the way in which the information might be used' or disseminated." 131 S. Ct. at 2665-66 (citation omitted). The majority posits that,

HUNTON & WILLIAMS LLP / GELBER SCHACTER & GREENBERG / ACLU FOUNDATION OF FLORIDA, INC. /
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.

whereas the Vermont statute restricted the manner in which pharmacies could disseminate business records to third parties, Florida's law "does not clearly prohibit the dissemination of information," because health care providers' dissemination of medical records is "already highly regulated" and therefore the communication function of such records is "contained within the medical profession." Op. 44-45. This attempted distinction fails on its own terms, as it does not explain how a doctor's written communication in a medical record with *other* current or future health care providers does not qualify as dissemination to third parties. The attempt to distinguish *Sorrell* also falls flat. First, the *Sorrell* Court held that *both* "the creation and dissemination of information are speech within the meaning of the First Amendment," 131 S. Ct. at 2667. It cannot be disputed that a doctor creates information when she makes a notation in a patient's medical file.

Like the majority here, the dissent in *Sorrell* asserted that only a modest amount of speech was implicated because the dissemination of prescription records already was subject to a strict regulatory regime. *See Sorrell*, 131 S. Ct. at 2680 ("The record contains no evidence that prescriber-identifying data is widely disseminated.". . . "The absence of any such evidence likely reflects the presence of other legal rules that forbid widespread release of prescriber-identifying information."). The resolution of *Sorrell*, however, did not turn on the size of the

Hunton & Williams LLP / Gelber Schacter & Greenberg / ACLU Foundation of Florida, Inc. / Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.

audience for the information at issue. Rather, heightened scrutiny was required because the government sought to prohibit pharmacies from conveying information that they lawfully possessed. So, too, the Act's record-keeping restrictions prohibit doctors from communicating information conveyed by their patients and must be subject to strict scrutiny.

The dissent properly acknowledges that *Sorrell* governs this case and correctly concludes that "a content-based restriction like the Act here will always receive at least intermediate scrutiny." Op. 103. Based on its findings that the Act is a content-, speaker-, and viewpoint-based restriction like the Vermont law invalidated in *Sorrell*, however, the dissent should have reached the inescapable conclusion that strict scrutiny applies.

In *Sorrell*, the Vermont law at issue only restricted the use of prescription information for "marketing purposes," and thus Vermont argued that if the law burdened speech, it at most burdened commercial speech. Defining the boundaries of the commercial speech doctrine is an issue with which the Supreme Court has struggled. The Court variously has articulated the definition relatively narrowly, as "speech proposing a commercial transaction," or more broadly, as "expression related solely to the economic interests of the speaker and its audience." *Cincinnati v. Discovery Network, Inc.*, 507 US 410, 422 (1993) (citations omitted). The Court also has grappled with the question of what level of scrutiny to apply

where "pure speech" and "commercial speech" are "inextricably intertwined. *See Sorrell*, 131 S. Ct. at 2667 (citing *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 474 (1989)). In *Sorrell*, pharmaceutical manufacturers argued that their sales representatives provided useful, life-saving information to prescribers, and thus their speech should be treated as non-commercial even though they also sought to sell a product. Rather than wading through these thorny questions, the *Sorrell* Court concluded that because "the outcome is the same whether a special commercial speech inquiry or a stricter form of judicial scrutiny is applied, . . . there is no need to determine whether all speech hampered by [the Vermont law] is commercial." 131 S. Ct. at 2667.

Here, the State does not contend – nor is there any basis to suggest – that doctor's discussions with patients regarding firearm ownership constitute commercial speech and the law is justified *only* by reference to the content of speech and the direct impact that speech has on its listeners . It thus must be subject to strict scrutiny. *See, e.g., Boos v. Barry*, 485 U.S. 312, 322 (1988).

III.

### Recent Scholarship and Commentary Agree that Strict Scrutiny Should be Applied to Invalidate the Law and Demonstrate the Importance of the Question Decided

That strict scrutiny is required in this case is confirmed not only by the principles applied in *AID* and *Sorrell*, but also by recent scholarship and

commentary which shows the exceptional importance of the question decided.[2]

<div align="center">CONCLUSION</div>

The Court should rehear the case en banc.

---

[2]    Clay Calvert, Daniel Axelrod, Justin B. Hayes & Minch Minchin, *Physicians, Firearms & Free Expression: Reconciling First Amendment Theory with Doctrinal Analysis Regarding the Right to pose Questions to Patients,* 12 FIRST AMENDMENT L. REV. 1, 62 (2013) ("Eleventh Circuit should adopt strict scrutiny"); Brian K. Cooke, Emily R. Goddard, Almari Ginory, Jason A. Demery & Tonia L. Werner, *Firearms Inquiries in Florida: "Medical Privacy" or Medical Neglect?* 40 J. AM. ACAD. PSYCHIATRY L. 399, 406 (Sept. 2012) (the law "is an example of how politics and legislation influence the doctor-patient relationship"); Janet L. Dolgin, *Physician Speech and State Control: Furthering Partisan Interests at the Expense of Good Health*, 48 N. ENG. L. REV. 293, 342 (2013) (the law "cannot be justified and should not survive or become models for lawmakers in other states"); Michelle Foody, *Docs Versus Glocks: N.R.A. Takes Aim at Florida Physicians' Freedom of Speech: Leaving Patients' Health, Safety, and Welfare at Risk*, 2013 CARDOZO L. REV. DE NOVO 228 (2013) (importance of the speech restricted by the law warrants application of strict scrutiny); Gayland O. Hethcoat II, *In the Crosshairs: Legislative Restrictions on Patient-Physician Speech About Firearms,* 14 DEPAUL J. OF HEALTH CARE L. 1 (2011) ("opponents argue that the statute serves no public policy need and amounts to 'ham-fisted pandering' to the National Rifle Association") (footnotes omitted); L. Murtagh & M. Miller, *Censorship of the Patient-Physician Relationship: A New Florida Law.* 306 J. AM. MED. ASS'N 1131, 1131 (2011) ("the law is a 'form of censorship that directly undermines the sanctity of the patient-physician relationship'); *see also* Helen Aguirre Ferré, *Since When are Guns Not a Healthcare Issue?* THE MIAMI HERALD, Aug. 3, 2014 at 3L ("[T]his is about politics and not about good medical care. . . .Doctors should be free to do what they are trained to do – save lives. It would be best for Florida residents if politics did not interfere with that all-important mission"); Paul Sherman & Robert McNamara, *Censorship in Your Doctor's Office,* THE NEW YORK TIMES, Aug. 2, 2014 at A17 ("The ruling by the 11th Circuit is another dangerous step in this censorial direction, and it must not be allowed to stand").

<div align="center">15</div>

Respectfully submitted,

Hunton & Williams LLP

By _____s/ Thomas R. Julin_____
      Thomas R. Julin & Jamie Z. Isani
      Florida Bar Nos. 325376 & 728861
      1111 Brickell Avenue - Suite 2500
      Miami, FL  33131
      305.810.2516 fax 1601
      tjulin or jisani@hunton.com

Gerald E. Greenberg
Fla. Bar No. 440094
Gelber, Schacter & Greenberg, P.A.
1441 Brickell Ave. Ste. 1420
Miami, Florida 33131
305.728.0953 Fax 0951
ggreenberg@gsgpa.com

Gordon M. Mead, Jr.  & Julie Fishman Berkowitz
Fla. Bar Nos. 049896 & 017293
Stearns Weaver Miller Weissler Alhadeff
& Sitterson, P.A.
150 West Flagler Street
Miami, Florida 33130
305.789.3200 Fax 3395

Maria Kayanan
Fla. Bar No. 305601
Associate Legal Director
ACLU Foundation of Florida, Inc.
4500 Biscayne Boulevard Suite 340
Miami, FL 33137-3227
T: 786-363-2700; F: 786-363-3108
mkayanan@aclufl.org

Attorneys for the *Amici Curiae*

## CERTIFICATE OF COMPLIANCE

Undersigned counsel hereby certifies that this brief complies with the requirements of FRAP Rule 32(a)(7)(B)(i) inasmuch as the brief, exclusive of the Certificate of Interested Persons and Corporate Disclosure Statement, Certificate of Service, Table of Contents, Table of Citations and Authorities, and this Certificate, is no longer than 15 pages and is printed in 14-point Times New Roman proportionally-spaced typeface.

<div align="right">

s/ Thomas R. Julin
_____
Thomas R. Julin

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2014, a true copy of the foregoing was

served by Notice of Electronic Filing generated by ECF upon all counsel of record:

Pamela J. Bondi, Attorney General
Timothy D. Osterhaus Solicitor General
Jason Vail, Assistant Attorney General
Diane G. DeWolf, Deputy Solicitors General
Rachel E. Nordby, Deputy Solicitors General
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL  32399

Douglas Hallward-Driemeier
Bruce S. Manheim, Jr.
Mariel Goetz
Ropes & Gray LLP
700 12th Street, NW, Suite 900
Washington, DC 20005-3948

Elizabeth N. Dewar
Ropes & Gray LLP
Prudential Tower
80 Boylston Street
Boston, MA  02199-3600

Jonathan E. Lowy
Daniel R. Vice
Brady Center to Prevent Gun Violation
1225 Eye Street, NW, Suite 1100
Washington, DC 20005

Edward Maurice Mullins
Hal Michael Lucas
Astigarraga Davis Mullins & Grossman
701 Brickell Avenue 16th Floor
Miami, FL 33131-2847

Dennis Gary Kainen
Weisberg & Kainen
1401 Brickell Avenue
Suite 800
Miami, FL 33131-3554

Charles J. Cooper
David H. Thompson
Peter A. Petterson
Cooper and Kirk, PLLC
1523 New Hampshire avenue, NW
Washington, D.C.  20036

John C. Eastman
Anthony T. Caso
Center for Constitutional Jurisprudence
c/o Chapman University School of Law
One University School of Law
One University Drive
Orange, CA  92886

Paul M. Sherman (DC Bar No. 978663)
Robert J. McNamara (VA Bar No. 73208)
Institute for Justice
901 North Glebe Road, Suite 900
Arlington, VA 22203-1854

Richard J. Ovelmen
Carlton Fields Jorden Burt LLP
100 S.E. Second Street
Miami, FL 33131

Richard H. Levenstein
Kramer, Sopko & Levenstein, P.A.
2300 SE Monterey Rd. Suite 100
Stuart, FL 34995

<div style="text-align:right">

s/ Thomas R. Julin
_____
Thomas R. Julin
</div>

HUNTON & WILLIAMS LLP / GELBER SCHACTER & GREENBERG / ACLU FOUNDATION OF FLORIDA, INC. /
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.