**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**
Case No.: 12-14009
D.C. Docket No.: 1:11-cv-22026-MGC

---

DR. BERND WOLLSCHLAEGER, DR. JUDITH SCHAECHTER, DR.
TOMMY SCHECHTMAN, AMERICAN ACADEMY OF PEDIATRICS,
FLORIDA CHAPTER, AMERICAN ACADEMY OF FAMILY PHYSICIANS,
FLORIDA CHAPTER, AMERICAN COLLEGE OF PHYSICIANS, FLORIDA
CHAPTER, INC., ROLAND GUTIERREZ, STANLEY SACK, SHANNON
FOX-LEVINE,
*Plaintiffs-Appellees,*

vs.

GOVERNOR OF THE STATE OF FLORIDA, et al.,
*Defendants-Appellants.*

---

Appeal from the United States District Court
for the Southern District of Florida

---

**BRIEF OF THE AMERICAN BAR ASSOCIATION
AS *AMICUS CURIAE* IN SUPPORT OF PETITION FOR
REHEARING *EN BANC* OF PLAINTIFFS-APPELLEES,
DR. BERND WOLLSCHLAEGER, ET AL.**

---

Of Counsel:

Richard J. Ovelmen
Florida Bar No. 284904

Gary L. Sasso
Florida Bar No. 622575

William C. Hubbard*
President
American Bar Association
321 North Clark Street
Chicago, IL 60654
312-988-5000
abapresident@americanbar.org
*Counsel of Record

*Counsel for Amicus Curiae American Bar Association*

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *amicus curiae* American Bar Association ("ABA") discloses that it is an Illinois nonprofit corporation, has no parent corporation, and does not issue shares of stock. ABA is a national organization representing member attorneys.[*]

On behalf of *amicus curiae*, American Bar Association, the undersigned certifies that the Certificate of Interested Persons included within Plaintiffs-Appellees Petition for Rehearing *En Banc* is complete.

 /s/ William C. Hubbard
William C. Hubbard

---

[*] No party's counsel authored this brief, and no party, its counsel, or other person contributed money intended to fund the brief's preparation or submission other than ABA and its members.

36208166.4

# STATEMENT OF COUNSEL

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decisions of the Supreme Court of the United States and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court: *Legal Services Corp. v. Velazquez*, 531 U.S. 533, 121 S.Ct. 1043, 149 L.Ed.2d 63 (2001); *U.S. v. Stevens*, 559 U.S. 460, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010); *Sorrell v. IMS Health Inc.*, 131 S.Ct. 2653, 180 L.Ed.2d 544 (2011); *U.S. v. Alvarez*, 132 S.Ct. 2537, 183 L.Ed.2d 574 (2012).

I express a belief, based on a reasoned and studied professional judgment, that this appeal involves one or more questions of exceptional importance: Whether the Florida Statutes at issue impose an impermissible restriction on speech by health care practitioners to their patients about firearms and firearm safety, under the First Amendment rights applicable to state regulated professionals?

 /s/ William C. Hubbard
William C. Hubbard

36208166.4

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ......................................................... ii

STATEMENT OF COUNSEL ................................................................................. iii

TABLE OF CONTENTS......................................................................................... iv

TABLE OF CITATIONS ..........................................................................................v

STATEMENT OF THE ISSUE.................................................................................1

IDENTITY AND INTEREST OF AMICUS CURIAE..............................................1

ARGUMENT ............................................................................................................4

   I. This Case Involves A Question Of Exceptional Public Importance. ...............6

  II. Rehearing *En Banc* Is Necessary To Resolve This Case Consistent
      With Binding Supreme Court Precedent. .......................................................10

    A. The Statutes At Issue Are Content-Based, Viewpoint
       Discriminatory, And Speaker-Based Restrictions That Conflict
       With Supreme Court Precedent. ................................................................10

    B. Contrary To Supreme Court Precedent, The Panel Decision
       Carves Out A New Category Of Unprotected Speech. ..............................13

CONCLUSION .......................................................................................................15

CERTIFICATE OF COMPLIANCE.......................................................................17

CERTIFICATE OF SERVICE ...............................................................................18

# TABLE OF CITATIONS

**Page**

## Cases

*Legal Services Corp. v. Velazquez*,
  531 U.S. 533, 121 S.Ct. 1043, 149 L.Ed.2d 63 (2001) ................................. iii, 13

*Sorrell v. IMS Health Inc.*,
  131 S.Ct. 2653, 180 L.Ed.2d 544 (2011) ......................................................passim

*U.S. v. Alvarez*,
  132 S.Ct. 2537, 183 L.Ed.2d 574 (2012) ...................................................... iii, 15

*U.S. v. Stevens*,
  559 U.S. 460, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010) ..............................passim

*Wollschlaeger v. Governor of Florida*,
  --- F.3d ---, Case No. 12-14009 (11th Cir. July 25, 2014) ....................................1

## Statutory Authorities

Section 381.026, Florida Statutes ...............................................................................4

Section 456.072, Florida Statutes ...............................................................................4

Section 790.338(2), Florida Statutes ..........................................................................1

Section 790.338, Florida Statutes ...............................................................................4

## Other Authorities

ABA Policy # 111 (adopted August 2012) ......................................................passim

ABA Report #111 ............................................................................................passim

American Medical Association, PREVENTION OF FIREARM ACCIDENTS IN
  CHILDREN, Policy H-145.990 ..............................................................................8

American Psychiatric Association, Position Statement No. 200107 ........................9

36208166.7

Centers for Disease Control and Prevention, 10 LEADING CAUSES OF DEATH BY AGE GROUP (Sept. 3, 2010) .............................................................7

Centers for Disease Control and Prevention, SUICIDE: FACTS AT A GLANCE (Summer 2010) ...........................................................................................7

Centers for Disease Control and Prevention, WISQARS Nonfatal Injury Reports...........................................................................................................7

Erin G. Richardson & David Hemenway, Homicide, Suicide, and Unintentional Firearm Fatality: Comparing the United States With Other High-Income Countries, 2003, J. TRAUMA, INJURY, INFECTION, & CRITICAL CARE .......................................................................................8

Renee Johnson, M.P.H. et al., FIREARM OWNERSHIP AND STORAGE PRACTICES, U.S. Households, 1992-2002, 27 AM. J. PREVENTIVE MED. 173, 179 (2004)...........................................................................................6

Teresa L. Albright, M.D. & Sandra K. Burge, Ph.D., IMPROVING FIREARM STORAGE HABITS: IMPACT OF BRIEF OFFICE COUNSELING BY FAMILY PHYSICIANS, 16 J. AM. BOARD FAMILY PRACTICE 1, 40 (Jan.-Feb. 2003) ........................................................................................................6, 7, 8

WISQARS Injury Mortality Reports, 1999-2007.....................................................7

## Rules

Rule 29(b), Federal Rules of Appellate Procedure ...................................................1

Rule 32(a)(7)(B)(i), Federal Rules of Appellate Procedure ...................................17

Rule 35(a)(1), Federal Rules of Appellate Procedure ..............................................5

Rule 35(a)(2), Federal Rules of Appellate Procedure ..............................................4

Rule 35-6, 11th Cir. R. ......................................................................................1, 17

## Constitutional Provisions

First Amendment, United States Constitution ..................................................passim

## STATEMENT OF THE ISSUE

Whether this Court should grant rehearing *en banc* to review the panel decision upholding a restriction on speech by health care practitioners to their patients about firearms and firearm safety, which was challenged as a violation of the First Amendment rights of state regulated professionals?

## IDENTITY AND INTEREST OF AMICUS CURIAE

Pursuant to a motion for leave under Federal Rule of Appellate Procedure 29(b) and 11th Cir. R. 35-6, the American Bar Association ("ABA") as *amicus curiae* respectfully submits this brief in support of the Petitioners/Appellees' petition for rehearing *en banc* in *Wollschlaeger v. Governor of Florida*, --- F.3d ---, Case No. 12-14009 (11th Cir. July 25, 2014). The ABA urges that rehearing be granted because of the important First Amendment issues raised by the panel decision, which allows, *inter alia*, the State of Florida to prohibit otherwise protected speech about firearm safety and related health concerns from licensed medical professionals to their patients. This restriction prevents them from asking patients about the ownership of a firearm or ammunition unless the practitioner "in good faith believes that this information is relevant to the patient's medical care of safety, or the safety of others[.]" § 790.338(2), Fla. Stat. By extension, the precedential force of the panel decision could reach speech by other regulated professionals (such as attorneys), to limit counseling their clients unless the

discussion meets a vague "relevance" test set by government officials. The ABA respectfully submits that the panel decision is incorrect and that rehearing *en banc* is necessary to conform the panel decision to binding precedent from the Supreme Court of the United States.

The ABA is the largest voluntary professional membership organization and leading association of legal professionals in the United States. Its nearly 400,000 members practice in all fifty states and other jurisdictions. They include attorneys in private law firms, corporations, non-profit organizations, government agencies, prosecutor and public defender offices, as well as judges, legislators, law professors, law students, and non-lawyer "associates" in related fields.[1] As of August 2013, the ABA's membership in the State of Florida included 18,805 lawyers, 2,448 law students, and 474 non-lawyer associates.

Since its founding in 1878, the ABA has taken special responsibility for protecting the rights guaranteed by the Constitution, which include the First Amendment rights of health care practitioners and other regulated professionals. The predecessor in name to the ABA's Standing Committee on Gun Violence was created in November 1993, to address gun violence with comprehensive policy

---

[1] Neither this brief nor the decision to file it should be interpreted to reflect the view of any judicial member of the ABA. No member of the Judicial Division Council participated in the adoption or endorsement of the positions in this brief, nor was it circulated to any member of the Judicial Division Council before filing.

recommendations and to promote sensible measures within the law to prevent gun violence.[2] The Standing Committee has presented several resolutions to the ABA House of Delegates for adoption as ABA policy that support and advance this mission.[3]

Of special relevance to the question before the *en banc* Court, the ABA adopted a policy in 2012, opposing "governmental actions and policies that limit the rights of physicians and other health care providers to inquire of their patients whether they possess guns and how they are secured in the home or to counsel their patients about the dangers of guns in the home and safe practices to avoid those dangers." ABA Policy #111 (adopted August 2012) ("ABA Policy #111").[4] The accompanying report ("ABA Report #111") noted that legislation limiting the right of health care professionals to ask their patients such questions interferes with

---

[2] Information on the Standing Committee on Gun Violence is available at http://www.americanbar.org/groups/committees/gun_violence.html.

[3] Only resolutions that are adopted by the ABA's House of Delegates ("HOD") become ABA policy, but not their accompanying reports. The HOD is comprised of more than 560 delegates representing states and territories, state and local bar associations, affiliated organizations, sections and divisions, ABA members, and the Attorney General of the United States, among others. *See* ABA Leadership, House of Delegates, General Information, *available at* http://www.abanet.org/leadership/delegates.html.

[4] Available at http://www.americanbar.org/content/dam/aba/administrative/house_of_delegates/resolutions/2012_hod_annual_meeting_111.authcheckdam.doc.

36208166.7

preventive care duties that are a foundation of modern medicine, and violates the First Amendment rights of both health care practitioners and their patients.

The ABA has a strong interest in the First Amendment question presented to this Court and in the crucial importance of open and unfettered dialogue between members of regulated professions (such as doctors and attorneys) and their patients or clients. Indeed, the dissent in this case cited ABA Policy #111. (Case No. 12-14009, Slip Op. at 68).

For these reasons and those stated more fully below, the ABA urges this Court to grant *en banc* review and reverse the split panel decision.

## ARGUMENT

There are several compelling reasons for the Court to accept review of this case *en banc* and reverse the panel decision. First, this case involves a question of exceptional importance. Fed. R. App. P. 35(a)(2). Doctors and their patients have a compelling interest in engaging in the speech prohibited by the Florida Statutes at issue (§§ 381.026, 456.072, and 790.338, Fla. Stats.). Communications by health care professionals about firearm safety, storage, and dangers are directed towards saving lives, particularly those of children and other at-risk persons. To accomplish these aims, asking about the ownership of a firearm or ammunition is a necessary first inquiry. This remains true irrespective of whether the practitioner has a pre-conceived good faith belief that the question is "relevant," or whether

government officials consider the question "irrelevant" to professional treatment. Believing that the balance of interests plainly supports unfettered communication of gun safety information between medical professionals and their patients – both before and after an incident involving a firearm – the ABA urges that this Court should consider *en banc* whether any interest that the State of Florida may have in restricting these communications can withstand the appropriate level of scrutiny.

Moreover, rehearing *en banc* is necessary to maintain uniformity with the binding precedent of the Supreme Court of the United States. Fed. R. App. P. 35(a)(1). The panel decision, in upholding a restriction on speech that is content-based, viewpoint discriminatory, and speaker-based, is contrary to this precedent, and specifically *Sorrell v. IMS Health Inc.*, 131 S.Ct. 2653, 180 L.Ed.2d 544 (2011) (invalidating restriction on physician prescription information being circulated for marketing purposes). The panel decision also upholds an impermissible restriction by carving out a new category of expression that is afforded no First Amendment protection: legislatively-defined "irrelevant" speech between regulated professionals and their patients or clients, which is contrary to the Supreme Court's direction against any broad authority for courts to create new categorical First Amendment exceptions. *U.S. v. Stevens*, 559 U.S. 460, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010) (limiting categories of unprotected speech to the

36208166.7

narrow categories long known to the bar and those that have historically been unprotected).

## I.    This Case Involves A Question Of Exceptional Public Importance.

This case presents a question of exceptional public importance:  the ability of health care practitioners (and other professionals) to communicate life-saving information to their patients (or clients) in an unfettered manner.  The State of Florida should not be permitted to eliminate this communication without review by the Court *en banc*.

The ABA adopted ABA Policy #111 based on an extensive review of statistical and other empirical evidence demonstrating the extent and consequences of un-counseled gun security and storage in the home, and of the policies developed by various medical organizations for preventive health care and safety counseling for physicians to provide to owners of firearms.  That review, set out in ABA Report #111, demonstrates the exceptional importance of this conversation for doctors to initiate:

- "[O]ne-third of U.S. homes with children younger than eighteen have a firearm, and more than 40% of gun-owning households with children store their guns unlocked, with one-quarter of those homes storing them loaded."[5] (ABA Report #111 at 2).

---

[5] Renee Johnson, M.P.H. et al., Firearm Ownership and Storage Practices, U.S. Households, 1992-2002, 27 AM. J. PREVENTIVE MED. 173, 179 (2004).  *See also* Teresa L. Albright, M.D. & Sandra K. Burge, Ph.D., Improving Firearm (footnote continued on next page)

- "Unintentional injury is a health hazard, and is the leading cause of death among children older than one year, adolescents, and young adults.[6] This includes injuries from accidents involving firearms. According to the most recent data sets published by the Centers for Disease Control and Prevention, every day in America, thirty-eight children and teens are injured by firearms and eight are killed by firearms."[7] (ABA Report #111 at 2).

- "Intentional injury is also a major health hazard, with suicide being a particular risk about which physicians counsel patients. Suicide is the third leading cause of death among individuals aged 15 to 24 and is the second leading cause of death for individuals aged 25 to 34.[8] Firearms are frequently used in suicide and suicide attempts, and suicide attempts committed with firearms are fatal more than 90% of the time. Use of a firearm is the most common method of suicide among adult men – 55.7%."[9] (ABA Report #111 at 2).

---

Storage Habits: Impact of Brief Office Counseling by Family Physicians, 16 J. AM. BOARD FAMILY PRACTICE 1, 40 (Jan.-Feb. 2003).

[6] Centers for Disease Control and Prevention, 10 Leading Causes of Death by Age Group (Sept. 3, 2010) available at:
http://www.cdc.gov/injury/wisqars/images/Death_by_Age_2007-a.gtf.

[7] Centers for Disease Control and Prevention, WISQARS Nonfatal Injury Reports, available at: http://webappa.cdc.gov/sasweb/ncipc/nfirates2001.html; WISQARS Injury Mortality Reports, 1999-2007, available at:
http://webappa.cdc.gov/sasweb/ncipc/mortrate10_sy.html.

[8] Centers for Disease Control and Prevention, Suicide: Facts at a Glance (Summer 2010), available at:
http://www.cdc.gov/violenceprevention/pdf/Suicide_DataSheet-a.pdf.

[9] Centers for Disease Control and Prevention, Suicide: Facts at a Glance (Summer 2010), available at:
http://www.cdc.gov/violenceprevention/pdf/Suicide_DataSheet-a.pdf.

36208166.7

- "Intentional and unintentional injury related deaths caused by firearms claim more lives than all injury sources except motor vehicles.[10]" (ABA Report #111 at 2).

- "Children aged 5 to 14 years in the United States are 11 times more likely to be killed accidentally with a gun than similarly aged children in other developed countries."[11] (ABA Report #111 at 4).

- "The American Academy of Pediatrics recommends that parents of pre-school aged children remove handguns from places where children live and play. They advise parents of adolescents that firearms in the home are particularly dangerous for this age group because of their propensity for impulsive, unplanned use resulting in suicide, homicide, or serious unintentional injuries." (ABA Report #111 at 2-3).

- Similarly, "[t]he American Medical Association adopted a policy to reduce pediatric firearm morbidity and mortality by encouraging its members to: (a) inquire as to the presence of household firearms as part of childproofing the home; (b) educate patients to the dangers of firearms to children; (c) encourage patients to educate their children and neighbors as to the dangers of firearms; and (d) routinely remind patients to obtain firearm safety locks, to store firearms under lock and key, and to store ammunition separately from firearms."[12] (ABA Report #111 at 3).

- For adult medical care, "[t]he American Psychiatric Association has recommended that 'health professionals and health systems should ask about

---

[10] Teresa L. Albright, M.D. & Sandra K. Burge, Ph.D., *Improving Firearm Storage Habits: Impact of Brief Office Counseling by Family Physicians*, 16 J. AM. BOARD FAMILY PRACTICE 1, 40 (Jan.-Feb. 2003).

[11] Erin G. Richardson & David Hemenway, Homicide, Suicide, and Unintentional Firearm Fatality: Comparing the United States With Other High-Income Countries, 2003, J. TRAUMA, INJURY, INFECTION, & CRITICAL CARE at 1 2010.

[12] American Medical Association, Prevention of Firearm Accidents in Children, Policy H-145.990, Res. 165, I-89.

firearm ownership whenever clinically appropriate in the judgment of the physician.'"[13]  (ABA Report #111 at 3).

- "Safety counseling . . . is also shown to have concrete results.  One study showed that after a single instance of verbal counseling, more than 58% of patients reported making changes to their gun storage habits."  (ABA Report #111 at 2).

Preventive care is a pillar of modern medicine.  For health care practitioners to meet these responsibilities, "they must be able to discuss a broad range of topics with their patients related to known risk factors."  (ABA Report #111 at 1).  Safety counseling on firearms in the home should not be chilled by a statutory requirement that, before health care practitioners can ask about firearm and ammunition ownership, they must first establish a good faith belief that the questions are "relevant" to a particular patient's medical care.  By extension, the State could similarly decide that other areas included in preventive care counseling, including use of child safety seats and safe storage of hazardous cleaning chemicals, should be subject to this vague, good faith "relevance" requirement.

The dissent recognizes that, "the perceived problem with doctors' truthful, non-misleading message regarding firearm safety was that it was working, so the message was silenced."  (Case No. 12-14009, Slip Op. at 85).  This perceived basis for restricting the speech of health care practitioners – or any regulated

---

[13] American Psychiatric Association, Position Statement No. 200107.

professional – underscores the exceptionally important issues presented in this case.

## II. Rehearing *En Banc* Is Necessary To Resolve This Case Consistent With Binding Supreme Court Precedent.

Rehearing *en banc* is necessary to maintain uniformity with the binding precedent of the Supreme Court. The panel decision upholds a restriction on speech that is content-based, viewpoint discriminatory, and speaker-based, which is contrary to Supreme Court precedent. *See Sorrell v. IMS Health Inc.*, 131 S.Ct. 2653, 180 L.Ed.2d 544 (2011) (invalidating restriction on physician prescription information being circulated for marketing purposes). The panel decision upholds this speech restriction by carving out a new category of speech that is afforded no First Amendment protection, namely speech between regulated professionals and their patients or clients that does not meet a vague legislatively-set "relevance" test. This is also contrary to *U.S. v. Stevens*, 559 U.S. 460, 472, 130 S.Ct. 1577, 1586, 176 L.Ed.2d 435 (2010) (holding that courts do not have "freewheeling authority to declare new categories of speech outside the scope of the First Amendment" and must demonstrate that speech has been historically unprotected to fall outside the First Amendment's protection).

### A. The Statutes At Issue Are Content-Based, Viewpoint Discriminatory, And Speaker-Based Restrictions That Conflict With Supreme Court Precedent.

The statutes at issue here enact an unlawful content-based, viewpoint

discriminatory, and speaker-based restriction on speech. The restriction is

content-based because it limits speech concerning firearm ownership and safety.

The restriction is viewpoint discriminatory because it singles out a particular

opinion for limitation and restraint (the opinion that it is dangerous to leave

firearms and ammunition in accessible places when a home has children or other

at-risk persons present). The restriction is speaker-based because it focuses its

speech restraint on doctors. The restriction, even if it arguably advances a

compelling state interest, is not narrowly tailored and should be subject to the most

exacting scrutiny.

In *Sorrell*, the Supreme Court reviewed a statute that, among other things,

restricted the sale of information for marketing purposes that detailed the

pharmaceutical prescriptive practices of physicians.[14] *Sorrell*, 131 S.Ct. at 2659-

61. Because this restriction applied to "marketing purposes," but not to other

purposes such as "educational communications," the Supreme Court determined

the statute formed a content-based restriction on its face. *Sorrell*, 131 S.Ct. at

2663. The Supreme Court held the statute was a viewpoint discriminatory

---

[14] The panel decision held that "the reasoning of Sorrell is inapposite" to the restriction on keeping medical records regarding firearms because medical records are not made for public consumption and any burden on communication of such information was incidental to the State's regulation of medical practice. (Case No. 12-14009, Slip Op. at 44-45). The ABA respectfully submits that this holding confuses the relevant issues and does not provide a basis to distinguish *Sorrell*.

36208166.7

restriction because it "target[s] those speakers [who promote brand-name drugs] and their messages for disfavored treatment." *Sorrell*, 131 S.Ct. at 2663. The Supreme Court also held the statute was a speaker-based restriction because it "disfavors specific speakers, namely pharmaceutical manufacturers." *Sorrell*, 131 S.Ct. at 2663.

In *Sorrell*, the Supreme Court rejected the argument that "heightened judicial scrutiny is unwarranted because its law is a mere commercial regulation." *Sorrell*, 131 S.Ct. at 2664. The Court noted that "[a]s in previous cases . . . the outcome is the same whether a special commercial speech inquiry or a stricter form of judicial scrutiny is applied." *Sorrell*, 131 S.Ct. at 2667. Even under a commercial speech inquiry, the State must justify its interest in restricting the speech at issue, must tailor the restriction to fit a substantial government interest, and must "not seek to suppress a disfavored message." *Sorrell*, 131 S.Ct. at 2668. Here, the State of Florida attempts to suppress a disfavored message from health care practitioners concerning the dangers posed by firearms and ammunition not properly stored and secured in the home, particularly when there are children or other at-risk persons present.

Finally, it bears noting, in *Sorrell* the Supreme Court explained that "[i]n the ordinary case it is all but dispositive to conclude that a law is content-based and, in practice, viewpoint-discriminatory." *Sorrell*, 131 S.Ct. at 2667. The statutes at

issue in this case restrict speech from health care practitioners to patients about the dangers of firearms and proper firearm safety and storage. If doctors spoke to patients only about the benefits of firearm ownership, that speech would be permissible under the statute. That is viewpoint discrimination, and it is impermissible under the First Amendment. Accordingly, the panel decision is inconsistent with the Supreme Court's decision in *Sorrell*, and rehearing *en banc* should be granted.

**B.** **Contrary To Supreme Court Precedent, The Panel Decision Carves Out A New Category Of Unprotected Speech.**

Binding Supreme Court precedent affords First Amendment protection to communications between licensed professionals and their patients or clients. *See, e.g.*, *Legal Services Corp. v. Velazquez*, 531 U.S. 533, 121 S.Ct. 1043, 149 L.Ed.2d 63 (2001). The panel opinion conflicts with this precedent and creates a new category of unprotected speech. This is also contrary to *U.S. v. Stevens*, 559 U.S. 460, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010), in which the Supreme Court rejected an attempt to expand the narrow categories of speech unprotected by the First Amendment. The panel decision in this case effectively carves out a new category of speech that is afforded no First Amendment protection: speech between regulated professionals and their patients or clients that does not meet a vague legislatively-set "relevance" test.

In *Stevens*, the Supreme Court reviewed a federal statute that criminalized

depictions of animal cruelty, which was applied to a purveyor of animal fighting videos. The Supreme Court held that "[f]rom 1791 to the present . . . the First Amendment has permitted restrictions upon the content of speech in a few limited areas," and these limited areas were those "historic and traditional categories long familiar to the bar." *Stevens*, 559 U.S. at 468, 130 S.Ct. at 1584 (citations and quotations omitted) (listing categories of unprotected speech as: (i) obscenity; (ii) defamation; (iii) fraud; (iv) incitement; and (v) speech integral to criminal conduct). The Supreme Court rejected the creation of a new category of unprotected speech that would be derived by a categorical balancing test that weighed "the value of the speech against its societal costs." *Stevens*, 559 U.S. at 470-71, 130 S.Ct. at 1585-86. The Court also held that courts do not have "freewheeling authority to declare new categories of speech outside the scope of the First Amendment" and must demonstrate that speech has been historically unprotected to fall outside the First Amendment's protection. *Stevens*, 559 U.S. at 472, 130 S.Ct. at 1586. Reviewing the statute under traditional First Amendment doctrines, the Supreme Court held the statute to be unconstitutionally overbroad. *Stevens*, 559 U.S. at 474-78, 130 S.Ct. at 1587-90.

In rejecting an argument that the "serious value" of speech be employed as a test for First Amendment protection, the Supreme Court noted that

> Most of what we say to one another lacks religious, political, scientific, educational, journalistic, historical, or artistic value (let

> alone serious value), but it is still sheltered from government regulation. Even wholly neutral futilities come under the protection of free speech as fully as do Keats' poems or Donne's sermons.

*Stevens*, 559 U.S. at 479-80, 130 S.Ct. at 1591 (citations, quotations, and alterations omitted). Assuming *arguendo* that a doctor's counsel about firearms is "irrelevant" to medical treatment, that provides no basis for creating a new category of speech unprotected by the First Amendment. Even speech without serious value is protected, and the speech restricted here has established value and significance.

In applying this same framework to a criminal prosecution for false statements about receiving the Medal of Honor, the Supreme Court also struck down the statute. *U.S. v. Alvarez*, 132 S.Ct. 2537, 183 L.Ed.2d 574 (2012) (striking down Stolen Valor Act). Once again, the Court refused to create a new category of unprotected expression.

Applying this precedent to Florida's restrictions on truthful statements about gun safety, this Court should grant rehearing *en banc*, reverse, and conform the panel opinion to these binding Supreme Court decisions.

## CONCLUSION

**WHEREFORE**, *amicus curiae*, the American Bar Association, respectfully requests the Court grant rehearing of the panel decision *en banc* and reverse.

36208166.7

Dated:  August 25, 2014

Respectfully submitted,

 /s/ William C. Hubbard

Of Counsel:

Richard J. Ovelmen
Florida Bar No.  284904

Gary L. Sasso
Florida Bar No.  622575

William C. Hubbard*
President
American Bar Association
321 North Clark Street
Chicago, IL 60654
312-988-5000
abapresident@americanbar.org
*Counsel of Record

16

## CERTIFICATE OF COMPLIANCE

Undersigned counsel hereby certifies that this brief complies with the requirements of Fed. R. App. P. 32(a)(7)(B)(i) and 11th Cir. R. 35-6 because the brief, exclusive of the Cover Page, Certificate of Interested Persons and Corporate Disclosure Statement, Statement of Counsel, Certificate of Service, Table of Contents, Table of Citations, and this Certificate, is no longer than 15 pages and is printed in 14 point Times New Roman proportionally spaced typeface.

/s/ William C. Hubbard
William C. Hubbard

36208166.7

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2014, a true copy of the foregoing was served by Notice of Electronic Filing generated by ECF upon all counsel of record:

| | |
|---|---|
| Pamela J. Bondi, Attorney General<br>Timothy D. Osterhaus Solicitor General<br>Jason Vail, Assistant Attorney General<br>Diane G. DeWolf, Deputy Solicitors General<br>Rachel E. Nordby, Deputy Solicitors General<br>Office of the Attorney General<br>PL-01, The Capitol<br>Tallahassee, FL 32399 | Douglas Hallward-Driemeier<br>Bruce S. Manheim, Jr.<br>Mariel Goetz<br>Ropes & Gray LLP<br>700 12th Street, NW, Suite 900<br>Washington, DC 20005-3948 |
| Elizabeth N. Dewar<br>Ropes & Gray LLP<br>Prudential Tower<br>80 Boylston Street<br>Boston, MA 02199-3600 | Jonathan E. Lowy<br>Daniel R. Vice<br>Brady Center to Prevent Gun Violation<br>1225 Eye Street, NW, Suite 1100<br>Washington, DC 20005 |
| Edward Maurice Mullins<br>Hal Michael Lucas<br>Astigarraga Davis Mullins & Grossman<br>701 Brickell Avenue 16th Floor<br>Miami, FL 33131-2847 | Dennis Gary Kainen<br>Weisberg & Kainen<br>1401 Brickell Avenue<br>Suite 800<br>Miami, FL 33131-3554 |
| Charles J. Cooper<br>David H. Thompson<br>Peter A. Petterson<br>Cooper and Kirk, PLLC<br>1523 New Hampshire avenue, NW<br>Washington, D.C. 20036 | John C. Eastman<br>Anthony T. Caso<br>Center for Constitutional Jurisprudence<br>c/o Chapman University School of Law<br>One University School of Law<br>One University Drive<br>Orange, CA 92886 |

/s/ William C. Hubbard

William C. Hubbard

36208166.7