Case No. 12-14009

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

DR. BERND WOLLSCHLAEGER, *et al.*,
Plaintiffs/Appellees/Petitioners,

vs.

GOVERNOR OF THE STATE OF FLORIDA, *et al.*,
Defendants/Appellants/Respondents.

Appeal from the United States District Court
For the Southern District of Florida

**BRIEF *AMICUS CURIAE* OF AMERICAN MEDICAL ASSOCIATION, AMERICAN ACADEMY OF PEDIATRICS, AMERICAN ACADEMY OF CHILD AND ADOLESCENT PSYCHIATRY, AMERICAN ACADEMY OF FAMILY PHYSICIANS, AMERICAN OSTEOPATHIC ASSOCIATION, AMERICAN COLLEGE OF PHYSICIANS, AMERICAN COLLEGE OF SURGEONS, AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS, AND AMERICAN CONGRESS OF OBSTETRICIANS AND GYNECOLOGISTS SUBMITTED IN SUPPORT OF PETITION FOR REHEARING *EN BANC* OF PLAINTIFFS/APPELLEES**

Jon N. Ekdahl
Leonard A. Nelson
American Medical Association
330 N. Wabash Ave
Chicago, IL 60611
(312) 464-5532

Richard H. Levenstein
Kramer, Sopko & Levenstein, P.A.
2300 SE Monterey Rd., Suite 100
Stuart, FL 34995
(772) 288-0048

*Of Counsel*

*Counsel of Record for Amici*

## Certificate of Interested Persons and Corporate Disclosure Statement

*Amici* certify that, to the best of their knowledge, the Certificate of Interested Persons in the Petition for Rehearing *En Banc* is complete.

Pursuant to Federal Rule of Appellate Procedure 26.1, *amici* state that they have no parent corporation and no corporation, publicly held or otherwise, owns 10% or more of any of their stock.

## Rule 35 Certification

*Amici* and their counsel adopt the first paragraph of the Rule 35 Certification set forth in the Petition for Rehearing *En Banc* (which concerns the exceptional importance of this appeal).

/s/ Richard H. Levenstein
Attorney for *Amici Curiae*

# Table of Contents

|  | Page |
|---|---|
| Certificate of Interested Persons and Corporate Disclosure Statement | i |
| Rule 35 Certification | i |
| Table of Authorities | iii |
| Statement of the Issues | 1 |
| Summary of the Argument | 1 |
| Argument and Citations of Authority | 2 |
|     I.    The Panel Opinion, Which Subjects State Laws Regulating Physicians' Professional Communications To Only Rational-Basis Review, Will Denigrate The Practice of Medicine. | 2 |
|     II.   The Panel Opinion Will Lead to Disrespect for the Law. | 9 |
| Conclusion | 11 |
| Certificate of Service | 14 |

# Table of Authorities

|  | Page(s) |
|---|---|
| **Cases** | |
| *Bates v. State Bar of Arizona*, 433 U.S. 350 (1977) | 4 |
| *Baze v. Rees*, 553 U.S. 35 (2008) | 4 |
| *Cox v. Louisiana*, 379 U.S. 536 (1965) | 10 |
| *Cruzan v. Missouri Dep't. of Health*, 497 U.S. 261 (1990) | 4 |
| *Ferguson v. City of Charleston*, 532 U.S. 67 (2001) | 4 |
| *Gonzales v. Oregon*, 546 U.S. 243 (2003) | 4 |
| *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495 (1952) | 10 |
| *National Federation of Independent Business v. Sebelius*, 132 S.Ct. 2566 (2012) | 4 |
| *Roe v. Wade*, 410 U.S. 113 (1973) | 4 |
| *Vacco v. Quill*, 521 U.S. 793 (1997) | 4 |
| *Washington v. Glucksberg*, 521 U.S. 702 (1997) | 4 |
| **United States Constitution** | |
| First Amendment | 1,2 |
| **Statutes** | |
| Fla. Stat. § 790.338 | *Passim* |
| **Bills Introduced in State Legislatures** | |
| MO HB 1439 (2014) | 7 |

OH SB 165 (2014)     7

OK HB 2022 (2014)     7

TN HB 1827 (2014)     7

WV HB 2502 (2014)     7

SC HB 3416 (2013)     7

**Other Authorities**

   **American Medical Association**     4,5
   *Code of Medical Ethics*

Preamble     9

*Principle of Medical Ethics* IV     5

*Principle of Medical Ethics* VIII     9

E-10.01, Fundamental Elements of the Patient-Physician Relationship     5

E-10.015, The Patient-Physician Relationship     5

   **American Medical Association Health Policies**

H-140.900, Declaration of Professional Responsibility     7,8

H-145.990, Guidelines for Prevention of Firearm Accidents in Children     7,8

   **Medical Journal Articles**

B. Cooke, *et al.*, "Firearms Inquiries in Florida: 'Medical Privacy' or Medical Neglect?" 40 *J. Am. Acad. Psychiatry Law* 399 (2012)     6

L. Snyder, "American College of Physicians Ethics　　6
　　Manual (6th Ed.), 156 *Annals of Internal*
　　*Medicine* 73 (2012)

J. Schaechter, *et al.*, "Protecting the Patient-Physician　　7
　　Relationship in Florida,"
　　167 *JAMA Pediatrics* 317 (2013)

## Statement of the Issues

The petition for rehearing presents two issues: (1) is the panel decision in direct conflict with Supreme Court precedent, and (2) does this proceeding involve a question of exceptional importance. Because the first issue is fully explored in the dissenting opinion of Judge Wilson and in the petition for rehearing itself, this brief is confined to the second issue: the exceptional importance of this case.

## Statement of Facts

*Amici* adopt the facts as stated in the dissenting opinion of Judge Wilson. July 25, 2014 opinion ("Op.") at 66-79.

## Summary of the Argument

Based on the panel decision, a law that restricts the ability of physicians to communicate freely and truthfully with their patients (and making notations in the medical records pertaining to those patients) on matters that may affect their patients' health and safety is valid if it passes no more than minimal, rational basis scrutiny. If this precedent is upheld, it will denigrate the practice of medicine, and it will lead to disrespect for the law. This case is therefore of exceptional importance – worthy of *en banc* review.

## Argument and Citations of Authority

I. **The Panel Opinion, Which Subjects State Laws Regulating Physicians' Professional Communications to Only Rational-Basis Review, Will Denigrate the Practice of Medicine.**

The issue in this case is whether a Florida statute, the Florida Firearm Owners Privacy Act ("FOPA"), is valid under the First Amendment. FOPA has essentially one purpose: to restrict physicians from communicating freely with their patients (and making notations in the medical records pertaining to those patients) on issues relating to the ownership or possession of firearms or ammunition by the patients or by members of the patients' family. Op. 67, 73, 150.

The American Medical Association ("AMA"), the American Academy of Pediatrics ("AAP"), and numerous other medical organizations have recommended that physicians routinely ask their patients about possession of firearms in order to provide pertinent information about gun safety. Op. 66-67. Such questions are generally asked in the context of obtaining general background information on home safety, which may include such topics as the possession of dangerous chemicals or poisons, use of car seats, or ownership of a back yard swimming pool. Op. 21. There is no disagreement within the medical community that providing patients with information about firearm safety is a valid aspect of preventive care and thus

2

beneficial to public health. Op. 68. Further, it is undisputed that, in reasonable response to FOPA, the plaintiff physicians have censured their communications with their patients. Op. 21. Nevertheless, the panel majority held FOPA valid under this First Amendment challenge.

The panel majority found that physicians' professional communications to their patients "approach a nadir" of First Amendment protections. Op. 38-39. These communications are characterized as "conduct" (Op. 4), which is only "incidental" to the practice of medicine. Op. 45-46, 56. Patient-physician communications are thus treated like run-of-the-mill commercial transactions, without special regard to their expressive aspect. Under this rationale, because FOPA, which demands self-censorship from physicians, can be justified under some rational basis, it should be upheld. Op. 43, 59, 86. If physicians thereby compromise the quality of their professional care, that is simply a concern of the Florida Legislature and falls outside the ambit of the First Amendment. Op. 33-38.

While it is certainly true that it was the Florida General Assembly, and not this Court, which passed FOPA, the panel decision nevertheless denigrates the practice of medicine. Medicine, quite simply, is not an arms-length transaction between buyer and seller. It invokes more than impersonal conduct. To be effective, it requires a special bond of trust

3

between patient and physician, which depends for its existence on the ability to communicate freely.

Physicians are regularly called upon to counsel or prescribe treatments with unpleasant or possibly adverse consequences for their patients. Medications have side effects; surgery may risk complications. Thus, medical care is not necessarily a clear-cut process. Physicians must know all pertinent facts before recommending (or not recommending) a treatment option. Patients must believe in their physicians' absolute honesty and fidelity when relying on their physicians' advice. Without a sense of complete openness and mutual trust, the practice of medicine is compromised.

The American Medical Association ("AMA") *Code of Medical Ethics*,[1] which is the most widely recognized standard of ethical medical conduct in the United States and which is regularly cited as authoritative by the judicial system,[2] recognizes these core principles as the basis of effective

---

[1] The *Code of Medical Ethics* can be found on the AMA website at http://www.ama-assn.org/ama/pub/physician-resources/medical-ethics/code-medical-ethics.page.

[2] *E.g., National Federation of Independent Business v. Sebelius*, 132 S.Ct. 2566, 2611 (2012) (Ginsberg, J., concurring in part and dissenting in part); *Baze v. Rees*, 553 U.S. 35, 64 (2008) (Alito, J., concurring); *Gonzales v. Oregon*, 546 U.S. 243, 286 (2003) (Thomas, J., dissenting); *Ferguson v. City of Charleston*, 532 U.S. 67 (2001); *Vacco v. Quill*, 521 U.S. 793, 801 (1997); *Washington v. Glucksberg*, 521 U.S. 702, 731 (1997); *Cruzan v. Missouri Dep't. of Health*, 497 U.S. 261 (1990); *Bates v. State Bar of Arizona*, 433 U.S. 350, 369-370, n. 20 (1977); *Roe v. Wade*, 410 U.S. 113, 144 n. 9 (1973).

medical practice. Thus, Ethical Opinion E-10.01,[3] entitled "Fundamental Elements of the Patient-Physician Relationship," states the following:

> From ancient times, physicians have recognized that the health and well-being of patients depends upon a collaborative effort between physician and patient. Patients share with physicians the responsibility for their own health care. The patient-physician relationship is of greatest benefit to patients when they bring medical problems to the attention of their physicians in a timely fashion, provide information about their medical condition to the best of their ability, and work with their physicians in a mutually respectful alliance. ... The patient has the right to receive information from physicians and to discuss the benefits, risks, and costs of appropriate treatment alternatives.

Likewise, Ethical Opinion E-10.015, entitled "The Patient-Physician Relationship," observes: "The relationship between patient and physician is based on trust."

It is certainly true that physician respect for the right of patients to make their own medical choices is itself an element of the patient-physician relationship. *E.g., Principle of Medical Ethics* IV – "A physician shall respect the rights of patients."[4] Ethical Opinion 10.01 (3) – "The patient has the right to courtesy, respect, [and] dignity." However, FOPA does not foster that goal; in fact, it detracts from it.

---

[3] Ethical opinions and reports of the AMA Council on Ethical and Judicial Affairs are a part of the *Code of Medical Ethics*. Ethical opinions are designated by the letter "E" followed by a number indicating where the opinion is catalogued within the *Code of Medical Ethics*.

[4] The *Principles of Medical Ethics*, which are somewhat distinct from the opinions and reports of the AMA Council on Ethical and Judicial Affairs, are also part of the *Code of Medical Ethics*.

5

The problem is that when physicians must restrict their communications with their patients, the restriction inherently creates distrust. Patients are astute observers of their physicians' speech and conduct. They will know when their physicians are being "straight" with them and when their advice is guarded. See, B. Cooke, *et al.*, "Firearms Inquiries in Florida: 'Medical Privacy' or Medical Neglect?" 40 *J. Am. Acad. Psychiatry Law* 399, 403 (2012) (Noting probable disinclination of patients to seek counseling from their physicians when their physicians deliberately avoid topics). The ability to create a feeling of mutual respect and trust depends on human interactions, developed with a sense of openness. *See*, L. Snyder, "American College of Physicians Ethics Manual (6th Ed.), 156 *Annals of Internal Medicine* 73, 78 (2012) ("Physicians must strive to create an environment in which honesty can thrive").

A politically motivated legal restriction, such as that mandated under FOPA, undermines that trust. If physicians must tailor their communications to meet a legislative agenda, they cannot fully respect their patients' needs. It would be the most commonplace of reactions for patients to distrust physicians who are lacking in candor. Further, if physicians are less than straightforward in one aspect of their patient relationships, it is natural for patients to suspect they may be untrustworthy in others.

If the panel decision stands, there is no reason to believe FOPA will remain an isolated intrusion on the patient-physician relationship. Legislators in other states have already introduced similar laws, which would curtail discussion of firearm ownership. J. Schaechter, *et al.*, "Protecting the Patient-Physician Relationship in Florida," 167 *JAMA Pediatrics* 317 (2013).[5] Following the district court's ruling that FOPA is unconstitutional, these bills were defeated. That may not be the case, however, if the panel ruling holds. Moreover, once it is known that physician communications can be compromised in one area, then politically empowered interests will be emboldened to compromise it in others. For example, a legislature, parroting the language of FOPA, might prohibit physicians from "unnecessarily harassing" patients about the amount of red meat or alcoholic beverages they consume or the number of cigarettes they smoke. *See* Judge Wilson's dissent. (Op. 111).

Footnote 11 of the majority opinion (Op. 34), which questions the consistency between the AMA Declaration of Professional Responsibility (AMA Policy H-140.900)[6] and the AMA Guidelines for Prevention of Firearm Accidents in Children (AMA Policy H-145.990) is misplaced. The

---

[5] *E.g.*, MO HB 1439 (2014); OH SB 165 (2014); OK HB 2022 (2014); TN HB 1827 (2014); WV HB 2502 (2014); SC HB 3416 (2013).

[6] Health policies of the AMA, which may sometimes include ethical content, are designated by the letter "H," followed by a number (which is used to locate the policy). They can be found on the AMA website at https://ssl3.ama-assn.org/apps/ecomm/PolicyFinderForm.pl?site=www.ama-assn.org&uri=/resources/html/PolicyFinder/policyfiles/HOD-TOC.HTM .

panel suggests that the requirement in the Declaration of Professional Responsibility that physicians respect patient privacy is somehow at odds with the protocol for questioning patients about firearm ownership. What the panel ignores is that both policy statements must be construed within the context of medical practice.

It is true that questions about firearm ownership may invoke privacy concerns for some patients. So, too, may questions about patients' sexual habits, drug usage, or other aspects of personal behavior. An even greater privacy intrusion may occur when a physician asks a patient to disrobe for a physical examination or allow the probing of a body cavity. All of these are standard aspects of medical practice, and physicians are trained and required to make the privacy invasions as unobtrusive as possible. Physicians respect their patients' privacy when they minimize the disruptive effect of those intrusions. But, privacy invasions there must be, or the practice of medicine will cease.

Finally, the panel is off point in its observation that physicians are regularly called upon to make difficult decisions, and so the obligation to comply with the FOPA is simply another of many such decisions for physicians. Op. 35. While it is certainly true that the practice of medicine involves the making of difficult decisions, the FOPA stands alone in

8

inhibiting physicians from communicating freely with their patients on subjects that they and the unanimous – not majority, not overwhelming, but unanimous – weight of the medical profession (as well as the dictates of common sense) feel should be communicated. Op. 66-67.[7]

## II. The Panel Opinion Will Lead to Disrespect for the Law.

Some laws cannot be obeyed. Ethically, physicians "must recognize responsibility to patients first and foremost." While physicians also have responsibilities "to society" and "to self," patient care is "paramount." AMA *Principles of Medical Ethics*, Preamble and *Principle* VIII.

Judge Wilson highlighted several aspects in which the FOPA, as a practical matter, cannot be reconciled with physicians' duties (legal, professional, and moral) to their patients. *E.g.*, Op. 68, 59. While the panel majority concludes that FOPA can be reconciled with the duties physicians owe to their patients, even it acknowledges the difficulties physicians must face in accommodating all their obligations. Op.34-35.

Thus, footnote 5 of the majority opinion (Op. 21) details the various ways in which the individual physician plaintiffs, through self-censorship, have attempted to comply with FOPA while still satisfying their duties to

---

[7] The panel majority is also wrong in its contention that FOPA is comparable to laws that may subject physicians to malpractice liability or administrative discipline for conduct that may implicate speech. Op. 5, 36-37, 54. What the majority fails to recognize is that FOPA defines a prior restraint on speech, limited to a politically designated topic, whereas these other laws do not.

9

their patients. Each of these physicians has clearly studied FOPA closely, each has a medical practice at least roughly comparable with the others, and each has access to expert legal counsel (*viz.*, the attorneys representing them in this lawsuit). Yet, they arrive at substantially different answers. Manifestly, they cannot all meet the required standards of medical care and of legal rectitude. Whatever may be the theorized possibility that physicians will somehow be able to comply with FOPA, practical considerations suggest otherwise.

The panel majority, at n. 12, counsels the plaintiff physicians (and, presumably, the many other doctors facing similar dilemmas) to seek advisory opinions from the Florida Board of Medicine on their "close case" problems. Op. 37. Again, this advice merits skepticism. The likelihood that a government agency such as the Board of Medicine will have the capacity or the willingness to provide meaningful answers to "close case" questions from thousands of physicians is doubtful. Moreover, a requirement of securing government approval before engaging in communication is the most odious form of censorship. *See, e.g., Cox v. Louisiana*, 379 U.S. 536, 557 (1965); *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 503 (1952) (requirement that permission to communicate be obtained in advance from

state official must be "especially condemned"). That, in practical effect, is what the panel majority is recommending.

*Amici* do not remotely suggest that, because some might see a law as unjust or immoral or the law may establish standards that are difficult to meet, the law should for those reasons be deemed invalid. What they do suggest, though, is that under the facts of this case, where the obligations of FOPA frequently run counter to the ethical duties physicians owe to their patients (as recognized by the unanimous voice of medical societies that have spoken on the subject), the situation is worth another look by this Court, sitting *en banc*.

## Conclusion

*Amici* have no doubt that this Court regularly decides a plethora of cases involving First Amendment issues. Undoubtedly, all of these cases are of great importance to the actual litigants, most of them invoke the image of the "slippery slope" leading to the wholesale loss of liberty, and some of them raise genuine concerns about the consistency of this Court's rulings with the holdings of the Supreme Court. What makes this case different, though, is that the communications at issue – those between physicians and their patients – are both a ubiquitous element of ordinary activity and are of critical importance to human welfare.

Thus, this case concerns more than the imposition of superficially minor restrictions on how Florida physicians are to communicate with their patients on a narrow subject and what entries physicians can make in their office records. In order to conclude that the Florida law was constitutional, the panel majority was compelled to – and did – determine that professional communications between physicians and patients should be subject to only rational-basis scrutiny. Op. 43. That conclusion has far-reaching repercussions, which are likely to lead to a broad denigration of medical practice. Moreover, in Florida at least, the practical effect of the opinion will lead to disrespect for the law.

As Judge Wilson said, "Doctors' jobs are hard enough when the State does not enact laws that force them to think twice about asking questions and providing information that may save lives." Op. 159. This case is of exceptional importance, and *amici* therefore urge the Court to grant the

petition for *en banc* rehearing.

Date: August 25, 2014

                                 Richard H. Levenstein,
                                 Attorney for *Amici Curiae*

| | |
|---|---|
| Jon N. Ekdahl | Richard H. Levenstein |
| Leonard A. Nelson | Kramer, Sopko & Levenstein, P.A. |
| American Medical Association | 2300 SE Monterey Rd., Suite 100 |
| 330 N. Wabash Ave | Stuart, FL 34995 |
| Chicago, IL 60611 | (772) 288-0048 |
| (312) 464-5532 | |

                           *Counsel for Amici Curiae*

## Certificate of Service

I HEREBY CERTIFY that a true copy of the foregoing brief has been delivered to a third-party carrier for express delivery to the following attorneys on August 25, 2014:

Pamela Jo Bondi
Allen c. Winsor
Timothy D. Osterhaus
Jason Vail
Diane G. DeWolfe
Rachel E. Nordby
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050

Douglas H. Hallward-Driemeier
Mariel Goetz
Ropes & Gray LLP
700 12th Street NW, Suite 900
Washington, D.C. 20005

An electronic version of the same was delivered to the Clerk and served electronically via the Court's CM/ECF system. In addition, 15 copies were sent by overnight courier, next business day delivery, to the Clerk of Court.

Date: August 25, 2014

_____
Richard H. Levenstein
Attorney for *Amici Curiae*

G:\DBD\LITIGATION\Wollschlaeger v. Farmer\court documents\Amicus Brief in Support of Petition for Rehearing.docx
8/25/2014 11:42 AM

14