Case No. 12-14009

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
_____

DR. BERND WOLLSCHLAEGER, *et al.*,
Plaintiffs/Appellees/Petitioners,

vs.

GOVERNOR OF THE STATE OF FLORIDA, *et al.*,
Defendants/Appellants/Respondents.
_____

Appeal from the United States District Court
For the Southern District of Florida
_____

**BRIEF *AMICUS CURIAE* OF AMERICAN MEDICAL ASSOCIATION, AMERICAN ACADEMY OF PEDIATRICS, AMERICAN ACADEMY OF CHILD AND ADOLESCENT PSYCHIATRY, AMERICAN ACADEMY OF FAMILY PHYSICIANS, AMERICAN OSTEOPATHIC ASSOCIATION, AMERICAN COLLEGE OF PHYSICIANS, AMERICAN COLLEGE OF SURGEONS, AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS, AND AMERICAN CONGRESS OF OBSTETRICIANS AND GYNECOLOGISTS SUBMITTED IN SUPPORT OF PLAINTIFFS/APPELLEES' 2015 PETITION FOR REHEARING *EN BANC***

Jon N. Ekdahl
Leonard A. Nelson
American Medical Association
330 N. Wabash Ave
Chicago, IL 60611
(312) 464-5532

*Of Counsel*

Richard H. Levenstein
Kramer, Sopko & Levenstein, P.A.
2300 SE Monterey Rd., Suite 100
Stuart, FL 34995
(772) 288-0048

*Counsel of Record for Amici*

## Certificate of Interested Persons and Corporate Disclosure Statement

*Amici* certify that, to the best of their knowledge, the Certificate of Interested Persons in the Petition for Rehearing *En Banc* is complete.

Pursuant to Federal Rule of Appellate Procedure 26.1, *amici* state that they have no parent corporation and no corporation, publicly held or otherwise, owns 10% or more of any of their stock.

## Rule 35 Certification

*Amici* and their counsel adopt the Rule 35 Certification set forth in the 2015 Petition for Rehearing *En Banc*.

**/s/ Richard H. Levenstein**
Richard H. Levenstein
Attorney for *Amici Curiae*

# Table of Contents

|  |  | Page |
|---|---|---|
| **Certificate of Interested Persons and Corporate Disclosure Statement** | | i |
| **Rule 35 Certification** | | i |
| **Table of Authorities** | | iii |
| **Statement of the Issues** | | 1 |
| **Statement of Facts** | | 1 |
| **Summary of the Argument** | | 3 |
| **Argument and Citations of Authority** | | 4 |
| **I.** | **FOPA Violates the First and Fourteenth Amendments.** | 4 |
| | **A.** FOPA Should be Subjected to Strict Scrutiny. | 4 |
| | **B.** Even Under Intermediate Scrutiny, FOPA Fails. There were no Genuine Injuries or Even Threatened Injuries to Florida Citizens, Which Would Mandate a Legislative Remedy. | 5 |
| **II.** | This Case is of Special Importance. Curtailment of Physician Speech Interferes with the Patient/Physician Relationship Needed for Proper Healthcare. | 8 |
| **Conclusion** | | 13 |
| **Certificate of Service** | | 14 |

# Table of Authorities

                                                                Page(s)

**Cases**

*Bates v. State Bar of Arizona*, 433 U.S. 350 (1977)     9

*Baze v. Rees*, 553 U.S. 35 (2008)     9

*Central Hudson Gas & Electric Corp. v. Public Services Commission*, 447 U.S. 557 (1980)     5

*Cruzan v. Missouri Dep't. of Health*, 497 U.S. 261 (1990)     9

*Ferguson v. City of Charleston*, 532 U.S. 67 (2001)     9

*Florida Bar v. Went For It, Inc.*, 515 U.S. 618 (1995)     5

*Gonzales v. Oregon*, 546 U.S. 243 (2003)     9

*National Federation of Independent Business v. Sebelius*, 132 S.Ct. 2566 (2012)     9

*Roe v. Wade*, 410 U.S. 113 (1973)     9

*Sorrell v. IMS Health Inc.*, 131 S.Ct. 2653 (2011)     6, 7, 12

*Trammel v. United States*, 445 U.S. 40 (1980)     8

*Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622 (1994)     5

*Vacco v. Quill*, 521 U.S. 793 (1997)     9

*Washington v. Glucksberg*, 521 U.S. 702 (1997)     9

*Wollschlaeger v. Governor of Florida*, 760 F.3d 1195 (11th Cir. 2014)     12

**United States Constitution**

| | |
|---|---|
| First Amendment | 3, 4, 7, 13 |
| Second Amendment | 7 |
| Fourteenth Amendment | 4 |

**Statutes**

| | |
|---|---|
| Fla. Stat. § 790.338 | *Passim* |

**Bills Introduced in State Legislatures**

| | |
|---|---|
| Indiana HB 1494 (2015) | 11 |
| North Carolina HB 699 (2015) | 11 |
| Texas HB 2823 (2105) | 11 |
| Texas SB 613 (2015) | 11 |

**Other Authorities**

| | |
|---|---|
| **American Medical Association** *Code of Medical Ethics* | 8, 9 |
| Preamble | 9 |
| *Principle of Medical Ethics* IV | 10 |
| *Principle of Medical Ethics* VIII | 9 |
| E-10.01, Fundamental Elements of the Patient-Physician Relationship | 9, 10 |
| E-10.015, The Patient-Physician Relationship | 9 |

**American Medical Association Health Policy**

H-145.990, Guidelines for Prevention of        1, 2, 4, 6, 7
       Firearm Accidents in Children

**Medical Journal Articles**

B. Cooke, *et al.*, "Firearms Inquiries in Florida:        10
       'Medical Privacy' or Medical Neglect?"
       40 *J. Am. Acad. Psychiatry Law* 399 (2012)

L. Snyder, "American College of Physicians Ethics        11
       Manual (6th Ed.), 156 *Annals of Internal*
       *Medicine* 73 (2012)

J. Schaechter, *et al.*, "Protecting the Patient-Physician        11
       Relationship in Florida,"
       167 *JAMA Pediatrics* 317 (2013)

S. Weinberger, *et al,* "Legislative Interference with the        12
       Patient-Physician Relationship,"
       367 *N Engl. J Med.* 1557 (2012)

# Statement of the Issues

The issue in this case is whether the Florida Firearm Owners Privacy Act ("FOPA"), Fla. Stat. § 790.338 (enacted in 2011), which restricts the ability of physicians to communicate freely with their patients on the issues of firearm possession and safety and to make notations in their medical records regarding these subjects violates the First and Fourteenth Amendments to the United States Constitution. *Amici* further adopt the Statement of the Issues set forth in the 2015 petition for rehearing *en banc*.

# Statement of Facts

In 1989, the American Medical Association ("AMA") passed Resolution H-145.990, which states as follows:

### Prevention of Firearm Accidents in Children

Our AMA (1) supports increasing efforts to reduce pediatric firearm morbidity and mortality by encouraging its members to (a) inquire as to the presence of household firearms as a part of childproofing the home; (b) educate patients to the dangers of firearms to children; (c) encourage patients to educate their children and neighbors as to the dangers of firearms; and (d) routinely remind patients to obtain firearm safety locks, to store firearms under lock and key, and to store ammunition separately from firearms;(2) encourages state medical societies to work with other organizations to increase public education about firearm safety; and (3) encourages organized medical staffs and other physician organizations, including state and local medical societies, to recommend programs for teaching firearm safety to children.

See, https://www.ama-assn.org/ssl3/ecomm/PolicyFinderForm.pl?site=www.ama-assn.org&uri=/resources/html/PolicyFinder/policyfiles/HnE/H-145.990.HTM as well as Judge Wilson's dissent to the July 28, 2015 opinion ["Op."], at 78.

This policy is part of the standard of preventive care that physicians owe their patients. It and similar policies of the other *amici* represent the supposed danger against which the Florida Legislature determined its citizenry needs protection.

The principal "incidents" upon which the Legislature relied to justify its enactment of FOPA are summarized at Op. n. 2. These are, essentially:

- A mother in Ocala became embroiled in a dispute with her pediatrician over a question about firearms possession. As a result, the pediatrician terminated their relationship and advised her she had thirty days to find a new doctor.

- Physicians refused to provide medical care to a nine-year-old because they wanted to know if the child's family had a firearm in their home. The context of the physicians' inquiry was undisclosed, and it may be they wanted the information for their personal safety.

- During a pediatric appointment, a pediatrician asked a state legislator to remove his gun from his home.

- A health care provider falsely stated that disclosing firearm ownership was a Medicaid requirement.

- While they were separated from their mother, medical staff asked her children whether the mother owned a firearm. Again, the context was undisclosed, so it is unclear whether the inquiry may have been related to the physical safety of those asking or if the mother may have exhibited aggressive actions against her children.

*Amici* further adopt the facts stated in Judge Wilson's dissenting opinion. [Op. at 78-90].

## Summary of the Argument

Although *amici* believe FOPA should be subjected to strict scrutiny under the First Amendment, the panel concluded that intermediate scrutiny should apply. Even if that conclusion were correct, the panel misapplied the intermediate scrutiny test under controlling Supreme Court precedent. The intermediate scrutiny test requires, *inter alia*, that a statute restricting speech must be founded on genuine state interests threatened with real harm, not unbounded speculation arising from imaginary or superficial grievances.

But, this statute was not triggered by any such interests or any such harms. Rather, it was triggered by concern for a particular issue not addressed in AMA Policy H-145.990, *viz.*, the right to own or possess firearms. This concern is unattached to substantial, realistic injuries or even substantial threats of such injuries that could reasonably arise as a result of physicians' making the H-145.990 inquiries.

Further, this is not an ordinary free speech case, where the claimed infringement to the plaintiffs is cabined within their right to express themselves – and the inevitably slippery slope concomitant to all infringements of First Amendment liberties. To the contrary, this case affects the right of patients to be given the best possible medical care from their physicians – and not just on the topic of firearm safety. It is no exaggeration to observe that lives hang in the balance.

### Argument and Citations of Authority

I. **FOPA Violates the First and Fourteenth Amendments.**

    A. **FOPA Should be Subjected to Strict Scrutiny Analysis.**

The 2015 petition for rehearing *en banc* argues that FOPA should be subject to strict scrutiny analysis under the First Amendment. *Amici* agree, and adopt the argument of plaintiffs on that point."

### B. Even Under Intermediate Scrutiny, FOPA Fails. There were no Genuine Injuries or Even Threatened Injuries to Florida Citizens, Which Would Mandate a Legislative Remedy.

The panel majority, after erroneously finding that intermediate scrutiny should apply, acknowledged that FOPA could pass that test only if FOPA directly advances a substantial state interest, as defined in *Central Hudson Gas & Electric Corp. v. Public Services Commission*, 447 U.S. 557, 566 (1980) [Op. 66], and that the concerns FOPA purportedly alleviates are, "real, not merely conjectural," as measured under *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 644 (1994) [Op. 69]. *See also*, *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 626 (1995) (requiring state to demonstrate that the harms it recites are "real"). The panel justified its decision by repeated invocations to "common sense." [Op. 71, 73]

Cutting to the chase, FOPA advances at most a minimal (not substantial) state interest, and the "harms" manifested in the incidents leading to its passage were insufficiently described, without reasonable explication of the circumstances. A "common sense" approach demonstrates just how far FOPA misses its target.

Pediatricians and other physicians who care for children as part of standard medical practice routinely inquire of their patients about firearm ownership in order to provide guidance on safety in the home. Such

inquiries are generally made on intake forms during initial "well-child" visits, along with a host of questions on a variety of topics, some of which are innocuous and some of which are deeply personal (*e.g.*, possession of toxic chemicals, use of seat belts or child safety seats in automobiles, legal and illegal drug usage of family members, indicators of child abuse, or aberrant behavior of other family members). There is no way for the physician to know, during this initial questioning, which answers will prove irrelevant to a patient's medical care and which will prove lifesaving.

In the 22 years between the adoption of AMA Policy H-145.990 and the enactment of FOPA, the Florida Legislature was able to cite only a handful of isolated incidents to justify its opposition to that policy. These incidents are at most anecdotal and conjectural. They are substantially insufficient to justify FOPA. *Sorrell v. IMS Health Inc.*, 131 S.Ct. 2653 (2011) (clarifying that "a few" anecdotal stories to justify legislation are, by themselves, insufficient to pass intermediate scrutiny). Nothing in the legislative record here demonstrates that anyone was more than temporarily deprived of medical care, that anyone suffered adverse medical effects or "harmful … medical care" [Op. 74], or that any patients actually answered any questions unrelated to their medical condition. Likewise, nothing in the record suggests that physicians violated patient confidences, that they

6

improperly disclosed information about their patients' gun ownership, or that they subjected patients to personal expressions about gun control, outside the boundaries of H-145.990. A few people's "feathers may have been ruffled," but that is all. Against this, as Judge Wilson noted, "the First Amendment rights of everyone who welcomes their doctors' inquiries and information on firearms have been infringed." [Op. 127].

The conclusion is inescapable: FOPA was passed to further a political viewpoint and not to enhance a legitimate state interest. Certainly, FOPA does not promote better healthcare. Likewise, FOPA does not protect Second Amendment rights. FOPA restricts physicians' ability to provide patients with information or advice that might cause the patients themselves to rethink their own firearm practices. Rethinking of a position, however, is everyone's right. It is at most marginally related to Second Amendment liberties. "[T]he fear that speech might persuade provides no lawful basis for quieting it." *Sorrell v. IMS Health Inc.*, 131 S.Ct. 2653, 2670 (2011).

While it is true that FOPA would seem to protect patient privacy, this, too, is a charade. Nothing in the legislative record gives any basis for finding that firearm possession is more deserving of privacy against obtrusive questions from physicians than myriad other topics, such as sexual practices or illegal drug usage. The desire of patients to keep firearm

7

possession secret from their physicians may be a matter of political preference, but it is not a substantial state concern. FOPA therefore fails the intermediate scrutiny test.

## II. This Case is of Special Importance. Curtailment of Physician Speech Interferes with the Patient/Physician Relationship Needed for Proper Healthcare.

Physicians are regularly called upon to counsel or prescribe treatments with potentially unpleasant consequences for their patients. Medications have side effects; surgery may risk complications. Thus, medical care is not necessarily a straightforward process. Physicians must know as many of the facts as possible before recommending (or not recommending) a treatment option. *See Trammel v. United States*, 445 U.S. 40, 51 (1980) (a physician must know "all that a patient can articulate"). Patients must believe in their physician's absolute honesty and fidelity when relying on their physician's advice. The exchange of information must not be limited, as without a sense of complete openness and mutual trust the practice of medicine is compromised.

The AMA *Code of Medical Ethics*,[1] which is the most widely recognized standard of ethical medical conduct in the United States and

---

[1] The *Code of Medical Ethics* can be found on the AMA website at http://www.ama-assn.org/ama/pub/physician-resources/medical-ethics/code-medical-ethics.page.

which is regularly cited as authoritative by the judicial system,[2] recognizes these core principles as the basis of effective medical practice. Thus, Ethical Opinion E-10.01,[3] entitled "Fundamental Elements of the Patient-Physician Relationship," states the following:

> From ancient times, physicians have recognized that the health and well-being of patients depends upon a collaborative effort between physician and patient. Patients share with physicians the responsibility for their own health care. The patient-physician relationship is of greatest benefit to patients when they bring medical problems to the attention of their physicians in a timely fashion, provide information about their medical condition to the best of their ability, and work with their physicians in a mutually respectful alliance. … The patient has the right to receive information from physicians and to discuss the benefits, risks, and costs of appropriate treatment alternatives.

Likewise, Ethical Opinion E-10.015, entitled "The Patient-Physician Relationship," observes: "The relationship between patient and physician is based on trust." Ethically, physicians "must recognize responsibility to patients first and foremost." While physicians also have responsibilities "to society" and "to self," patient care is "paramount." AMA *Principles of Medical Ethics*, Preamble and *Principle* VIII.

---

[2] *E.g., National Federation of Independent Business v. Sebelius*, 132 S.Ct. 2566, 2611 (2012) (Ginsberg, J., concurring in part and dissenting in part); *Baze v. Rees*, 553 U.S. 35, 64 (2008) (Alito, J., concurring); *Gonzales v. Oregon*, 546 U.S. 243, 286 (2003) (Thomas, J., dissenting); *Ferguson v. City of Charleston*, 532 U.S. 67 (2001); *Vacco v. Quill*, 521 U.S. 793, 801 (1997); *Washington v. Glucksberg*, 521 U.S. 702, 731 (1997); *Cruzan v. Missouri Dep't. of Health,* 497 U.S. 261 (1990); *Bates v. State Bar of Arizona*, 433 U.S. 350, 369-370, n. 20 (1977); *Roe v. Wade*, 410 U.S. 113, 144 n. 9 (1973).
[3] Ethical opinions and reports of the AMA Council on Ethical and Judicial Affairs are a part of the *Code of Medical Ethics*. Ethical opinions are designated by the letter "E" followed by a number indicating where the opinion is catalogued within the *Code of Medical Ethics.*

It is certainly true that physicians should respect the right of patients to make their own medical choices.  *E.g.*, *Principle of Medical Ethics* IV – "A physician shall respect the rights of patients."[4]  Ethical Opinion 10.01 (3) – "The patient has the right to courtesy, respect, [and] dignity."  However, FOPA does not foster that goal.  In fact, it detracts from it, because it prevents doctors from making fully informed recommendations and prevents patients from making fully informed choices.

When, as a result of legal pressures, physicians must restrict their patient communications, FOPA inherently creates distrust.  Physicians cannot fully respect their patients' rights if they must simultaneously attend a boundary imposed by political, not medical, considerations.

Conversely, patients are astute observers of their physicians' speech and conduct.  They will know when their physicians are being "straight" with them and when their advice is guarded.  See, B. Cooke, *et al.*, "Firearms Inquiries in Florida: 'Medical Privacy' or Medical Neglect?" 40 *J. Am. Acad. Psychiatry Law* 399, 403 (2012) (Noting probable disinclination of patients to seek counseling from their physicians when their physicians deliberately avoid topics).  The ability to create a feeling of mutual respect and trust depends on human interactions, developed with a sense of

---

[4] The *Principles of Medical Ethics*, which are somewhat distinct from the opinions and reports of the AMA Council on Ethical and Judicial Affairs, are also part of the *Code of Medical Ethics*.

openness.  *See*, L. Snyder, "American College of Physicians Ethics Manual (6th Ed.), 156 *Annals of Internal Medicine* 73, 78 (2012) ("Physicians must strive to create an environment in which honesty can thrive").

A politically motivated legal restriction on physician speech with a patient, such as that mandated under FOPA, undermines their mutual respect and trust.  It would be the most commonplace of reactions for patients to distrust physicians who are lacking in candor.  Further, if physicians are guarded in one aspect of their patient relationships, it is natural for patients to suspect they may be untrustworthy in others.  The panel opinion asserts: "no one argues that concededly irrelevant speech lies within the scope of good medical practice."  [Op. 76].  In fact, *amici* do argue the point. Depending on the circumstances, what at one time may seem to be irrelevant speech may ultimately turn out to lie within the scope of good medical practice.

Bills similar to FOPA have been introduced in other states, which would curtail discussion of firearm ownership.  J. Schaechter, *et al.*, "Protecting the Patient-Physician Relationship in Florida," 167 *JAMA Pediatrics* 317 (2013)**.**  Just in 2015, bills were filed in Indiana (HB 1494), North Carolina (HB 699), and Texas (HB 2823/ SB 613).  Furthermore, encroachment on the patient-physician relationship, an increasingly common

11

subject of legislative attention, is likely to be galvanized if the panel decision stands. *See*, S. Weinberger, *et al,* "Legislative Interference with the Patient-Physician Relationship," 367 *N Engl. J Med.* 1557 (2012). Thus, the injury to healthcare may spread.

The conclusion, then, is that this is not an ordinary Freedom of Speech case, in which the harm to society is "merely" that a voice is muted. Certainly, that element is present here. But, more than that, FOPA deprives patients of optimal medical advice, not only in regard to firearm safety but in regard to healthcare generally. As Judge Wilson observed, "licensed professionals' speech is particularly valuable." [Op. 105].

The panel majority itself appears to have recognized the exceptional nature of this case, as evidenced by both its length, and the substantial revisions made on reconsideration. *Wollschlaeger v. Governor of Florida*, 760 F.3d 1195 (11th Cir. 2014).

"[I]n the fields of medicine and public health, information can save lives." *Sorrell v. IMS Health Inc.*, 131 S.Ct. 2653 (2011). As *amici* stated at the outset, this is a case of life and death.

## Conclusion

FOPA concerns more than the imposition of superficially minor restrictions on how Florida physicians are to communicate with their patients on a narrow subject and what entries physicians can make in their office records. FOPA violates the First Amendment, whether under strict or intermediate scrutiny analysis. Moreover, what makes this case different from the usual First Amendment case is that the communications at issue – those between physicians and their patients – are both a ubiquitous element of ordinary activity and are of critical importance to human welfare.

As Judge Wilson said, "Doctors' jobs are hard enough when the State does not enact laws that force them to think twice about asking questions and providing information that may save lives." [Op. 150]. This case is of exceptional importance, and *amici* therefore urge the Court to grant the 2015 petition for rehearing *en banc*.

/s/ Richard H. Levenstein
Richard H. Levenstein,
Attorney for *Amici Curiae*

Jon N. Ekdahl  
Leonard A. Nelson  
American Medical Association  
330 N. Wabash Ave  
Chicago, IL 60611  
(312) 464-5532  

Richard H. Levenstein  
Kramer, Sopko & Levenstein, P.A.  
2300 SE Monterey Rd., Suite 100  
Stuart, FL 34995  
(772) 288-0048  

*Counsel for Amici Curiae*

## Certificate of Service

I HEREBY CERTIFY that a true copy of the foregoing brief has been delivered to a third-party carrier for express delivery to the following attorneys on August 28, 2015:

Pamela Jo Bondi
Allen C. Winsor
Timothy D. Osterhaus
Jason Vail
Diane G. DeWolfe
Rachel E. Nordby
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050

Douglas H. Hallward-Driemeier
Mariel Goetz
Ropes & Gray LLP
700 12th Street NW, Suite 900
Washington, D.C. 20005

An electronic version of the same was delivered to the Clerk and served electronically via the Court's CM/ECF system. In addition, 15 copies were sent by overnight courier, next business day delivery, to the Clerk of Court.

Date: August 28, 2015

                                      **/s/ Richard H. Levenstein**
                                      Richard H. Levenstein
                                      Attorney for *Amici Curiae*