# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT
Case No.: 12-14009
D.C. Docket No.: 1:11-cv-22026-MGC

---

DR. BERND WOLLSCHLAEGER, DR. JUDITH SCHAECHTER, DR. TOMMY SCHECHTMAN, AMERICAN ACADEMY OF PEDIATRICS, FLORIDA CHAPTER, AMERICAN ACADEMY OF FAMILY PHYSICIANS, FLORIDA CHAPTER, AMERICAN COLLEGE OF PHYSICIANS, FLORIDA CHAPTER, INC., ROLAND GUTIERREZ, STANLEY SACK, SHANNON FOX-LEVINE,
*Petitioners-Appellees,*

vs.

GOVERNOR OF THE STATE OF FLORIDA, et al.,
*Respondents-Appellants.*

---

Appeal from the United States District Court
for the Southern District of Florida

---

## BRIEF OF THE AMERICAN BAR ASSOCIATION AS *AMICUS CURIAE* IN SUPPORT OF PETITION FOR REHEARING *EN BANC* OF PETITIONERS-APPELLEES, DR. BERND WOLLSCHLAEGER, ET AL.

---

Of Counsel:

Richard J. Ovelmen
Florida Bar No. 284904

Gary L. Sasso
Florida Bar No. 622575

Michael D. Sloan
Florida Bar No. 104385

Paulette Brown*
President
American Bar Association
321 North Clark Street
Chicago, IL 60654
312-988-5000
abapresident@americanbar.org
*Counsel of Record

*Counsel for Amicus Curiae American Bar Association*

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *amicus curiae* American Bar Association ("ABA") discloses that it is an Illinois nonprofit corporation, has no parent corporation, and does not issue shares of stock. ABA is a national organization representing its nearly 400,000 attorney members, law student members, and non-lawyer "associates" in related fields.[*]

On behalf of *amicus curiae*, American Bar Association, the undersigned certifies that the Certificate of Interested Persons included within Petitioners-Appellees' Petition for Rehearing *En Banc* is complete.

/s/ Paulette Brown
Paulette Brown

---

[*] No party's counsel authored this brief, and no party, its counsel, or other person contributed money intended to fund the brief's preparation or submission other than ABA and its members.

# STATEMENT OF COUNSEL

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decisions of the Supreme Court of the United States and that consideration by the full Court is necessary to secure and maintain uniformity of decisions in this Court: *Sorrell v. IMS Health Inc.*, 131 S.Ct. 2653, 180 L.Ed.2d 544 (2011); *Edenfield v. Fane*, 507 U.S. 761, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993); *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

I express a belief, based on a reasoned and studied professional judgment, that this appeal involves one or more questions of exceptional importance: Whether the Florida Statutes at issue impose an impermissible restriction on speech by health care practitioners to their patients about firearms and firearm safety, under the First Amendment rights applicable to state regulated professionals as incorporated by the Fourteenth Amendment.

/s/ Paulette Brown
Paulette Brown

i

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ...................................................... C-1 of 1

STATEMENT OF COUNSEL .................................................. i

TABLE OF CITATIONS ...................................................... iii

STATEMENT OF THE ISSUE .................................................1

IDENTITY AND INTEREST OF AMICUS CURIAE ............................1

ARGUMENT ..................................................................4

I.     This Case Involves A Question Of Exceptional Public Importance. ...........................................................5

II.    Rehearing En Banc Is Necessary To Resolve This Case Consistent With Binding Supreme Court Precedent. ...........9

     A.    The Statutes At Issue Are Content-Based, Viewpoint Discriminatory, And Speaker-Based Restrictions That Conflict With Supreme Court Precedent. ..................9

     B.    The Statutes At Issue Are Paternalistic Restrictions On Truthful Information Enacted To Restrict Ideas the State Disfavors. ................................................12

     C.    Contrary To Supreme Court Precedent, The Panel Decision Restricts Truthful Speech By Regulated Professionals. ........................................13

CONCLUSION ................................................................15

CERTIFICATE OF COMPLIANCE ............................................16

CERTIFICATE OF SERVICE ..................................................17

36208166.4

# TABLE OF CITATIONS

**Page**

## Cases

*Bates v. State Bar of Arizona*,
433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977)........................................12

*Edenfield v. Fane*,
507 U.S. 761, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993) ................................i, 13

*Linmark v. Township of Willingboro*,
431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977)..........................................12

*Nat'l Ass'n for Advancement of Colored People v. Button*,
371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963)................................... i, 13, 14

*Sorrell v. IMS Health Inc.*,
131 S.Ct. 2653, 180 L.Ed.2d 544 (2011).......................................... i, 10, 11, 12

*Thomas v. Collins*,
323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945)........................................14, 15

*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*,
425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976).....................................i, 12

*Wollschlaeger v. Governor of Florida*,
--- F.3d ---, Case No. 12-14009 (11th Cir. July 28, 2015) ...............................1, 9

## Statutory Authorities

Section 381.026, Florida Statutes ...............................................................................4

Section 456.072, Florida Statutes ...............................................................................4

Section 790.338(2), Florida Statutes........................................................................2

Section 790.338, Florida Statutes ...............................................................................4

36208166.4

# Other Authorities

ABA Leadership, House of Delegates, *General Information, available at* http://www.abanet.org/leadership/delegates.html ............................................3

ABA Report #111 ........................................................................................4, 6, 7, 8

AM. J. PREVENTIVE MED. 173, 179 (2004)................................................................6

American Medical Association, *Prevention of Firearm Accidents in Children*, Policy H-145.990, Res. 165, I-89 .........................................................8

American Psychiatric Association, Position Statement No. 200107........................8

Centers for Disease Control and Prevention, *10 Leading Causes of Death by Age Group* (Sept. 3, 2010) *available at*: http://www.cdc.gov/injury/wisqars/images/Death_by_Age_2007-a.gtf ...................................................................................................................6

Disease Control and Prevention, *Suicide: Facts at a Glance* (Summer 2010), *available at*: http://www.cdc.gov/violenceprevention/pdf/Suicide_DataSheet-a.pdf ..........................................................................................................7

Disease Control and Prevention, *WISQARS Nonfatal Injury Reports*, *available at*: http://webappa.cdc.gov/sasweb/ncipc/nfirates2001.html; ...................7

Erin G. Richardson & David Hemenway, *Homicide, Suicide, and Unintentional Firearm Fatality: Comparing the United States With Other High-Income Countries, 2003* ..................................................................7

Information on the Standing Committee on Gun Violence is available at http://www.americanbar.org/groups/committees/gun_violence.html ..................3

J. TRAUMA, INJURY, INFECTION, & CRITICAL CARE at 1 2010.................................7

Renee Johnson, M.P.H. et al., *Firearm Ownership and Storage Practices, U.S. Households, 1992-2002* .............................................................6

36208166.4

Teresa L. Albright, M.D. & Sandra K. Burge, Ph.D., *Improving Firearm Storage Habits:  Impact of Brief Office Counseling by Family Physicians*, 16 J. AM. BOARD FAMILY PRACTICE 1, 40 (Jan.-Feb. 2003). ..................................................................................6, 7

*WISQARS Injury Mortality Reports, 1999-2007*, *available at*: http://webappa.cdc.gov/sasweb/ncipc/mortrate10_sy.html ................................7

## Rules

Fed. R. App. P. 32(a)(5)(A) .......................................................................16

Fed. R. App. P. 35(a)(1)................................................................................5

Fed. R. App. P. 35(a)(2)................................................................................4

Federal Rule of Appellate Procedure 26.1...................................................i

Federal Rule of Appellate Procedure 29(b) ................................................1

FRAP, 11th Cir. R. 35-6 ........................................................................1, 16

## Constitutional Provisions

First Amendment...............................................................................*passim*

Fourteenth Amendment ...........................................................................i, 1

36208166.4

**STATEMENT OF THE ISSUE**

Whether this Court should grant rehearing *en banc* to review the panel decision upholding under intermediate scrutiny a restriction on speech by health care practitioners to their patients about firearms and firearm safety, which was challenged as a violation of the First Amendment rights of state regulated professionals as incorporated by the Fourteenth Amendment?

**IDENTITY AND INTEREST OF AMICUS CURIAE**

Pursuant to a motion for leave under Federal Rule of Appellate Procedure 29(b) and 11th Cir. R. 35-6, the American Bar Association ("ABA") as *amicus curiae* respectfully submits this brief in support of the Petitioners/Appellees' petition for rehearing *en banc* in *Wollschlaeger v. Governor of Florida*, --- F.3d ---, Case No. 12-14009 (11th Cir. July 28, 2015). The Panel *sua sponte* vacated its original opinion and issued a revised version, in which the Panel majority acknowledged that First Amendment rights are implicated but ruled, under an intermediate scrutiny analysis, that those rights are overcome by Florida's interest in protecting against "a substantial intrusion upon patient privacy," *id.*, slip op. at 5, that would result from a physician's inquiry or record-keeping concerning a patient's ownership of firearms.

The ABA urges that rehearing be granted because of the important First Amendment issues implicated by the Panel's split decision, which permits the

101857534.4

State of Florida to prohibit otherwise protected speech about firearm safety and related health concerns from licensed medical professionals to their patients unless the practitioner "in good faith believes that this information is relevant to the patient's medical care or safety, or the safety of others[.]" § 790.338(2), Fla. Stat. This reasoning could similarly be applied with precedential force to other regulated professionals (including attorneys), to limit their advice to patients and clients unless it meets some equally vague "relevance" test set by government officials. Rehearing *en banc* is also necessary because this reasoning does not conform to binding precedent of the Supreme Court of the United States.

The ABA is one of the largest voluntary professional membership organizations and is the leading association of legal professionals in the United States. Its nearly 400,000 members practice in all fifty states and other jurisdictions. They include attorneys in private law firms, corporations, non-profit organizations, government agencies, prosecutor and public defender offices, as well as judges, legislators, law professors, law students, and non-lawyer "associates" in related fields.[1] For its fiscal year 2014-2015, the ABA had 18,537 lawyer members, 2,653 law student members, and 528 non-lawyer associate

---

[1] Neither this brief nor the decision to file it should be interpreted to reflect the view of any judicial member of the ABA. No member of the Judicial Division Council participated in the adoption or endorsement of the positions in this brief, nor was it circulated to any member of the Judicial Division Council before filing.

101857534.4

members from the State of Florida.

Since its founding in 1878, the ABA has taken special responsibility for protecting the rights guaranteed by the Constitution, which include the First Amendment rights of health care practitioners and other regulated professionals. The predecessor in name to the ABA's Standing Committee on Gun Violence was created in November 1993, to address gun violence with comprehensive policy recommendations and to promote sensible measures within the law to prevent gun violence.[2] The Standing Committee has presented several resolutions to the ABA House of Delegates for adoption as ABA policy that support and advance this mission.[3]

Of specific relevance to the question before the *en banc* Court is an ABA policy adopted in 2012 that opposes "governmental actions and policies that limit the rights of physicians and other health care providers to inquire of their patients whether they possess guns and how they are secured in the home or to counsel

---

[2] Information on the Standing Committee on Gun Violence is available at http://www.americanbar.org/groups/committees/gun_violence.html

[3] Only resolutions that are adopted by the ABA's House of Delegates ("HOD") become ABA policy, but not their accompanying reports. The HOD is comprised of 560 delegates representing states and territories, state and local bar associations, affiliated organizations, sections and divisions, ABA members, and the Attorney General of the United States, among others. *See* ABA Leadership, House of Delegates, General Information, *available at* http://www.abanet.org/leadership/delegates.html

101857534.4

their patients about the dangers of guns in the home and safe practices to avoid those dangers."  ABA Policy #111 (adopted August 2012) ("ABA Policy #111").[4] The accompanying report ("ABA Report #111") notes that legislation limiting the right of health care professionals to ask their patients such questions interferes with preventive care duties that are a foundation of modern medicine, and violates the First Amendment rights of both health care practitioners and their patients.[5]

Based on its enduring belief in the crucial importance of protecting First Amendment rights, including those required for open and unfettered dialogue between members of regulated professions (such as doctors and attorneys) and their patients or clients, and for the reasons stated below, the ABA urges this Court to grant *en banc* review and reverse the split panel decision.

## ARGUMENT

Review *en banc* of the panel decision should be granted.  First, under Fed. R. App. P. 35(a)(2), this case involves a question of exceptional importance: whether the Florida Statutes at issue (§§ 381.026, 456.072, and 790.338, Fla. Stats.) are constitutionally permissible restrictions of speech by health care professionals when advising their patients about firearm safety and storage in their

---

[4] Available at
http://www.americanbar.org/content/dam/aba/administrative/house_of_delegates/r esolutions/2012_hod_annual_meeting_111.authcheckdam.doc

[5] Indeed, the dissent in this case cited ABA Policy #111.  (Case No. 12-14009, Slip Op. at 80 n. 2).

4

homes, including those homes with children and other at-risk persons.

Second, under Fed. R. App. P. 35(a)(1), rehearing *en banc* is necessary to maintain uniformity with United States Supreme Court precedent: the panel decision improperly upholds a restriction on speech that is content-based, viewpoint discriminatory, and speaker-based; that uses an improper paternalistic rationale to justify the State's restriction on truthful and politically unpopular speech; and that, under the guise of regulating the medical profession, prohibits truthful speech that is consistent with the findings and recommendations of their professional societies and associations.

## I.     This Case Involves A Question Of Exceptional Public Importance.

This case presents a question of exceptional public importance: the ability of health care practitioners and their patients to engage in speech about firearm safety, storage, and dangers that is directed towards saving lives, particularly those of children and other at-risk persons. For this communication, asking about the ownership of a firearm or ammunition is a necessary first inquiry. This remains true irrespective of whether the practitioner has a pre-conceived good faith belief that the question is "relevant" to a patient's medical care, or whether government officials consider the question "irrelevant" to professional treatment. The State of Florida should not be permitted to eliminate this communication without review by the Court *en banc*.

5

As discussed above at p. 4, the ABA adopted Policy #111 after an extensive review of statistical and other empirical evidence demonstrating the extent and consequences of uncounseled gun security and storage in the home, and of the policies developed by various medical organizations for preventive health care and safety counseling for physicians to provide to owners of firearms.[6] That review, set out in ABA Report #111, demonstrates the exceptional importance of this conversation for doctors to initiate:

- "[O]ne-third of U.S. homes with children younger than eighteen have a firearm, and more than 40% of gun-owning households with children store their guns unlocked, with one-quarter of those homes storing them loaded."[7] (ABA Report #111 at 2).

- "Unintentional injury is a health hazard, and is the leading cause of death among children older than one year, adolescents, and young adults."[8] (ABA Report #111 at 2).

- According to the Centers for Disease Control and Prevention, "every day in

---

[6]  As quoted above, that Policy opposes "governmental actions and policies that limit the rights of physicians and other health care providers to inquire of their patients whether they possess guns and how they are secured in the home or to counsel their patients about the dangers of guns in the home and safe practices to avoid those dangers."

[7] Renee Johnson, M.P.H. et al., *Firearm Ownership and Storage Practices, U.S. Households, 1992-2002*, 27 AM. J. PREVENTIVE MED. 173, 179 (2004).  *See also* Teresa L. Albright, M.D. & Sandra K. Burge, Ph.D., *Improving Firearm Storage Habits: Impact of Brief Office Counseling by Family Physicians*, 16 J. AM. BOARD FAMILY PRACTICE 1, 40 (Jan.-Feb. 2003).

[8] Centers for Disease Control and Prevention, *10 Leading Causes of Death by Age Group* (Sept. 3, 2010) *available at*: http://www.cdc.gov/injury/wisqars/images/Death_by_Age_2007-a.gtf

101857534.4

America, thirty-eight children and teens are injured by firearms and eight are killed by firearms."[9]  (ABA Report #111 at 2).

- "Intentional injury is also a major health hazard, with suicide being a particular risk about which physicians counsel patients.  Suicide is the third leading cause of death among individuals aged 15 to 24 and is the second leading cause of death for individuals aged 25 to 34.[10]  Firearms are frequently used in suicide and suicide attempts, and suicide attempts committed with firearms are fatal more than 90% of the time.  Use of a firearm is the most common method of suicide among adult men – 55.7%."[11] (ABA Report #111 at 2).

- "Intentional and unintentional injury related deaths caused by firearms claim more lives than all injury sources except motor vehicles."[12]  (ABA Report #111 at 2).

- "Children aged 5 to 14 years in the United States are 11 times more likely to be killed accidentally with a gun than similarly aged children in other developed countries."[13]  (ABA Report #111 at 4).

- "The American Academy of Pediatrics recommends that parents of

---

[9] Centers for Disease Control and Prevention, *WISQARS Nonfatal Injury Reports*, *available at*:  http://webappa.cdc.gov/sasweb/ncipc/nfirates2001.html; *WISQARS Injury Mortality Reports, 1999-2007*, *available at*: http://webappa.cdc.gov/sasweb/ncipc/mortrate10_sy.html

[10] Centers for Disease Control and Prevention, *Suicide:  Facts at a Glance* (Summer 2010), *available at*: http://www.cdc.gov/violenceprevention/pdf/Suicide_DataSheet-a.pdf

[11] Centers for Disease Control and Prevention, *Suicide:  Facts at a Glance* (Summer 2010), *available at*: http://www.cdc.gov/violenceprevention/pdf/Suicide_DataSheet-a.pdf

[12] Teresa L. Albright, M.D. & Sandra K. Burge, Ph.D., *Improving Firearm Storage Habits:  Impact of Brief Office Counseling by Family Physicians*, 16 J. AM. BOARD FAMILY PRACTICE 1, 40 (Jan.-Feb. 2003).

[13] Erin G. Richardson & David Hemenway, *Homicide, Suicide, and Unintentional Firearm Fatality:  Comparing the United States With Other High-Income Countries, 2003*, J. TRAUMA, INJURY, INFECTION, & CRITICAL CARE at 1 2010.

101857534.4

pre-school aged children remove handguns from places where children live and play. They advise parents of adolescents that firearms in the home are particularly dangerous for this age group because of their propensity for impulsive, unplanned use resulting in suicide, homicide, or serious unintentional injuries." (ABA Report #111 at 2-3).

- Similarly, "[t]he American Medical Association adopted a policy to reduce pediatric firearm morbidity and mortality by encouraging its members to: (a) inquire as to the presence of household firearms as part of childproofing the home; (b) educate patients to the dangers of firearms to children; (c) encourage patients to educate their children and neighbors as to the dangers of firearms; and (d) routinely remind patients to obtain firearm safety locks, to store firearms under lock and key, and to store ammunition separately from firearms."[14] (ABA Report #111 at 3).

- For adult medical care, "[t]he American Psychiatric Association has recommended that 'health professionals and health systems should ask about firearm ownership whenever clinically appropriate in the judgment of the physician.'"[15] (ABA Report #111 at 3).

- "Safety counseling . . . is also shown to have concrete results. One study showed that after a single instance of verbal counseling, more than 58% of patients reported making changes to their gun storage habits." (ABA Report #111 at 2).

Preventive care is a pillar of modern medicine. For health care practitioners to meet their responsibilities, "they must be able to discuss a broad range of topics with their patients related to known risk factors." (ABA Report #111 at 1). Speech involving safety counseling on firearms in the home should not be chilled by a statutory requirement that, before health care practitioners can ask about

---

[14] American Medical Association, *Prevention of Firearm Accidents in Children*, Policy H-145.990, Res. 165, I-89.

[15] American Psychiatric Association, Position Statement No. 200107.

firearm and ammunition ownership, they must first establish a good faith belief that the questions are "relevant" to a particular patient's medical care. By extension, the State could similarly decide that other areas included in preventive care counseling, including use of child safety seats and safe storage of hazardous cleaning chemicals, should be subject to the vague, good faith "relevance" test contained in the Florida law.

As Judge Wilson noted in his dissent, explanations provided to the Panel by amicus curiae supporting the Act suggest that, "the perceived problem with doctors' truthful, non-misleading message regarding firearm safety was that it was working, so the message was silenced. That is classic viewpoint discrimination." *Wollschlaeger*, Slip Op. at 94, (Wilson, J., dissenting). This perceived basis for restricting the speech of health care practitioners – or any regulated professional – underscores the exceptionally important issues presented here.

## II. Rehearing *En Banc* Is Necessary To Resolve This Case Consistent With Binding Supreme Court Precedent.

Rehearing *en banc* is necessary to maintain uniformity with the binding precedent of the United States Supreme Court.

### A. <u>The Statutes At Issue Are Content-Based, Viewpoint Discriminatory, And Speaker-Based Restrictions That Conflict With Supreme Court Precedent.</u>

The statutes at issue here impose an unlawful content-based, viewpoint discriminatory, and speaker-based restriction on speech. The restriction is

9

content-based because it limits speech concerning firearm ownership and safety. The restriction is viewpoint discriminatory because it singles out a particular opinion for limitation and restraint (the opinion that it is dangerous to leave firearms and ammunition in accessible places when a home has children or other at-risk persons present). The restriction is speaker-based because it focuses its speech restraint on doctors. The restriction serves no compelling state interest, is not narrowly tailored, and fails even intermediate exacting scrutiny.

In *Sorrell*, the Supreme Court reviewed a statute that, among other things, restricted the sale and use of information for marketing purposes that detailed the pharmaceutical prescriptive practices of physicians. *Sorrell v. IMS Health Inc.*, 131 S.Ct. 2653, 2659-61, 180 L.Ed.2d 544 (2011). Because this restriction applied to "marketing purposes," but not to other purposes such as "educational communications," the Supreme Court determined the statute constituted a content-based restriction on its face. *Id*. at 2663. The Supreme Court held the statute was a viewpoint discriminatory restriction because it "target[s] those speakers [who promote brand-name drugs] and their messages for disfavored treatment." *Id*. The Supreme Court also held the statute was a speaker-based restriction because it "disfavors specific speakers, namely pharmaceutical manufacturers." *Id*.

In *Sorrell*, the Supreme Court rejected the argument that "heightened judicial scrutiny is unwarranted because its law is a mere commercial regulation."

*Sorrell*, 131 S.Ct. at 2664. The Court noted that "[a]s in previous cases . . . the outcome is the same whether a special commercial speech inquiry or a stricter form of judicial scrutiny is applied." *Id*. at 2667. Even under a commercial speech inquiry, the State must justify its interest in restricting the speech at issue, must tailor the restriction to fit a substantial government interest, and must "not seek to suppress a disfavored message." *Id*. at 2668. Here, the State of Florida attempts to suppress a politically disfavored message from health care practitioners concerning the dangers posed when firearms and ammunition are not properly stored and secured in the home, particularly when there are children or other at-risk persons present. If the State may direct a doctor not to talk about firearm safety, it may order a lawyer not to talk about the same, and could prohibit any regulated professional from addressing any politically sensitive issue with his or her clients.

In *Sorrell*, the Supreme Court noted that "in the fields of medicine and public health . . . information can save lives." *Sorrell*, 131 S.Ct. at 2664. The Supreme Court further explained it was doubtful that concern for "a few physicians who may have felt coerced and harassed" by marketers could sustain the broad content-based rule at issue. *Id*. at 2669.

Finally, it bears noting, in *Sorrell* the Supreme Court explained that "[i]n the ordinary case it is all but dispositive to conclude that a law is content-based and, in practice, viewpoint-discriminatory." *Sorrell*, 131 S.Ct. at 2667. The statutes at

issue in this case restrict speech from health care practitioners to patients about the dangers of firearms and proper firearm safety and storage. If doctors spoke to patients only about the benefits of firearm ownership, that speech would be permissible under the statute. That is plainly viewpoint discrimination, and it is impermissible under the First Amendment. Accordingly, the panel decision is inconsistent with *Sorrell*, and rehearing *en banc* should be granted.

**B.    The Statutes At Issue Are Paternalistic Restrictions On Truthful Information Enacted To Restrict Ideas the State Disfavors.**

The statutes at issue restrict the free flow of truthful information. They do so on the basis that patients will be better served by not giving them certain information and by not asking them certain questions. Such a paternalistic justification to restrict truthful information is not favored by the Supreme Court. *Sorrell*, 131 S.Ct. at 2663-64; *see also Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977) (viewing as "dubious any justification that is based on the benefits of public ignorance."); *Linmark v. Township of Willingboro*, 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977) (explaining that "the First Amendment disabled the State from achieving its goal by restricting the free flow of truthful information."); *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 770, 96 S.Ct. 1817, 1829, 48 L.Ed.2d 346 (1976) (noting that the best means to protect peoples' best interest "is to open the channels of communication rather than to close them."). Under these Supreme

Court cases, an exchange of information is good for its own sake.

Moreover, the Supreme Court has explained that it will not "turn away if it appears that the stated interests are not the actual interests served by the restriction." *Edenfield v. Fane*, 507 U.S. 761, 768, 113 S.Ct. 1792, 1798-99, 123 L.Ed.2d 543 (1993). Here, medical privacy rights are already protected by several statutes, as well as the doctor-patient privilege. Although doctors routinely ask their patients a host of personal questions during examinations that patients may not want to discuss or have entered into their medical records (which can range from eating habits, to the use of tobacco, alcohol or drugs, to matters of intimacy), the State of Florida has deemed it necessary to enact legislation allegedly to provide protection for a patient's privacy rights on only one subject: firearms. Rather than affording patient privacy that doctor-patient communications already receive in numerous ways, these statutes are directed at restricting politically unpopular speech by doctors.

### C. Contrary To Supreme Court Precedent, The Panel Decision Restricts Truthful Speech By Regulated Professionals.

The statutes at issue here restrict truthful speech by regulated professionals, under the guise of the State's power to regulate the medical profession. In *Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed. 2d 405 (1963), the Supreme Court resolved a challenge to a Virginia statute that prohibited certain methods of soliciting legal business by the NAACP. *Id.* at

13

423, 83 S.Ct. at 333.  The Supreme Court recognized the State's "subordinating interest in the regulation of the legal profession," but explained the limits of a State's power to restrict speech on that basis by noting:

> [I]t is no answer to the constitutional claims asserted by petitioner to say, as the Virginia Supreme Court of Appeals has said, that the purpose of these regulations was merely to insure high professional standards and not to curtail free expression. For a State may not, under the guise of prohibiting professional misconduct, ignore constitutional rights.

*Id.* at 438-39, 83 S.Ct. at 340-41.  While Virginia had a valid interest in regulating the legal profession to prevent injurious conduct, there was nothing that supported an inference of injurious conduct.  *Id.* at 439-45, 83 S.Ct. at 341-44.

The same is true here.  The State of Florida has not presented anything that might support an assertion that the Act is needed to prevent injurious conduct by its medical professionals, or otherwise to prevent professional misconduct. Instead, under the guise of regulating medical professionals, Florida has attempted to curtail their constitutional right to communicate preventive health care and safety counseling to their patients concerning gun security and storage in the home. As demonstrated by statistical and empirical evidence gathered by their professional societies and other organizations, some of which is discussed in Section I of this amicus brief, counseling by medical professionals has been shown to save lives and prevent injury, particularly when children and other at-risk persons are involved.

14

In *Thomas v. Collins*, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945), Justice Jackson issued a prescient warning on the future landscape of free speech rights by noting that "[m]odern inroads on these rights come from associating the speaking with some other factor which the state may regulate so as to bring the whole within official control." *Id.* at 547, 65 S.Ct. at 330 (Jackson, J., concurring). That is exactly what the State has done here. The State could not openly restrict speech it disfavors, so it has attempted to fasten its restriction to its power to regulate the medical profession. That is wrong.

This Court should grant rehearing *en banc* and reverse the split panel decision, based on Supreme Court precedent.

## CONCLUSION

**WHEREFORE**, *amicus curiae*, the American Bar Association, respectfully requests the Court grant rehearing of the panel decision *en banc* and reverse.

Dated: August 28, 2015        Respectfully submitted,

/s/ Paulette Brown

Of Counsel:

Richard J. Ovelmen
Florida Bar No. 284904

Gary L. Sasso
Florida Bar No. 622575

Michael D. Sloan
Florida Bar No. 104385

Paulette Brown*
President
American Bar Association
321 North Clark Street
Chicago, IL 60654
312-988-5000
abapresident@americanbar.org
*Counsel of Record

15

# CERTIFICATE OF COMPLIANCE

Undersigned counsel hereby certifies that this brief complies with the requirements of Fed. R. App. P. 32(a)(5)(A) and 11th Cir. R. 35-6 because the brief, exclusive of the Cover Page, Certificate of Interested Persons and Corporate Disclosure Statement, Statement of Counsel, Certificate of Service, Table of Contents, Table of Citations, and this Certificate, is no longer than 15 pages and is printed in 14- point Times New Roman proportionally spaced typeface.

/s/ Paulette Brown
Paulette Brown

16

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2015, a true copy of the foregoing was served by Notice of Electronic Filing generated by ECF upon all counsel of record:

| | |
|---|---|
| Pamela J. Bondi, Attorney General<br>Timothy D. Osterhaus Solicitor General<br>Jason Vail, Assistant Attorney General<br>Diane G. DeWolf, Deputy Solicitors General<br>Rachel E. Nordby, Deputy Solicitors General<br>Office of the Attorney General<br>PL-01, The Capitol<br>Tallahassee, FL 32399 | Douglas Hallward-Driemeier<br>Bruce S. Manheim, Jr.<br>Mariel Goetz<br>Ropes & Gray LLP<br>700 12th Street, NW, Suite 900<br>Washington, DC 20005-3948 |
| Elizabeth N. Dewar<br>Ropes & Gray LLP<br>Prudential Tower<br>80 Boylston Street<br>Boston, MA 02199-3600 | Jonathan E. Lowy<br>Daniel R. Vice<br>Brady Center to Prevent Gun Violation<br>1225 Eye Street, NW, Suite 1100<br>Washington, DC 20005 |
| Edward Maurice Mullins<br>Hal Michael Lucas<br>Astigarraga Davis Mullins & Grossman<br>701 Brickell Avenue 16th Floor<br>Miami, FL 33131-2847 | Dennis Gary Kainen<br>Weisberg & Kainen<br>1401 Brickell Avenue, Suite 800<br>Miami, FL 33131-3554 |
| Charles J. Cooper<br>David H. Thompson<br>Peter A. Petterson<br>Cooper and Kirk, PLLC<br>1523 New Hampshire avenue, NW<br>Washington, D.C. 20036 | John C. Eastman<br>Anthony T. Caso<br>Center for Constitutional Jurisprudence<br>c/o Chapman University School of Law<br>One University School of Law<br>One University Drive<br>Orange, CA 92886 |

/s/ Paulette Brown
Paulette Brown

101857534.4