Case No. 12-14009-FF

UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

DR. BERND WOLLSCHLAEGER, et al.,
Plaintiffs/Appellees,
vs.
GOVERNOR STATE OF FLORIDA, et al.,
Defendants/Appellants.

_____

Amicus Curiae Brief of ACLU Foundation of Florida, Alachua County Medical
Society, Broward County Medical Assoc., Broward County Pediatric Society,
Palm Beach County Medical Society, Florida Public Health Assoc., University of
Miami School of Law Children & Youth Clinic, Children's Healthcare Is a Legal
Duty, Inc., Early Childhood Initiative Found., and the Marion B. Brechner First
Amendment Project in Support of Petition for Rehearing En Banc

_____

_____

On Appeal from the United States District Court
for the Southern District of Florida

_____

Thomas R. Julin & Jamie Z. Isani
HUNTON & WILLIAMS LLP
1111 Brickell Ave., Ste. 2500
Miami, FL  33131
305.810.2516
tjulin or jisani@hunton.com

Gerald E. Greenberg
GELBER SCHACHTER & GREENBERG, P.A.
1221 Brickell Ave., Ste. 2010
Miami, Florida 33131
305.728.0953
ggreenberg@gsgpa.com

Nancy Abudu
ACLU FOUNDATION OF FLORIDA, INC.
4500 Biscayne Boulevard Suite 340
Miami, FL 33137-3227
786.363.2700 fax 3108
nabudu@aclufl.org

Gordon M. Mead, Jr.
STEARNS WEAVER MILLER WEISSLER
 ALHADEFF &  SITTERSON, P.A.
150 West Flagler Street – Ste 2200
Miami, Florida 33130
305.789.3200
GMead@stearnsweaver.com

*Attorneys for the Amici Curiae*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1, amici curiae hereby state that the Certificate of Interested Persons and Corporate Disclosure Statement filed by Petitioners with their Petition for Rehearing En Banc was complete, with the exception of the following persons or entities:

American Bar Association, amicus curiae

Abudu, Nancy, counsel for amicus ACLU Foundation of Florida

Carlton Fields Jorden Burt LLP, counsel for amicus American Bar Association

Gelber Schachter & Greenberg, P.A. counsel for amici curiae

Hubbard, William C., counsel for amicus American Bar Association

Hunton & Williams LLP, counsel for amici curiae

Institute for Justice, amicus curiae

Kayanan, Maria, counsel for amici curiae

Marion B. Brechner First Amendment Project, amicus curiae

McNamara, Robert J., counsel for amicus Institute for Justice

Ovelmen, Richard J., counsel for amicus American Bar Association

Sherman, Paul M, counsel for amicus Institute for Justice

Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., counsel for
amici curiae

_____
s/Thomas R. Julin
Thomas R. Julin

## STATEMENT OF COUNSEL

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decisions of the Supreme Court of the United States and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court: *Broadrick v. Oklahoma*, 413 U. S. 601 (1973); *Agency for International Development v. Alliance for Open Society International*, 133 S. Ct. 2321 (2013); *Sorrell v. IMS Health Inc.,* 131 S. Ct. 2653 (2011); and *NAACP v. Button,* 371 U.S. 415 (1963). I also express a belief based on a reasoned and studied professional judgment, that this appeal involves the following question of exceptional importance: Whether the Florida Firearm Owners Privacy Act, 2011 Fla. Laws 112 (codified at Fla. Stat. §§ 381.026, 456.072, 790.338), violates the First and Fourteenth Amendments of the U.S. Constitution through imposition of content-based restrictions on speech imposed due to state opposition to the content of the speech.

s/ Thomas R. Julin
Thomas R. Julin
Attorney of Record for
ACLU Foundation of Florida, Inc.
Alachua County Medical Society
Broward County Medical Association
Broward County Pediatric Society
Palm Beach County Medical Society
Florida Public Health Association
University of Miami School of Law
   Children and Youth Clinic

Children's Healthcare Is a Legal Duty, Inc.
Early Childhood Initiative Foundation
Marion B. Brechner First Amendment
  Project

## <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT ..........................................C1

STATEMENT OF COUNSEL................................................................. i

TABLE OF CONTENTS ..................................................................... iii

TABLE OF CITATIONS......................................................................v

STATEMENT OF THE ISSUE
WARRANTING EN BANC CONSIDERATION....................................................1

THE INTERESTS & AUTHORITY OF THE AMICI TO FILE............................1

    The ACLU of Florida.....................................................................1

    The Medical Societies....................................................................2

    The Children and Youth Care Groups ...........................................3

    The Marion B. Brechner First Amendment Project .......................4

AUTHORSHIP & FUNDING OF THE BRIEF ....................................................4

STATEMENT OF THE FACTS ..............................................................4

ARGUMENT..................................................................................4

I.   The Act is Substantially Overbroad as it Targets
    Speech that is Irrelevant to Medical Care and Safety ...................4

II.  The Panel Should Have Invalidated the Law Through
    Application of the Principles Reaffirmed in *AID v.*
    *Alliance for Open Society International* .......................................11

CONCLUSION ................................................................................15

CERTIFICATE OF COMPLIANCE................................................................ vii

Hunton & Williams LLP / Gelber Schachter & Greenberg / ACLU Foundation of Florida, Inc. /
Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.

CERTIFICATE OF SERVICE ............................................................ viii

HUNTON & WILLIAMS LLP / GELBER SCHACHTER & GREENBERG / ACLU FOUNDATION OF FLORIDA, INC. /
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.

## TABLE OF CITATIONS

Page(s)

Cases

*Agency for International Development v. Alliance for Open Society International*,
133 S.Ct. 2321 (June 20, 2013) ............................................................ 11, 12, 13

*Ashcroft v. Free Speech Coalition*,
535 U.S. 234 (2002) ............................................................................. 7

*Broadrick v. Oklahoma*,
413 U. S. 601 (1973) ............................................................................ 7

*FCC v. League of Women Voters*,
468 U.S. 364 (1984) ............................................................................. 13

*Goldfarb v. Virginia State Bar*,
421 U.S. 773 (1975) ............................................................................. 8

*Legal Servs. Corp. v. Velazquez*,
531 U.S. 533 (2001) ............................................................................. 13

*NAACP v. Button*,
371 U.S. 415 (1963) ............................................................................. 9

*Reed v. Town of Gilbert*,
135 S. Ct. 2218 (2015) ......................................................................... 9

*Regan v. Taxation With Representation*,
461 U.S. 540 (1983) ............................................................................. 13

*Rust v. Sullivan*,
500 U.S. 173 (1991) ............................................................................. 13

*Sorrell v. IMS Health Inc.*,
131 S. Ct. 2653 (2011) ......................................................................... 10

*United States v. Stevens*,
559 U.S. 460 (2010) ............................................................................. 8

Hunton & Williams LLP / Gelber Schachter & Greenberg / ACLU Foundation of Florida, Inc. /
Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.

Constitutional Provisions & Statutes

U.S. Const. amend. I ................................................................1

22 U.S.C. § 7631(f) .........................................................11, 12

HUNTON & WILLIAMS LLP / GELBER SCHACHTER & GREENBERG / ACLU FOUNDATION OF FLORIDA, INC. /
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.

## STATEMENT OF THE ISSUE

Whether rehearing en banc should be granted because the panel departed from established Supreme Court precedent by failing to subject to strict scrutiny a state law that restricts the speech of one group of speakers on the basis of its content even though that speech is wholly irrelevant to patient medical care or safety, or the safety of others.

## THE INTERESTS AND AUTHORITY TO FILE OF THE AMICI

The amici curiae have obtained the consent of their governing officials or boards to file this brief. Their identities and interests are as follows:

### The ACLU of Florida

The American Civil Liberties Union (ACLU) is our nation's guardian of liberty, working daily in courts, legislatures and communities to defend and preserve the individual rights and liberties guaranteed to all people in this country by the U.S. Constitution. Since 1920, the nonprofit, nonpartisan ACLU has grown to over 500,000 members and supporters. The ACLU of Florida, with headquarters in Miami, is the local affiliate of the national organization.

### The Medical Societies

The Alachua County Medical Society represents more than 1000 physicians, residents and students in Alachua, Levy, Dixie and Gilchrist Counties. The Broward County Medical Association (BCMA), established 1926, unites 1,500

allopathic and osteopathic physicians, of all specialties. The Broward County Medical Association authored the United States' first and only "*Physician and Medical Staff Bill of Rights and Responsibilities*" as a model of physician free speech and autonomy for the practice of medicine. The Broward County Pediatric Society has approximately 100 pediatricians and pediatric subspecialists as members. The Palm Beach County Medical Society has been a trusted leader in addressing healthcare issues facing physicians since 1919. The Florida Public Health Association was founded in 1931 to advance public health through advocacy, education and networking. All five medical societies have joined this brief to protect their members' speech rights at this critical time when healthcare reform is at the forefront of the nation's political agenda. The medical societies recognize individual patients' rights but also individual physicians' rights to free speech and autonomy so they can freely advocate and care for their patients but also as a right of free speech to the physician as an individual without fear of government retaliation or restrictions. They fear that restrictions to physician's autonomy and free speech not only will reduce access, availability and the quality of medical care but will violate the basic rights of any individual physician to "freely advocate for patients" and free speech. They fear that if the state can censor questions regarding firearm and ammunition ownership, it may impose additional speech restrictions that have nothing to do with the practice of medicine and

everything to do with a political agenda.

<u>The Children and Youth Care Groups</u>

Four of the amici curiae are organizations that advocate for the health and well-being of children. Children's Healthcare Is a Legal Duty, Inc. (CHILD) is a non-profit organization with members in 45 states dedicated to protecting children from medical neglect. The Early Childhood Initiative Foundation is an organization aimed toward providing "universal readiness" or making available affordable high quality health, education, and nurturing for all of the Miami-Dade County's community of approximately 160,000 children between birth and age five. Under its president, David Lawrence, Jr., the Initiative works toward the social, physical, emotional and intellectual growth of all children so that they are ready and eager to be successful in the first grade and, indeed, life. The Children and Youth Clinic is an in-house legal clinic, staffed by faculty and students at the University of Miami School of Law, which advocates for the rights of children in abuse and neglect, medical care, mental health, disability, and other proceedings. These organizations all have a strong interest in ensuring that doctors, like other citizens, remain free to question their patients about firearm and ammunition ownership – regardless of whether the inquiries are part of a preventative healthcare regimen or simply the expression of an opinion or viewpoint.

HUNTON & WILLIAMS LLP / GELBER SCHACTER & GREENBERG / ACLU FOUNDATION OF FLORIDA, INC. /
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.

## The Marion B. Brechner First Amendment Project

The Marion B. Brechner First Amendment Project is a nonprofit, nonpartisan organization at the University of Florida. Directed by attorney Clay Calvert, the Project is dedicated to contemporary issues of freedom of expression. The Project's director published a scholarly article in 2013 on the Florida law at issue in this case.

## AUTHORSHIP & FUNDING OF THE BRIEF

No party's counsel authored this brief or contributed money intended to fund preparation or submission of this brief; and no person, other than the amici curiae, their members or counsel, contributed money intended to fund the preparation or submission of the brief.

## STATEMENT OF FACTS

The facts are adequately set forth in the panel opinions.

## ARGUMENT & AUTHORITIES

### I.

### The Act is Substantially Overbroad as it Targets
### Speech that is Irrelevant to Medical Care and Safety

One piece of common ground in this case is that the Act targets speech that is *irrelevant* to patient medical care or safety, or the safety of others, such as doctors' and patients' political views on gun ownership. Another is that the plaintiffs maintain they do not engage in such speech, but are chilled from

4

engaging in speech that is *relevant* to patient medical care or safety, or the safety of others, including routine inquiry and recording of information about patient firearm and ammunition ownership.

As a consequence, the majority and dissent both focus their efforts primarily on determining whether this chilling impact violates the First Amendment, while entirely ignoring the direct impact of the Act. Worse, this narrow focus drives both the majority and dissent to engage in a wholly-unnecessary and deeply-protracted analysis of whether a statute that chills "professional speech" should be subjected to something less than strict scrutiny, and then they both conclude, incorrectly, that it should, and come up with opposing answers to whether the law can survive that lowered level of scrutiny.[1] A far simpler approach could have and should have been followed. The Court should have analyzed the constitutionality of the speech restriction that the statute *directly* imposes. That restriction does not even arguably apply to "professional speech." It expressly targets speech that is wholly irrelevant to the delivery of professional services. Indeed, it targets speech that no healthcare practitioner could have a good faith belief is relevant to medical care or safety, or the safety of others.

---

[1] The majority goes to great lengths to show that the statute's chilling of professional speech survives that lower level of scrutiny. Slip Op. at 38-75. The dissent goes to even greater lengths to show that it would not. Slip Op. at 78-144 (Wilson, J., dissenting).

5

And, the majority clearly found that much of the plaintiffs' speech – routine inquiry and recording of information about patient firearm and ammunition ownership – is far outside the bounds of medical care and expressly prohibited by the Act, *see* Slip Op. at 19 ("inquiry and recordation will not be relevant"), 25 ("Some – perhaps the majority – of [records of firearm information] will . . . be irrelevant to the care and safety of patients and others."). Having reached this conclusion, the majority could not logically find, although it did, that this irrelevant speech is "in furtherance of the practice of medicine" or "professional speech." Slip Op. at 55 n. 17. When a healthcare practitioner records information in medical records about patient politics, religion, the weather, or firearm ownership, or inquires about these same topics without a good faith belief that the answers will be relevant to medical care or safety, or the safety of others, the professional has stepped out of his or her role as a regulated healthcare practitioner and has acted as an ordinary American.

But even if the Court agrees with the panel's mischaracterization of plaintiffs' proffered speech, it was required to address the plaintiffs' attack on the statute's restriction of the speech of other healthcare practitioners who have made no claim that their routine recording and inquiry practices are professional speech. *See* DE-1 The amici in this case represent thousands of healthcare practitioners and they, unlike the plaintiffs, concede that the recording of information about

Hunton & Williams LLP / Gelber Schachter & Greenberg / ACLU Foundation of Florida, Inc. / Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.

patient firearm ownership, and inquiries into firearm and ammunition ownership, often have no relevance to medical care or safety, or the safety of others. The amici have asserted from the outset of this litigation, that they regularly engage their patients, for political rather than medical care or safety purposes, in discussions of firearm ownership. They further admit that many of their patients, like the very patient whose experience in Ocala led to adoption of the Act, regard this as unnecessary harassment due to the patients' strong conviction that healthcare practitioners ought not be asking them about this particular topic or recording information about this topic. DE-67 (Amicus Memo in Support of Plaintiffs' Motion for Preliminary Injunction).

The overbreadth doctrine entitled the plaintiffs "to challenge [the] statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973). A law is "unconstitutional on its face if it prohibits a substantial amount of protected expression." *Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 244 (2002) (holding Child Pornography Prevention Act of 1996 was overbroad because it proscribed a significant universe of speech that was neither obscene nor child pornography).

The majority recognized that the plaintiffs had advanced an overbreadth

attack, but then rejected it on the illogical ground that the Act does not prohibit a substantial amount of speech because "it only burdens speech that, as judged by the physician in good faith, lacks a sufficient nexus to the medical care or safety of a particular patient." Slip. Op. at 76. The fact that physicians believe their speech has no such nexus has nothing whatsoever to do with the amount of protected speech the statute prohibits. The majority accepted that physicians routinely engaged in the speech restricted by the Act and the amici also have shown that thousands of additional healthcare practitioners did as well. The majority had no basis to conclude that the Act does not prohibit a substantial amount of protected speech. It prohibits thousands of daily inquiries, notations, and even debates.

The majority also rejected the plaintiffs' overbreadth challenge in reliance on *Goldfarb v. Virginia State Bar,* 421 U.S. 773 (1975), a case that did not involve a First Amendment challenge, let alone an overbreadth challenge, and the *ipse dixit* that "no one argues that concededly irrelevant speech lies within the scope of good medical practice." Slip Op. at 76. The issue is not whether the speech which the Act restricts is within good medical practice; rather, the issue is whether speech prohibited by the Act, which is fully protected by the First Amendment, is "substantial" when "judged in relation to the statute's plainly legitimate sweep," *United States v. Stevens,* 559 U.S. 460, 473 (2010) (quotation marks omitted), and the record here shows that it is.

Moreover, the majority is incorrect in describing the speech impacted by the statute as "irrelevant speech." The statute reaches irrelevant speech of just one narrow type – that which relates to firearm and ammunition ownership. Had the majority or the dissent analyzed the case in this fashion, they then would have been required to concede that the statute is not a content-neutral restriction on all types of irrelevant speech that interfere with the delivery of professional services and strict scrutiny must apply. The statute is a pointed attack on one group of speakers – healthcare practitioners – and it prohibits one specific type of communication – inquiries about and recording of information about patient firearms and ammunition.[2]

Had the statute been formulated more broadly to prevent all professionals from wasting client time or driving them from their offices with irrelevant chatter, the statute might have been upheld. The state properly might have shown a

---

[2]    To be clear, amici do not agree, for all of the same reasons expressed by the plaintiffs in their petition for rehearing en banc, that the speech of professionals is entitled to any less protection than the speech of others. *See Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2229 (2015) ("'regulation of professional conduct'" is subject to strict scrutiny, *citing NAACP v. Button,* 371 U.S. 415, 438-39 (1963)). They also take particular issue with the majority's endorsement of one scholar's viewpoint, Slip Op. at 73 n. 26, that the ability that professionals have to influence others due to their knowledge and training, relegates their speech to greater legislative control. But the panel's exhaustive analysis of whether a lower level of scrutiny was warranted due to the chilling effect the statute has on professional speech would have been wholly unnecessary had the panel focused on the speech at which the statute is expressly aimed.

Hunton & Williams LLP / Gelber Schachter & Greenberg / ACLU Foundation of Florida, Inc. / Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.

compelling interest in keeping *all* irrelevant information out of patient medical records, a compelling interest in stopping healthcare providers from making inquiries of their patients about *all* irrelevant matters, and a compelling interest in stopping unnecessary harassment of patients during examinations (if this ever actually occurred). All of these activities, whether viewed as speech or conduct, after careful study, could be found to impair the delivery of healthcare to patients and warrant legislative action. Indeed, a study might have found that healthcare practitioners are not the only ones that sometimes use their fiduciary relationships improperly to nose into personal and private patient or client matters that are irrelevant to the reasons that patients or clients have sought professional services.

But when the state targets a specific group of speakers and also targets a narrow type of speech for exclusion from records, inquiries, and harassment, the state reveals that its objective is not to improve the delivery of professional services, but to attack those whose speech advocates a particular political viewpoint or to place a certain subject off limits. This is when the protection afforded by the First Amendment is at its zenith. Indeed, "it is all but dispositive to conclude that a law is content-based and, in practice, viewpoint-discriminatory." *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2667 (2011).

The amici make this point in part because they are fearful of what the Legislature may do next. If the Court concludes that the State of Florida can

10

HUNTON & WILLIAMS LLP / GELBER SCHACTER & GREENBERG / ACLU FOUNDATION OF FLORIDA, INC. /
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.

legislate in order to suppress their viewpoint regarding firearm ownership and ammunition, they expect that the heavy hand of the censor will be felt by all manner of professionals on a very wide range of topics.

## II.

### The Panel Should Have Invalidated the Law Through Application of the Principles Reaffirmed in *AID v. Alliance for Open Society International*

Neither the panel nor the parties have addressed a Supreme Court decision issued in June 2013, after briefing of this appeal concluded, *Agency for International Development v. Alliance for Open Society International*, 133 S. Ct. 2321 (2013) (hereinafter *AID*). In *AID*, the Supreme Court held that government cannot leverage its funding power (typically considered one of the broadest legislative powers) to regulate speech outside of the program at issue. Although *AID* did not address "professional speech," it is analogous to, and presents a proper framework for analyzing, the issues presented here, where the State is attempting to leverage its power to regulate the practice of medicine to control speech entirely *irrelevant* to the practice of medicine.

*AID* involved a Congressional appropriation of billions of dollars to fund efforts by nongovernmental organizations to fight the spread of HIV/AIDS around the world. *Id.* at 2324-25. The act authorizing this spending also provided (1) the funds could not be used to promote or advocate the legalization or practice of

11

prostitution or sex trafficking and (2) no funds could be used by an organization "'that does not have a policy explicitly opposing prostitution and sex trafficking.'" *Id.* (quoting 22 U.S.C. §7631(f)). Organizations eligible to receive the funds challenged the latter condition as violating their First Amendment rights, just as the plaintiffs in the instant case have challenged the Florida statute that restricts their speech rights. *Id.* at 2326.

Chief Justice Roberts, writing for a seven-justice majority, agreed with the plaintiffs. His opinion recognized that Congress has broad spending powers and that if a party objects to a condition on the receipt of federal funding, "its recourse is to decline the funds." *Id.* at 2328. In the same manner, states have broad authority to impose conditions on the receipt of a license to practice medicine (or many other professions), and the recourse of those who oppose submission to the conditions is to reject the license. The *AID* opinion noted, however, that "the Government 'may not deny a benefit to a person on a basis that infringes his constitutionally protected . . . freedom of speech even if he has no entitlement to that benefit.'" *Id.* (citation omitted). The same principle applies to government issuance of licenses to professionals.

"[T]he relevant distinction that has emerged," the Supreme Court held, "is between conditions that define the limits of the government spending program – those that specify the activities Congress wants to subsidize – and conditions that

seek to leverage funding to regulate speech outside the contours of the program itself." *Id.* The Court then, conceding that the "line is hardly clear," reviewed how this standard had been applied in a series of cases.[3]

With these cases in mind, the Court then closely scrutinized whether the challenged condition – requiring the recipients to adopt a policy opposing prostitution – simply defined the limits of the program or imposed an unconstitutional condition on recipient speech unrelated to the program. The Court found it to be the latter because it not only controlled speech in conjunction with recipients' fulfillment of the government program, it also controlled the speech of recipients when they were acting outside the program by compelling them to adopt the government's viewpoint. "The Policy Requirement," the Court held, "compels as a condition of federal funding the affirmation of a belief that by its nature cannot be confined within the scope of the Government program. In so doing, it violates the First Amendment and cannot be sustained." *Id.* at 2332.

State licensing of professionals and state funding of programs are different

---

[3]    *Regan v. Taxation With Representation*, 461 U.S. 540, 546 (1983) (upholding restriction on nonprofit organizations engaging in efforts to influence legislation); *FCC v. League of Women Voters*, 468 U.S. 364 (1984) (invalidating prohibition against public broadcasters editorials); *Rust v. Sullivan*, 500 U.S. 173 (1991) (upholding prohibition against advocating abortion imposed on healthcare organizations receiving grants); and *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533 (2001) (invalidating restriction on government-funded lawyer trying to amend or challenge existing welfare law).

government functions, but both provide tempting opportunities for legislators to try to restrict or compel speech through imposing conditions unrelated to the objectives and outside the confines of the licensing or funding, in essence "leveraging" a government license or funding improperly. Here, the record reflects that the Florida legislature first considered the law at issue at the behest of the National Rifle Association. It was not proposed by any medical association or group concerned with patient health. Instead, the NRA, as an advocacy organization, proposed the law only after it learned that doctors routinely ask their patients about firearm and ammunition ownership in order to engage them in a discussion of the dangers they create. The NRA's concern about this questioning was not surprising in light of the fact that doctors see first-hand and on a regular basis the harmful effects of unregulated distribution of firearms and often advise patients not only about firearm safety, but also their support of restricting or outlawing guns. The record before this Court is clear that the legislature shared the NRA's viewpoint against gun restrictions and adopted the law not due to a belief that the restriction advanced the goals of medical licensing, but rather to suppress political opposition to gun control. This was made clear by the language of the act itself, which solely bans communications with patients that are irrelevant to the good faith delivery of medical care. Just as the law required *AID* fund recipients to endorse a government viewpoint even when they were not fulfilling their

14

government-funded missions, the Florida law restricts inquiries made of patients when doctors are *not* inquiring for medical purposes. This type of speech restriction cannot, under the principles discussed in *AID*, be characterized as a simple license-defining regulation. It instead is a leveraging of regulation to impose a content- and viewpoint-based restriction on speech. A law of this sort should be subjected to strictest scrutiny.

<u>CONCLUSION</u>

The Court should rehear the case en banc.

Respectfully submitted,

| | |
|---|---|
| Hunton & Williams LLP | Gordon M. Mead, Jr.<br>Fla. Bar No. 049896 |
| By   <u>s/ Thomas R. Julin</u> | Stearns Weaver Miller Weissler |
|    Thomas R. Julin & Jamie Z. Isani | Alhadeff & Sitterson, P.A. |
|    FL Bar Nos. 325376 & 728861 | 150 West Flagler Street |
|    1111 Brickell Ave. - Suite 2500 | Miami, Florida 33130 |
|    Miami, FL 33131 | 305.789.3200 Fax 3395 |
|    305.810.2516 fax 1601 | |
|    tjulin or jisani@hunton.com | Nancy Abudu |
| | Fla. Bar No. 111881 |
| Gerald E. Greenberg | Legal Director |
| Fla. Bar No. 440094 | ACLU Foundation of Florida, Inc. |
| Gelber, Schachter & Greenberg, P.A. | 4500 Biscayne Boulevard Suite 340 |
| 1221 Brickell Ave. Ste. 2010 | Miami, FL 33137-3227 |
| Miami, Florida 33131 | T: 786-363-2700; F: 786-363-3108 |
| 305.728.0953 Fax 0951 | nabudu@aclufl.org |
| ggreenberg@gsgpa.com | |

Attorneys for the *Amici Curiae*

15

Hᴜɴᴛᴏɴ & Wɪʟʟɪᴀᴍꜱ LLP / Gᴇʟʙᴇʀ Sᴄʜᴀᴄʜᴛᴇʀ & Gʀᴇᴇɴʙᴇʀɢ / ACLU Fᴏᴜɴᴅᴀᴛɪᴏɴ ᴏꜰ Fʟᴏʀɪᴅᴀ, Iɴᴄ. /
Sᴛᴇᴀʀɴꜱ Wᴇᴀᴠᴇʀ Mɪʟʟᴇʀ Wᴇɪꜱꜱʟᴇʀ Aʟʜᴀᴅᴇꜰꜰ & Sɪᴛᴛᴇʀꜱᴏɴ, P.A.

## CERTIFICATE OF COMPLIANCE

Undersigned counsel hereby certifies that this brief complies with the requirements of FRAP Rule 32(a)(7)(B)(i) inasmuch as the brief, exclusive of the Certificate of Interested Persons and Corporate Disclosure Statement, Certificate of Service, Table of Contents, Table of Citations and Authorities, and this Certificate, is no longer than 15 pages and is printed in 14-point Times New Roman proportionally-spaced typeface.

s/ Thomas R. Julin
_____
Thomas R. Julin

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 28, 2015, a true copy of the foregoing was

served by Notice of Electronic Filing generated by ECF upon all counsel of record:

Pamela J. Bondi, Attorney General
Timothy D. Osterhaus Solicitor General
Jason Vail, Assistant Attorney General
Diane G. DeWolf, Deputy Solicitors General
Rachel E. Nordby, Deputy Solicitors General
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL  32399

Douglas Hallward-Driemeier
Bruce S. Manheim, Jr.
Mariel Goetz
Ropes & Gray LLP
700 12th Street, NW, Suite 900
Washington, DC 20005-3948

Elizabeth N. Dewar
Ropes & Gray LLP
Prudential Tower
80 Boylston Street
Boston, MA  02199-3600

Jonathan E. Lowy
Daniel R. Vice
Brady Center to Prevent Gun Violation
1225 Eye Street, NW, Suite 1100
Washington, DC 20005

Edward Maurice Mullins
Hal Michael Lucas
Astigarraga Davis Mullins & Grossman
701 Brickell Avenue 16th Floor
Miami, FL 33131-2847

Dennis Gary Kainen
Weisberg & Kainen
1401 Brickell Avenue
Suite 800
Miami, FL 33131-3554

Charles J. Cooper
David H. Thompson
Peter A. Petterson
Cooper and Kirk, PLLC
1523 New Hampshire avenue, NW
Washington, D.C. 20036

John C. Eastman
Anthony T. Caso
Center for Constitutional Jurisprudence
c/o Chapman University School of Law
One University School of Law
One University Drive
Orange, CA 92886

Paul M. Sherman (DC Bar No. 978663)
Robert J. McNamara (VA Bar No. 73208)
Institute for Justice
901 North Glebe Road, Suite 900
Arlington, VA 22203-1854

Richard J. Ovelmen
Carlton Fields Jorden Burt LLP
100 S.E. Second Street
Miami, FL 33131

s/ Thomas R. Julin
Thomas R. Julin