IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

CASE NO. 12-14009-FF

_____

**DR. BERND WOLLSCHLAEGER,** *et al.***,**
Appellees,

v.

**GOVERNOR, STATE OF FLORIDA,** *et al.***,**
Appellants.

_____

On Appeal from the United States District Court
For the Southern District of Florida
Miami Division

_____

APPELLEES' REPLY TO OPPOSITION TO MOTION TO STAY THE
MANDATE PENDING PETITION FOR CERTIORARI IF REHEARING
EN BANC IS NOT GRANTED

Edward M. Mullins
ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.
701 Brickell Avenue, 16th Floor
Miami, Florida 33131-2847
Telephone: (305) 372-8282

Jonathan E. Lowy
BRADY CENTER TO PREVENT GUN VIOLENCE
1225 Eye Street NW, Suite 1100
Washington, D.C. 20005
Telephone: (202) 289-7319

Douglas H. Hallward-Driemeier
Mariel Goetz
ROPES & GRAY LLP
700 12th Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 508-4600

Erin R. Macgowan
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Telephone: (617) 235-4105

*Counsel for Appellees Dr. Bernd Wollschlaeger, et al.*

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

**Wollschlaeger v. Governor, State of Florida,** *et al.* **(Case No. 12-14009-FF)**

Pursuant to Federal Rule of Appellate Procedure Rule 26.1 and Eleventh Circuit Rule 26.1-1, Appellees/Plaintiffs provide the following certificate of interested persons:

1.  The Honorable Marcia G. Cooke, U.S. District Judge

**Defendants/Appellants:**

2.  Armstrong, John H., present Fla. Surgeon General and Secretary of the Department of Health

3.  Averoff, Magdalena, Fla. Board of Medicine Member

4.  Di Pietro, Nina, former Fla. Board of Medicine Member

5.  Dolin, Gary, Fla. Board of Medicine Member

6.  Dudek, Elizabeth, Secretary of the Agency for Health Care Administration

7.  El Sanadi, Nabil, Fla. Board of Medicine Member

8.  Farmer, Frank, former Fla. Surgeon General and Department Secretary

9.  Fernandez, Bernardo, Fla. Board of Medicine Member

10. Ginzburg, Enrique, Fla. Board of Medicine Member

11. Goersch, Brigitte Rivera, Fla. Board of Medicine Member

12. Lage, Onelia, former Fla. Board of Medicine Member

13. Lopez, Jorge J., Fla. Board of Medicine Member

**Wollschlaeger v. Governor, State of Florida, *et al.* (Case No. 12-14009-FF)**

14. Orr, James, Fla. Board of Medicine Member

15. Rosenberg, Steven, Fla. Board of Medicine Member

16. Scott, Rick, Governor of Florida

17. Stringer, Merle, Fla. Board of Medicine Member

18. TerKonda, Sarvam, Fla. Board of Medicine Member

19. Thomas, George, Fla. Board of Medicine Member

20. Tootle, Joy, Fla. Board of Medicine Member

21. Zachariah, Zachariah, Fla. Board of Medicine Member

**Plaintiffs/Appellees:**

22. American Academy of Family Physicians, Fla. Chapter

23. American Academy of Pediatrics, Fla. Chapter

24. American College of Physicians, Fla. Chapter

25. Fox-Levine, Shannon

26. Gutierrez, Roland

27. Sack, Stanley

28. Schaechter, Judith

29. Schechtman, Tommy

30. Wollschlaeger, Bernd

**Wollschlaeger v. Governor, State of Florida, *et al.* (Case No. 12-14009-FF)**

**Defendants/Appellants' counsel:**

31. Bondi, Pam

32. DeWolf, Diane G.

33. Nordby, Rachel E.

34. Osterhaus, Timothy D.

35. Vail, Jason

36. Winsor, Allen

**Plaintiffs/Appellees' counsel:**

37. Astigarraga, Davis, Mullins & Grossman, P.A.

38. Brady Center to Prevent Gun Violence

39. Dewar, Elizabeth*

40. Goetz, Mariel

41. Guiliano, Douglas*

42. Hallward-Driemeier, Douglas

43. Kainen, Dennis G.*

44. Lewis, Julia*

45. Lowy, Jonathan

46. Lucas, Hal*

47. Macgowan, Erin

**Wollschlaeger v. Governor, State of Florida, *et al.* (Case No. 12-14009-FF)**

48. Manheim, Bruce*

49. Mullins, Edward

50. Ripa, Augustine*

51. Ropes & Gray LLP

52. Vice, Daniel*

**Amici and Others:**

53. Alachua County Medical Society

54. American Academy of Child and Adolescent Psychiatry

55. American Academy of Family Physicians

56. American Academy of Orthopaedic Surgeons

57. American Academy of Pediatrics

58. American Association of Suicidology

59. American College of Obstetricians and Gynecologists

60. American Congress of Obstetricians and Gynecologists

61. American College of Preventative Medicine

62. American College of Surgeons

63. American Medical Association

64. American Psychiatric Association

65. American Public Health Association

**Wollschlaeger v. Governor, State of Florida, *et al.* (Case No. 12-14009-FF)**

66. ACLU Foundation of Florida, Inc.

67. Broward County Medical Association, The

68. Broward County Pediatric Society, The

69. Center for Constitutional Jurisprudence (CCJ)

70. Children's Healthcare Is a Legal Duty, Inc. (CHILD)

71. Doctors for Responsible Gun Ownership (DRGO)

72. Early Childhood Initiative Foundation

73. Florida Public Health Association, The

74. Law Center to Prevent Gun Violence

75. National Rifle Association (NRA)

76. Palm Beach County Medical Society

77. Suicide Awareness Voices of Education

78. University of Miami School of Law Children and Youth Clinic

79. Acosta, Patricia, Counsel for ACLU et al.

80. Greenberg, Gerald E., Counsel for ACLU et al.

81. Isani, Jamie Zysk, Counsel for ACLU et al.

82. Julin, Thomas R., Counsel for ACLU et al.

83. Marshall, Randall C., Counsel for ACLU et al.

84. Mead, Gordon M., Jr., Counsel for ACLU et al.

**Wollschlaeger v. Governor, State of Florida, *et al.* (Case No. 12-14009-FF)**

85. Ekdahl, Jon N., Counsel for American Medical Association et al.

86. Levenstein, Richard H., Counsel for American Medical Association et al.

87. Nelson, Leonard A., Counsel for American Medical Association et al.

88. Fry, David H., Counsel for APHA et al.

89. Heckenlively, Bryan, Counsel for APHA et al.

90. Weinstein-Tull, Justin S., Counsel for APHA et al.

91. Eastman, John, Counsel for CCJ and DRGO

92. Caso, Anthony, Counsel for CCJ and DRGO

93. Thompson, David, Counsel for the NRA

94. Patterson, Peter, Counsel for the NRA

95. Cooper, Charles, Counsel for the NRA

* = no longer involved in representation

/s/ Douglas H. Hallward-Driemeier

Dated: September 10, 2015

Douglas H. Hallward-Driemeier
ROPES & GRAY LLP
*Counsel for Appellees*

Appellants' Opposition ("Opposition") to the Motion to Stay the Mandate Pending Petition for Certiorari if Rehearing *En Banc* is Not Granted ("Motion to Stay") applies the wrong legal standard and fails to address the Motion to Stay's key arguments. Appellees' Motion demonstrates that under the appropriate standard—that of Rule 41(d)(2)(A)—a stay of the mandate would be appropriate, if the Court denies Appellees' pending *En Banc* Petition, in order to preserve the *status quo* while Appellees seek Supreme Court review.

**ARGUMENT**

Appellants urge this Court to consider the Motion to Stay under a standard that does not apply here. Under the correct standard, a stay should be granted, if rehearing is denied. Appellants' Opposition fails to refute that the majority opinion creates a clear circuit split and presents a substantial issue of First Amendment law that is ripe for Supreme Court review.

**A.  Federal Rule of Appellate Procedure 41(d)(2)(A) Provides the Correct Standard for Appellees' Motion to Stay the Mandate**

Appellants wrongly assert that the Motion to Stay should be considered under the standard that the *Supreme Court* uses in determining whether to grant a motion to stay a mandate pending review of a petition for certiorari (whether four Justices would likely vote to grant the petition and five Justices likely vote to reverse). *See* Opposition 1-2. That standard is contrary to the language of Rule 41, has nev-

1

er been adopted in this Circuit, and finds no support in the authorities cited by Appellants.

By its terms, Rule 41 sets forth the standard that governs a motion for a stay of the mandate. The movant "must show that the certiorari petition would present a substantial question and that there is good cause for a stay." Fed. R. App. P. 41(d)(2)(A). Nowhere in that Rule does it require the movant to show that four Justices are likely to vote to grant certiorari (a prediction that a court of appeals judge could hardly be expected to make) or that five Justices are likely to vote to reverse (a standard that no appellate court would likely find satisfied with respect to an opinion it had just issued). The Rule does not require a court to predict it will be reversed, but only that the petition presents a "substantial question," and that the preservation of the status quo establishes "good cause" to withhold the mandate.

Appellees' reliance on the Comment to the 1994 Amendment to Rule 41 as an attempt to import the Supreme Court's more rigorous standard is misplaced. The Comment notes that the 1994 amendments, which added the "substantial question" and "good cause requirements," were "intended to alert the parties to the fact that a stay of the mandate is not granted automatically and to the type of showing that needs to be made. The Supreme Court has established conditions that must be met before *it* will stay a mandate." Fed. R. App. P. 41, cmt. to 1994 Amendment to Subdivision (b) (emphasis added). The Comment simply *notes* that the Supreme

2

Court has a standard, but does not even state what that standard is, much less indicate that Rule 41 incorporated it *sub silentio*.[1]

As set forth in the Motion to Stay and below, Appellees' Motion to Stay demonstrates that the petition for certiorari would "present a substantial question" and that "there is good cause for a stay." Fed. R. App. P. 41(d)(2)(A). Appellees need show no more.

**B.  The State Does Not and Cannot Rebut that the Majority Opinion Creates a Circuit Split and Thus Presents a "Substantial Question" for Supreme Court Review**

Appellees' Motion to Stay establishes that the panel opinion creates a direct conflict with the Ninth Circuit's opinion in *Conant v. Walters*, 309 F.3d 629 (9th Cir. 2002), which rejected the application of lesser First Amendment scrutiny to restrictions on medical professionals' speech, and struck down a California law that interfered with doctors' provision of medical advice to their patients. At the very least, that conflict between the views of two courts of appeals creates a "substantial question" for Supreme Court review, especially in light of the Supreme Court's own recent decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2228 (2015), which stressed that all content-based speech restrictions are subject to strict

---

[1] Appellants cite a Seventh Circuit decision adopting the Supreme Court standard, but there is no authority indicating that this Circuit has adopted that rule. This Circuit has established, by Local Rule, a separate standard applicable to motions to stay a mandate in direct *criminal* appeals, but it has otherwise made no modifications to the standard announced in Fed. R. App. P. 41(d). *See* 11th Cir. Rule 41-1(a).

3

scrutiny (which the panel majority declined to apply), and that any purported justification for those restrictions goes only to whether strict scrutiny is satisfied.

Appellants base their Opposition on the fact that the Supreme Court recently denied review of two other appellate decisions relating to professional speech, *see* Opposition 2-3 (citing *King v. Governor of N.J.*, 767 F.3d 216 (3d Cir. 2014), and *Stuart v. Camnitz*, 774 F.3d 238 (4th Cir. 2014)), but the denial of certiorari in those cases is inapposite. First, the denial of certiorari indicates only that the Supreme Court did not view those cases as appropriate candidates for review, not that the legal questions presented were "insubstantial."[2] Second, the contexts in which those cases presented the question of what First Amendment protection is afforded professional speech were quite different from this case. Neither *King* nor *Stuart* upheld a law banning a form of medical care endorsed as appropriate by leading national medical associations, much less a law that banned that practice even as to consenting adult patients, based on the political objections of legislators and a few patients (who could simply decline the doctor's inquiries or advice).

In *King*, the Third Circuit upheld, under intermediate scrutiny, a law that prohibits licensed counselors from engaging in sexual orientation change efforts (SOCE) therapy with clients under 18. 767 F.3d 216. In that case, however, the

---

[2] Just last Term, the Supreme Court denied certiorari in several cases presenting the issue of marriage equality before finally granting review in a case from the Sixth Circuit.

4

legislation was consistent with the views of several national medical associations that SOCE counseling carried *"serious" health risks* to patients and that that there was "no credible evidence" that the counseling was effective. *Id.* at 238 (emphasis added) (citing position papers from the legislative record). Moreover, the Third Circuit stressed that the SOCE law was tailored to apply only to minors, who constituted an "especially vulnerable population." *Id.* at 240. By contrast, FOPA prohibits physicians from acting *consistent* with standard medical practice recommended by national medical associations, and precludes doctors from asking even willing patients about the presence guns in their home. Moreover, whereas *King* stressed the legislature's concern for the health risks SOCE posed to unsuspecting patients, here the legislative record reflects that the legislature was out to silence speech by doctors because it was perceived as "political." Thus, the fact that the Supreme Court declined to grant certiorari in *King* in no way suggests that the question presented for Supreme Court review in *this* case is not "substantial."

Appellants' reliance on the denial of certiorari in *Stuart* is even more surprising. In *Stuart*, a unanimous panel of the Fourth Circuit *affirmed* an injunction against a North Carolina statute that required physicians to "display and describe" the image of a fetus during a required ultrasound for a women seeking an abortion. 774 F.3d at 242-43. The *Stuart* court concluded that the law was a content-based regulation of medical professionals' speech, and must "satisfy *at least* intermediate

5

scrutiny to survive." *Id*. at 245 (emphasis added). The panel did not determine whether strict scrutiny was warranted, because the statute failed even intermediate scrutiny. *Id.* at 248. The *Stuart* court's analysis in invalidating the law again stands in stark contrast to the panel majority here: the court found impermissible the challenged law's "interfere[ence] with the physician's professional judgment" and the fact that it "compromis[ed] the doctor-patient relationship." *Id.* at 250. Because the ultrasound display law was intended "to convey not the risks and benefits of the medical procedure to the patient's own health, but rather the full weight of the state's moral condemnation," it went beyond the permissible scope of regulation of professional speech. *Id*. at 255. The majority decision here is directly to the contrary. It upholds such state interference in the "doctor-patient relationship" precisely because of the legislature's own view of purportedly "political" speech. Whereas the standard of review was not relevant in *Stuart* because the law failed even intermediate scrutiny, here there is no question that application of strict scrutiny, as *Reed* suggests, would have changed the outcome.³

---

³ The majority's assertion that its opinion is consistent with *King* and *Stuart*, Op. 66, is only accurate to a point. It is true that all three opinions purport to apply some form of intermediate scrutiny to a regulation of professional speech; however, as argued further in the En Banc Petition, the majority's version of intermediate scrutiny was in practice a highly permissive test. *See* Pet. 10-14.

Appellees' petition for certiorari in this case (if rehearing is denied) would thus present a distinct issue and procedural posture from *King* and *Stuart*. Those cases of course did not present the question whether *Reed* (which was not decided when those petitions were filed) applies in the context of professional speech, or whether a state statute can be upheld where it targets widely accepted (and even recommended) medical practice because of its perceived political message, when the only "harm" is that listeners must hear that message—a harm that the Supreme Court has consistently rejected as a basis for restricting speech. By any measure, therefore, the denial of certiorari in *King* and *Stuart* is wholly irrelevant to this Court's consideration of this Motion for Stay.

**C. Good Cause Exists for a Stay of the Mandate, and the State Does Not Demonstrate Otherwise**

As set forth above, Appellees need only show that "good cause" exists for a stay of the mandate. *See* Fed. R. App. P. 41(d)(2)(A). But even if Appellees were required to show they would suffer irreparable harm absent a stay, they plainly could meet that burden. In the context of a request for an injunction, it is "well established that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1271-72 (11th Cir. 2006) (alteration in original) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)); *see also Cate v. Oldham*, 707 F.2d 1176, 1188-89 (11th Cir. 1983) (same). The harm to

physicians' First Amendment rights should FOPA be permitted to go into effect will be immediate and significant. Allowing the mandate to issue would cause a drastic shift in the *status quo* of medical practice in Florida. Physicians throughout the state would either need to cease their standard practices of inquiring about their patients' firearm ownership status or risk disciplinary action by leaving their practice unchanged. The law does not tolerate this kind of intrusion into a party's First Amendment rights, even for "minimal periods of time." *KH Outdoor*, 458 F.3d at 1172.

Even accepting Appellants' argument that this Court should weigh the prospective harm to physicians from permitting FOPA to go into effect against the harm to the State or to the public from granting the stay, it is clear that such a balancing test weighs wholly in Appellees' favor. Aside from a vague assertion that enjoining any duly enacted statute somehow *inherently* harms the State,[4] Appellants offer absolutely no evidence or claim that either the State or members of the public have been harmed in any specific way by the now multi-year injunction enjoining enforcement of FOPA. There is no suggestion that, as a consequence of

---

[4] Curiously, for this proposition, Appellants rely on cases in which the Supreme Court *granted* the requested stays pending review. *See Maryland v. King*, 133 S. Ct. 1 (2012); *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345 (1977). Outside of the fact that both of these cases dealt with statutes that did not implicate First Amendment interests (*King* was a Fourth Amendment case and *New Motor* was a Fourteenth Amendment case), in both instances, the Court's actions *preserved* rather than upended the status quo that persisted at the time.

doctors continuing to ask about the presence of guns in the home, as they have been free to do under the district court's injunction, any patient has been harmed in the slightest fashion.

Finally, and most importantly for the well-being of Florida citizens, Appellants have no answer to the grave public health consequences of permitting FOPA to go into effect. If the mandate is permitted to issue while the Supreme Court considers the case, it will not only ensure the abridgement of doctors' First Amendment rights, but also that Florida residents receive far less counseling regarding firearm safety from their physicians. Good cause for a stay of the mandate is present here.

## CONCLUSION

If the Court does not grant Appellees' En Banc Petition, the mandate should be stayed pending Appellees' filing and disposition of a Petition for a Writ of Certiorari in the United States Supreme Court.

Respectfully submitted,

DATED: September 10, 2015

/s/ Douglas H. Hallward-Driemeier
Douglas H. Hallward-Driemeier
ROPES & GRAY LLP
700 12th Street, NW, Suite 900
Washington, D.C. 20005
Telephone: 202-508-4600

*Counsel for Appellees*

# CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2015, an electronic version of this Reply to Opposition to Motion to Stay the Mandate Pending Petition for Certiorari if Rehearing *En Banc* is Not Granted was served via the Court's CM/ECF system on counsel of record for defendants-appellants.

/s/ Douglas H. Hallward-Driemeier
Douglas H. Hallward-Driemeier