# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

### CASE NO. 12-14009-FF

_____

**DR. BERND WOLLSCHLAEGER,** *et al.*,

Appellees,

v.

**GOVERNOR, STATE OF FLORIDA,** *et al.*,

Appellants.

_____

**On Appeal from the United States District Court
For the Southern District of Florida
Miami Division**

_____

### APPELLEES' SUBMISSION REQUESTED BY THE COURT

*Counsel for Appellees Dr. Bernd Wollschlaeger, et al.*

Edward M. Mullins
ASTIGARRAGA DAVIS MULLINS & GROSS-
MAN, P.A.
1001 Brickell Bay Dr., 9th Floor
Miami, Florida 33131-2847
Telephone: (305) 372-8282

Jonathan E. Lowy
BRADY CENTER TO PREVENT GUN
VIOLENCE
840 1st Street NE
Suite 400
Washington, D.C. 20005
Telephone: (202) 370-8104

Douglas H. Hallward-Driemeier
Mariel Goetz
ROPES & GRAY LLP
2099 Pennsylvania Ave. NW
Washington, D.C. 20006
Telephone: (202) 508-4600

Erin R. Macgowan
Alexandra L. Roth (application
pending)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Telephone: (617) 235-4105

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

### <u>Wollschlaeger v. Governor, State of Florida,</u> *et al.* <u>(Case No. 12-14009-FF)</u>

Pursuant to Federal Rule of Appellate Procedure Rule 26.1 and Eleventh Circuit Rule 26.1-1, Appellees/Plaintiffs provide the following certificate of interested persons:

1.  The Honorable Marcia G. Cooke, U.S. District Judge

**Defendants/Appellants:**

2.  Armstrong, John H., present Fla. Surgeon General and Secretary of the Department of Health

3.  Averoff, Magdalena, Fla. Board of Medicine Member

4.  Di Pietro, Nina, former Fla. Board of Medicine Member

5.  Dolin, Gary, Fla. Board of Medicine Member

6.  Dudek, Elizabeth, Secretary of the Agency for Health Care Administration

7.  El Sanadi, Nabil, Fla. Board of Medicine Member

8.  Farmer, Frank, former Fla. Surgeon General and Department Secretary

9.  Fernandez, Bernardo, Fla. Board of Medicine Member

10. Ginzburg, Enrique, Fla. Board of Medicine Member

11. Goersch, Brigitte Rivera, Fla. Board of Medicine Member

12. Lage, Onelia, former Fla. Board of Medicine Member

13. Lopez, Jorge J., Fla. Board of Medicine Member

## <u>Wollschlaeger v. Governor, State of Florida,</u> *et al.* **(Case No. 12-14009-FF)**

14. Orr, James, Fla. Board of Medicine Member

15. Rosenberg, Steven, Fla. Board of Medicine Member

16. Scott, Rick, Governor of Florida

17. Stringer, Merle, Fla. Board of Medicine Member

18. TerKonda, Sarvam, Fla. Board of Medicine Member

19. Thomas, George, Fla. Board of Medicine Member

20. Tootle, Joy, Fla. Board of Medicine Member

21. Zachariah, Zachariah, Fla. Board of Medicine Member

**Plaintiffs/Appellees:**

22. American Academy of Family Physicians, Fla. Chapter

23. American Academy of Pediatrics, Fla. Chapter

24. American College of Physicians, Fla. Chapter

25. Fox-Levine, Shannon

26. Gutierrez, Roland

27. Sack, Stanley

28. Schaechter, Judith

29. Schechtman, Tommy

30. Wollschlaeger, Bernd

## <u>Wollschlaeger v. Governor, State of Florida, *et al.* (Case No. 12-14009-FF)</u>

**Defendants/Appellants' counsel:**

31.  Bondi, Pam

32.  DeWolf, Diane G.

33.  Nordby, Rachel E.

34.  Osterhaus, Timothy D.

35.  Vail, Jason

36.  Winsor, Allen

**Plaintiffs/Appellees' counsel:**

37.  Astigarraga, Davis, Mullins & Grossman, P.A.

38.  Brady Center to Prevent Gun Violence

39.  Dewar, Elizabeth*

40.  Goetz, Mariel

41.  Guiliano, Douglas*

42.  Hallward-Driemeier, Douglas

43.  Kainen, Dennis G.*

44.  Lewis, Julia*

45.  Lowy, Jonathan

46.  Lucas, Hal*

47.  Macgowan, Erin

48. Manheim, Bruce*

49. Mullins, Edward

50. Ripa, Augustine*

51. Ropes & Gray LLP

52. Vice, Daniel*

53. Roth, Alexandra (application pending)

**Amici and Others:**

54. Alachua County Medical Society

55. American Academy of Child and Adolescent Psychiatry

56. American Academy of Family Physicians

57. American Academy of Orthopaedic Surgeons

58. American Academy of Pediatrics

59. American Association of Suicidology

60. American College of Obstetricians and Gynecologists

61. American Congress of Obstetricians and Gynecologists

62. American College of Preventative Medicine

63. American College of Surgeons

64. American Medical Association

65. American Psychiatric Association

66.  American Public Health Association

## Wollschlaeger v. Governor, State of Florida, *et al.* (Case No. 12-14009-FF)

67.  ACLU Foundation of Florida, Inc.

68.  Broward County Medical Association, The

69.  Broward County Pediatric Society, The

70.  Center for Constitutional Jurisprudence (CCJ)

71.  Children's Healthcare Is a Legal Duty, Inc. (CHILD)

72.  Doctors for Responsible Gun Ownership (DRGO)

73.  Early Childhood Initiative Foundation

74.  Florida Public Health Association, The

75.  Law Center to Prevent Gun Violence

76.  National Rifle Association (NRA)

77.  Palm Beach County Medical Society

78.  Suicide Awareness Voices of Education

79.  University of Miami School of Law Children and Youth Clinic

80.  Acosta, Patricia, Counsel for ACLU et al.

81.  Greenberg, Gerald E., Counsel for ACLU et al.

82.  Isani, Jamie Zysk, Counsel for ACLU et al.

83.  Julin, Thomas R., Counsel for ACLU et al.

84.  Marshall, Randall C., Counsel for ACLU et al.

85. Mead, Gordon M., Jr., Counsel for ACLU et al.

**Wollschlaeger v. Governor, State of Florida,** *et al.* **(Case No. 12-14009-FF)**

86. Ekdahl, Jon N., Counsel for American Medical Association et al.

87. Levenstein, Richard H., Counsel for American Medical Association et al.

88. Nelson, Leonard A., Counsel for American Medical Association et al.

89. Fry, David H., Counsel for APHA et al.

90. Heckenlively, Bryan, Counsel for APHA et al.

91. Weinstein-Tull, Justin S., Counsel for APHA et al.

92. Eastman, John, Counsel for CCJ and DRGO

93. Caso, Anthony, Counsel for CCJ and DRGO

94. Thompson, David, Counsel for the NRA

95. Patterson, Peter, Counsel for the NRA

96. Cooper, Charles, Counsel for the NRA

* = no longer involved in representation

/s/ Douglas H. Hallward-Driemeier

Dated: October 1, 2015

Douglas H. Hallward-Driemeier
ROPES & GRAY LLP
*Counsel for Appellees*

Appellees respectfully submit this memorandum in response to the Court's September 11, 2015 request for supplemental briefing on "(1) whether *Reed v. Town of Gilbert, Arizona*, __ U.S. ___, 135 S. Ct. 2218 (2015), necessitates the application of strict scrutiny to this case, and (2) if so, whether the state of Florida has a sufficiently compelling interest, such that the Act can withstand strict scrutiny." As set forth below, *Reed*, like other Supreme Court cases before it, unequivocally requires this Court to apply strict scrutiny to Florida's Firearm Owners Privacy Act ("FOPA" or the "Act") because the Act is, on its face, a content-based restriction on speech and, while not required to find strict scrutiny applies, the Act is also viewpoint-discriminatory. While Appellees maintain that the Act cannot withstand even the less stringent test of intermediate scrutiny, *see* Appellees' Petition for Rehearing En Banc ("En Banc Petition") 10-14, the Act certainly fails strict scrutiny. The interests the State has proffered in defense of the Act come nowhere close to what is required for a law to survive the highest level of constitutional scrutiny, under which a law must serve a "compelling" interest and be "narrowly tailored to achieve that interest." This Court should grant petitioners' pending En Banc Petition and find the Act unconstitutional.

## ARGUMENT

In *Reed*, the Supreme Court confirmed, without qualification, the principle that "[a] law that is content based on its face is subject to strict scrutiny." *Reed*,

135 S. Ct. at 2228. There is no dispute that FOPA is a content-based restriction on speech. Accordingly, under *Reed*, strict scrutiny must apply. For that reason alone, the panel majority's opinion, which "readily" agreed that FOPA is content-based, Op. 62, but concluded that only intermediate scrutiny was warranted, is inconsistent with *Reed*.

As Appellees have argued at all stages of this case, FOPA is a content-based restriction on speech, and under this Court's well-established precedent, must be subject to strict scrutiny, which it cannot survive. *See* Appellee Br. 28-33; Pet. for Reh'g 6-9; *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1258 (11th Cir. 2005) ("[I]f the ordinance is content based, it is subject to strict scrutiny.").

## A.    *Reed v. Town of Gilbert* **Mandates the Application of Strict Scrutiny**

In *Reed*, the Supreme Court considered a First Amendment challenge to Gilbert, Arizona's Sign Code, which regulated the display of signs according to subject-based categories. Under this regulatory scheme, "Ideological Sign[s]," "Political Sign[s]" and "Temporary Directional Signs Relating to a Qualifying Event" were each subject to different rules and restrictions. 135 S. Ct. at 2224-25. The Supreme Court held that the law was "content based on its face" and therefore subject to strict scrutiny under the First Amendment, which the law could not satisfy. *Id.* at 2227, 2231-32.

*Reed* confirms that a government regulation of speech "is content based if a law applies to particular speech because of *the topic discussed* or the idea or message expressed." *Id.* at 2227 (emphasis added). The Court stressed that a regulation, even if it is "facially content neutral," may be found "content-based," and thus subject to strict scrutiny, on several different grounds—such as where the law "cannot be 'justified without reference to the content of the regulated speech'" or was "adopted by the government 'because of disagreement with the message [the speech] conveys.'" *Id.* (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). But the Court also made clear that strict scrutiny will apply even without these additional features if the laws are "content based on their face." *Id.*

Once a law is determined to be content-based on its face, there is "no need to consider the government's justifications or purposes for enacting the [regulation] to determine whether it is subject to strict scrutiny." *Id.* at 2227. To emphasize the point, the Court in *Reed* reiterated, in the process of explaining the court of appeals' error, that "[a] law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Id.* (quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993)). "[A]n innocuous justification," in other words, "cannot transform a facially content-based law into one that is content neutral." *Id.* at 2228.

It is plain, then, under *Reed*, that FOPA must be subjected to strict scrutiny. The Act is, by any measure, a content-based law: it restricts the speech of a single group (doctors) on a single topic (firearms). Indeed, the panel majority "readily agree[d] that the Act regulates speech on the basis of its content." Op. 62. Under *Reed*, this ends the inquiry into what type of review applies, and the law must be subjected to strict scrutiny.

Contrary to the panel majority's conclusion that content-based discrimination is subject to lesser scrutiny when the speech in question is undertaken by professionals, Op. 63-64, *Reed* rejects that distinction. *Reed* specifically cites, as an example of the rule that content-based speech regulations are presumptively unconstitutional, *NAACP v. Button*, 371 U.S. 415 (1963). *Button* involved a successful First Amendment challenge to a regulation restricting professional speech by lawyers. In *Button*, the Court observed that it is "no answer . . . to say . . . that the purpose of [the challenged] regulations was merely to insure high professional standards and not to curtail free expression." *Id.* at 438-39. In *Button*, moreover, the speech at issue was at least arguably commercial in nature, because it concerned purportedly "improper solicitation." *Id.* at 438. Here, the speech is not even arguably "commercial," as it relates to a matter of public health and individual safety, i.e., how to minimize the risks attendant to the presence of guns in the home, and even arguably political speech, i.e., issues of gun safety.

The panel's rejection of strict scrutiny based on its conclusion that FOPA is not "speaker based" or "viewpoint based" in a constitutionally problematic sense, Op. 62-66, is also irreconcilable with *Reed*. *Reed* makes clear that these are *alternative* bases for determining that a facially content-neutral regulation should be subject to strict scrutiny, and their absence does not justify applying less than strict scrutiny to a statute that *is* content-based on its face. 135 S. Ct. at 2229-30 (observing that "it is well established that '[t]he First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic'" (quoting *Consolidated Edison Co. of N.Y. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 530, 537 (1980))). *Reed* makes clear that "a speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter." *Id.* at 2230. Like Gilbert's Sign Code, FOPA "singles out specific subject matter for differential treatment," *id.*, subjecting only physician inquiries about firearms to limitations, whereas doctors may inquire about other health risks, such as pools, smoking, or alcohol consumption, without such restrictions. And, of course, these limits apply only to doctors, and not to others who might inquire about gun ownership, such as gun store owners, sellers of shooting sport periodicals, or any other group.

While *Reed* makes clear that viewpoint discrimination is not a prerequisite to applying strict scrutiny, it also acknowledges that one of the reasons speaker- and topic-based limits warrant strict scrutiny is the genuine risk that viewpoint discrimination lurks behind the regulation. *See id.* at 2230 (noting that "speech restrictions based on the identity of the speaker are all too often simply a means to control content" (quoting *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 340 (2010)); *id.* at 2233 (Alito, J., concurring) (observing that "[l]imiting speech based on its 'topic' or 'subject' favors those who do not want to disturb the status quo"); *id.* at 2237 (Kagan, J., concurring in the judgment) (noting that "when a law restricts discussion of an entire topic in public debate," there is always a "realistic possibility that official suppression of ideas is afoot" (citation and internal quotation marks omitted)). In the case of FOPA, one need not even speculate about that, because the legislative history and context of the Act's adoption make clear that it was born of a desire to silence what some saw as a "political attack" on gun ownership by doctors who were counseling patients about the dangers posed by guns in the home. *See* D87¶5[1]; Appellee Br. 5 (recounting legislative history of the Act).

Finally, to the extent the panel majority relied on "the State's interest in regulating the [medical] profession" as a basis for applying lesser scrutiny, Op. 63-64, *Reed* also rejects that mode of analysis. *Reed* stresses repeatedly that a court "ha[s]

---

[1] Citations to the record are [D#:*] or [D#¶*] where # is the District Court's docket entry number and * is the page or paragraph number.

6

no need to consider the government's justifications or purposes for enacting [a regulation] to determine whether it is subject to strict scrutiny." 135 S. Ct. at 2227. *See id.* at 2228 (noting that "an innocuous justification cannot transform a facially content-based law into one that is content neutral," and thus the Court has "repeatedly considered whether a law is content neutral on its face *before* turning to the law's justification or purpose"). Because "[i]nnocent motives do not eliminate the danger of censorship presented by a facially content-based statute," the law focuses on the "abridgement of speech" effected by a law rather than "the motives of those who enacted" it. *Id.* at 2229. The government interests served by the law only enter the inquiry in the *application* of strict scrutiny. *See Cahaly v. Larosa*, 796 F.3d 399, 405 (4th Cir. 2015) ("*Reed* has made clear that, at the first step, the government's justification or purpose in enacting the law is irrelevant."); *Norton v. City of Springfield, Ill.*, 612 Fed. App'x 386, 2015 WL 4714073, at *2 (7th Cir. Aug. 7, 2015) (Easterbrook, J.) (following *Reed*, "[a]ny law distinguishing one kind of speech from another by reference to its meaning now requires compelling justification").

The notion that content-based restrictions on speech are subject to strict scrutiny is not new. *See, e.g.*, *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992) ("Content-based regulations are presumptively invalid."); *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995) ("Discrimination against speech

because of its message is presumed to be unconstitutional."); *Solantic*, 410 F.3d at 1258 (recognizing that government regulations that restrict speech "on account of its message . . . pose the inherent risk that the Government seeks not to advance a legitimate regulatory goal, but to suppress unpopular ideas or information" (quoting *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 641-42 (1994))). And indeed, Appellees have maintained throughout this case, both in the district court and on appeal, that FOPA is exactly the type of content-based restriction that this Court's precedent requires be subjected to strict scrutiny. *See* D16:6-8; D58:3-7; D73:15-18; Appellee's Br. 28-33; *cf. Burk v. Augusta-Richmond Cnty.*, 365 F.3d 1247, 1252 (11th Cir. 2004) (restriction on speech is only content-neutral if it "'places no restrictions on—and clearly does not prohibit—either a particular viewpoint or any subject matter'" (quoting *Hill v. Colorado*, 530 U.S. 730, 723 (2000))). *Reed* confirms this principle, in no uncertain terms: "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." 135 S. Ct. at 2226.

For the reasons previously stated in Appellees' Brief and En Banc Petition, Appellees believe that FOPA fails for other reasons as well—including that it is subject to strict scrutiny because it was motivated by a desire to silence a viewpoint, and because it fails even under intermediate scrutiny. *See* En Banc Pet. 6-14;

Appellees' Br. 30-33, 51-52.  But, even to the extent the Court disagrees with those contentions, FOPA would be subject to strict scrutiny under *Reed*, and it cannot survive such scrutiny.

**B.    FOPA Does Not Serve A Compelling State Interest And Cannot Survive Strict Scrutiny**

Under strict scrutiny, the State bears the burden of proving that the Act "furthers a compelling interest and is narrowly tailored to achieve that interest."  *Reed*, 135 S. Ct. at 2231 (quoting *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 131 S. Ct. 2806, 2817 (2011)).  As Appellees set forth in prior briefing, the Act fails on both counts.

At the outset, it bears emphasizing that, in its brief on appeal, the State urged this Court to interpret FOPA's restrictions as merely "hortatory" because it recognized that construing the statute to restrict "firearms safety questions and advice" would "create a constitutional infirmity."  Appellants' Br. 19.  The State's defense of the Act throughout this litigation has hinged on its argument that some lesser form of scrutiny applies, under which it need show only a "substantial" rather than "compelling" interest.[2]  *See id.* at 31 (arguing that the State "may regulate professional speech and need not survive strict scrutiny to do so").

---

[2] The State's fleeting and conclusory characterizations of its purported interests as possibly "compelling" do not begin to make the showing required by strict scrutiny. *See, e.g.*, Appellants' Br. 32 ("These are substantial, even compelling, interests.").

The reason for the State's persistent efforts to avoid strict scrutiny is that none of the State's proffered interests even arguably qualify as compelling state interests. As the Supreme Court has explained, the "determination [whether an interest is compelling] is not to be made in the abstract, by asking whether fairness, privacy, etc., are highly significant values; but rather by asking whether the *aspect* of fairness, privacy, etc., addressed by the law at issue is highly significant." *California Democratic Party v. Jones*, 530 U.S. 567, 568 (2000) (rejecting "protecting privacy," along with other asserted state interests, as insufficiently compelling to justify law). The State's interests are woefully inadequate to satisfy this standard.

The State's main justification for the Act—and the only interest relied upon by the panel majority, Op. 67-69 & n.22—is patients' interest in maintaining privacy from their doctors about their ownership of firearms. The Supreme Court has observed that "privacy" with respect to certain information cannot rise to the level of a compelling state interest unless that information is truly "sacrosanct." *See Jones*, 530 U.S. at 585 (protecting the privacy of voters' party affiliations could not "conceivably be considered a 'compelling' [interest]" because "[i]f such information were generally so sacrosanct, federal statutes would not require a declaration of party affiliation as a condition of appointment to certain offices"). Because firearm ownership information already is heavily regulated by Florida and the federal government, it is not sufficiently "sacrosanct" for its protection to constitute a

compelling state interest.[3] The district court rightly recognized this fact in reject-

ing the State's purported "privacy" justification for the Act. D105:16-17 (noting

that regulations "already circumscribe the privacy protections over the limited in-

formation this law seeks to protect—the fact that a patient owns or possesses a

firearm").

This Court's decision in *Solantic*, cited with approval by the Supreme Court

in *Reed*, 135 S. Ct. at 2232, further illustrates why the State's interests here fail to

qualify as compelling. *Solantic* invalidated a sign code that exempted from a per-

mitting requirement certain categories of signs, including signs featuring "religious

displays" and insignia of fraternal organizations. 410 F.3d at 1256-57. But "the

sign code recite[d] only the general purposes of aesthetics and traffic safety, offer-

ing no reason for applying its requirements to some types of signs but not others."[4]

*Id.* at 1267. Because the state's asserted interests in aesthetics and traffic safety

were "offered only at the highest order of abstraction and applied inconsistently,"

---

[3] *See* Fla. Stat. § 790.065; 18 U.S.C. § 922(t) (requiring Florida residents to submit a wide range of personal information and undergo a background check before pur-chasing firearm from licensed gun dealer); *see also* Fla. Stat. §§ 790.01, 790.06 (requiring license to carry concealed firearm).

[4] For example, the code did not explain how "a sign depicting a religious figure in flashing lights," which would be permissible, "would be any less distracting or hazardous to motorists than a moving or illuminated sign of the impermissible va-riety-for example, one depicting the President in flashing lights." *Solantic*, 410 F.3d at 1267. The code likewise did not explain why "a flag bearing an individu-al's logo" (impermissible) was "any less aesthetically pleasing than, say, a flag bearing the logo of a fraternal organization" (permissible). *Id.* at 1268.

neither rose to the level of "a compelling government interest." *Id.* The same is true of the State's abstract privacy justifications for FOPA's restrictions on firearms-related speech. As even the panel majority acknowledged, Op. 68 n.23, doctors ask patients questions about any number of highly sensitive topics, ranging from drug use to sexual activity and domestic violence. *See also id.* at 135 (Wilson, J., dissenting). There is no indication that questions about firearm ownership are viewed as any more intrusive than other questions, and yet FOPA censors only firearms questions. And the law *only* restricts allegedly invasive questions about firearms by medical professionals, not when such questions are asked by lawyers, accountants, clergy, gardeners, or anyone else who might care to ask. This reality belies any assertion that the State's privacy rationale furthers a "compelling" interest. *See FCC v. League of Women Voters*, 468 U.S. 364, 396 (1984) ("[T]he substantiality of [the government's] asserted interest is dubious" where the statute "provides only ineffective or remote support for the government's purpose."). As the Supreme Court reiterated in *Reed*, a "law cannot be regarded as protecting an interest of the highest order, and thus as justifying a restriction on truthful speech, when it leaves appreciable damage to that supposedly vital interest unprohibited." 135 S. Ct. at 2232 (quoting *Republican Party of Minn. v. White*, 536 U.S. 765, 780 (2002))).

And even if certain patients are made uncomfortable by their doctors inquiring about the presence of guns in their homes, Supreme Court precedent makes clear that such annoyance at another's speech does not form a permissible basis for silencing the speaker. As the Supreme Court repeatedly has held, the fact that certain listeners might feel "coerced and harassed" by speech cannot "sustain a broad content-based rule."[5] *Sorrell*, 131 S. Ct. at 2669; *see also McCullen v. Coakley*, 134 S. Ct. 2518, 2532 (2014) (that speech might give patients "offense or discomfort would not give the [State] a content-neutral justification to restrict the speech"). The burden is on listeners simply to avert their eyes and ears. *Snyder v. Phelps*, 562 U.S. 443, 456-59 (2011); *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 210 (1975).

Other privacy-related arguments suggested by the State likewise are unavailing. Concerns of disclosure to third parties are unfounded because "the confidentiality of medical records is closely guarded already" by state and federal laws as well as ethical principles governing the medical profession. Op. 129-130 (Wilson, J., dissenting); *see also id.* at 71 (acknowledging statutory protection of information disclosed to physicians). The State's additional asserted interests—

---

[5] Further, the First Amendment gives patients—a great of many of which are *willing* listeners—a right to hear the very speech that FOPA prohibits. The fact that some patients may be uninterested in or averse to particular speech from their doctors does not permit the State to simply ban that speech as to all patients.

protection of Second Amendment rights [6] and ensuring patients' access to healthcare[7]—fare no better. *See* Appellees' Br. 34-39.

And even if the State's asserted privacy interests could be considered "compelling," which they cannot, FOPA is plainly not the least restrictive means of achieving the State's goals. As a result, the law cannot survive strict scrutiny. *See* Appellees' Br. 40-43; En Banc Pet. 12-14; *Reed*, 135 S. Ct. at 2231. When strict scrutiny applies, "[i]f a less restrictive alternative would serve the Government's purpose, the legislature *must* use that alternative." *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000) (emphasis added); *see also Solantic*, 410 F.3d at 1268 (content-based restriction must be narrowly tailored to survive strict scrutiny). Here, the State enacted a separate—and unchallenged—provision that specif-

---

[6] Any argument that FOPA is designed to protect patients' Second Amendment rights is a non-starter. The speech restricted by the Act "simply does not interfere with the right to keep and bear arms." D105:15; *see also* Appellees' Br. 34-35; Op. 133-37 (Wilson, J., dissenting).

[7] While there is no question that "access to health care" is important as a general matter, this interest fails to qualify as compelling in the circumstances of this case. *See* Op. 121-28 (Wilson, J., dissenting). As the dissent points out, "[t]here is simply no evidence showing that inquiries about firearms during medical examinations negatively affected medical care or the health and well-being of patients." Op. 121 (Wilson, J., dissenting). For the same reasons, Florida's general interest in "preserving its citizens from harmful or ineffective professional practices," Op. 67, is not served by, and cannot justify, the Act. To the contrary, the record reflects agreement among national medical associations that asking about firearms in certain medical contexts, such as pediatrics, "is part of the *standard of preventive care* that physicians owe their patients." AMA Amicus Brief in Support of En Banc Petition 2 (emphasis added).

ically protects patients' ability to "decline to answer" questions about firearms. Fla. Stat. § 790.338(4). To the extent that the State has an interest in protecting patients' privacy from their physicians, that interest is adequately served by this provision. FOPA's additional restrictions on physician speech regarding firearms go substantially further, and cannot survive the narrow tailoring analysis required under *Reed*.

## CONCLUSION

This Court should grant Appellees' pending En Banc Petition and should find that FOPA is subject to strict scrutiny, which it cannot survive.

Respectfully submitted,


DATED: October 1, 2015

/s/ Douglas H. Hallward-Driemeier
Douglas H. Hallward-Driemeier
ROPES & GRAY LLP
2099 Pennsylvania Ave. NW
Washington, D.C. 2006
Telephone: 202-508-4600

*Counsel for Petitioners*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2015, an electronic version of this Submission Requested by the Court was served via the Court's CM/ECF system on counsel of record for defendants-appellants.

/s/ Douglas H. Hallward-Driemeier
Douglas H. Hallward-Driemeier