# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

Case No. 12-14009-FF

_____

DR. BERND WOLLSCHLAEGER, *et al.*,
Plaintiffs/Appellees,

v.

GOVERNOR, STATE OF FLORIDA, *et al.*,

Defendants/Appellants.

_____

On Appeal from the United States District Court
for the Southern District of Florida
_____

**APPELLANTS' MEMORANDUM ADDRESSING THE IMPACT OF**
***REED v. TOWN OF GILBERT, ARIZONA***
_____

PAMELA JO BONDI
ATTORNEY GENERAL

Allen Winsor (FBN 16295)
 Solicitor General
Allen.Winsor@myfloridalegal.com
Osvaldo Vazquez (FBN 70995)
 Deputy Solicitor General
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399
(850) 414-3300
(850) 410-2672 (fax)
*Counsel for State Appellants*

## CERTIFICATE OF INTERESTED PERSONS & CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure Rule 26.1 and Eleventh Circuit Rule 26.1-1, Defendants/Appellants provide the following list of interested persons or entities:

1. The Honorable Marcia G. Cooke, U.S. District Judge

**Defendants/Appellants and Former Defendants/Appellants**:

2. Armstrong, John H., Fla. Surgeon General and Secretary of the Department of Health

3. Averhoff, Magdalena, Fla. Board of Medicine Member

4. Bearison, Fred, Former Fla. Board of Medicine Member

5. Di Pietro, Nina, Former Fla. Board of Medicine Member

6. Dolin, Gary, Fla. Board of Medicine Member

7. Dudek, Elizabeth, Secretary for the Agency for Health Care Administration

8. El Sanadi, Nabil, Fla. Board of Medicine Member

9. Espinola, Trina, Former Fla. Board of Medicine Member

10. Farmer, Frank, Former Fla. Surgeon General and Department Secretary

11. Ginzburg, Enrique, Fla. Board of Medicine Member

12. Goersch, Brigitte R., Fla. Board of Medicine Member

13. Lage, Onelia, Former Fla. Board of Medicine Member

14. Levine, Bradley, Former Fla. Board of Medicine Member

15. Lopez, Jorge J., Fla. Board of Medicine Member

16. Mullins, Donald, Former Fla. Board of Medicine Member

17. Nuss, Robert, Former Fla. Board of Medicine Member

18. Orr, James, Fla. Board of Medicine Member

19. Rosenberg, Jason, Former Fla. Board of Medicine Member

20. Rosenberg, Steven, Fla. Board of Medicine Member

21. Scott, Rick, Governor of Florida

22. Shugarman, Richard G., Former Fla. Board of Medicine Member

23. Stringer, Merle, Fla. Board of Memdicine Member

24. TerKonda, Sarvam, Fla. Board of Medicine Member

25. Thomas, George, Former Fla. Board of Medicine Member

26. Tootle, Joy, Fla. Board of Medicine Member

27. Tucker, Elisabeth, Former Fla. Board of Medicine Member

28. Winchester, Gary, Former Fla. Board of Medicine Member

29. Zachariah, Zachariah P., Fla. Board of Medicine Member

**Plaintiffs/Appellees**:

30. American Academy of Family Physicians, Fla. Chapter

31. American Academy of Pediatrics, Fla. Chapter

32. American College of Physicians, Fla. Chapter

33. Fox-Levine, Shannon

34. Gutierrez, Roland

35. Sack, Stanley

36. Schaechter, Judith

37. Schechtman, Tommy

38. Wollschlaeger, Bernd

**Defendants/Appellants' counsel**:

39. Bondi, Pam, Attorney General of Florida

40. DeWolf, Diane G. [no longer involved in representation]

41. Nordby, Rachel E.

42. Osterhaus, Timothy D. [no longer involved in representation]

43. Vail, Jason [no longer involved in representation]

44. Vazquez, Osvaldo

45. Winsor, Allen

**Plaintiffs/Appellees' counsel**:

46. Astigarraga, Davis, Mullins & Grossman, P.A.

47. Dewar, Elizabeth [no longer involved in representation]

48. Goetz, Mariel

49. Guiliano, Douglas [no longer involved in representation]

50. Hallward-Driemeier, Douglas

51. Kainen, Dennis G. [no longer involved in representation]

52. Lewis, Julia [no longer involved in representation]

53. Lowy, Jonathan

54. Lucas, Hal [no longer involved in representation]

55. Macgowan, Erin

56. Manheim, Bruce [no longer involved in representation]

57. Mullins, Edward

58. Ripa, Augustine [no longer involved in representation]

59. Ropes & Gray LLP

60. Vice, Daniel [no longer involved in representation]

**Amici Curiae**:

61. ACLU Foundation of Florida, Inc. (ACLU)

62. Alachua County Medical Society

63. American Academy of Child and Adolescent Psychiatry

64. American Academy of Family Physicians

65. American Academy of Orthopaedic Surgeons

66. American Academy of Pediatrics

67. American Association of Suicidology

68. American Bar Association (ABA)

69. American College of Obstetricians and Gynecologists

70. American Congress of Obstetricians and Gynecologists

71. American College of Preventative Medicine

72. American College of Surgeons

73. American Medical Association (AMA)

74. American Public Health Association (APHA)

75. Brady Center to Prevent Gun Violence

76. The Broward County Medical Association

77. The Broward County Pediatric Society

78. Center for Constitutional Jurisprudence (CCJ)

79. Children's Healthcare Is a Legal Duty, Inc.

80. Doctors for Responsible Gun Ownership

81. Early Childhood Initiative Foundation

82. Everytown for Gun Safety Action Fund

83. Everytown for Gun Safety Support Fund

84. The Florida Public Health Association

85. Institute for Justice (IJ)

86. Law Center to Prevent Gun Violence

87. Moms Demand Action for Gun Sense in America (MDAGSA)

88. National Rifle Association (NRA)

89. Palm Beach County Medical Society

90. Suicide Awareness Voices of Education

91. University of Miami School of Law Children and Youth Clinic

**Counsel for Amici Curiae**:

92. Abudu, Nancy, Counsel for ACLU et al.

93. Acosta, Patricia, Counsel for ACLU et al.

94. Brown, Paulette, Counsel for ABA

95. Canfield, Peter C., Counsel for MDAGSA et al.

96. Caso, Anthony, Counsel for CCJ et al.

97. Castanias, Gregory A., Counsel for MDAGSA et al.

98. Cooper, Charles, Counsel for the NRA

99. Cooper & Kirk, Counsel for the NRA

100. Eastman, John, Counsel for CCJ et al.

101. Ekdahl, Jon N., Counsel for AMA et al.

102. Fry, David H., Counsel for APHA et al.

103. Gelber Schachter & Greenberg, P.A., Counsel for ACLU et al.

104. Greenberg, Gerald E., Counsel for ACLU et al.

105. Heckenlively, Bryan, Counsel for APHA et al.

106. Hunton & Williams, LLP, Counsel for ACLU et al.

107. Isani, Jamie Z., Counsel for ACLU et al.

108. Jones Day, Counsel for MDAGSA et al.

109. Julin, Thomas R., Counsel for ACLU et al.

110. Kayanan, Maria, Counsel for ACLU et al.

111. Levenstein, Richard H., Counsel for AMA et al.

112. Marshall, Randall C., Counsel for ACLU et al.

113. McNamara, Robert J., Counsel for IJ

114. Mead, Gordon M., Counsel for ACLU et al.

115. Nelson, Leonard A., Counsel for AMA et al.

116. Ovelmen, Richard J., Counsel for the ABA

117. Patterson, Peter, Counsel for NRA

118. Sasso, Gary L., Counsel for the ABA

119. Sherman, Paul M., Counsel for IJ

120. Skaggs, J. Adam, Counsel for MDAGSA et al.

121. Sloan, Michael D., Counsel for the ABA

122. Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Counsel for ACLU et al.

123. Taylor, Charlotte H., Counsel for MDAGSA et al.

124. Thompson, David, Counsel for the NRA

125. Weinstein-Tull, Counsel for APHA et al.


October 1, 2015                         /s/ *Allen Winsor*_____
                                        Counsel for State Appellants

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS & CORPORATE DISCLOSURE STATEMENT ................................................................C-1

TABLE OF CITATIONS ......................................................................x

ARGUMENT .......................................................................................1

I.      The Panel's Opinion................................................................1

II.     *Reed v. Town of Gilbert*'s Limited Holding............................4

    A.    The *Reed* Court's Opinion Centered on the Test for Determining Content Neutrality. ........................................................4

    B.    *Reed*'s Limited Holding Did Not Reach Issues Such as the Treatment of Different Categories of Speech. ...............................6

III.    *Reed* Does Not Require a Different Result in This Case. ........................8

    A.    *Reed* Applies Only Where There is a Question of Content Neutrality, and Neither the Majority Nor the Dissent Raised Such a Question. .......9

    B.    *Reed* is Fully Consistent with the Conclusion that *Casey* Requires, at Most, Intermediate Scrutiny in this Case. ...............................11

    C.    Even if *Reed* Did Require Strict Scrutiny, Florida Has Shown that Sufficiently Compelling State Interests Support the Act. .......................12

CERTIFICATE OF COMPLIANCE ...................................................17

CERTIFICATE OF SERVICE ..........................................................18

# TABLE OF CITATIONS

## Cases

*Bartnicki v. Vopper,*
    532 U.S. 514, 121 S. Ct. 1753 (2001) ...................................................14

*Bob Jones Univ. v. United States,*
    461 U.S. 574, 103 S. Ct. 2017 (1983) ..................................................13

*Burson v. Freeman,*
    504 U.S. 191, 112 S. Ct. 1846 (1992) ..................................................13

*Cahaly v. Larosa,*
    796 F.3d 399 (4th Cir. 2015) ..................................................................8

*Cal. Outdoor Equity Partners v. City of Corona,*
    No. 15-cv-03172, 2015 WL 4163346 (C.D. Cal. July 9, 2015) ...........8

*Contest Promotions, LLC v. City & Cnty. of San Francisco,*
    No. 15-cv-00093, 2015 WL 4571564 (N.D. Cal. July 28, 2015) .........8

*CTIA-The Wireless Ass'n v. City of Berkeley, Cal. ,*
    No. 15-cv-2529, 2015 WL 5569072 (N.D. Cal. Sept. 21, 2015) ..........8

*Dent v. West Virginia,*
    129 U.S. 114, 9 S. Ct. 231 (1889) ........................................................13

*Goldfarb v. Va. State Bar,*
    421 U.S. 773, 95 S. Ct. 2004 (1975) ...................................................13

*Locke v. Shore,*
    634 F.3d 1185 (11th Cir. 2011) ...............................................................2

*McDonald v. City of Chicago,*
    561 U.S. 742, 130 S. Ct. 3020 (2010) .................................................13

*Med. Providers Performing Abortion Servs. v. Lakey,*
    667 F.3d 570 (5th Cir. 2012) ...................................................................2

*Muhammad v. Sec'y, Fla. Dep't of Corr.,*
    733 F.3d 1065 (11th Cir. 2013) .............................................................10

*NAACP v. Button,*
    371 U.S. 415, 83 S. Ct. 328 (1963) ........................................................7

*Norton v. City of Springfield, Ill.*,
  --- Fed. App'x ----, 2015 WL 4714073 (7th Cir. Aug. 7, 2015) ........................8

*Ohralik v. Ohio State Bar Ass'n*,
  436 U.S. 447, 98 S. Ct. 1912 (1978) ...................................................2

*Planned Parenthood of Minn., N.D., S.D. v. Rounds*,
  686 F.3d 889 (8th Cir. 2012) ...........................................................10

*Planned Parenthood of Se. Pa. v. Casey*,
  505 U.S. 833, 112 S. Ct. 2791 (1992) ................................................2

*R.A.V. v. City of St. Paul*,
  505 U.S. 377, 112 S. Ct. 2538 (1992) ...........................................3, 4

*Reed v. Town of Gilbert, Ariz.*,
  135 S. Ct. 2218 (2015) ............................................................. passim

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*,
  502 U.S. 105, 112 S. Ct. 501 (1991) ................................................4

*U.S. Dep't of Justice v. Reporters Comm.*,
  489 U.S. 749, 109 S. Ct. 1468 (1989) .............................................14

*Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc.*,
  425 U.S. 748, 96 S. Ct. 1817 (1976) ................................................2

*Ward v. Rock Against Racism*,
  491 U.S. 781, 109 S. Ct. 2746 (1989) ..............................................5

*Williams-Yulee v. Fla. Bar*,
  135 S. Ct. 1656 (2015) ....................................................................15

## Other Authorities

Health Insurance Portability and Accountability Act,
  Pub. L. No. 104-191, 110 Stat. 1936 (1996) ...................................15

## ARGUMENT

Appellants make this submission in response to this Court's September 11, 2015 memorandum directing the parties to address: (1) whether *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015), necessitates the application of strict scrutiny to this case, and (2) if so, whether the State of Florida has a sufficiently compelling interest, such that the Act can withstand strict scrutiny.[1] As detailed below, *Reed* and the caselaw it follows establish that strict scrutiny is inappropriate here and, even if it were, the Firearm Owners Privacy Act would satisfy the standard. This Memorandum briefly sets forth the relevant portions of the Panel's opinion, discusses the limited holding of *Reed* showing how that case is inapposite, and concludes by summarizing the compelling State interests that support the Act.

## I. THE PANEL'S OPINION

In its July 28 opinion, the Panel comprehensively surveyed the available Supreme Court and circuit case law, holding that in this context—a regulation of speech by professionals, occurring in a one-on-one setting—the appropriate standard of review is something less demanding than strict scrutiny. *See* Op. at 55.

---

[1] This Memorandum addresses *only* these two questions. For purposes of the Memorandum, the State accepts as correct the conclusions of the Panel opinion, including those contrary to the State's arguments. In any case, the Court reached the correct result in vacating the District Court's injunction.

The Panel demonstrated that a long line of Supreme Court precedent either dictated such a conclusion or reached outcomes fully consistent with the holding. *See id.* at 53-54.[2] As the Panel noted, this Court had previously made "the commonsense observation that '[t]here is a difference, for First Amendment purposes, between . . . professionals' speech to the public at large versus their direct, personalized speech with clients.'" *Id.* at 46 (quoting *Locke v. Shore*, 634 F.3d 1185, 1191 (11th Cir. 2011)). Indeed, the Supreme Court, in *Casey*, upheld a regulation compelling certain speech by physicians without applying strict scrutiny. As the dissent here acknowledged and as other courts have held, *Casey* applied at *most* intermediate scrutiny. *See id.* at 108 (citing *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 576 (5th Cir. 2012)).

Importantly, the Panel's conclusion in no way turned on a holding that the Act is content neutral. To the contrary, the Panel "readily agree[d]" with the Plaintiffs "that the Act regulates speech on the basis of its content." Op. at 62. The dissent, too, believed that the Act is content based. *See* Op. at 90-91. Nevertheless, the Panel held, the Supreme Court's holding in *R.A.V. v. City of St. Paul*, 505 U.S.

---

[2] Citing, among other cases, *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 112 S. Ct. 2791 (1992), *Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 96 S. Ct. 1817 (1976), and *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 98 S. Ct. 1912 (1978).

377, 382, 112 S. Ct. 2538, 2542 (1992), established that certain types of content-based laws do not trigger strict scrutiny. "[I]ntra-category content discrimination *is* permissible," the Panel noted, "when the basis for it is the very reason the entire category of speech at issue receives less-than-full protection under the First Amendment." Op. at 63. Here, the rationale for affording professional speech less protection—the substantial State interest in regulating the profession to protect citizens, *see infra* at 12-15—is consistent with the basis for any content distinction. *See* Op. at 63-64 (noting the State's judgment that inquiry about firearm ownership, where the inquiry is entirely irrelevant to medical care or safety, is inconsistent with good medical practice).

In finding the Act content-based, the Panel said nothing about whether the Legislature passed it because of disagreement with any message or about whether the Act was justified without reference to content. *See* Op. at 62. Nor, of course, did the dissent contest the Panel's reasoning on this point, since it reached the same result. The disagreement between the majority and the dissent instead focused largely on application of the intermediate scrutiny test. *See id.* at 119-44 (Wilson, J., dissenting).

## II. *REED V. TOWN OF GILBERT*'S LIMITED HOLDING

### A. The *Reed* Court's Opinion Centered on the Test for Determining Content Neutrality.

In *Reed*, the Supreme Court addressed a municipal code that, on its face, treated speech differently based on its content. The Sign Code allowed residents to erect "temporary directional signs" without a permit, but limited their size and closely limited the time they could be displayed. By contrast, "ideological signs" could be larger and did not trigger a time limit. The law defined the two categories based solely on the content of the signs. *See Reed*, 135 S. Ct. at 2224-25.

Discussing the background legal principles, the *Reed* Court noted that "[c]ontent-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." 135 S. Ct. at 2226. The Court cited two cases from the early 1990s, in which it had made this exact point using much the same language. *See id.*; *see also R.A.V.*, 505 U.S. at 382, 112 S. Ct. at 2542 ("Content-based regulations are presumptively invalid."); *id.* at 395 (applying strict scrutiny standard); *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 115, 112 S. Ct. 501, 508 (1991) ("A statute is presumptively inconsistent with the First

Amendment if it imposes a financial burden on speakers because of the content of their speech."); *id.* at 118 (describing strict scrutiny standard).

The central issue in *Reed* was not whether strict scrutiny should apply to content-based laws; it was how to determine whether a law is content based at all. The Court had little difficulty concluding that the Sign Code was "content based on its face." *Reed,* 135 S. Ct. at 2227. The majority spent most of the rest of the decision rejecting different tests for content neutrality applied by the Ninth Circuit or proposed by the parties. *See id.* at 2227-31. The opinion noted that, in past cases, the Court had recognized that laws could be found content neutral based on whether they could be "justified without reference to the content of the speech" or whether they "were adopted by the government 'because of disagreement with the message [the speech] conveys.'" *Id.* at 2227 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S. Ct. 2746, 2754 (1989)). However, the Court clarified, such tests apply *only* where the law is not facially content based; where it is, there is "no need to consider" either issue. *Id.*; *see also id.* at 2227-29. Finally, the Court clarified that a law need not discriminate between viewpoints to be content based, *id.* at 2229-30, and that a law also may be content based if it is

speaker based, so long as the speaker preference also reflects a content preference, *id.* at 2230.

**B.     *Reed*'s Limited Holding Did Not Reach Issues Such as the Treatment of Different Categories of Speech.**

*Reed*, dealing with a clear restriction on private citizens' speech, addressed only content neutrality and said nothing at all about issues such as the treatment of commercial and government speech or about which content-based regulations do not trigger strict scrutiny. Justice Breyer's opinion concurring in the judgment made this clear. He noted that although the majority's approach would not cover the "many subcategories and exceptions to the [strict scrutiny] rule," *id.* at 2235, this was no saving grace because these areas reached only a limited range of instances. Among these subcategories and exceptions were commercial and government speech as well as the rule, announced in *R.A.V.*, that a content-based law is fully permissible "[w]hen the basis for the content discrimination consists entirely of the very reason the entire class of speech at issues is proscribable." *Id.* (quoting *R.A.V.*, 505 U.S. at 388, 112 S. Ct. at 2545); *see also id.* at 2233 (Alito, J., concurring) (noting that the majority's approach would not affect government speech).

Nor did the *Reed* majority say, or even imply, that its holding would affect any of the commercial speech cases, *Casey*'s First Amendment holding, or the *R.A.V.* rule for permissible content-based laws. Instead, the majority's approach is fully consistent with *R.A.V.*, which again had stated that content-based laws are "presumptively invalid." *R.A.V.*, in turn, is consistent with a conclusion that certain categories of speech, such as commercial speech, receive less protection. *See* Op. at 63 n.19 (noting that, in *R.A.V.*, the Court used commercial speech cases to show how its rule worked in practice). Moreover, the *Reed* Court said nothing at all about whether professional speech may present such a category; understandably, since the issue before the Court had nothing to do with such a question.[3]

Courts applying *Reed* in the months since its publication have recognized its limited holding. Both the Fourth and Seventh Circuits have concluded that *Reed* abrogated their prior caselaw, under which a benign governmental motive or a justification unrelated to content could render content neutral even a facially

---

[3] The closest *Reed* came to discussing professional speech was in citing *NAACP v. Button*, 371 U.S. 415, 83 S. Ct. 328 (1963), which struck down a state's regulation of lawyer solicitation. *See Reed*, 135 S. Ct. at 2229; *cf. Ohralik*, 436 U.S. at 460, 98 S. Ct. at 1920 (upholding solicitation law). *Reed* discussed *Button* in rejecting an argument that the government's motive in passing a law could be relevant even for a facially content-based law, noting that even benign laws can be misused. *See* 135 S. Ct. at 2229 (noting that the state had targeted the NAACP in *Button* and it was "no answer" to point to the salutary reason behind the law).

content-based law. *See Cahaly v. Larosa*, 796 F.3d 399, 405 (4th Cir. 2015); *Norton v. City of Springfield, Ill.*, --- Fed. App'x ----, 2015 WL 4714073, at *1 (7th Cir. Aug. 7, 2015). Neither case addressed categories of speech such as commercial or professional speech (the law in *Cahaly* restricted both consumer and political robocalls, but the challenger had made only political calls). Two district courts have expressly held that *Reed* has no application at all where commercial speech is at issue. *See CTIA-The Wireless Ass'n v. City of Berkeley, Cal.*, No. 15-cv-2529, 2015 WL 5569072, at *10 (N.D. Cal. Sept. 21, 2015); *Contest Promotions, LLC v. City & Cnty. of San Francisco*, No. 15-cv-00093, 2015 WL 4571564, at *4 (N.D. Cal. July 28, 2015) ; *Cal. Outdoor Equity Partners v. City of Corona*, No. 15-cv-03172, 2015 WL 4163346 (C.D. Cal. July 9, 2015). "*Reed* is most notable for what it is not about, and what it does not say," one court noted, finding it "abundantly clear" that the case "does not concern commercial speech." *Cal. Outdoor Equity Partners*, 2015 WL 4163346, at *10.

### III.  *REED* DOES NOT REQUIRE A DIFFERENT RESULT IN THIS CASE.

As the above discussion makes clear, the central point of contention between the Panel majority and dissent is the appropriate treatment of professional speech. The majority held that, consistent with Supreme Court caselaw, professional

speech receives some lesser quantum of First Amendment protection; the dissent concluded that such speech should receive at least intermediate scrutiny. Neither opinion found the Act content neutral. *Reed*, which says much about determining content neutrality and nothing at all about professional speech, has no application here.[4] Even if it did, and even if it required strict scrutiny, however, the Act would be constitutional.

A.     **_Reed_ Applies Only Where There is a Question of Content Neutrality, and Neither the Majority Nor the Dissent Raised Such a Question.**

The question *Reed* answers is whether a law is content based, and there was no dispute between the majority and the dissent here that the Act is content based. By contrast, had the majority determined that the Act is content neutral because it was not motivated by hostility to particular speech or because the law is justified without reference to content, *Reed* might lead to a different outcome. *Compare, e.g., Norton*, 2015 WL 4714073, at *1.

Just as important as what *Reed* did say, the case said nothing about the central question that the Panel majority and dissent did dispute—whether

---

[4] Neither the majority nor the dissent cited *Reed* once, nor did Plaintiffs submit *Reed* as supplemental authority under Rule 28(j), despite the fact that they had previously submitted 28(j) letters following several earlier Supreme Court holdings. *See* letters of June 20, 2013, June 20, 2014, and July 3, 2014.

professional speech may be subject to a less restrictive level of scrutiny. On this point, it is significant that the *Reed* decision left undisturbed the commercial speech doctrine and others of the "many subcategories and exceptions to the rule" that Justice Breyer described. Put differently, there either is a category of professional speech that receives a lower level of First Amendment protection, as the Panel majority found in accord with other circuits that have addressed the issue,[5] or there is not. But *Reed* says nothing on this question either way.

Moreover, *Reed* does not disturb *R.A.V.*'s earlier holding that a law need not be content-neutral when the distinction is based on the reason for affording a category of speech less protection in the first place. The Panel majority faithfully applied this exact principle. *See* Op. at 62-64, *see also supra* at 3. *Reed* did not call any part of *R.A.V.* into question; instead, it explicitly relied on the earlier opinion. *See Reed*, 135 S. Ct. at 2226.[6] Under *R.A.V.*, the Act does not trigger strict scrutiny.

---

[5]   *See* Op. at 66-67 (citing cases from the Third, Fourth, and Ninth Circuits); *see also Planned Parenthood of Minn., N.D., S.D. v. Rounds*, 686 F.3d 889, 905-06 (8th Cir. 2012); *Lakey*, 667 F.3d at 576.

[6]   This is not to say that the result here should be any different had *Reed* implied *R.A.V.* or, for that matter, its earlier government or commercial speech cases were incorrect. *See generally Muhammad v. Sec'y, Fla. Dep't of Corr.*, 733 F.3d 1065, 1074 (11th Cir. 2013) ("[T]he Supreme Court has repeated time and again that only it has the authority to overrule its prior decisions.").

**B.** ***Reed* is Fully Consistent with the Conclusion that *Casey* Requires, at Most, Intermediate Scrutiny in this Case.**

Independently, *Reed* would not require strict scrutiny because *Casey* does not, and *Reed* does not even hint at overruling *Casey*'s First Amendment holding. As both the Panel majority and dissent found, the *Casey* plurality addressed the argument that the disclosure requirement at issue infringed doctors' First Amendment rights by applying something less than strict scrutiny. *See* Op. at 54; 108 (dissent); *see also id.* (noting that other circuits have reached similar results). That requirement, which applied only to doctors and then only to those performing abortions, would be a content-based restriction under Plaintiffs' view. Importantly, the same Court that decided *Casey* had, just a week before, issued the opinion in *R.A.V.* that said, "[c]ontent-based regulations are presumptively invalid." *See R.A.V.*, 505 U.S. at 382 (issued June 22, 1992). Nevertheless, not a single opinion in *Casey* (and there were five altogether) even hinted that the physician disclosure requirement triggered strict scrutiny.

The language in *Reed* upon which Plaintiffs rely simply restates what the Court had already found in *R.A.V. See, e.g.*, Pet. at 1 (citing *Reed* and *R.A.V.* together for the proposition that content-based laws are presumptively unconstitutional and trigger strict scrutiny). *Casey*'s holding is fully consistent with

*R.A.V.*, either because the disclosure requirement there was no more a content-based law than are the provisions of the Act here, *see supra* n.1, or because *R.A.V.* did *not* impose a flat strict scrutiny regime for all types of speech any more than did *Reed*. As the *Casey* plurality noted, the law at issue did, "[t]o be sure," implicate physicians' First Amendment rights, "but only as part of the practice of medicine, subject to reasonable licensing and *regulation* by the State." *Casey*, 505 U.S. at 884 (joint op. of O' Connor, Kennedy, and Souter, JJ.) (emphasis added). The *Casey* plurality recognized what the Panel majority here demonstrated in depth—factors such as the unique power relationship between doctor and patient, the long history of state regulation, and the risk to citizens' well-being if state authority is unduly restricted, make strict scrutiny inappropriate in determining whether legislative judgments like those embodied in the Act are constitutional.

C.    **Even if *Reed* Did Require Strict Scrutiny, Florida Has Shown that Sufficiently Compelling State Interests Support the Act.**

Even if *Reed* now requires strict scrutiny review here, Plaintiffs' challenge must still fail because the Act is supported by sufficiently compelling State interests, including: (1) the protection of Second Amendment rights to own or possess a firearm; (2) the protection of privacy rights; (3) the elimination of barriers to health care; and (4) the prevention of discrimination and harassment.

Related to these interests, the State's regulation of professions, particularly medical professions, in order to protect the public is *itself* a compelling interest. *See Goldfarb v. Va. State Bar*, 421 U.S. 773, 792, 95 S. Ct. 2004, 2016 (1975) ("[S]tates have a compelling interest in the practice of professions within their boundaries, and . . . as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions."); *see also* Op. at 68-69; *accord Dent v. West Virginia*, 129 U.S. 114, 122-23, 9 S. Ct. 231, 233 (1889).

The Act primarily arises out of the State's compelling interest in protecting citizens' constitutional right to possess firearms. The Supreme Court has removed any doubt that this right is fundamental. *See McDonald v. City of Chicago*, 561 U.S. 742, 778, 130 S. Ct. 3020, 3042 (2010). And the Court has also held that a government's protection of fundamental rights, even from impairment by private parties, is a compelling interest. *See, e.g.*, *Burson v. Freeman*, 504 U.S. 191, 199, 112 S. Ct. 1846, 1851 (1992) (holding that restriction on election-day solicitation advanced compelling interest because it protected citizens' right to vote); *cf. Bob Jones Univ. v. United States*, 461 U.S. 574, 604, 103 S. Ct. 2017, 2035 (1983) (finding that government had a compelling interest in eradicating racial

discrimination in education in Free Exercise Clause challenge). Separately, but related to this interest, the State has a compelling interest in preventing discrimination or harassment. *Cf. Bob Jones Univ.*, 461 U.S. at 604, 103 S. Ct. at 2035 (Free Exercise Clause challenge).

The State's interests in the protection of patients' privacy rights and right to access healthcare are no less compelling. The Supreme Court has consistently "recognized the privacy interest in keeping personal facts away from the public eye." *U.S. Dep't of Justice v. Reporters Comm.*, 489 U.S. 749, 769, 109 S. Ct. 1468, 1480 (1989). In *Bartnicki v. Vopper*, 532 U.S. 514, 532-33, 121 S. Ct. 1753, 1764 (2001), the Court found "[p]rivacy of communication" to be an important interest, particularly given the risk that private conversations would be chilled by a risk of disclosure, but held that it did not outweigh value in publishing speech of public concern. The Court implied that it might suffice in cases of purely private conversations, *see id.*, but left the question open. Here, rather than protecting the privacy of conversations, the Act safeguards the privacy of individuals' firearms purchases, a right no less fundamental, and prevents their being chilled. Critically, it protects this privacy only where any speech involved touches purely private concerns. Finally, the State has a compelling interest in ensuring that patients have

access to healthcare. *Cf. Hill v. Colorado*, 530 U.S. 703, 729, 130 S. Ct. 2480, (2000) (upholding buffer zone in part due to vulnerable physical and emotional conditions of patients seeking care). For similar reasons, laws like the Health Insurance Portability and Accountability Act, Pub. L. No. 104-191, 110 Stat. 1936 (1996), impose restrictions on what healthcare providers may disclose to others.

In the face of these compelling interests, Plaintiffs argue their right to inquire on matters irrelevant to patient care—and it bears emphasizing that this is all the Act covers, *see* Op. at 29—should nevertheless prevail, but as the Panel majority showed, that is not so. Even where strict scrutiny applies, a law imposing a narrow restriction, supported by a compelling interest, can be entirely appropriate even where the speech affected concerns matters lying at the heart of the First Amendment like electioneering, *see Burson*, 504 U.S. at 207, 112 S. Ct. at 1850, or "the freedom to discuss candidates and public issues," *Williams-Yulee v. Fla. Bar*, 135 S. Ct. 1656, 1665 (2015). The Act is just such a law. The Panel was right to hold it constitutional.

Respectfully submitted,

PAMELA JO BONDI
ATTORNEY GENERAL


/s/ *Allen Winsor*
Allen Winsor (FBN 16295)
  Solicitor General
Allen.Winsor@myfloridalegal.com
Osvaldo Vazquez (FBN 70995)
  Deputy Solicitor General
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399
(850) 414-3300
(850) 410-2672 (fax)
*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

I certify that this Memorandum complies with the page limitation set forth in the Court's September 11, 2015 Memorandum to the parties. The Memorandum does not exceed 15 pages. I also certify that this brief complies with the applicable type-style requirements limitation under Rule 32(a)(5) and (6). The brief was prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point, Times New Roman font.

*/s/ Allen Winsor*
Counsel for State Appellants

**CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2015, the foregoing was filed with the

Clerk of Court via the court's electronic filing system and electronically served on

counsel for Appellees.

/s/ *Allen Winsor*
Counsel for State Appellants