# THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

## CASE NO. 12-14009-FF

_____

**DR. BERND WOLLSCHLAEGER,** *et al.*,

Petitioners,

v.

**GOVERNOR, STATE OF FLORIDA,** *et al.*,

Respondents.

_____

### On Appeal from the United States District Court
### For the Southern District of Florida
### Miami Division

_____

## PETITION FOR REHEARING *EN BANC*

Edward M. Mullins
ASTIGARRAGA DAVIS MULLINS &
GROSSMAN, P.A.
701 Brickell Avenue, 16th Floor
Miami, Florida 33131-2847
Telephone: (305) 372-8282

Jonathan E. Lowy
BRADY CENTER TO PREVENT GUN
VIOLENCE
840 First Street NE, Suite 400
Washington, D.C. 20002
Telephone: (202) 370-8104

Douglas H. Hallward-Driemeier
Mariel Goetz
ROPES & GRAY LLP
2099 Pennsylvania Ave., NW
Washington, D.C. 20006
Telephone: (202) 508-4600

Erin R. Macgowan
Alexandra L. Roth
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Telephone: (617) 951-7000

*Counsel for Petitioners Dr. Bernd Wollschlaeger, et al.*

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

<u>**Wollschlaeger v. Governor, State of Florida,** *et al.* **(Case No. 12-14009-FF)**</u>

Pursuant to Federal Rule of Appellate Procedure Rule 26.1 and Eleventh Circuit Rule 26.1-1, Appellees/Plaintiffs provide the following certificate of interested persons:

1.  The Honorable Marcia G. Cooke, U.S. District Judge

**Defendants/Appellants:**

2.   Armstrong, John H., present Fla. Surgeon General and Secretary of the Department of Health

3.   Averoff, Magdalena, Fla. Board of Medicine Member

4.   Bearison, Fred, Fla. Board of Medicine Member

5.   Di Pietro, Nina, former Fla. Board of Medicine Member

6.   Dolin, Gary, Fla. Board of Medicine Member

7.   Dudek, Elizabeth, Secretary of the Agency for Health Care Administration

8.   El Sanadi, Nabil, Fla. Board of Medicine Member

9.   Espinola, Trina, Fla. Board of Medicine Member

10.  Farmer, Frank, former Fla. Surgeon General and Department Secretary

11.  Fernandez, Bernardo, Fla. Board of Medicine Member

12.  Ginzburg, Enrique, Fla. Board of Medicine Member

13.  Goersch, Brigitte Rivera, Fla. Board of Medicine Member

i

## Wollschlaeger v. Governor, State of Florida, *et al.* (Case No. 12-14009-FF

14. Lage, Onelia, former Fla. Board of Medicine Member

15. Levine, Bradley, Fla. Board of Medicine Member

16. Lopez, Jorge J., Fla. Board of Medicine Member

17. Mullins, Donald, Fla. Board of Medicine Member

18. Nuss, Robert, Fla. Board of Medicine Member

19. Orr, James, Fla. Board of Medicine Member

20. Rosenberg, Steven, Fla. Board of Medicine Member

21. Scott, Rick, Governor of Florida

22. Shugarman, Richard G., Fla. Board of Medicine Member

23. Stringer, Merle, Fla. Board of Medicine Member

24. TerKonda, Sarvam, Fla. Board of Medicine Member

25. Thomas, George, Fla. Board of Medicine Member

26. Tootle, Joy, Fla. Board of Medicine Member

27. Tucker, Elisabeth, Fla. Board of Medicine Member

28. Winchester, Gary, Fla. Board of Medicine Member

29. Zachariah, Zachariah, Fla. Board of Medicine Member

**Plaintiffs/Appellees:**

30. American Academy of Family Physicians, Fla. Chapter

31. American Academy of Pediatrics, Fla. Chapter

**Wollschlaeger v. Governor, State of Florida,** *et al.* **(Case No. 12-14009-FF)**

32.  American College of Physicians, Fla. Chapter

33.  Fox-Levine, Shannon

34.  Gutierrez, Roland

35.  Sack, Stanley

36.  Schaechter, Judith

37.  Schechtman, Tommy

38.  Wollschlaeger, Bernd

**Defendants/Appellants' counsel:**

39.  Bondi, Pam

40.  DeWolf, Diane G.

41.  Nordby, Rachel E.

42.  Osterhaus, Timothy D.

43.  Vail, Jason

44.  Winsor, Allen

**Plaintiffs/Appellees' counsel:**

45.  Astigarraga, Davis, Mullins & Grossman, P.A.

46.  Brady Center to Prevent Gun Violence

47.  Dewar, Elizabeth*

**Wollschlaeger v. Governor, State of Florida,** *et al.* **(Case No. 12-14009-FF)**

48.  Goetz, Mariel

49.  Guiliano, Douglas*

50.  Hallward-Driemeier, Douglas

51.  Kainen, Dennis G.*

52.  Lewis, Julia*

53.  Lowy, Jonathan

54.  Lucas, Hal*

55.  Macgowan, Erin

56.  Manheim, Bruce*

57.  Mullins, Edward

58.  Ripa, Augustine*

59.  Ropes & Gray LLP

60.  Roth, Alexandra

61.  Vice, Daniel*

**Amici and Others:**

62.  ACLU Foundation of Florida, Inc.

63.  Alachua County Medical Society

64.  American Academy of Child and Adolescent Psychiatry

65.  American Academy of Family Physicians

## Wollschlaeger v. Governor, State of Florida, *et al.* (Case No. 12-14009-FF)

66. American Academy of Orthopaedic Surgeons

67. American Academy of Pediatrics

68. American Association of Suicidology

69. American Bar Association

70. American College of Obstetricians and Gynecologists

71. American Congress of Obstetricians and Gynecologists

72. American College of Preventative Medicine

73. American College of Surgeons

74. American Medical Association

75. American Psychiatric Association

76. American Public Health Association

77. Broward County Medical Association, The

78. Broward County Pediatric Society, The

79. Center for Constitutional Jurisprudence (CCJ)

80. Children's Healthcare Is a Legal Duty, Inc. (CHILD)

81. Doctors for Responsible Gun Ownership (DRGO)

82. Early Childhood Initiative Foundation

83. Florida Public Health Association, The

84. Institute for Justice

**Wollschlaeger v. Governor, State of Florida,** *et al.* **(Case No. 12-14009-FF)**

85. Law Center to Prevent Gun Violence

86. National Rifle Association (NRA)

87. Palm Beach County Medical Society

88. Suicide Awareness Voices of Education

89. University of Miami School of Law Children and Youth Clinic

90. Acosta, Patricia, Counsel for ACLU et al.

91. Greenberg, Gerald E., Counsel for ACLU et al.

92. Kayanan, Maria, Counsel for ACLU et al.

93. Isani, Jamie Zysk, Counsel for ACLU et al.

94. Julin, Thomas R., Counsel for ACLU et al.

95. Marshall, Randall C., Counsel for ACLU et al.

96. Mead, Gordon M., Jr., Counsel for ACLU et al.

97. Hubbard, William C., Counsel for American Bar Association

98. Ovelmen, Richard J., Counsel for American Bar Association

99. Sasso, Gary L., Counsel for American Bar Association

100. Ekdahl, Jon N., Counsel for American Medical Association et al.

101. Levenstein, Richard H., Counsel for American Medical Association et al.

102. Nelson, Leonard A., Counsel for American Medical Association et al.

103. Fry, David H., Counsel for APHA et al.

**<u>Wollschlaeger v. Governor, State of Florida,</u>** *et al.* **(Case No. 12-14009-FF)**

104. Heckenlively, Bryan, Counsel for APHA et al.

105. Weinstein-Tull, Justin S., Counsel for APHA et al.

106. Eastman, John, Counsel for CCJ and DRGO

107. Caso, Anthony, Counsel for CCJ and DRGO

108. McNamara, Robert J., Counsel for Institute for Justice

109. Sherman, Paul M., Counsel for Institute for Justice

110. Thompson, David, Counsel for the NRA

111. Patterson, Peter, Counsel for the NRA

112. Cooper, Charles, Counsel for the NRA

* = no longer involved in representation

I hereby certify pursuant to 11th Circuit Rule 26.1-3(b) that no publicly traded

company or corporation has an interest in the outcome of the case or appeal.

/s/ Douglas H. Hallward-Driemeier

Dated: January 4, 2016

Douglas H. Hallward-Driemeier
ROPES & GRAY LLP
*Counsel for Petitioners*

# RULE 35 CERTIFICATION

I express a belief, based on a reasoned and studied professional judgment, that this appeal involves a question of exceptional importance: whether the panel majority erred in holding that Florida may, consistent with the First Amendment, forbid physicians from engaging in preventive medical counseling recommended by national medical associations, where the stated justification for the law was to stop physicians from communicating a putatively "political" message.

I further express a belief, based on a reasoned and studied professional judgment, that the majority decision is contrary to at least the following decisions of the Supreme Court of the United States and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court: (1) *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992), and *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2228 (2015), each of which holds that content-based restrictions must be subject to strict scrutiny as that test has been articulated and applied by the Supreme Court; (2) *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 822 (2000), and *Consolidated Edison Co. of N.Y. v. Public Service Commission of New York*, 447 U.S. 530, 543 (1980), which hold that merely speculative state interests are not sufficient to satisfy strict scrutiny; (3) *McCullen v. Coakley*, 134 S. Ct. 2518, 2540 (2014), which holds that even when a statute is content-neutral and the state's interests are firmly established in the legislative record, to

meet the narrow tailoring requirement the government must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier; (4) *United States v. Alvarez*, 132 S. Ct. 2537, 2550 (2012), which holds that when false information or coercion are the state's purported concerns, the existence of alternatives involving "more speech" rather than "enforced silence" defeats strict scrutiny's narrow tailoring requirement;  and (5) *Florida Bar v. Went For It, Inc.*, 515 U.S. 618 (1995), and *NAACP v. Button*, 371 U.S. 415 (1963), which establish that professionals' speech with their patients/clients is entitled to full protection under the First Amendment.

/s/ Douglas H. Hallward-Driemeier
Douglas H. Hallward-Driemeier
ROPES & GRAY LLP
2099 Pennsylvania Avenue, N.W.
Washington, DC 20006
Telephone: 202-508-4600

*Counsel for Petitioners*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE

    DISCLOSURE STATEMENT........................................................i

RULE 35 CERTIFICATION ............................................................... viii

STATEMENT OF THE ISSUES...........................................................1

PRIOR PROCEEDINGS AND DISPOSITION OF THE CASE ............................3

SUMMARY OF THE FACTS..................................................................4

ARGUMENT ..................................................................................4

I.    The Majority's Professional Speech Analysis Would Permit States to

    Silence Professional Speech With Which They Disagree..............................5

II.   The Majority Opinion is in Direct Conflict with Supreme Court and Elev-

    enth Circuit Precedent Regarding Strict Scrutiny ..........................................7

    A.    The "compelling interests" cited by the majority are speculative,

        post-hoc rationalizations that are plainly inadequate to justify

        FOPA ...............................................................................8

    B.    The majority's narrow tailoring analysis fails to give any consid-

        eration to less restrictive alternatives to FOPA...................................12

III.  Whether the State Can Suppress Professional Speech Based on Disa-

    greement with its Content is of Exceptional Importance to Public Health ...15

CONCLUSION ...................................................................................15

CERTIFICATE OF SERVICE ...................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bourgeois v. Peters*,

387 F.3d 1303 (11th Cir. 2004) ....................................................................12, 15

*Brown v. Entm't Merchants Ass'n*,

131 S. Ct. 2729 (2011) ........................................................................................10

*Burson v. Freeman*,

504 U.S. 191 (1992)........................................................................................10, 11

*Citizens United v. FEC*,

558 U.S. 310 (2010)..............................................................................................6

*Cohen v. California*,

403 U.S. 15 (1971)..............................................................................................14

*Consolidated Edison Co. of N.Y. v. Pub. Serv. Comm'n of N.Y.*,

447 U.S. 530 (1980)..............................................................................................10

*Dana's R.R. Supply v. Florida*,

807 F.3d 1235 (11th Cir. 2015) ...........................................................................7

*Edenfield v. Fane*,

    507 U.S. 761 (1993)............................................................................11

*Florida Bar v. Went For It, Inc.*,

    515 U.S. 618 (1995)............................................................................11

*Greater New Orleans Broadcasting Ass'n, Inc. v. United States*,

    527 U.S. 173 (1999)............................................................................13

*Hill v. Colorado*,

    530 U.S. 703 (2000)............................................................................13

*McCullen v. Coakley*,

    134 S. Ct. 2518 (2014)........................................................................14

*NAACP v. Button*,

    371 U.S. 415 (1963).............................................................................6

*R.A.V. v. City of St. Paul*,

    505 U.S. 377 (1992).............................................................................5

*Reed v. Town of Gilbert*,

    135 S. Ct. 2218 (2015).........................................................................7

*Rosenberger v. Rector & Visitors of Univ. of Va.*,

    515 U.S. 819 (1995)....................................................................................8

*Sorrell v. IMS Health, Inc.*,

    131 S. Ct. 2653 (2011)............................................................6, 10, 15

*Trammel v. United States*,

    445 U.S. 40 (1980)..................................................................................15

*United States v. Alvarez*,

    132 S. Ct. 2537 (2012)..........................................................................14

*United States v. Playboy Entm't Grp.*,

    529 U.S. 803 (2000).......................................................................9, 10, 13

**STATUTES**

Fla. Stat. § 790.338(4)...............................................................................13

**OTHER AUTHORITIES**

Eugene Volokh, *Content-based restriction on doctors' speech to patients about guns passes 'strict scrutiny'* (Dec. 16, 2015), https://www.washingtonpost.com/news/volokh-conspir acy/wp/2015/12/16/content-based-restriction-on-doctors-speech-to-patients-about-guns-passes-strict-scrutiny/ ........................................................8

Petitioners respectfully seek rehearing *en banc* to secure uniformity of precedent and to address questions of exceptional importance, as explained below.

## STATEMENT OF THE ISSUES

The majority's December 14, 2015 opinion ("Op. III," Ex. A) marks its third attempt to sustain Florida's Firearm Owners Privacy Act ("FOPA" or the "Act"), a law passed for the express purpose of silencing doctors' perceived political speech against firearm ownership. The majority first held that the speech restricted by FOPA was "professional conduct," and thus not entitled to *any* First Amendment protection. July 25, 2014 Opinion ("Op. I," Ex. C) 38-39, 43. Plaintiffs sought *en banc* review. In its first revised opinion, the majority changed course, holding that FOPA did, in fact, regulate protected speech, but was subject only to intermediate scrutiny, which it found it survived. July 28, 2015 Opinion ("Op. II," Ex. B) 75. Plaintiffs again sought *en banc* review. The majority again withdrew its opinion, and made a third attempt at upholding the Act. Its current opinion holds that as a content-based speech restriction, FOPA might be subject to strict scrutiny, but that it nevertheless would survive this most stringent review because Florida has a compelling interest in forbidding doctors to use their "power disparity" to "chill" patients' exercise of their Second Amendment rights by asking them about their firearm ownership. Op. III 72, 79. Though the legislature had no evidence to support that rationale, the majority determined this "commonsense" understanding

1

was sufficient to meet strict scrutiny. *Id.* at 5, 70. Noting the majority's "evolving rationale," Judge Wilson dissented, as he had previously. *Id.* at 82.

The majority's latest opinion is its most dangerous. It represents the first time, to plaintiffs' knowledge, that *any* court has upheld under strict scrutiny a statute restricting truthful, non-coercive speech about lawful conduct because the listener might find the speech persuasive. A law silencing speech because the state disagrees with its political message, whether real or perceived, is the paradigmatic example of what the First Amendment forbids. Even assuming such a statute could *ever* withstand strict scrutiny, it would require a far more compelling interest and more robust record to support it. Tellingly, the State did not even defend the severe speech restrictions imposed by the statute as construed by the majority. The majority's opinion presents the following questions that warrant *en banc* review:

1. Whether the "commonsense" impression that there is a "power disparity" between trusted professionals and their patients/clients can justify a state in restricting professional speech, including for the purpose of silencing a perceived political viewpoint with which the legislature disagrees.

2. Whether strict scrutiny is satisfied where: (a) the targeted speech is truthful information about lawful conduct, and the purported state interest is preventing listeners from being persuaded by that speech; (b) there is no legislative record to

2

support that interest; and (c) there are less restrictive alternatives to address any legitimate concerns about coercion or false information.

## PRIOR PROCEEDINGS AND DISPOSITION OF THE CASE

FOPA, passed by the Florida legislature in 2012, prohibits doctors, on pain of losing their licenses, from asking for or recording information about a patient's gun ownership absent an immediate concern, such as suicide or violence.  Op. III 6-7.  The Act thus prohibits doctors from engaging in speech that is part of their routine practice of preventive medicine, as recommended by numerous national medical associations.  Op. III 30-31.  The Act also prohibits harassing or discriminating against patients on the basis of gun ownership, but does not indicate when a doctor would cross those lines.  Petitioners challenged FOPA, arguing that it violates the First Amendment rights of both doctors and patients.  The district court (Cooke, D.J.) agreed, and in 2012 entered a permanent injunction blocking enforcement of the challenged provisions.  A divided panel (Tjoflat, J., joined by Coogler, D.J.; Wilson, J., dissenting) upheld the law.  Op. I.  The panel later revised its opinion but reached the same result.  Op. II.

In the December 14, 2015 opinion, Op. III, the same divided panel upheld the Act for a third time.  Recognizing for the first time that FOPA is a content-based restriction on speech, the majority allowed that strict scrutiny might apply, and purported to evaluate the Act under that standard.  Op. III 59.  The majority

3

held that FOPA advances the State's compelling interests in (1) protecting Second Amendment rights by "protecting patients from irrelevant questioning about guns that could dissuade them from exercising their constitutionally guaranteed rights," Op. III 61, and (2) promoting patient privacy by "protecting the privacy of gun owners' status as such from inclusion in their medical records." *Id.* at 63. The majority ultimately held that FOPA was narrowly tailored to advance patients' "right to privacy in the exercise of one's Second Amendment rights," *id.* at 68. Judge Wilson dissented again, resting on his prior dissents and declining to "respond[] to the Majority's evolving rationale." *Id.* at 82. All three opinions are attached.

## SUMMARY OF THE FACTS

Petitioners adopt the facts in Judge Wilson's second dissent. Op. II 78-90.

## ARGUMENT

The majority's decision directly conflicts with established precedent applying strict scrutiny to content-based speech restrictions, and will invite other attempts to silence professionals' speech because the government disagrees with their message. First, the majority's analysis allows the government freely and completely to restrict speech by professionals by simply declaring the disfavored speech "irrelevant" and then invoking the "disparate power" of the professional and a concern that patients or clients might follow the professional's advice. Second, the majority's application of what it terms strict scrutiny transforms that rig-

4

orous inquiry into a highly permissive test that allows post hoc, hypothetical concerns to justify state censorship of perceived "political" messages. This turns on its head decades of case law reiterating the "presumptive" invalidity of such restrictions. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992).

This petition also presents questions of exceptional importance. The majority's opinion threatens the public health of Florida residents by interfering with open communication between doctors and patients on critical issues of gun safety.

## I.    The Majority's Professional Speech Analysis Would Permit States to Silence Professional Speech With Which They Disagree

While the majority no longer explicitly holds that professional speech is subject to less First Amendment protection, the way it defines the state's compelling interests ensures that those interests will always trump professionals' free speech rights, thus accomplishing the same result. That the majority now clothes its holding in the language of strict scrutiny makes it all the more sweeping and dangerous.

The majority relies on the "highly disparate balance of power between doctor and patient"—owing to doctors' position of trust and authority—to conclude that the state has a compelling interest in restricting their speech to patients. Op. III 71-73; *compare with* Op. I 30 (relying on same disparate balance of power to exclude professional speech from First Amendment). It is from this position of power, the majority reasons, that doctors' questions about firearms may effectively "chill" patients' ability to refuse to answer such questions, or "dissuade" them

5

from exercising their Second Amendment rights.  *See* Op. III 60-62, 71-72.  Put another way, the majority holds that the state has a compelling interest in regulating a doctor's speech where that speech may *persuade* the listener to act a certain way.  Restricting speech by trusted, reliable speakers because it might be persuasive is not only irreconcilable with core First Amendment principles, *see Sorrell v. IMS Health, Inc.*, 131 S. Ct. 2653, 2670 (2011), but the majority's rationale effectively gives the state carte blanche to muzzle speech by doctors—or any professionals—where it wishes to silence a particular message or speech on a particular topic.  The majority's analysis would permit the state to restrict any speech with which it disagrees, and to justify the restriction, even under strict scrutiny, by pointing to a "compelling" interest in preventing the professional from "dissuading" the patient from a course of conduct, or "persuading" the patient to adopt another.  *See NAACP v. Button*, 371 U.S. 415, 439 (1963) ("[A] State may not, under the guise of prohibiting professional misconduct, ignore constitutional rights.").  The Supreme Court has specifically rejected the notion that the government may restrict speech based on an interest "in equalizing" individuals' respective voices, and thereby reduce a speaker's persuasiveness.  *See Citizens United v. FEC*, 558 U.S. 310, 350 (2010) (rejecting this approach in campaign finance context).

The majority's claim that the Act is limited to speech that is "irrelevant" to medical care is equally problematic, as it permits the state to declare speech "irrel-

6

evant" and then ban it, merely by the state's *ipse dixit*. There is no exception for the First Amendment for purportedly "irrelevant" speech, but the majority's opinion is especially dangerous because it allows the state simply to declare irrelevant speech that one side of a public debate regards as highly relevant. While the National Rifle Association, which backed FOPA, may vehemently disagree with doctors' message about gun safety, it is undisputed that many others regard counseling about safe gun practices to be essential to sound preventive medicine. Indeed, it is the position of numerous national medical associations that firearm-related inquires are, as a general matter, relevant to preventive medicine. *See* Dkt. 87 ¶ 4, 16-17. The state cannot simply substitute its judgment of the value of that speech.

## II.    The Majority Opinion is in Direct Conflict with Supreme Court and Eleventh Circuit Precedent Regarding Strict Scrutiny

Just as troubling as the de facto First Amendment exception that the majority creates for professional speech is the majority's distortion of the strict scrutiny test. The majority's analysis is "strict scrutiny" in name only. It violates the bedrock principle that content-based laws are "presumptively unconstitutional" and "may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015). As this Court recently re-affirmed, "[v]iewpoint-based restrictions on speech are among governments' most insidious methods of eliminating unwelcome opinion," *Dana's R.R. Supply v. Florida*, 807 F.3d 1235, 1248 (11th Cir. 2015) (Tjoflat, J.).

7

Yet the majority upholds exactly that type of restriction, ignoring the fact that FOPA was passed in opposition to a "political agenda" that the bill's proponent's sought "to stop." Dkt. 87 ¶ 10; *see also Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) (viewpoint-based discrimination makes law's "violation of the First Amendment all the more blatant" and "egregious"); Eugene Volokh (Dec. 16, 2015), https://www.washingtonpost.com/news/volokh-conspiracy/wp/2015/12/16/content-based-restriction-on-doctors-speech-to-patients-about-guns-passes-strict-scrutiny/ (warning of implications of ruling in campus hate speech context and urging Court to grant *en banc* review).

A.    *The "compelling interests" cited by the majority are speculative, post-hoc rationalizations that are plainly inadequate to justify FOPA*

First, the majority's toothless version of strict scrutiny wrongly allows post-hoc justifications unsupported by the legislative record to serve as compelling state interests. This works a sea change to First Amendment law by expanding state power to silence messages with which the state disagrees. FOPA was passed for the express purpose of silencing what some legislators perceived as "a political . . . attack" on gun ownership. Dkt. 87 ¶ 5. The State admitted this aspect of the law's history. *See, e.g.*, Appellants' Br. 4 (citing report to legislature stating that asking patients "about gun ownership to satisfy a political agenda . . . needs to stop" (quoting Dkt. 87 ¶ 10)). The majority erroneously disregarded these actual purposes of the Act and upheld it instead on the basis of post-hoc justifications based

8

on speculative interests nowhere supported in the legislative record and unrelated to what the law actually does. Established Supreme Court precedent precludes that approach. *See, e.g.*, *United States v. Playboy Entm't Grp.*, 529 U.S. 803, 818 (2000) ("[Giving] the Government the benefit of the doubt . . . would risk leaving [laws] in place that sought . . . to silence dissenting ideas.").

With respect to the first state interest the majority invokes, there is simply no evidence in the record or elsewhere that private physicians pose a threat to their patients' Second Amendment rights. Although the State defended the Act by asserting that Second Amendment rights are fundamental and the government therefore has a compelling interest in protecting them, *see* Appellants' Br. 32; State Supp. Br. 13, that is simply irrelevant to what FOPA does, because, as Judge Wilson observed in dissent, "[d]octors do not have the ability to seize patients' weapons nor is there any evidence that they have ever tried to do so," Op. II 133.

The majority attempts to avoid this fatal flaw in the State's argument by hypothesizing that doctors' questions or advice to patients about firearms somehow "chill" the exercise of Second Amendment activity, Op. III 62, but there was no evidence in the record that any patient was ever "chilled" in some coercive fashion from owning a firearm. The majority cites one second-hand report of a doctor apparently asking a patient to remove a gun from his home, but there is no evidence that the patient did so. In any event, an anecdote or two cannot establish an "'actu-

9

al problem' in need of solving" that can serve as a compelling state interest. *Brown v. Entm't Merchants Ass'n*, 131 S. Ct. 2729, 2738 (2011) (quoting *Playboy Entm't Grp.*, 529 U.S. at 822-23)); *Playboy Entm't Grp.*, 529 U.S. at 822 (holding that the "[g]overnment must present more than anecdote and supposition"). The lack of legislative evidence to support this "chilling" concern demonstrates that it is "mere[ly] speculative" and so insufficient to satisfy strict scrutiny. *Consolidated Edison Co. of N.Y. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 530, 543 (1980) ("Mere speculation of harm does not constitute a compelling state interest.").

The even more fundamental problem with the majority's rationale is that it treats *persuasion* as an ill that the state may permissibly attack under the First Amendment. What the majority denigrates as "chilling" gun ownership rights is nothing more than *persuading* individuals to exercise their rights differently. The Supreme Court has made clear that "fear that speech might persuade provides no lawful basis for quieting it." *Sorrell*, 131 S. Ct. at 2670. Only in rare circumstances, where there is a substantial history of a group using intimidation to deter the exercise of constitutional rights, protecting those rights can provide a compelling interest to narrowly limit the speech rights of those who might engage in such intimidation.[1] By contrast, patients who decide to safely store or remove their fire-

---

[1] The majority's attempt to analogize FOPA to the election-day solicitation statute upheld in *Burson v. Freeman*, 504 U.S. 191 (1992), is misplaced for precisely this reason. The statute in *Freeman* was passed against a backdrop of historic voter

arms are *exercising* their Second Amendment rights, albeit in a different way.

The majority's alternative justification—protecting the privacy of patients' status as gun owners, Op. III 63—likewise falls short of being a compelling interest. The majority's own language highlights the speculative nature of this concern: "[a]s hacking and other data breaches have become increasingly common," medical records "*could one day* fall into the wrong hands." *Id.* at 65 (emphasis added). Moreover, concerns about hacking and data breaches were *never* invoked in the legislative record, but were instead raised for the first time by the panel at oral argument. *Cf.* Appellants' Br. 31-33 (nowhere citing such concerns).

But even if such concerns had been a reason for FOPA's passage, they are far too tenuous and hypothetical to support the law under either strict or intermediate scrutiny. The burden is on the government to "demonstrate that the harms it recites are real," *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 626 (1995), and not just in some generalized fashion, *see Edenfield v. Fane*, 507 U.S. 761, 770 (1993) (rejecting protecting consumers from fraud as too speculative to justify personal solicitation ban). Here, the State has done no such thing, and under strict scrutiny that must end the inquiry. *See also* Dkt. 105 at 17 n.5 ("[T]he State fails

_____

manipulation and intimidation around polling places, and it was upheld based on a "long history" and "substantial consensus" that a restricted zone around polling places is necessary to directly advance the right to vote free of intimidation. *Id.* at 211. Here, there is no history of doctors intimidating gun owners from exercising their rights. And such a problem is highly inconceivable, given the time and space that separates the examination room and gun store.

to provide any evidence that the confidentiality of this information is at risk.").  In any event, concern over data hacking would not justify restricting mere discussion.

The State itself did not cite data security as a basis for FOPA, instead claiming that FOPA protects patients' privacy by "shielding patients" from their doctors' questions.  Appellants' Br. 33.  But that justification fails:  the law already guarantees patients the right not to answer their doctors' questions about firearms.  Strict scrutiny does not allow the majority to supply a speculative alternative justification in the place of the inadequate one offered by the State.  The majority opinion flies in the face of this Court's previous rejection of the "invit[ation] to engage in *post hoc* rationalizations of its policy, which is precisely one of the dangers that attaches to . . . uncabined, impulsive policymaking."  *Bourgeois v. Peters*, 387 F.3d 1303, 1322-23 (11th Cir. 2004) (Tjoflat, J.) (rejecting "terrorism" as interest justifying magnetometer search policy when the state had not "developed a record . . . that concerns about terrorism motivated the adoption of that policy").

B.    *The majority's narrow tailoring analysis fails to give any consideration to less restrictive alternatives to FOPA*

Because FOPA is clearly not the least restrictive means of achieving the State's goals, the majority opinion also threatens to water down that element of strict scrutiny review.  A content-based restriction on speech can only survive strict scrutiny if the State can show that it is the least restrictive means of directly advancing its stated interests, and "[i]f a less restrictive alternative would serve the

12

Government's purpose, the legislature must use that alternative." *Playboy Entm't Grp.,* 529 U.S. at 813. The majority, which cites the tailoring standard from *Greater New Orleans Broadcasting Ass'n, Inc. v. United States*, 527 U.S. 173, 188 (1999), an *intermediate* scrutiny case, Op. III 66, misses this point entirely.[2]

There is an obvious less restrictive alternative to FOPA's broad restrictions that directly serves the state's asserted interest: ensuring patients' right to decline to share information they regard as private, a right already protected not only by common sense but also by a specific, unchallenged provision of FOPA, Fla. Stat. § 790.338(4). This option would at least permit doctors to continue a dialogue when patients welcome the exchange. But the majority rejects it under the theory, discussed above, that there is a "highly disparate balance of power" between a doctor and a patient that apparently renders patients unable to exercise their right not to answer a doctor's questions. Op. III 72-73. This "power imbalance" theory comes wholly from the majority's imagination. It finds no support in the legislative record—there is not even a single instance reported in which a doctor forced a patient to provide firearms information—and has not been advanced by the state at any point. Indeed, the only anecdotes discussed in the legislative record show the opposite: that patients who regard firearms information as private have no qualms

---

[2] The majority also incorrectly and repeatedly relies on *Hill v. Colorado*, 530 U.S. 703, 714 (2000). Op. III 68, 75-76, 77. The statute in *Hill* was evaluated and upheld as a content-neutral time, place, and manner restriction. 530 U.S. at 724-25. *Hill* therefore is inapposite.

with refusing to answer the question.  But even if this "power imbalance" did restrict patients' abilities to decline to answer questions in the way the majority imagines,[3] a less restrictive alternative to FOPA would require doctors to expressly tell patients that they need not answer firearm-related questions.  *Cf. United States v. Alvarez*, 132 S. Ct. 2537, 2550 (2012) (the First Amendment favors "more speech, not enforced silence" (quoting *Whitney v. California*, 274 U.S. 357, 377 (1927))).

The majority further fails to evaluate any of the numerous less restrictive alternative ways Florida could have met its aims—for example, by prohibiting doctors from falsely claiming that "disclosing firearm ownership [is] a Medicaid requirement," Op. III 62, or from imposing long wait times on patients who do not wish to answer firearms questions, if those indeed are real concerns.  The state simply cannot default to imposing broad restrictions on speech.[4]  *See McCullen v. Coakley*, 134 S. Ct. 2518, 2540 (2014) (even under intermediate scrutiny, "the government must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the

---

[3] Here, the majority misapplies the Supreme Court's line of captive audience cases, broadening it for the first time to apply to a patient in a doctor's office.  This conclusion ignores the Supreme Court's admonition to construe this doctrine narrowly, in order to avoid "effectively empower[ing] a majority to silence dissidents simply as a matter of personal predilections."  *Cohen v. California*, 403 U.S. 15, 21 (1971).

[4] The majority's misapplication of First Amendment principles extended as well to the Act's anti-harassment and anti-discrimination provisions, which, because they are undefined yet clearly targeted at protected speech, would unconstitutionally chill doctors' exercise of their free speech rights.  *See* Dkt. 105 at 22.

chosen route is easier"). "[T]he availability of [these] alternatives casts serious doubt on any narrow tailoring analysis." *Bourgeois*, 387 F.3d at 1322.

## III. Whether the State Can Suppress Professional Speech Based on Disagreement with its Content is of Exceptional Importance to Public Health

Beyond its impact on freedom of speech, the majority's opinion poses a grave threat to public health and safety in Florida by silencing speech that may "save lives." *Sorrell*, 131 S. Ct. at 2664; *Trammel v. United States*, 445 U.S. 40, 51, 100 (1980) (a "physician must know all that a patient can articulate in order to identify and to treat disease"). That some patients find inquiries about gun ownership "intrusive" or believe that gun ownership is a "sensitive" topic does not give the state license to shut down entirely those inquiries, which are at the very heart of many doctors' everyday conversations with patients. Indeed, the majority's rationale could apply equally to other standard features of doctor-patient counseling and inquiry: the risks associated with smoking, certain sexual activity, drugs and alcohol. *See* Op. II 134-35 (Wilson, J., dissenting). Banning this frank conversation between doctors and their patients will have devastating consequences, particularly during a public health epidemic of firearms-related injuries and deaths. Under the majority's opinion, Florida residents will receive less information about gun safety, resulting in avoidable injuries and even deaths.

## CONCLUSION

The petition for rehearing *en banc* should be granted and injunction affirmed.

15

Respectfully submitted,


DATED: January 4, 2016              /s/ Douglas H. Hallward-Driemeier
                                    Douglas H. Hallward-Driemeier
                                    ROPES & GRAY LLP
                                    2099 Pennsylvania Avenue, N.W.
                                    Washington, DC 20006
                                    Telephone: 202-508-4600

                                    *Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2016, two copies of this Petition for Rehearing En Banc were served by overnight courier upon counsel of record for respondents:

Pam Bondi
Allen C. Winsor
Timothy Osterhaus
Jason Vail
Diane G. DeWolf
Rachel E. Nordby
Office of the Attorney General
PL01 – The Capitol
Tallahassee, Fla 32399-1050

An electronic version of the same was delivered to the Clerk and served electronically via the Court's CM/ECF system.  In addition, fifteen copies were sent by overnight courier, next business day delivery, to the Clerk of Court.

<u>/s/ Douglas H. Hallward-Driemeier</u>
Douglas H. Hallward-Driemeier

17