In The

# United States Court of Appeals

### For The Eleventh Circuit

## DR. BERND WOLLSCHLAEGER, *et al.*,

*Petitioners*,

**versus**

## GOVERNOR OF THE STATE OF FLORIDA, *et al.*,

*Respondents.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

_____

**BRIEF OF *AMICUS CURIAE* INSTITUTE FOR JUSTICE IN SUPPORT OF
THE PETITION FOR REHEARING *EN BANC***

_____

Paul M. Sherman
Robert J. McNamara
Jeff Rowes
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, Virginia 22203-1854
(703) 682-9320

*Counsel for Amicus Curiae Institute for Justice*

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

DR. BERND WOLLSCHLAEGER, et al.
　　　Petitioners,

v.

Case No. 12-14009-FF

GOVERNOR STATE OF FLORIDA, et al.
　　　Respondents.

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

---

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT**

---

The undersigned counsel certifies that in addition to the persons and entities

identified in the Petition for Rehearing *En Banc*, the following person may have an

interest in the outcome of this case:

Jeff Rowes

*Counsel for Amicus Curiae Institute for Justice*

Amicus Curiae Institute for Justice is not a subsidiary or affiliate of a

publicly owned corporation, and no publicly owned corporation, not a party to the

litigation, has a financial interest in the outcome of this case.

Dr. Bernd Wollschlaeger v. Governor State of Florida Docket No. 12-14009-FF

Dated this 14th day of January, 2016.

Respectfully submitted,

/s/ Paul Sherman
**INSTITUTE FOR JUSTICE**
Paul M. Sherman (DC Bar No. 978663)
Robert J. McNamara (VA Bar No. 73208)
Jeff Rowes (NY Bar No. 4211991)
901 North Glebe Road, Suite 900
Arlington, VA 22203-1854
Tel: (703) 682-9320
Fax: (703) 682-9321
Email: psherman@ij.org,
rmcnamara@ij.org, jrowes@ij.org
*Attorneys for Amicus Curiae*

# RULE 35-5(C) CERTIFICATION

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decisions of the Supreme Court of the United States and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court: *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), and *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), both of which hold that all content-based restrictions on speech are subject to strict scrutiny, regardless of the government's motivations in passing the law.

I further express a belief, based on a reasoned and studied professional judgment, that this appeal involves one or more questions of exceptional importance: First, it raises the question of whether this Court should adopt a professional-speech exception to the First Amendment under which one-on-one advice between a subject-matter expert and that expert's customer or client receives reduced protection. Second, and relatedly, it raises the question of whether speech is entitled to less First Amendment protection because a court determines that a speaker is in a powerful position that might enable him to persuade his listener to exercise (or not exercise) a fundamental right.

/s/ Paul Sherman
Attorney of Record for *Amicus* Institute for Justice

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND

CORPORATE DISCLOSURE STATEMENT ......................................................C-1

RULE 35-5(C) CERTIFICATION ...............................................................i

TABLE OF CONTENTS..........................................................................ii

TABLE OF AUTHORITIES ....................................................................iii

STATEMENT OF THE ISSUES...............................................................1

STATEMENT OF FACTS .......................................................................2

ARGUMENT AND AUTHORITIES.........................................................2

     I.     En Banc Review Is Necessary Because *Humanitarian Law*

           *Project* Forecloses the Creation of a Separate Category of

           "Professional Speech" ...........................................................2

     II.    The Government Never Has an Interest Under Any Standard of

           Review, Much Less a Compelling Interest Under Strict

           Scrutiny, in Suppressing Speech Because It Might Be

           Persuasive ..........................................................................10

CONCLUSION ...................................................................................15

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*44 Liquormart v. Rhode Island*,

    517 U.S. 484 (1996)....................................................................13

*Brown v. Ent. Merchs. Ass'n*,

    131 S. Ct. 2729 (2011)..................................................................9

*Citizens United v. FEC*,

    558 U.S. 310 (2010)....................................................................14

*Dana's R.R. Supply v. Florida*,

    807 F.3d 1235 (11th Cir. 2015) ....................................................11

*Davis v. FEC*,

    554 U.S. 724 (2008)....................................................................14

*First Nat'l Bank v. Bellotti*,

    435 U.S. 765 (1978)....................................................................14

*\*Holder v. Humanitarian Law Project*,

    561 U.S. 1 (2010)....................................................................*passim*

*Lowe v. S.E.C.*,

    472 U.S. 181 (1985)....................................................................8

*\*Chief Authorities are Designated by Asterisk.*

*Reed v. Town of Gilbert,

    135 S. Ct. 2218 (2015)................................................................7, 11

Riley v. Nat'l Fed'n of the Blind of N.C., Inc.,

    487 U.S. 781 (1988).......................................................................8

Rosemond v. Markham,

    No. 13-42-GFVT, 2015 U.S. Dist. LEXIS 134214,

    2015 WL 5769091 (E.D. Ky. Sept. 30, 2015)...............................10

Snyder v. Phelps,

    562 U.S. 443 (2011)................................................................ 13-14

*Sorrell v. IMS Health, Inc.,

    131 S. Ct. 2653 (2011)..............................................................13, 14

Thomas v. Collins,

    323 U.S. 516 (1945).......................................................................4

*United States v. Stevens,

    559 U.S. 460 (2010).......................................................................9

W. Va. State Bd. of Educ. v. Barnette,

    319 U.S. 624 (1943).....................................................................12

## CONSTITUTIONAL PROVISION

U.S. CONST. amend. I......................................................................passim

## STATEMENT OF THE ISSUES

Amicus Institute for Justice urges the Court to grant en banc review for two reasons. First, the panel opinion errs by announcing a complex new doctrine of "professional speech" that conflicts irreconcilably with *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010). The majority holds that certain kinds of individualized advice from a specialist to a layperson constitute a distinct category of speech that is likely entitled to reduced constitutional protection. But this holding conflicts directly with the unanimous holding in *Humanitarian Law Project* that individualized technical advice receives full First Amendment protection.

Second, rehearing is necessary because the panel majority also held in the alternative that the government has a compelling interest in suppressing truthful speech about lawful conduct (such as refraining from gun possession) if the conduct is related to a fundamental right and the court perceives a "power disparity" between the speaker and listener. This is unprecedented and anathema to the First Amendment: No court has ever held that the government has *any* interest (let alone a compelling one) in suppressing truthful speech about lawful activity simply because the government fears that a respected speaker may be *persuasive* to the listener.

## STATEMENT OF FACTS

As Petitioners do, *amicus* adopts the statement of facts in Judge Wilson's dissent in the second panel opinion. *See* Pet. for Reh'g En Banc 4.

## ARGUMENT AND AUTHORITIES

Rehearing is necessary in this case for two reasons. First, the panel majority adopts a "professional speech" exception to the First Amendment that is squarely at odds with the Supreme Court's free-speech jurisprudence. Second, the panel's recognition of a compelling government interest in suppressing speech where there is a "significant power imbalance" between speaker and listener is both unprecedented and deeply dangerous to First Amendment law.

## I.   En Banc Review Is Necessary Because *Humanitarian Law Project* Forecloses the Creation of a Separate Category of "Professional Speech."

This case should be reheard en banc because the panel majority's extensive discussion of the so-called "professional speech" exception to ordinary First Amendment doctrine is erroneous. The panel's legal conclusions conflict directly with the Supreme Court's unanimous conclusion in *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), that individualized expert advice is entitled to the full protection of the First Amendment. Moreover, a long line of Supreme Court precedent in addition to *Humanitarian Law Project* clearly demonstrates that the majority erred by creating a new exception to the First Amendment for individualized expert advice.

The premise of the majority's free-speech analysis is that speech in the form of individualized professional advice comprises a distinct First Amendment category. Slip op. 48 ("First, we must examine what constitutes professional speech."). According to the majority, "the doctrinal category of 'professional speech,'" *id.*, applies when the speech "is uttered in furtherance of the practice of medicine and within the confines of a fiduciary relationship." *Id.* at 53. As a result, the panel majority found that the speech in question here (doctor-patient speech about guns in the context of a doctor-patient relationship) fell within its definition of "professional speech."

This categorization mattered because the majority believes that distinct, doctrinally important considerations arise in the professional-speech context that justify applying a lower standard of review than in other First Amendment cases. Although the majority ultimately deemed it unnecessary to identify the precise standard of review and (as discussed below) purported to apply strict scrutiny out of an abundance of caution, the opinion is clear that professional speech warrants *at most* the intermediate scrutiny that applies to commercial speech. Rather than strict scrutiny, the majority states, "a lesser level of scrutiny applies" when "the State seeks to regulate speech by professionals in a context in which the State's interest in regulating for the protection of the public is more deeply rooted." Slip op. 56. The majority concluded that "the restriction at issue here fits cleanly

within" the professional-speech doctrine because "courts have long recognized the authority—duty even—of States to regulate the practice of professions to 'to shield[] the public against the untrustworthy, the incompetent, or the irresponsible.'" *Id.* (quoting *Thomas v. Collins*, 323 U.S. 516, 545 (1945) (Jackson, J., concurring) (alteration in original)).

In explaining why intermediate scrutiny was the appropriate standard, the majority also found it significant that "the authority of the State to regulate relationships of a fiduciary character via the common law is, if anything, a more venerable proposition than the principle that the State possesses regulatory authority over the professions." *Id.* at 58. Indeed, the majority suggests that the intermediate scrutiny of the commercial-speech test is *too* rigorous for restrictions on professional speech: "[O]ne could make the case that when enacting laws governing the type of quintessential professional speech with which we are concerned here, the State has even more regulatory leeway than when regulating promotional speech by professionals, given the fiduciary context within which the former occurs." *Id.* at 59.

En banc review is necessary because the professional-speech exception announced by the majority below conflicts fatally with *Humanitarian Law Project*. In that case, the Supreme Court unanimously held that restrictions on individualized technical advice were a form of content-based regulation that

triggers strict scrutiny. 561 U.S. at 28. There is no way to reconcile the holding in *Humanitarian Law Project* with the conclusion of the majority below that a professional-speech exception to the First Amendment even exists, much less that restrictions on professional speech warrant, at most, intermediate scrutiny.

*Humanitarian Law Project* is the Supreme Court's most recent and most authoritative pronouncement on the analysis of restrictions on individualized technical advice. In that case, the Supreme Court considered the constitutionality of a federal law that prohibited anyone from providing "material support" to designated foreign terrorists in the form of (among other things) "training" or "expert advice or assistance." 561 U.S. at 8-9. The plaintiffs consisted of "two U.S. citizens and six domestic organizations" with special expertise that wished to provide technical "train[ing] [to] members of [the Kurdistan Workers' Party (PKK)] on how to use humanitarian and international law to peacefully resolve disputes" and to "teach[] PKK members how to petition various representative bodies such as the United Nations for relief." *Id.* at 10, 14-15. The "material support" at issue, in other words, was privately communicated technical advice from a specialist to a layperson. *See id.*

*Humanitarian Law Project* controls because it set forth the Supreme Court's conclusion that there is nothing special about, and strict scrutiny applies to, restrictions on speech in the form of individualized technical advice that is

privately communicated from a specialist to a layperson. Indeed, the Supreme Court held that the distinction between generalized speech to the public and individualized advice to a specific layperson was a content-based distinction triggering strict scrutiny:

> [The material-support prohibition] regulates speech on the basis of its content. Plaintiffs want to speak to [designated terrorist organizations], and whether they may do so under [the law] depends on what they say. If plaintiffs' speech to those groups imparts a "specific skill" or communicates advice derived from "specialized knowledge"—for example, training on the use of international law or advice on petitioning the United Nations—then it is barred. On the other hand, plaintiffs' speech is not barred if it imparts only general or unspecialized knowledge.

*Humanitarian Law Project*, 561 U.S. at 27 (citations omitted).

The speech in *Humanitarian Law Project* is materially identical to the speech here: a technical specialist (doctor) privately providing individualized advice (about gun ownership) to a layperson (patient). Not only that, the majority's professional-speech doctrine is materially similar to the Department of Justice's unsuccessful argument in *Humanitarian Law Project* that only intermediate scrutiny should apply. There, the DOJ asserted that intermediate scrutiny should apply because the *purpose* of the material support provision was to protect the public by regulating the conduct of specialists who interact with terrorist organizations. Here, the majority concluded that intermediate scrutiny is

appropriate because the *purpose* of the challenged statute is to regulate the medical profession and the physician's fiduciary obligation to the patient.

But, as the Supreme Court has repeatedly held, the legislature's laudable *purpose* does not allow a law to escape strict scrutiny. Just last Term, the Supreme Court forcefully emphasized that "[i]nnocent motives do not eliminate the danger of censorship presented by a facially content-based statute, as future government officials may one day wield such statutes to suppress disfavored speech." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2229 (2015). The basic premise of the panel majority's doctrinal analysis—that regulations of "professional speech" are subject to diminished scrutiny because the legislature's goal is to regulate the professional-client relationship—has not just been rejected by the Supreme Court. It has been rejected *repeatedly*.

The Supreme Court's analysis in *Reed* also undermines the idea of a professional-speech exception in a second way. In that case, the Supreme Court not only confirmed that strict scrutiny applies to *content-based* restrictions on speech, it specifically warned that government must not be allowed to evade strict scrutiny by using *speaker*-based laws to control content. *Id.* at 2230–31. The professional-speech exception announced by the panel, though, would seem to allow exactly that. Here, the distinction drawn by Florida law is undeniably speaker-based: One class of people (licensed physicians) may not make inquiries about firearms, while

essentially everyone else can. And the reason the law is speaker-based is because its purpose is to control content: As the panel makes clear, this restriction on physician speech exists because Florida is concerned that physicians speaking in this context and on this topic will be excessively persuasive. *See infra* Part II.

These repeated rejections of the basic ideas behind a professional-speech exception to the First Amendment must be weighed against whatever support for such an exception can be found in the Supreme Court's jurisprudence. And that support is scanty: The single strongest statement in support of the panel majority's proposed exception is Justice White's three-Justice concurrence in *Lowe v. S.E.C.* 472 U.S. 181, 228-30 (1985) (White, J., concurring in result). The analysis in Justice White's 30-year-old concurrence—which the panel has used as a guide in each of its three opinions in this matter (*see*, *e.g.*, slip op. 40)—has proven influential in the courts of appeals, but has never even been cited by the Supreme Court. Indeed, just three years after *Lowe*, the Supreme Court implicitly rejected Justice White's reasoning, making clear that it had never decided that occupational licensure is "devoid of all First Amendment implication" or "subject only to rationality review." *Riley v. Nat'l Fed'n of the Blind of N.C.*, *Inc.*, 487 U.S. 781, 801 n.13 (1988).

This lack of support in the existing doctrine for a professional-speech exception matters because the Supreme Court has made abundantly clear that

lower courts do not have carte blanche to create new exceptions to the First Amendment. Nowhere is this principle clearer than in the Supreme Court's decision in *United States v. Stevens*, 559 U.S. 460 (2010). That case involved a federal law criminalizing the sale or possession of depictions of unlawful animal cruelty. *Id.* at 464–65. The government defended the law by arguing that depictions of unlawful animal cruelty are analogous to child pornography and should be similarly outside the protections of the First Amendment. *Id.* at 468-69. The Supreme Court rejected this argument, outlining a specific procedure federal courts must follow in identifying categories of speech that are outside the normal bounds of the First Amendment. As the Court explained, federal courts simply do not have a "freewheeling authority to declare new categories of speech outside the scope of the First Amendment" on the basis of "an ad hoc balancing of relative social costs and benefits." *Id.* at 470, 472. Instead, the appropriate inquiry is whether the given category of speech has historically been treated as unprotected. *Id.*at 470; *accord Brown v. Ent. Merchs. Ass'n*, 131 S. Ct. 2729, 2734 (2011) ("[N]ew categories of unprotected speech may not be added to the list by a legislature that concludes certain speech is too harmful to be tolerated."). Despite the panel's lengthy explanation of the scope of the professional-speech exception, its opinion never even mentions the test articulated by *Stevens*, much less points to historical evidence sufficient to meet it.

To be clear, rejecting the panel majority's idea of a professional-speech exception would not mean that vast swaths of professional regulation would be facially invalid under the First Amendment. After all, relatively little professional conduct consists of pure speech: Doctors conduct physical examinations and exercise the legal authority to prescribe controlled substances, while lawyers file briefs on behalf of clients.[1] Rejecting a professional-speech exception simply means that the government will not be permitted to use its power to regulate the professions to suppress pure speech—as it has done in this case. *See also Rosemond v. Markham*, No. 13-42-GFVT, 2015 U.S. Dist. LEXIS 134214, 2015 WL 5769091 (E.D. Ky. Sept. 30, 2015) (rejecting Kentucky's attempt to apply psychologist-licensing law to unlicensed newspaper advice columnist). The Supreme Court has consistently managed to review restrictions on speech, including restrictions that impede the individualized advice of experts, without creating a new doctrinal exception for professional speech. En banc review should be granted so that this Court can do the same.

II.     **The Government Never Has an Interest Under Any Standard of Review, Much Less a Compelling Interest Under Strict Scrutiny, in Suppressing Speech Because It Might Be Persuasive.**

En banc review should also be granted to correct a serious and dangerous error the panel majority's opinion has inserted into the law of the First

---

[1] This brief, of course, consists of "speech," but the clerk's office of the Eleventh Circuit is not a public forum in which *Amicus* has a right to engage in such speech.

Amendment. The majority, applying strict scrutiny out of an abundance of caution, held that the government has a compelling interest in regulating the discussion of guns by doctors because the imbalance of power between a doctor and a patient may make the doctor's views especially persuasive. This holding is anathema to the First Amendment and threatens to undermine the bedrock of free-speech jurisprudence. The Supreme Court has made it absolutely clear that the government has no authority to suppress or manipulate a speaker's truthful message about lawful conduct simply because the government fears that the speaker may persuade his or her listener.

It is well settled that content-based restrictions on speech are "presumptively unconstitutional" and survive only if the government "proves" that its restrictions "are narrowly tailored to serve compelling state interests." *Reed*, 135 S. Ct. at 2226. This is the highest burden in constitutional law.

As this Court and the Supreme Court have long recognized, content-based regulations are pernicious because the government seeks to manipulate beliefs and behavior by manipulating or suppressing messages that the government does not want its citizens to hear. "Ceding to any government the power to police expression on the basis of its message poses the most obvious threat to Americans' most fundamental liberties: the freedom of speech and the freedom of conscience." *Dana's R.R. Supply v. Florida*, 807 F.3d 1235, 1248 (11th Cir. 2015). "If there is

any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).

The majority's strict-scrutiny analysis below turns these venerable propositions on their head, treating the potential *persuasiveness* of speech as a potential harm that the government has a *compelling* interest in preventing through enforced silence. In the majority's view, the "compelling interest in protecting the fundamental right to keep and bear arms" justifies "protecting patients from irrelevant questioning about guns that could dissuade them from exercising their constitutionally guaranteed rights." Slip op. 61.

Although recognizing that content-based regulations of speech ordinarily fail, the majority posits that there is something special about the nature of the speaker-listener relationship here—namely, a doctor-patient relationship—that supplies a compelling reason for regulation. The majority identifies the purportedly "obvious problem" of "the significant imbalance of power between patient and doctor behind the closed doors." Slip op. 61–62.

Yet even if it were true that doctors are particularly persuasive based on their expertise and position of trust, the government never has an interest, under any standard of review, in suppressing truthful speech about lawful conduct simply

because citizens may be persuaded. As Justice Thomas aptly put it, when "the government's asserted interest is to keep legal users of a product or service ignorant in order to manipulate their choices . . . such an 'interest' is *per se* illegitimate." *44 Liquormart v. Rhode Island*, 517 U.S. 484, 518 (1996) (Thomas, J., concurring).

The Supreme Court has consistently rejected the proposition that the government ever has the authority, under any standard, to regulate speech about lawful conduct to equalize speakers and listeners to diminish the former's persuasiveness. The Supreme Court recently made this clear in the medical context in *Sorrell v. IMS Health, Inc.*, 131 S. Ct. 2653 (2011). In that case, Vermont forbade drug marketers from using data about a physician's prescribing patterns when making an in-office presentation to a physician. As in the majority opinion below, Vermont in *Sorrell* relied on statements in the legislative record suggesting that "'unwanted pressure occurs' when doctors learn that their prescription decisions are being 'monitored'" by drug marketers. *Id.* at 2670. The Supreme Court held that the suppression of speech on account of its supposedly pressure-laden persuasiveness "is contrary to basic First Amendment principles." *Id.* "Speech remains protected even when it may 'stir people to action,' 'move them to tears,' or 'inflict great pain.'" *Id.* (quoting *Snyder v. Phelps*, 562 U.S. 443, 460

(2011)). In short, "the fear that speech might persuade provides no lawful basis for quieting it." *Id.*

Likewise, in the campaign-finance context, the Supreme Court specifically rejected the argument that the political speech of corporations could be suppressed because "the worth of speech 'does not depend upon the identity of its source.'" *Citizens United v. FEC*, 558 U.S. 310, 349 (2010) (quoting *First Nat'l Bank v. Bellotti*, 435 U.S. 765, 777 (1978)); *see also Davis v. FEC*, 554 U.S. 724, 742 (2008) ("Leveling electoral opportunities means making and implementing judgments about which strengths should be permitted to contribute to the outcome of an election" when "[t]he Constitution . . . confers upon voters, not Congress, the power" to make political decisions).

*     *     *

Ultimately, the error in the panel majority's strict-scrutiny discussion is the same as the error in the panel's professional-speech discussion: It assumes that government has a freer hand to regulate pure speech where the speaker may be particularly influential. But, as this case clearly demonstrates, the conversations that happen between a doctor and her patient—or a lawyer and his client, or any other professional and her customers—frequently have political salience. And it is not difficult to imagine the invidious consequences of allowing the majority opinion to stand: Legislatures may well want to restrict the way lawyers talk to

their clients about marriage, lest clients be persuaded to exercise their fundamental right to marry in a way the legislature does not like. Legislatures may well want to restrict the way psychologists talk to their patients about abortion, lest patients be persuaded to exercise their right to abortion in a way the legislature does not like. Legislatures may want to restrict the way financial advisors talk about taxes, lest their customers be persuaded to vote (or not vote) for sweeping tax reform. The list goes on. Rather than try to parse which restrictions on speech are attempts to squelch political dialogue and which are not, the Supreme Court has articulated clear, straightforward rules: Content-based restrictions on speech are subject to strict scrutiny, and government cannot justify its restrictions on speech by asserting that the speech will be dangerously persuasive to its listeners. The panel majority abandons both of these rules in favor of a needlessly complex analysis that conflicts with Supreme Court precedent and will cause tremendous problems in future First Amendment cases in this Circuit. Rehearing en banc should be granted.

## CONCLUSION

For the foregoing reasons, this case should be reheard en banc.

<u>/s/ Paul Sherman</u>
**INSTITUTE FOR JUSTICE**
Paul M. Sherman (DC Bar No. 978663)
Robert J. McNamara (VA Bar No. 73208)
Jeff Rowes (NY Bar No. 4211991)
901 North Glebe Road, Suite 900
Arlington, VA 22203-1854
Tel: (703) 682-9320
Fax: (703) 682-9321
Email: psherman@ij.org,
rmcnamara@ij.org, jrowes@ij.org
*Attorneys for Amicus Curiae*

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on this 14th day of January, 2016, I caused this Brief of

*Amicus Curiae* Institute for Justice in Support of the Petition for Rehearing *En*

*Banc* to be filed electronically with the Clerk of the Court using the CM/ECF

System, which will send notice of such filing to the following registered CM/ECF

users:

Edward M. Mullins
ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.
701 Brickell Avenue, 16th Floor
Miami, Florida  33131-2847
Telephone: (305) 372-8282

Jonathan E. Lowy
BRADY CENTER TO PREVENT GUN VIOLENCE
840 First Street NE, Suite 400
Washington, D.C.  20002
Telephone: (202) 370-8104

Douglas H. Hallward-Driemeier
Mariel Goetz
ROPES & GRAY LLP
2099 Pennsylvania Ave., NW
Washington, D.C.  20006
Telephone: (202) 508-4600

Erin R. Macgowan
Alexandra L. Roth
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Telephone: (617) 951-7000

*Counsel for Petitioners*

Pam Bondi
Allen C. Winsor
Timothy Osterhaus
Jason Vail
Diane G. DeWolf
Rachel E. Nordby
Office of the Attorney General
PL01 – The Capitol
Tallahassee, Florida  32399-1050

*Counsel for Respondents*

I further certify that on this 14th day of January, 2016, I caused the required number of bound copies of the foregoing Brief of *Amicus Curiae* Institute for Justice in Support of the Petition for Rehearing *En Banc* to be filed via UPS Next Day Air with the Clerk of this Court and for one copy of the same to be served, via U.S. Mail, to all case participants, at the above listed addresses.

/s/ Paul Sherman
*Counsel for Amicus Curiae*