Case No. 12-14009-FF

UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

DR. BERND WOLLSCHLAEGER, *et al.*,
Plaintiffs/Appellees,
vs.
GOVERNOR STATE OF FLORIDA, *et al.*,
Defendants/Appellants.

―――――――――――――――――――――――――――――――――――――――――――――

Amicus Curiae Brief of ACLU Foundation of Florida, Inc., Alachua County
Medical Society, Broward County Medical Association, Broward County Pediatric
Society, Palm Beach County Medical Society, Florida Public Health Association,
University of Miami School of Law Children & Youth Clinic, Early Childhood
Initiative Foundation, and the Marion B. Brechner First Amendment Project
in Support of Petition for Rehearing *En Banc*

―――――――――――――――――――――――――――――――――――――――――――――
―――――――――――――――――――――――――――――――――――――

On Appeal from the United States District Court
for the Southern District of Florida

―――――――――――――――――――――――――――――――――――――

Thomas R. Julin & Jamie Z. Isani
HUNTON & WILLIAMS LLP
1111 Brickell Ave., Ste. 2500
Miami, FL 33131
305.810.2516
tjulin or jisani@hunton.com

Nancy Abudu
ACLU FOUNDATION OF FLORIDA, INC.
4500 Biscayne Boulevard Suite 340
Miami, FL 33137-3227
786.363.2700 fax 3108
nabudu@aclufl.org

Gerald E. Greenberg
GELBER SCHACHTER & GREENBERG, P.A.
1221 Brickell Ave., #2010
Miami, Florida 33131
305.728.0953
ggreenberg@gsgpa.com

Grace L. Mead
STEARNS WEAVER MILLER WEISSLER
  ALHADEFF & SITTERSON, P.A.
150 West Flagler Street – Ste 2200
Miami, Florida 33130
305.789.3200
GMead@stearnsweaver.com

Attorneys for the *Amici Curiae*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1, amici curiae hereby state that the Certificate of Interested Persons and Corporate Disclosure Statement filed by Petitioners with their Petition for Rehearing *En Banc* was complete, with the exception of the following persons or entities:

Carlton Fields Jorden Burt LLP, counsel for *amicus* American Bar Association

Gelber Schachter & Greenberg, P.A. counsel for *amici curiae*

Hunton & Williams LLP, counsel for *amici curiae*

Marion B. Brechner First Amendment Project, *amicus curiae*

Mead, Grace L., counsel for *amici curiae*

Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., counsel for *amici curiae*

s/Thomas R. Julin
Thomas R. Julin

C1-of-1

## STATEMENT OF COUNSEL

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decisions of the Supreme Court of the United States and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court: *Agency for International Development v. Alliance for Open Society International*, 570 U.S. ___, 133 S. Ct. 2321, 186 L. Ed. 2d 398 (2013), and *Sorrell v. IMS Health Inc.,* 564 U.S. ___, 131 S. Ct. 2653, 180 L. Ed. 2d 544 (2011).  I also express a belief based on a reasoned and studied professional judgment, that this appeal involves the following question of exceptional importance: Whether the Florida Firearm Owners Privacy Act, 2011 Fla. Laws 112 (codified at Fla. Stat. §§ 381.026, 456.072, 790.338), violates the First and Fourteenth Amendments of the U.S. Constitution through imposition of content-based restrictions on speech imposed due to state opposition to the content of the speech.

<div style="margin-left:40%;">

s/ Thomas R. Julin
_____
Thomas R. Julin
Attorney of Record for ACLU Foundation
of Florida, Inc.; Alachua County Medical
Society; Broward County Medical
Association; Broward County Pediatric
Society; Palm Beach County Medical
Society; Florida Public Health Association;
University of Miami School of Law
Children and Youth Clinic; Early Childhood
Initiative Foundation; Marion B. Brechner
First Amendment Project

</div>

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT ...........................................C1

STATEMENT OF COUNSEL ........................................................................i

TABLE OF CONTENTS........................................................................... ii

TABLE OF CITATIONS .........................................................................iv

STATEMENT OF THE ISSUE
WARRANTING EN BANC CONSIDERATION ...................................................1

THE INTERESTS & AUTHORITY OF THE AMICI TO FILE ............................1

    The ACLU of Florida .....................................................................1

    The Medical Societies....................................................................2

    The Children and Youth Care Groups.............................................3

    The Marion B. Brechner First Amendment Project .........................3

AUTHORSHIP & FUNDING OF THE BRIEF.......................................................4

STATEMENT OF THE FACTS ................................................................4

ARGUMENT .........................................................................................4

  I.  The Act Does Not Regulate "Professional Speech"; It Impermissibly
      Targets Speech that is Irrelevant to Medical Care and Safety .......................5

  II.  The Act is Substantially Overbroad.............................................10

  III. The Panel Should Have Invalidated the Law
      Through Application of the Principles Reaffirmed
      in *AID v. Alliance for Open Society International* .......................................12

CONCLUSION .....................................................................................15

HUNTON & WILLIAMS LLP / GELBER SCHACHTER & GREENBERG / ACLU FOUNDATION OF FLORIDA, INC. /
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.

CERTIFICATE OF COMPLIANCE ....................................................................... vii

CERTIFICATE OF SERVICE ............................................................................. viii

iii

# TABLE OF CITATIONS

Page(s)

Cases

*A Woman Friend's Pregnancy Resource Clinic v. Harris*,
--- F. Supp. 3d ----, No. 2:15-cv-02122-KJM-AC, 2015 WL 9274116
(E.D. Cal. Dec. 21, 2015) ...................................................................9

*Agency for International Development v. Alliance for Open Society
International*,
133 S.Ct. 2321 (2013)........................................................ i, 12, 13, 14

*Ashcroft v. Free Speech Coalition*,
535 U.S. 234 (2002)..........................................................................11

*Broadrick v. Oklahoma*,
413 U.S. 601 (1973)..........................................................................11

*Goldfarb v. Virginia State Bar*,
421 U.S. 773 (1975)..........................................................................12

*Hines v. Alldredge*,
783 F.3d 197 (5th Cir. 2015) ..............................................................7

*King v. Governor of New Jersey*,
767 F.3d 216 (3d Cir. 2014) ...............................................................6

*Moore-King v. County of Chesterfield, Va.*,
708 F.3d 560 (4th Cir. 2013) ..............................................................7

*Pickup v. Brown*,
740 F.3d 1208 (9th Cir. 2013) ............................................................7

*Sorrell v. IMS Health Inc.*,
131 S. Ct. 2653 (2011)..................................................................i, 8, 9

*United States v. Stevens*,
559 U.S. 460 (2010)..........................................................................12

HUNTON & WILLIAMS LLP / GELBER SCHACHTER & GREENBERG / ACLU FOUNDATION OF FLORIDA, INC. /
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.

## Constitutional Provisions

U.S. Const. amend. I ..........................................................................*passim*

U.S. Const. amend. II ................................................................................8

HUNTON & WILLIAMS LLP / GELBER SCHACHTER & GREENBERG / ACLU FOUNDATION OF FLORIDA, INC. /
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.

## STATEMENT OF THE ISSUE

Whether the panel erred in holding that a state law enacted in reaction to the lobbying of the National Rifle Association to suppress the truthful and important communication of healthcare professionals with their patients about the real dangers of firearm and ammunition ownership does not violate the First and Fourteenth Amendments of the United States Constitution.

## THE INTERESTS AND AUTHORITY TO FILE OF THE AMICI

The *amici curiae* have obtained the consent of their governing officials or boards to file this brief. Their identities and interests are as follows:

### The ACLU of Florida

The American Civil Liberties Union (ACLU) is our nation's guardian of liberty, working daily in courts, legislatures, and communities to defend and preserve the individual rights and liberties guaranteed to all people in this country by the U.S. Constitution. Since 1920, the nonprofit, nonpartisan ACLU has grown to over 500,000 members and supporters. The ACLU of Florida, with headquarters in Miami, is the local affiliate of the national organization.

### The Medical Societies

The Alachua County Medical Society represents more than 1,000 physicians, residents and students in Alachua, Levy, Dixie, and Gilchrist Counties. The Broward County Medical Association (BCMA), established 1926, advocates

for physicians' rights and unites 1,500 allopathic and osteopathic physicians, of all specialties. The BCMA authored the United States' first and only *"Physician and Medical Staff Bill of Rights and Responsibilities"* as a model of physician free speech and autonomy for the practice of medicine. The *Physician Bill of Rights* was introduced and referred in 2015 to the American Medical Association (AMA) to be a part of the AMA national policy. The Broward County Pediatric Society has approximately 100 pediatricians and pediatric subspecialists as members. The Palm Beach County Medical Society has been a trusted leader in addressing healthcare issues facing physicians since 1919. The Florida Public Health Association was founded in 1931 to advance public health through advocacy, education, and networking. All five medical societies have joined this brief to protect their members' speech rights at this critical time when healthcare reform is at the forefront of the nation's political agenda. The medical societies recognize individual patients' rights but also individual physicians' rights to free speech and autonomy so they can freely advocate and care for their patients. The medical societies also recognize a right of free speech to the physician as an individual without fear of government retaliation or restrictions. The medical societies fear that restrictions to physician's autonomy and free speech not only will reduce access, availability, and the quality of medical care, but will violate the basic rights of any individual physician to "freely advocate for patients" and free speech. They

HUNTON & WILLIAMS LLP / GELBER SCHACHTER & GREENBERG / ACLU FOUNDATION OF FLORIDA, INC. / STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.

fear that if the state can censor questions regarding firearm and ammunition ownership, it may impose additional speech restrictions that have nothing to do with the practice of medicine and everything to do with a political agenda and furthermore interfere with physician rights and the practice of medicine — and causing harmful downstream consequences.

<u>The Children and Youth Care Groups</u>

Three of the *amici curiae* are organizations that advocate for the health and well-being of children. The Early Childhood Initiative Foundation is an organization aimed toward providing "universal readiness" or making available affordable high-quality health, education, and nurturing for all of the Miami-Dade County's community of approximately 160,000 children between birth and age five. Under its president, David Lawrence, Jr., the Initiative works toward the social, physical, emotional, and intellectual growth of all children so that they are ready and eager to be successful in the first grade and throughout life. The Children and Youth Clinic is an in-house legal clinic, staffed by faculty and students at the University of Miami School of Law, which advocates for the rights of children in abuse and neglect, medical care, mental health, disability, and other proceedings. These organizations all have a strong interest in ensuring that doctors, like other citizens, remain free to question their patients about firearm and ammunition ownership – regardless of whether the inquiries are part of a

3

preventative healthcare regimen or simply the expression of a viewpoint.

### The Marion B. Brechner First Amendment Project

The Marion B. Brechner First Amendment Project is a nonprofit, nonpartisan organization at the University of Florida. Directed by attorney Clay Calvert, the Project is dedicated to contemporary issues of freedom of expression. The Project's director published a scholarly article in 2013 on the Florida law at issue in this case.

### AUTHORSHIP & FUNDING OF THE BRIEF

No party's counsel authored this brief or contributed money intended to fund preparation or submission of this brief; and no person, other than the *amici curiae*, their members or counsel, contributed money intended to fund the preparation or submission of the brief.

### STATEMENT OF FACTS

The facts are adequately set forth in the panel opinions.

### ARGUMENT

In unusual, perhaps unprecedented, fashion, the panel majority now has issued three lengthy opinions, each taking a wholly different approach to determining whether a law that prohibits healthcare practitioners from engaging in discussion of firearms with patients when such conversation is *irrelevant* to patient health or safety survives the First Amendment. The pendulum has swung from the

4

initial opinion, in which the majority concluded that the law had only an incidental impact on speech rights and therefore applied only rational basis review, to the first opinion on rehearing, applying intermediate scrutiny, to the most recent opinion, in which the majority concedes that strict scrutiny might be required and holds that the law could survive even this daunting test. *Amici* fear this most recent opinion is the most dangerous because if courts are willing to uphold viewpoint-based speech regulations under strict scrutiny, the effect will be wholesale destruction of the First Amendment restriction on legislative discretion to control speech. Speech rights will be won or lost at the ballot box. The First Amendment is intended to protect against the tyranny of the majority, not to encourage it. The *amici* are fearful of what legislatures may do next. If the Court concludes that the State of Florida can legislate in order to suppress their viewpoint regarding firearm ownership and ammunition, they expect that the heavy hand of the censor will be felt by all manner of professionals on a very wide range of topics.

## I.
## The Act Does Not Regulate "Professional Speech"; It Impermissibly Targets Speech that is Irrelevant to Medical Care and Safety

The panel and the parties agree that the Act targets speech that is *irrelevant* to patient medical care or safety, or the safety of others, such as doctors' and patients' political views on gun ownership. Plaintiffs maintain they do not engage in such speech, but are chilled from engaging in speech that is *relevant* to patient

HUNTON & WILLIAMS LLP / GELBER SCHACHTER & GREENBERG / ACLU FOUNDATION OF FLORIDA, INC. /
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.

medical care or safety, or the safety of others, including routine inquiry and recording of information about patient firearm and ammunition ownership. As a consequence, the panel focused its efforts primarily on determining whether this chilling impact violates the First Amendment, while entirely ignoring the direct impact of the Act.[1] The majority and dissent in its previous opinions both focused on a wholly unnecessary and deeply protracted analysis of the proper level of scrutiny for a statute that chills "professional speech."

Other courts have struggled with this question in cases involving regulations that – unlike the Act – actually sought to regulate the conduct of the medical profession, rather than prohibiting healthcare practitioners from engaging their patients in discussions on a topic unrelated to the patient health or safety that the State would prefer to silence. For instance, both the Third and Ninth Circuits have addressed laws that prohibited mental healthcare professionals from engaging in

---

[1] The majority found that much of the plaintiffs' speech – routine inquiry and recording of information about patient firearm and ammunition ownership – is far outside the bounds of medical care and expressly prohibited by the Act. *See* Slip Op. at 19 ("inquiry and recordation will not be relevant"), 24 ("Some – perhaps the majority – of [records of firearm information] will . . . be irrelevant to the care and safety of patients and others."). Having reached this conclusion, the majority could not logically find, although it did, that this irrelevant speech is "in furtherance of the practice of medicine" or "professional speech." Slip Op. at 53 n. 16. When a healthcare practitioner records information in medical records about patient politics, religion, the weather, or firearm ownership, or inquires about these same topics without a good faith belief that the answers will be relevant to medical care or safety, or the safety of others, the professional has stepped out of his or her role as a regulated healthcare practitioner and has acted as an ordinary American.

6

sexual orientation change efforts (SOCE). *King v. Gov. of N.J.*, 767 F.3d 216 (3d Cir. 2014), *Pickup v. Brown*, 740 F.3d 1208 (9th Cir. 2013). In *Pickup*, the Ninth Circuit concluded that the restriction on a particular course of treatment was a regulation of conduct, with only an incidental effect on speech, and thus subject only to rational basis review.[2] 740 F.3d at 1231. In *King*, by contrast, the Third Circuit found the verbal communications that occur during SOCE are professional speech subject to intermediate scrutiny.[3] 767 F.3d at 235-36.

*Amici* accept the holding in *Pickup*, that as licensed professionals, they are subject to state regulation of the conduct of their medical practice, and the state may proscribe a course of treatment, consistent with the First Amendment. Had the state of Florida made a determination that gun ownership is *never* relevant to a patient's treatment (contrary to the teachings of numerous medical authorities), the analysis would be different. But the state of Florida did not proscribe inquiry regarding gun ownership based on a medical judgment that such discussion is

---

[2]   The Fifth Circuit similarly held a Texas law requiring veterinarians to conduct a physical examination of an animal before practicing veterinary medicine with respect to the animal was a regulation of professional conduct with only an incidental effect on speech. *See Hines v. Alldredge*, 783 F.3d 197 (5th Cir. 2015).

[3]   *King* cited *Moore-King v. County of Chesterfield, Va.,* 708 F.3d 560 (4th Cir. 2013), in which the Fourth Circuit upheld licensing requirements for fortune tellers as "professional speech," holding that a state's regulation of a profession raises no First Amendment problem where it amounts to "generally applicable licensing provisions" affecting those who practice the profession.

HUNTON & WILLIAMS LLP / GELBER SCHACHTER & GREENBERG / ACLU FOUNDATION OF FLORIDA, INC. / STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.

harmful to patient care. Instead, it prohibited the discussion of gun ownership when the topic is concededly *irrelevant* to patient care, based on a political preference to shield gun owners from any dialog regarding the merits of gun safety or other firearm-related issues. The political purpose behind the Act is further evidenced by the fact that the state did not prohibit healthcare practitioners from inquiring regarding *any* topic irrelevant to patient medical care or safety, perhaps on a theory that irrelevant discussion is wasteful of patient time. Instead, the State targeted a single subject and a particular viewpoint, seeking to silence healthcare practitioners who may seek to engage patients in a debate on which the State has clearly chosen a winner. When the State targets a specific group of speakers and a narrow type of speech for exclusion from records, inquiries, and harassment, the State reveals that its objective is not to improve the delivery of professional services, but to attack those whose speech advocates a particular political viewpoint or to place a certain subject off limits.

The majority finally concluded correctly that this type of content-, speaker-, and viewpoint-based speech restriction must be subject to strict scrutiny, as *amici* have argued from the outset of the case. But the majority has ignored the Supreme Court's admonition that "it is all but dispositive to conclude that a law is content-based and, in practice, viewpoint-discriminatory." *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2667 (2011). The majority's conclusion that the Act protects patients'

Hunton & Williams LLP / Gelber Schachter & Greenberg / ACLU Foundation of Florida, Inc. /
Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.

Second Amendment right to keep and bear arms by "protecting patients from irrelevant questioning about guns that could dissuade them from exercising their constitutionally guaranteed rights" (slip op. at 61) ignores that speech that seeks to deter one from exercising a constitutional right is fully protected. *See Sorrell*, 131 S. Ct. at 2670 ("Speech remains protected even when it may 'stir people to action,' 'move them to tears,' or 'inflict great pain.'"). And the majority's emphasis on patient privacy overlooks that "[p]rivacy is a concept too integral to the person and a right too essential to freedom to allow its manipulation to support just those ideas the government prefers." *Sorrell*, 131 S. Ct. at 2672.

The majority has watered down the concept of strict scrutiny beyond any recognition, and the result is frightening, but predictable: legislatures will have carte blanche to enact restrictions on speech with which they disagree. The majority opinion already has been used to uphold a law on the other side of the political spectrum, requiring crisis pregnancy centers (which disfavor abortion) to notify clients regarding the availability of free or low-cost public family planning services, including abortion. *A Woman Friend's Pregnancy Res. Clinic v. Harris*, 2015 WL 9274116, at *19-24 (E.D. Cal. Dec. 21, 2015). Like the majority, the *Woman Friend's* court concluded that the California law was a regulation of professional speech that is subject to and likely survives intermediate scrutiny, but also went further to hold that it likely would survive strict scrutiny, as well. *Id.* at

HUNTON & WILLIAMS LLP / GELBER SCHACHTER & GREENBERG / ACLU FOUNDATION OF FLORIDA, INC. / STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.

*22-24. This decision demonstrates that if courts are willing to uphold viewpoint-based speech regulations under an unduly malleable concept of strict scrutiny, the contours of the First Amendment will vary depending on who is in office. In California, the liberals would get their way (for now). In Florida, the conservatives would get their way (for now). In both states, the people would lose their First Amendment rights, and we all would be worse for it.

## II.
## The Act is Substantially Overbroad

Even if the Court agrees with the panel's mischaracterization of the Act as prohibiting plaintiffs' proffered speech "in the furtherance of the practice of medicine," and agrees that plaintiffs' speech constitutes professional speech, it should address the plaintiffs' attack on the statute's restriction of the speech of other healthcare practitioners who have made no claim that their routine recording and inquiry practices are professional speech. *See* DE-1. The *amici* in this case represent thousands of healthcare practitioners and concede that the recording of information about patient firearm ownership, and inquiries into firearm and ammunition ownership, often have no relevance to medical care or safety, or the safety of others. The *amici* have asserted from the outset of this litigation that they regularly engage their patients for political rather than medical care or safety purposes in discussions of firearm ownership. They further admit that many of their patients, like the very patient whose experience in Ocala led to adoption of

10

the Act, regard this as unnecessary harassment due to the patients' strong conviction that healthcare practitioners ought not be asking them about this particular topic or recording information about this topic. *See* DE-67 (Amicus Memo in Support of Plaintiffs' Motion for Preliminary Injunction).

The overbreadth doctrine entitled the plaintiffs "to challenge [the] statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Okla.*, 413 U.S. 601, 612 (1973). A law is "unconstitutional on its face if it prohibits a substantial amount of protected expression." *Ashcroft v. Free Speech Coal.,* 535 U.S. 234, 244 (2002) (holding Child Pornography Prevention Act of 1996 was overbroad because it proscribed a significant universe of speech that was neither obscene nor child pornography).

The majority recognized that the plaintiffs had advanced an overbreadth attack, but then rejected it on the illogical ground that the Act does not prohibit a substantial amount of speech because "it only burdens speech that, as judged by the physician in good faith, lacks a sufficient nexus to the medical care or safety of a particular patient." Slip. Op. at 80. The fact that physicians believe their speech has no such nexus has nothing whatsoever to do with the amount of protected speech the statute prohibits. The majority accepted that physicians routinely

HUNTON & WILLIAMS LLP / GELBER SCHACHTER & GREENBERG / ACLU FOUNDATION OF FLORIDA, INC. / STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.

engaged in the speech restricted by the Act and the *amici* also have shown that thousands of additional healthcare practitioners did as well. The majority had no basis to conclude that the Act does not prohibit a substantial amount of protected speech. It prohibits thousands of daily inquiries, notations, and even debates.

The majority also rejected the plaintiffs' overbreadth challenge, relying on *Goldfarb v. Virginia State Bar,* 421 U.S. 773 (1975), a case that did not involve a First Amendment challenge, let alone an overbreadth challenge, and the *ipse dixit* that "no one argues that concededly irrelevant speech lies within the scope of good medical practice." Slip Op. at 80. The issue is not whether the speech restricted by the Act is within good medical practice; the issue is whether speech prohibited by the Act, which is fully protected by the First Amendment, is "substantial" when "judged in relation to the statute's plainly legitimate sweep," *U.S. v. Stevens,* 559 U.S. 460, 473 (2010) (quotes omitted), and the record here shows that it is.

### III.
#### The Panel Should Have Invalidated the Law
#### Through Application of the Principles Reaffirmed
#### in *AID v. Alliance for Open Society International*

The panel has not addressed a Supreme Court decision issued after briefing of this case closed, *Agency for International Development v. Alliance for Open Society International*, 133 S. Ct. 2321 (2013) (hereinafter *AID*), which held that even where the government has broad power to impose conditions on licensing or funding, it may not impose conditions that are unrelated to the objective of the

HUNTON & WILLIAMS LLP / GELBER SCHACHTER & GREENBERG / ACLU FOUNDATION OF FLORIDA, INC. /
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.

program in order to leverage a government license or funding for political or ideological purposes.

*AID* involved Congressional funding of efforts by nongovernmental organizations to fight the spread of HIV/AIDS around the world. *Id.* at 2324-25. The act authorizing this spending provided (1) the funds could not be used to promote or advocate the legalization or practice of prostitution or sex trafficking and (2) no funds could be used by an organization that does not have a policy explicitly opposing prostitution and sex trafficking. *Id.* Organizations eligible to receive the funds challenged the latter condition as violating their First Amendment rights. *Id.* at 2326.

The Supreme Court, in a seven-justice majority opinion authored by Chief Justice Roberts, agreed with the plaintiffs. The Court recognized that Congress has broad spending powers and that if a party objects to a condition on the receipt of federal funding, "its recourse is to decline the funds." *Id.* at 2328. Similarly, states have broad authority to impose conditions on the receipt of a license to practice medicine (or many other professions), and the recourse of those who oppose submission to the conditions is to reject the license. The *AID* opinion noted, however, that "the Government 'may not deny a benefit to a person on a basis that infringes his constitutionally protected . . . freedom of speech even if he has no entitlement to that benefit.'" *Id.* (citation omitted). The same principle applies to

HUNTON & WILLIAMS LLP / GELBER SCHACHTER & GREENBERG / ACLU FOUNDATION OF FLORIDA, INC. / STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.

government issuance of licenses to professionals.

"[T]he relevant distinction that has emerged," the Supreme Court held, "is between conditions that define the limits of the government spending program – those that specify the activities Congress wants to subsidize – and conditions that seek to leverage funding to regulate speech outside the contours of the program itself." *Id.* The Court conceded that the "line is hardly clear." *Id.* at 2328. It concluded that the challenged condition – requiring the recipients to adopt a policy opposing prostitution – imposed an unconstitutional condition on recipients' speech unrelated to the program because it not only controlled speech in conjunction with recipients' fulfillment of the government program, it also controlled the speech of recipients when they were acting *outside* the program by compelling them to adopt the government's viewpoint. *Id.* at 2332.

Similar to government funding of programs, state licensing of professionals provides tempting opportunities for legislators to attempt to restrict or compel speech through the imposition of conditions outside the confines of the licensing: in essence "leveraging" a government license improperly. In this case, the record reflects that the Florida Legislature first considered the law at issue at the behest of the National Rifle Association (NRA). It was not proposed by any medical association or group concerned with patient health. Instead, the NRA, as an advocacy organization, proposed the law only after it learned that doctors routinely

HUNTON & WILLIAMS LLP / GELBER SCHACHTER & GREENBERG / ACLU FOUNDATION OF FLORIDA, INC. /
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.

ask their patients about firearm and ammunition ownership in order to engage them in a discussion of the dangers they create. The NRA's concern about this questioning was understandable in light of the fact that doctors regularly see first-hand the harmful effects of unregulated distribution of firearms and often advise patients not only about firearm safety, but also their support of gun restrictions. The record before this Court is clear that the legislature shared the NRA's viewpoint against gun restrictions and adopted the law not due to a belief that the restriction was needed to advance the goals of medical licensing, but rather to suppress political opposition to gun control. This was made clear by the language of the act, which solely bans communications with patients that are irrelevant to the good faith delivery of medical care. Just as the law requiring *AID* fund recipients to endorse a government viewpoint even when they were not fulfilling their government-funded missions, the Florida law restricts inquiries made of patients when doctors are *not* inquiring for medical purposes. This type of speech restriction cannot, under *AID*, be characterized as a simple license-defining regulation. It instead is a leveraging of regulation to impose a content- and viewpoint-based restriction on speech that, contrary to the majority's conclusion, cannot satisfy strict scrutiny.

## CONCLUSION

The Court should rehear the case *en banc*.

HUNTON & WILLIAMS LLP / GELBER SCHACHTER & GREENBERG / ACLU FOUNDATION OF FLORIDA, INC. / STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.

Respectfully submitted,

Hunton & Williams LLP

By ___s/ Thomas R. Julin_____

Thomas R. Julin & Jamie Z. Isani
Florida Bar Nos. 325376 & 728861
1111 Brickell Avenue - Suite 2500
Miami, FL 33131
305.810.2516 fax 1601
tjulin or jisani@hunton.com

Gerald E. Greenberg
Fla. Bar No. 440094
Gelber, Schachter & Greenberg, P.A.
1221 Brickell Ave. #2010
Miami, Florida 33131
305.728.0953 Fax 0951
ggreenberg@gsgpa.com

Grace L. Mead
Fla. Bar No. 049896
Stearns Weaver Miller Weissler Alhadeff
& Sitterson, P.A.
150 West Flagler Street
Miami, Florida 33130
305.789.3200 Fax 3395

Nancy Abudu
Fla. Bar No. 305601
Associate Legal Director
ACLU Foundation of Florida, Inc.
4500 Biscayne Boulevard Suite 340
Miami, FL 33137-3227
T: 786-363-2700; F: 786-363-3108
nabudu@aclufl.org

Attorneys for the *Amici Curiae*

## CERTIFICATE OF COMPLIANCE

Undersigned counsel hereby certifies that this brief complies with the requirements of FRAP Rule 32(a)(7)(B)(i) inasmuch as the brief, exclusive of the Certificate of Interested Persons and Corporate Disclosure Statement, Certificate of Service, Table of Contents, Table of Citations and Authorities, and this Certificate, is no longer than 15 pages and is printed in 14-point Times New Roman proportionally spaced typeface.

<div align="right">

s/ Thomas R. Julin
_____
Thomas R. Julin

</div>

HUNTON & WILLIAMS LLP / GELBER SCHACHTER & GREENBERG / ACLU FOUNDATION OF FLORIDA, INC. /
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2016, a true copy of the foregoing was served by Notice of Electronic Filing generated by ECF upon all counsel of record:

Pamela J. Bondi, Attorney General
Timothy D. Osterhaus Solicitor General
Jason Vail, Assistant Attorney General
Diane G. DeWolf, Deputy Solicitors General
Rachel E. Nordby, Deputy Solicitors General
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399

Douglas Hallward-Driemeier
Bruce S. Manheim, Jr.
Mariel Goetz
Ropes & Gray LLP
700 12th Street, NW, Suite 900
Washington, DC 20005-3948

Elizabeth N. Dewar
Ropes & Gray LLP
Prudential Tower
80 Boylston Street
Boston, MA 02199-3600

Jonathan E. Lowy
Daniel R. Vice
Brady Center to Prevent Gun Violation
1225 Eye Street, NW, Suite 1100
Washington, DC 20005

Edward Maurice Mullins
Hal Michael Lucas
Astigarraga Davis Mullins & Grossman
701 Brickell Avenue 16th Floor
Miami, FL 33131-2847

HUNTON & WILLIAMS LLP / GELBER SCHACHTER & GREENBERG / ACLU FOUNDATION OF FLORIDA, INC. / STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.

Dennis Gary Kainen
Weisberg & Kainen
1401 Brickell Avenue
Suite 800
Miami, FL 33131-3554

Charles J. Cooper
David H. Thompson
Peter A. Petterson
Cooper and Kirk, PLLC
1523 New Hampshire avenue, NW
Washington, D.C. 20036

John C. Eastman
Anthony T. Caso
Center for Constitutional Jurisprudence
c/o Chapman University School of Law
One University School of Law
One University Drive
Orange, CA 92886

Paul M. Sherman (DC Bar No. 978663)
Robert J. McNamara (VA Bar No. 73208)
Institute for Justice
901 North Glebe Road, Suite 900
Arlington, VA 22203-1854

Richard J. Ovelmen
Carlton Fields Jorden Burt LLP
100 S.E. Second Street
Miami, FL 33131



s/ Thomas R. Julin
Thomas R. Julin

HUNTON & WILLIAMS LLP / GELBER SCHACHTER & GREENBERG / ACLU FOUNDATION OF FLORIDA, INC. /
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.