# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT
Case No.: 12-14009
D.C. Docket No.: 1:11-cv-22026-MGC

---

DR. BERND WOLLSCHLAEGER, DR. JUDITH SCHAECHTER, DR. TOMMY SCHECHTMAN, AMERICAN ACADEMY OF PEDIATRICS, FLORIDA CHAPTER, AMERICAN ACADEMY OF FAMILY PHYSICIANS, FLORIDA CHAPTER, AMERICAN COLLEGE OF PHYSICIANS, FLORIDA CHAPTER, INC., ROLAND GUTIERREZ, STANLEY SACK, SHANNON FOX-LEVINE,
*Petitioners-Appellees,*

vs.

GOVERNOR OF THE STATE OF FLORIDA, et al.,
*Respondents-Appellants.*

---

Appeal from the United States District Court
for the Southern District of Florida

---

## BRIEF OF AMERICAN BAR ASSOCIATION
## AS *AMICUS CURIAE* IN SUPPORT OF PETITION FOR
## REHEARING *EN BANC* OF PETITIONERS-APPELLEES,
## DR. BERND WOLLSCHLAEGER, ET AL.

---

Of Counsel:

Richard J. Ovelmen
Florida Bar No. 284904

Gary L. Sasso
Florida Bar No. 622575

Michael D. Sloan
Florida Bar No. 104385

Paulette Brown*
President
American Bar Association
321 North Clark Street
Chicago, IL 60654
312-988-5000
abapresident@americanbar.org
*Counsel of Record

*Counsel for Amicus Curiae American Bar Association*

**DOCKET NO.: 12-14009**
**WOLLSCHLAEGER, ET AL. V. GOVERNOR OF FLORIDA, ET AL.**

**CERTIFICATE OF INTERESTED PERSONS AND**
**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Cir. R. 26.1, *amicus curiae* American Bar Association ("ABA") discloses that it is an Illinois nonprofit corporation, has no parent corporation, and does not issue shares of stock. ABA is a national organization representing its more than 400,000 attorney members, law student members, and non-lawyer "associates" in related fields.[*]

On behalf of *amicus curiae*, American Bar Association, the undersigned certifies that the Certificate of Interested Persons included within Petitioners-Appellees' Petition for Rehearing *En Banc* is complete.

/s/ Paulette Brown
Paulette Brown

---

[*] No party's counsel authored this brief, and no party, its counsel, or other person contributed money intended to fund this brief's preparation or submission, other than ABA and its members.

36208166.4

## STATEMENT OF COUNSEL

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decisions of the Supreme Court of the United States and that consideration by the full Court is necessary to secure and maintain uniformity of decisions in this Court: *Reed v. Town of Gilbert, Ariz.*, 576 U.S. ---, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015); *Sorrell v. IMS Health Inc.*, 564 U.S. ---, 131 S. Ct. 2653, 180 L. Ed. 2d 544 (2011); *Edenfield v. Fane*, 507 U.S. 761, 113 S. Ct. 1792, 123 L. Ed. 2d 543 (1993); *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 96 S. Ct. 1817, 48 L. Ed. 2d 346 (1976); *Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415, 83 S. Ct. 328, 9 L. Ed. 2d 405 (1963).

I express a belief, based on a reasoned and studied professional judgment, that this appeal involves one or more questions of exceptional importance: Whether the Florida Statutes at issue impose an impermissible restriction on speech by health care practitioners with their patients about firearms and firearm safety, under the First Amendment rights applicable to state regulated professionals as incorporated by the Fourteenth Amendment.

/s/ Paulette Brown
Paulette Brown

i

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ......................................................... C-1 of 1

STATEMENT OF COUNSEL ................................................................... i

TABLE OF CITATIONS ....................................................................... iv

STATEMENT OF THE ISSUE................................................................1

IDENTITY AND INTEREST OF AMICUS CURIAE............................1

ARGUMENT .........................................................................................4

I.    This Case Involves A Question Of Exceptional Importance. .......4

II.   Rehearing *En Banc* Is Necessary To Resolve This Case Consistent
      With Binding Supreme Court Precedent........................................8

      A.    The Statutes At Issue Are Content-Based, Viewpoint Discriminatory,
            And Speaker-Based Restrictions That Cannot Withstand Any
            Heightened Review Under The First Amendment................8

            1.    The Statutes Impose Content-Based, Viewpoint
                  Discriminatory, And Speaker-Based Restrictions
                  On Speech.......................................................8

            2.    Under Strict Scrutiny, The Statutes Are Not Narrowly
                  Tailored To Serve A Compelling State Interest, And
                  Therefore Cannot Withstand Review. ............................9

            3.    The Statutes Cannot Withstand Any Heightened
                  Review. ........................................................11

      B.    The Statutes At Issue Are Impermissible Pretextual And Paternalistic
            Restrictions On Truthful Speech To Prevent Choices The State
            Disfavors. ..........................................................13

CONCLUSION ....................................................................................15

36208166.4

CERTIFICATE OF COMPLIANCE ...................................................................17

CERTIFICATE OF SERVICE .........................................................................18

36208166.4

# TABLE OF CITATIONS

**Page**

## Cases

*44 Liquormart, Inc. v. Rhode Island*,
517 U.S. 484, 116 S. Ct. 1495, 134 L. Ed. 2d 711 (1996) .................................13

*Bates v. State Bar of Arizona*,
433 U.S. 350, 97 S. Ct. 2691, 53 L. Ed. 2d 810 (1977) ....................................13

*Cape Publications, Inc. v. Hitchner*,
549 So. 2d 1374, 1377-78 (Fla. 1989) ..............................................................14

*Edenfield v. Fane*,
507 U.S. 761, 113 S. Ct. 1792, 123 L. Ed. 2d 543 (1993) .............................i, 13

*First Nat. Bank of Boston v. Bellotti*,
435 U.S. 765, 785-86, 98 S. Ct. 1407, 1420-21, 55 L. Ed. 2d 707
(1978) .....................................................................................................................9

*Linmark v. Township of Willingboro*,
431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977).........................................13

*Nat'l Ass'n for Advancement of Colored People v. Button*,
371 U.S. 415, 83 S. Ct. 328, 9 L. Ed. 2d 405 (1963) .............................. i, 14, 15

*Reed v. Town of Gilbert, Ariz.*,
576 U.S. ---, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015) ...........................i, 9, 10

*Rosa & Raymond Parks Inst. for Self Dev. v. Target Corp.*,
No. 15-10880, 2016 WL 25495 (11th Cir. Jan. 4, 2016) ...................................14

*Sorrell v. IMS Health Inc.*,
564 U.S. ---, 131 S. Ct. 2653, 180 L. Ed. 2d 544 (2011) ................... i, 11, 12, 13

*Thomas v. Collins*,
323 U.S. 516, 65 S. Ct. 315, 89 L. Ed. 430 (1945)............................................15

*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*,
425 U.S. 748, 96 S. Ct. 1817, 48 L. Ed. 2d 346 (1976) ..................................i, 13

36208166.4

*Wollschlaeger v. Governor of Florida*,
 --- F.3d ---, Case No. 12-14009 (11th Cir. July 28, 2015) ................................14

*Wollschlaeger v. Governor of Florida*,
 --- F.3d ---, Case No. 12-14009 (11th Cir. Dec. 14, 2015).........................*passim*

**Statutes**

Section 381.026, Florida Statutes ..........................................................2

Section 456.072, Florida Statutes ..........................................................2

Section 790.338, Florida Statutes ..........................................................2

**Other Authorities**

ABA Report #111 ......................................................................3, 5, 6, 7

AM. J. PREVENTIVE MED. 173, 179 (2004).................................................5

First Amendment..................................................................................*passim*

Second Amendment ...............................................................................*passim*

Fourteenth Amendment ............................................................................i

American Medical Association, *Prevention of Firearm Accidents in
 Children*, Policy H-145.990, Res. 165, I-89 .........................................7

American Psychiatric Association, Position Statement No. 200107 ........................7

Available at
 http://www.americanbar.org/content/dam/aba/administrative/house
 _of_delegates/resolutions/2012_hod_annual_meeting_111.authche
 ckdam.doc .............................................................................3

Centers for Disease Control and Prevention, *10 Leading Causes of
 Death by Age Group* (Sept. 3, 2010) *available at*:
 http://www.cdc.gov/injury/wisqars/pdf/death_by_age_2007-a.pdf ....................5

Disease Control and Prevention, *WISQARS Nonfatal Injury Reports*,
 *available at*:
 http://webappa.cdc.gov/sasweb/ncipc/nfirates2001.html;...................................6

36208166.4

Erin G. Richardson & David Hemenway, *Homicide, Suicide, and Unintentional Firearm Fatality: Comparing the United States With Other High-Income Countries, 2003* ..........................................6

Fed. R. App. P. 32(a)(5)(A) ..........................................17

Fed. R. App. P. 26.1 ..........................................1

Fed. R. App. P. 29(b) ..........................................1

11th Cir. R. 35-6 ..........................................1, 17

11th Cir. R. 26.1 ..........................................C-1 of 1

Renee Johnson, M.P.H. et al., *Firearm Ownership and Storage Practices, U.S. Households, 1992-2002* ..........................................5

Teresa L. Albright, M.D. & Sandra K. Burge, Ph.D., *Improving Firearm Storage Habits: Impact of Brief Office Counseling by Family Physicians*, 16 J. AM. BOARD FAMILY PRACTICE 1, 40 (Jan.-Feb. 2003). ..........................................5, 6

*WISQARS Injury Mortality Reports, 1999-2007, available at*: http://webappa.cdc.gov/sasweb/ncipc/mortrate10_sy.html ..........................................6

36208166.4

## STATEMENT OF THE ISSUE

Whether Florida's prohibition on speech by healthcare practitioners to their patients about firearm ownership and safety, when made without a good faith belief that the speech is relevant to the patients' treatment or safety, serves a compelling state interest and is narrowly tailored?

## IDENTITY AND INTEREST OF AMICUS CURIAE

Pursuant to a motion for leave under Federal Rule of Appellate Procedure 29(b) and 11th Cir. R. 35-6, the American Bar Association ("ABA") as *amicus curiae* respectfully submits this brief in support of the Petitioners/Appellees' petition for rehearing *en banc* in *Wollschlaeger v. Governor of Florida*, --- F.3d ---, Case No. 12-14009 (11th Cir. Dec. 14, 2015). The Panel *sua sponte* vacated its revised opinion and issued a new opinion, in which the majority continued to acknowledge that First Amendment rights are implicated, but held under both strict and intermediate scrutiny, those rights are overcome by Florida's interests in: (1) protecting the Second Amendment right to keep and bear arms by banning speech "irrelevant" to treatment that might dissuade the patient from owning guns; and (2) protecting patients' privacy rights relating to gun ownership. *Id.*, slip op. at 60-66. The Panel determined that the two additional compelling interests asserted – elimination of barriers to healthcare and prevention of discrimination/harassment of firearm owners – were "inherently wrapped-up in the other two asserted

1

interests" and did not discuss them separately. *Id.*, slip op. at 60, n.19.

The ABA urges that rehearing be granted because of the important First Amendment issues implicated by the Panel's split decision. The State of Florida prohibits speech about firearm safety and related health concerns by a licensed medical professional with his or her patient, unless the medical professional "in good faith believes that this information is relevant to the patient's medical care or safety, or the safety of others[.]" § 790.338(2), Fla. Stat.; *see also* § 381.026, Fla. Stat. (incorporating restrictions related to firearms in Florida Patient's Bill of Rights and Responsibilities); § 456.072, Fla. Stat. (providing disciplinary measures for violation of Florida's Firearm Owners Privacy Act). This reasoning could similarly be applied with precedential force to other regulated professionals (including attorneys), to limit their speech to patients and clients unless it meets some equally vague "relevance" test set by government officials. Rehearing *en banc* is also necessary because this reasoning does not conform to binding precedent of the United States Supreme Court.

The ABA is one of the largest voluntary professional membership organizations and is the leading association of legal professionals in the United States. Its more than 400,000 members practice in all fifty states and other jurisdictions. They include attorneys in private law firms, corporations, non-profit organizations, government agencies, prosecutor and public defender offices, as

2

well as judges, legislators, law professors, law students, and non-lawyer "associates" in related fields.[1] For its fiscal year 2014-2015, the ABA had 18,537 lawyer members, 2,653 law student members, and 528 non-lawyer associate members from the State of Florida.

Since its founding in 1878, the ABA has paid special attention to protecting the rights guaranteed by the Constitution, including the First Amendment rights of health care practitioners and other regulated professionals. Of specific relevance to the question before the *en banc* Court, in 2012 the ABA adopted a policy that opposes "governmental actions and policies that limit the rights of physicians and other health care providers to inquire of their patients whether they possess guns and how they are secured in the home or to counsel their patients about the dangers of guns in the home and safe practices to avoid those dangers." ABA Policy #111 (adopted August 2012) ("ABA Policy #111").[2] The accompanying report ("ABA Report #111") notes that legislation limiting the right of health care professionals to ask their patients such questions interferes with preventive care duties that are a

---

[1] Neither this brief nor the decision to file it should be interpreted to reflect the view of any judicial member of the ABA. No member of the Judicial Division Council participated in the adoption or endorsement of the positions in this brief, nor was it circulated to any member of the Judicial Division Council before filing.

[2] Available at
http://www.americanbar.org/content/dam/aba/administrative/house_of_delegates/resolutions/2012_hod_annual_meeting_111.authcheckdam.doc

foundation of modern medicine, and that such legislation violates the First Amendment rights of both health care practitioners and their patients. Indeed, while the dissent declined to write a third dissenting opinion, and instead rested on its two previous dissents, *Wollschlaeger*, Dec. 14, 2015 Slip Op. at 82 (dissenting), the two previous dissents cited ABA Policy #111.

Based on its enduring belief in the crucial importance of protecting First Amendment rights, including the right to have open and unfettered dialogue between members of regulated professions (such as doctors and attorneys) and their patients or clients, and for the reasons stated below, the ABA urges this Court to grant *en banc* review and reverse the split panel decision.

## ARGUMENT

### I. This Case Involves A Question Of Exceptional Importance.

This case presents a question of exceptional importance requiring rehearing *en banc*: the ability of doctors to save lives by engaging in speech about firearm dangers, safety, and storage in the home. For this communication, asking about the ownership of a firearm or ammunition is a necessary first inquiry, similar to asking about the use of safety belts or child safety restraints. This remains true regardless of whether government officials consider the question "irrelevant" to professional treatment. The State of Florida should not be permitted to eliminate this communication without review by the Court *en banc*.

102944545.6

ABA Policy #111, discussed above, was adopted after an extensive review of: (i) statistical and other empirical evidence demonstrating the extent and consequences of uncounseled gun security and storage in the home; and (ii) the policies developed by various medical organizations for preventive health care and safety counseling for physicians to provide to owners of firearms.[3] The data set out in ABA Report #111 demonstrates the exceptional importance to public safety of doctors initiating this conversation:

- "[O]ne-third of U.S. homes with children younger than eighteen have a firearm, and more than 40% of gun-owning households with children store their guns unlocked, with one-quarter of those homes storing them loaded."[4] (ABA Report #111 at 2).

- "Unintentional injury is a health hazard, and is the leading cause of death among children older than one year, adolescents, and young adults."[5] (ABA Report #111 at 2).

- According to the Centers for Disease Control and Prevention, "every day in America, thirty-eight children and teens are injured by firearms and eight are

[3] As quoted above, ABA Policy #111 opposes "governmental actions and policies that limit the rights of physicians and other health care providers to inquire of their patients whether they possess guns and how they are secured in the home or to counsel their patients about the dangers of guns in the home and safe practices to avoid those dangers."

[4] Renee Johnson, M.P.H. et al., *Firearm Ownership and Storage Practices, U.S. Households, 1992-2002*, 27 AM. J. PREVENTIVE MED. 173, 179 (2004). *See also* Teresa L. Albright, M.D. & Sandra K. Burge, Ph.D., *Improving Firearm Storage Habits: Impact of Brief Office Counseling by Family Physicians*, 16 J. AM. BOARD FAMILY PRACTICE 1, 40 (Jan.-Feb. 2003).

[5] Centers for Disease Control and Prevention, *10 Leading Causes of Death by Age Group* (Sept. 3, 2010) *available at*: http:// http://www.cdc.gov/injury/wisqars/pdf/death_by_age_2007-a.pdf

102944545.6

killed by firearms."[6]  (ABA Report #111 at 2).

- "Intentional and unintentional injury related deaths caused by firearms claim more lives than all injury sources except motor vehicles."[7]  (ABA Report #111 at 2).

- "Children aged 5 to 14 years in the United States are 11 times more likely to be killed accidentally with a gun than similarly aged children in other developed countries."[8]  (ABA Report #111 at 4).

Preventive care is a pillar of modern medicine.  For health care practitioners to meet their responsibilities, "they must be able to discuss a broad range of topics with their patients related to known risk factors."   (ABA Report #111 at 1). Speech involving safety counseling on firearms in the home should not be chilled by a statutory requirement that, before health care practitioners can ask about firearm and ammunition ownership, they must first establish a good faith belief that the questions are "relevant," as set by statute, to a particular patient's medical care.  By extension, the State would similarly be able to decide that other areas within preventive care counseling, such as using child safety seats and safely

---

[6] Centers for Disease Control and Prevention, *WISQARS Nonfatal Injury Reports*, *available at*:  http://webappa.cdc.gov/sasweb/ncipc/nfirates2001.html; *WISQARS Injury Mortality Reports, 1999-2007*, *available at*: http://webappa.cdc.gov/sasweb/ncipc/mortrate10_sy.html

[7] Teresa L. Albright, M.D. & Sandra K. Burge, Ph.D., *Improving Firearm Storage Habits:  Impact of Brief Office Counseling by Family Physicians*, 16 J. AM. BOARD FAMILY PRACTICE 1, 40 (Jan.-Feb. 2003).

[8] Erin G. Richardson & David Hemenway, *Homicide, Suicide, and Unintentional Firearm Fatality: Comparing the United States With Other High-Income Countries, 2003*, J. TRAUMA, INJURY, INFECTION, & CRITICAL CARE at 1 2010.

storing hazardous cleaning chemicals, should be subject to the vague "relevance" test contained in the Florida law.

Discussions about gun safety are critical to preventive medical care:

- "The American Academy of Pediatrics recommends that parents of pre-school aged children remove handguns from places where children live and play. They advise parents of adolescents that firearms in the home are particularly dangerous for this age group because of their propensity for impulsive, unplanned use resulting in suicide, homicide, or serious unintentional injuries." (ABA Report #111 at 2-3).

- "The American Medical Association adopted a policy to reduce pediatric firearm morbidity and mortality by encouraging its members to: (a) inquire as to the presence of household firearms as part of childproofing the home; (b) educate patients to the dangers of firearms to children; (c) encourage patients to educate their children and neighbors as to the dangers of firearms; and (d) routinely remind patients to obtain firearm safety locks, to store firearms under lock and key, and to store ammunition separately from firearms."[9] (ABA Report #111 at 3).

- "The American Psychiatric Association has recommended that 'health professionals and health systems should ask about firearm ownership whenever clinically appropriate in the judgment of the physician.'"[10] (ABA Report #111 at 3).

- "[S]afety counseling . . . is also shown to have concrete results. One study showed that after a single instance of verbal counseling, more than 58% of patients reported making changes to their gun storage habits." (ABA Report #111 at 2).

These issues underscore the exceptionally important questions presented for *en banc* review.

---

[9] American Medical Association, *Prevention of Firearm Accidents in Children*, Policy H-145.990, Res. 165, I-89.

[10] American Psychiatric Association, Position Statement No. 200107.

**II.    Rehearing *En Banc* Is Necessary To Resolve This Case Consistent With Binding Supreme Court Precedent.**

Rehearing *en banc* is necessary to address the exceptionally important questions presented for review, and to maintain uniformity with binding precedent from the Supreme Court of the United States.

> **A.    The Statutes At Issue Are Content-Based, Viewpoint Discriminatory, And Speaker-Based Restrictions That Cannot Withstand Any Heightened Review Under The First Amendment.**

The statutes at issue impose an unlawful content-based, viewpoint discriminatory, and speaker-based restriction on speech.  Further, under strict scrutiny, the statutes are not narrowly tailored to serve a compelling governmental interest.  Finally, the statutes cannot withstand heightened scrutiny at any level.

> **1.    The Statutes Impose Content-Based, Viewpoint Discriminatory, And Speaker-Based Restrictions On Speech.**

The restriction is content-based because it limits speech concerning firearm ownership and safety.  In fact, the panel decision now expressly acknowledges that the restriction is content-based.  *Wollschlaeger*, Dec. 14, 2015 Slip Op. at 47.

The restriction is viewpoint discriminatory because it singles out a particular opinion for limitation and restraint:

> The Act protects the right to keep and bear arms by protecting patients from irrelevant questioning about guns **that could dissuade them** from exercising their constitutionally guaranteed rights, questions that a patient may feel they cannot refuse to answer, given the significant imbalance of power between patient and doctor behind the closed doors of the examination room.
> \*\*\*

102944545.6

> It is of course an interference with Second Amendment rights for a trusted physician **to tell his patient** – for no medically relevant reason whatsoever – **that it is unsafe to own a gun**. Though such actions, on their own, may not stop the patient from owning a gun, complete prohibition is hardly required to infringe on constitutionally guaranteed rights. Such speech chills the patient's exercise of his rights and that is sufficient.

*Id*. at 61-62, 67 (emphases added); *see First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 785-86, 98 S. Ct. 1407, 1420-21, 55 L. Ed. 2d 707 (1978) ("Especially where . . . the legislature's suppression of speech suggests an attempt to give one side of a debatable public question an advantage in expressing its views to the people, the First Amendment is plainly offended.").

The restriction is also speaker-based by its express terms because it applies only to speech by health care practitioners.

    2.    <u>Under Strict Scrutiny, The Statutes Are Not Narrowly Tailored To Serve A Compelling State Interest, And Therefore Cannot Withstand Review.</u>

The statutes at issue must be narrowly tailored to serve a compelling state interest. Because the statutes fail this test, they cannot withstand strict scrutiny under *Reed v. Town of Gilbert, Ariz.*, 576 U.S. ---, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015).

In *Reed*, the Supreme Court reviewed a town code that governed the manner in which people could display outdoor signs, after a church and pastor challenged specific restrictions on signs that directed people to meetings of nonprofit groups.

*Id.* at 2224, 2227-32. The Supreme Court determined that the restriction was content-based and did not withstand strict scrutiny. *Id.* at 2227-32. The town's stated governmental interests (aesthetic appeal and traffic safety) failed as "hopelessly underinclusive" because allowable signs presented the same (or more) risks than the signs restricted. *Id.* at 2231-32. The code failed strict scrutiny because "a law cannot be regarded as protecting an interest of the highest order, and thus as justifying a restriction on truthful speech, when it leaves appreciable damage to that supposedly vital interest unprohibited[.]" *Id.* at 2232 (citation and quotation omitted).

The governmental interest asserted by Florida in protecting patient privacy suffers the same defect. Although doctors routinely ask their patients a host of personal questions during examinations that patients may not want to discuss or have entered into their medical records (which can range from eating habits, to the use of tobacco, alcohol or drugs, to matters of intimacy), the State of Florida has deemed it necessary to enact legislation to provide protection for a patient's privacy on only one subject: firearms. If protecting privacy is the actual basis for Florida's restrictions, the restrictions are impermissibly underinclusive when so many circumstances required to protect this vital interest are left unaddressed. Moreover, medical privacy rights are already protected by several statutes, and the doctor-patient privilege, rendering the restrictions overinclusive as well.

102944545.6

The other governmental interest asserted by Florida – protecting the Second Amendment right to keep and bear arms – is not implicated by the speech restrictions at issue. Nothing said by a doctor to a patient about gun safety infringes on that patient's right to keep and bear arms. The Panel, however, concluded that such a discussion "did chill lawful activity protected by the Second Amendment." *Wollschlaeger*, Dec. 14, 2015 Slip Op. at 62. The Panel cited no authority holding speech to be a "chill" on Second Amendment rights. While the Second Amendment protects an individual's right to keep and bear arms and has precluded attempts to enact a blanket ban on firearm ownership, the Panel offered no authority for its conclusion that speech about the danger of firearms infringes upon any recognized Second Amendment right.

3.    The Statutes Cannot Withstand Any Heightened Review.

Regardless of the level of heightened scrutiny applied, intermediate or strict, the restrictions nonetheless fail to withstand review. In *Sorrell v. IMS Health Inc.*, 564 U.S. ---, 131 S. Ct. 2653, 180 L. Ed. 2d 544 (2011), the Supreme Court reviewed a statute that, among other things, restricted the sale and use of information for marketing purposes that detailed the pharmaceutical prescriptive practices of physicians. *Id.* at 2659-61. The Supreme Court held the statute was viewpoint discriminatory because it "target[s] those speakers [who promote brand-name drugs] and their messages for disfavored treatment." *Id*. at 2663. Under

either strict or intermediate scrutiny, the State must "not seek to suppress a disfavored message." *Id*. at 2668. Here, the State of Florida attempts to suppress a politically disfavored message from medical professionals that might cause their patients to rethink having a gun in the home. If the State may direct a doctor to not discuss firearm safety, it may order a lawyer not to talk about the same. It could, in fact, prohibit any regulated professional from addressing politically sensitive issues in their job.

In *Sorrell*, the Supreme Court noted that "in the fields of medicine and public health . . . information can save lives." *Id*. at 2664. The Supreme Court further explained it was doubtful that concern for "a few physicians who may have felt coerced and harassed" by marketers could sustain the broad content-based rule at issue. *Id*. at 2669. The same reasoning applies here.

Finally, it bears noting that "[i]n the ordinary case it is all but dispositive to conclude that a law is content-based and, in practice, viewpoint-discriminatory." *Id*. at 2667. According to the majority, the statutes at issue in this case are intended to prevent speech to patients about the dangers of firearms and proper firearm safety and storage <u>because these statements were seen as having a potential effect</u>. *Wollschlaeger*, Dec. 14, 2015 Slip Op. at 61-62, 67, *supra* at 8-9. That is impermissible viewpoint discrimination. Accordingly, the Court should grant rehearing *en banc* and reverse the panel decision.

**B.** **The Statutes At Issue Are Impermissible Pretextual And Paternalistic Restrictions On Truthful Speech To Prevent Choices The State Disfavors.**

The statutes at issue are pretextual and paternalistic restrictions on speech. They prevent communication on the basis that patients will be dissuaded from exercising their Second Amendment right to own a gun, if they are asked certain questions and given certain information on gun safety. Such a paternalistic justification to restrict truthful information is unconstitutional. *Sorrell*, 131 S. Ct. at 2663-64; *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 116 S. Ct. 1495, 134 L. Ed. 2d 711 (1996) (paternalistic prohibition on liquor advertisements intended to discourage drinking held invalid); *see also Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S. Ct. 2691, 53 L. Ed. 2d 810 (1977) (viewing as "dubious any justification that is based on the benefits of public ignorance."); *Linmark v. Township of Willingboro*, 431 U.S. 85, 97 S. Ct. 1614, 52 L. Ed. 2d 155 (1977) (paternalistic ban on "For Sale" signs in order to prevent flight of white homeowners held invalid); *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 770, 96 S. Ct. 1817, 1829, 48 L. Ed. 2d 346 (1976) (noting the best means to protect peoples' interest "is to open the channels of communication rather than to close them."). Under the First Amendment, the government may not act as an arbiter for the public's own good, in order to deter opinions it disfavors.

102944545.6

Further, the Supreme Court has explained that it will not "turn away if it appears that the stated interests are not the actual interests served by the restriction." *Edenfield v. Fane*, 507 U.S. 761, 768, 113 S. Ct. 1792, 1798-99, 123 L. Ed. 2d 543 (1993). As Judge Wilson noted in his previous dissent from the Panel's revised opinion, "the perceived problem with doctors' truthful, non-misleading message regarding firearm safety was that it was working, so the message was silenced. That is classic viewpoint discrimination." *Wollschlaeger*, July 28, 2015 Slip Op. at 94, (dissenting) *vacated by* Dec. 14, 2015 Slip Op. If the Court determines that Florida enacted the restrictions to favor speech promoting gun ownership, while disfavoring speech concerning gun safety and the dangers presented by firearms in the home, that is viewpoint discrimination and the restrictions cannot withstand review.[11]

The statutes at issue restrict truthful speech, under the guise of the State's power to regulate the medical profession. In *Nat'l Ass'n for Advancement of*

---

[11] Curiously, when it is unrelated to firearms, Florida's protection of privacy does not extend so far as to prevent speech that is in the public interest. *Cape Publications, Inc. v. Hitchner*, 549 So. 2d 1374, 1377-78 (Fla. 1989) (explaining that right of privacy does not prohibit publication of matters related to legitimate public interest); *see also Rosa & Raymond Parks Inst. for Self Dev. v. Target Corp.*, No. 15-10880, 2016 WL 25495 (11th Cir. Jan. 4, 2016) (holding, under Michigan law, that privacy rights are not absolute and yield to communications on matters of public interest). Here, the selection of one topic and one viewpoint for restriction, when privacy interests otherwise yield to speech made in the public interest, further undermines Florida's asserted interest in protecting privacy.

*Colored People v. Button*, 371 U.S. 415, 83 S. Ct. 328, 9 L. Ed. 2d 405 (1963), the

Supreme Court recognized the State's "subordinating interest in the regulation of

the legal profession," but explained the limits of that power by noting:

> [I]t is no answer to the constitutional claims asserted by petitioner to say . . . that the purpose of these regulations was merely to insure high professional standards and not to curtail free expression. For a State may not, under the guise of prohibiting professional misconduct, ignore constitutional rights.

*Id.* at 438-39, 83 S. Ct. at 340-41. While Virginia had a valid interest in regulating

the legal profession to prevent injurious conduct, there was nothing that supported

an inference of injury. *Id.* at 439-45, 83 S. Ct. at 341-44. The same is true here.

In *Thomas v. Collins*, 323 U.S. 516, 65 S. Ct. 315, 89 L. Ed. 430 (1945),

Justice Jackson issued a prescient warning on the future landscape of free speech

by noting that "[m]odern inroads on these rights come from associating the

speaking with some other factor which the state may regulate so as to bring the

whole within official control." *Id.* at 547, 65 S. Ct. at 330 (Jackson, J.,

concurring). That is exactly what the State has done here. The State could not

openly restrict speech it disfavors, so it has attempted to fasten its restriction to its

power to regulate the medical profession. That is unconstitutional.

## <u>CONCLUSION</u>

The American Bar Association, as *amicus curiae*, respectfully requests the

Court grant rehearing of the split panel decision *en banc* and reverse.

102944545.6

Dated:  January 14, 2016                    Respectfully submitted,


                                            /s/ Paulette Brown
                                            ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

Of Counsel:                                 Paulette Brown*
                                            President
Richard J. Ovelmen                          American Bar Association
Florida Bar No.  284904                     321 North Clark Street
Gary L. Sasso                               Chicago, IL 60654
Florida Bar No.  622575                     312-988-5000
Michael D. Sloan                            abapresident@americanbar.org
Florida Bar No.  104385                     *Counsel of Record

102944545.6

## CERTIFICATE OF COMPLIANCE

Undersigned counsel hereby certifies that this brief complies with the requirements of Fed. R. App. P. 32(a)(5)(A) and 11th Cir. R. 35-6 because the brief, exclusive of the Cover Page, Certificate of Interested Persons and Corporate Disclosure Statement, Statement of Counsel, Certificate of Service, Table of Contents, Table of Citations, and this Certificate, is no longer than 15 pages and is printed in 14- point Times New Roman proportionally spaced typeface.

/s/ Paulette Brown
Paulette Brown

102944545.6

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of January 2016, I caused the foregoing to be electronically filed using the Court's CM/ECF system, which will provide service on all counsel of record, including those identified below, via Notice of Docket Activity generated by CM/ECF:

| | |
|---|---|
| Pamela J. Bondi, Attorney General<br>Timothy D. Osterhaus Solicitor General<br>Jason Vail, Assistant Attorney General<br>Diane G. DeWolf, Deputy Solicitors General<br>Rachel E. Nordby, Deputy Solicitors General<br>Office of the Attorney General<br>PL-01, The Capitol<br>Tallahassee, FL  32399 | Douglas Hallward-Driemeier<br>Bruce S. Manheim, Jr.<br>Mariel Goetz<br>Ropes & Gray LLP<br>700 12th Street, NW, Suite 900<br>Washington, DC 20005-3948 |
| Elizabeth N. Dewar<br>Ropes & Gray LLP<br>Prudential Tower<br>80 Boylston Street<br>Boston, MA  02199-3600 | Jonathan E. Lowy<br>Daniel R. Vice<br>Brady Center to Prevent Gun Violation<br>1225 Eye Street, NW, Suite 1100<br>Washington, DC 20005 |
| Edward Maurice Mullins<br>Hal Michael Lucas<br>Astigarraga Davis Mullins & Grossman<br>701 Brickell Avenue 16th Floor<br>Miami, FL 33131-2847 | Dennis Gary Kainen<br>Weisberg & Kainen<br>1401 Brickell Avenue, Suite 800<br>Miami, FL 33131-3554 |
| Charles J. Cooper<br>David H. Thompson<br>Peter A. Petterson<br>Cooper and Kirk, PLLC<br>1523 New Hampshire avenue, NW<br>Washington, D.C.  20036 | John C. Eastman<br>Anthony T. Caso<br>Center for Constitutional Jurisprudence<br>c/o Chapman University School of Law<br>One University School of Law<br>One University Drive<br>Orange, CA  92886 |

/s/ Paulette Brown
Paulette Brown

102944545.6